```
 1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
 2                    SOUTHERN DIVISION
                         LONDON
 3           TRANSCRIPT FILED ELECTRONICALLY


 4
    UNITED STATES OF AMERICA,
 5
                              Case No. 6:09-CR-16-DCR
 6      PLAINTIFF,            at London, Kentucky
                              March 20, 2009
 7                            3:42 p.m.
    VS.
 8


 9
    RUSSELL CLETUS MARICLE;
10  CHARLES WAYNE JONES;
    WILLIAM E. STIVERS, a/k/a AL MAN;
11  and DEBRA L. MORRIS, a/k/a DEBBIE,

12      DEFENDANTS.

13              TRANSCRIPT OF ARRAIGNMENTS
        BEFORE U.S. MAGISTRATE JUDGE ROBERT E. WIER
14
                 *  *  *  *  *  *  *  *  *  *
15
    APPEARANCES:
16
    For the Plaintiff:  Hon. Stephen C. Smith
17                       Hon. Jason D. Parman
                         Assistant United States Attorneys
18                       601 Meyers Baker Road
                         Suite 200
19                       London, Kentucky  40741-3035
                         (606) 864-5523
20

21  For the Defendant
    Russell Cletus
22  Maricle:            Hon. Mark A. Wohlander
                         Wallingford Law, PSC
23                       3141 Beaumont Centre Circle
                         Suite 302
24                       Lexington, Kentucky  40513
                         (859) 219-0066
25
```

```
 1
      Appearances:   (Cont.)
 2

 3
      For the Defendant
 4    Charles Wayne Jones: Hon. William Gary Crabtree
                           Attorney at Law
 5                         120 East Fourth Street
                           London, Kentucky  40741
 6                         (606) 878-8888

 7
      For the Defendant
 8    William E. Stivers:  Hon. Patrick F. Nash
                           Attorney at Law
 9                         129 West Short Street
                           Lexington, Kentucky  40507
10                         (859) 254-3232

11
      For the Defendant
12    Debra L. Morris:     Hon. Elizabeth Snow Hughes
                           Gess, Mattingly & Atchison, PSC
13                         201 West Short Street
                           Lexington, Kentucky  40507
14                         (859) 252-9000

15

16

17

18

19

20

21

22
                      Official Court Reporter:
23                    Sandy C. Wilder, RMR, CRR
                         8081 Perryville Road
24                 Danville, Kentucky  40423-9713
                           (859) 516-4114
25
```

```
1              [IN OPEN COURT]
2              THE COURT:  Thank you.  Good afternoon.
3    If the Clerk would call the 3:30 matter, please
4              MADAM CLERK:  Yes, Your Honor.  London
5    Criminal Case 09-16, United States of America
6    versus Russell Cletus Maricle, Charles Wayne Jones,
7    William E. Stivers, a/k/a Al Man, and Debra L.
8    Morris, a/k/a Debbie.
9              THE COURT:  Thank you.  The Court
10   recognizes Mr. Smith and Mr. Parman here for the
11   United States.  Good afternoon.
12             MR. PARMAN:  Good afternoon, Your Honor.
13             MR. SMITH:  Good afternoon, Your Honor.
14             THE COURT:  And for defense counsel, I
15   know all of you, but if you could, state your
16   appearance, and then, please, indicate where your
17   client is.
18             MR. WOHLANDER:  Your Honor, if it please
19   the Court, Mark Wohlander on behalf of Russell
20   Cletus Maricle, and I would tell the Court that
21   Mr. Maricle is sitting behind me and he has had an
22   opportunity to view the indictment.  He is the
23   individual set forth in the indictment.
24             I'd also tell the Court that as of today,
25   I'm appearing on behalf of Mr. Maricle as it
```

1   relates to the arraignment.  I got a late call

2   today and we haven't had a chance to discuss

3   further representation, but we'll make arrangements

4   as quickly as we can, and if it's not me, someone

5   will enter an appearance as quickly as possible.

6           THE COURT:  Very good.  Thank you,

7   Mr. Wohlander.

8           MR. WOHLANDER:  Thank you.

9           THE COURT:  Good afternoon, Mr. Maricle.

10  Let's see, on behalf of Defendant Jones.

11          MR. CRABTREE:  Gary Crabtree, London.

12  Mr. Jones is seated behind me, Judge.

13          THE COURT:  Thank you.  Good afternoon to

14  both of you.  On behalf of Defendant Stivers.

15          MR. NASH:  Your Honor, I've been asked to

16  be here on standby for Mr. Stivers.  He's here

17  behind me.  I have met with him in anticipation of

18  being appointed, so I'm here available to do that.

19          THE COURT:  All right.  Thank you,

20  Mr. Nash.  And Mr. Stivers and Ms. Hughes.

21          MS. HUGHES:  Elizabeth Hughes, and I was

22  also asked to be on standby on behalf of

23  Mrs. Morris, and we have met today.

24          THE COURT:  All right.  Thank you.  And

25  Mrs. Morris is on the end back there, I presume?

1        MS. HUGHES:  Yes, she is.  I'm sorry.

2        THE COURT:  All right.  Good afternoon,

3   Mrs. Morris.

4        We are here this afternoon for the

5   purposes of an arraignment, and that results from

6   the grand jury's decision to return an indictment

7   that has named and does name each of the defendants

8   present this afternoon.  The district judge

9   currently assigned to the case is Judge Reeves on

10  this matter to be tried in this division of the

11  U.S. District Court.

12       What we're going to do today is make sure

13  that each defendant has received the indictment,

14  understands the charges against him or her, as well

15  as the potential penalties.  I will take the

16  initial plea of each defendant, deal with the issue

17  of detention or release as to each defendant under

18  the indictment, and set the schedule for the trial

19  of the case.

20       Although we're proceeding in a joint

21  fashion, I'm doing that for efficiency sake, but

22  the rights I'm going to talk about belong to each

23  of you individually, so please keep that in mind as

24  we go through the proceedings today.

25       At the outset, let me remind each

1    defendant that you do have the right to remain

2    silent both today and throughout the entirety of

3    the case.  That means at no point can you be

4    required to make a statement of any kind.  If you

5    begin to make a statement, you may stop, but

6    anything you do say can be used against you by the

7    prosecution.  Each of you does have the right to

8    counsel in this case.  You have the right to hire

9    counsel of your choice, if you choose to do that.

10   If you're unable to afford to hire counsel, you

11   have the right to apply to the Court.  And if you

12   qualify financially, the Court would appoint

13   counsel for you.

14          Now, some of you have retained counsel,

15   and some of you have not yet at this point, and

16   that's fine.  But even if you've retained counsel,

17   if at some point you become unable to afford

18   counsel, you can still apply to the Court at any

19   point during the case, and the Court will evaluate

20   your financial eligibility and appoint counsel for

21   you, if you do apply.

22          For the two defendants, Defendant Stivers

23   and Defendant Morris, the Court has received and

24   reviewed a financial affidavit on behalf of each

25   one, and understands that at least at this point,

1    each defendant is requesting appointment of

2    counsel.  And so for present purposes, and until

3    change by subsequent order, the Court will appoint

4    Mr. Nash to represent Defendant Stivers and

5    Ms. Hughes to represent Defendant Morris in this

6    case under the CJA.  And the Court certainly

7    appreciates both counsel being down here on short

8    notice to permit these proceedings to go on today.

9           All right.  I'm going to begin,

10   Mr. Wohlander, with you.  I believe you already did

11   indicate that your client has received a copy of

12   the indictment; is that correct?

13          MR. WOHLANDER:  That's correct, Your

14   Honor.  And we have reviewed the charges set forth

15   herein and Mr. Maricle is named in Counts 1, 7, 9

16   and 10.  I've gone over the potential penalties in

17   each one of those counts and the charges set forth

18   therein, and we'd waive formal indictment, and at

19   this time, we'd ask the Court to enter pleas of not

20   guilty to those four counts.

21          THE COURT:  All right.  Thank you,

22   Mr. Wohlander.

23          And, let's see, Mr. Crabtree, on behalf of

24   Mr. Jones, you've received a copy of the indictment

25   and provided that to him, I'm sure?

1          MR. CRABTREE:  I have, Your Honor, and

2    made him aware of the penalties and the nature of

3    it, and likewise, we would waive formal arraignment

4    and enter a plea of not guilty to all counts.

5          THE COURT:  All right.  Thank you,

6    Mr. Crabtree.  And, Mr. Nash.

7          MR. NASH:  Your Honor, I have explained

8    each of the charges to Mr. Stivers that he's

9    charged in.  I have not actually provided him a

10   copy; I will do that, but I have explained each

11   count to him.  He understands those charges.  We

12   waive a formal arraignment and enter pleas of not

13   guilty.

14          THE COURT:  All right.  Thank you.  And,

15   Ms. Hughes.

16          MS. HUGHES:  Yes, Your Honor.  We

17   acknowledge receipt of a copy of the indictment,

18   waive formal reading of arraignment, and enter a

19   plea of not guilty with respect to the charges that

20   apply to the counts that apply to Ms. Morris, which

21   I believe are Counts 1 and 10.

22          THE COURT:  All right.  Thank you very

23   much.

24          I know all defendants do have counsel here

25   today.  I still, for the record, am going to go

1   over the nature and substance of the charges and

2   talk about the potential penalties.  But first, I

3   will remind each defendant that you are presumed

4   innocent.  And so just because I'm talking about

5   charges and talking about penalties, that doesn't

6   take away at all from that presumption of

7   innocence, but I do want to establish on the record

8   that each defendant understands the circumstance

9   under the indictment and the potential penalty,

10   should any conviction result.

11        And I'm going to go through a fairly

12   lengthy indictment in a general fashion, not

13   covering all the particular allegations, but

14   covering the nature and substance of the

15   allegations under each count.

16        Just by way of review, the defendants face

17   the following counts:  Defendant Maricle faces

18   charges under Counts 1, 7, 9 and 10.  Defendant

19   Jones faces charges under Counts 1, 2, 3, 4, 5, 6,

20   9 and 10.  Defendant Stivers, under Counts 1, 3, 7,

21   9 and 10, and Defendant Morris, under Counts 1 and

22   10, and that will necessitate going through each of

23   the counts, and so I'll do that now.

24        Just to shorten the process a bit, I will

25   point out that Counts 1 through 6 carry the same

1  potential penalty, not more than 20 years

2  imprisonment, not more than a $250,000 fine, and

3  not more than three years of supervised release, in

4  addition to any prison term.  Count 7 through 9

5  also carry the same potential penalty of not more

6  than ten years imprisonment, a $250,000 fine, and

7  up to three years of supervised release.  And then

8  the final count, Count 10, carries a potential

9  punishment of not more than five years

10  imprisonment, a $250,000 fine, and not more than

11  three years supervised release.  I believe the

12  penalty sheet says one year; that's actually a

13  potential three year supervised release term,

14  according to my reading.  Any felony count of

15  conviction would carry a mandatory special

16  assessment of $100 per count, and restitution, if

17  applicable, would be part of any judgment that may

18  be entered by the Court upon any conviction as to

19  any defendant.

20         All right.  Count 1 is under 18 U.S.C.,

21  Section 1962, which is known as the RICO statute,

22  and it charges as detailed within the body of Count

23  1.  That on or about a day in March, 2002, the

24  exact date unknown, and continuing through on or

25  about July 12, 2007, in Clay County, which is in

1  this federal district, that the named defendants
2  within Count 1, together with other persons known
3  and unknown, being persons employed by and
4  associated with the Clay County Board of Elections,
5  an enterprise which engaged in the activities of
6  which affected interstate commerce, knowingly,
7  willfully and unlawfully agreed to conspire to
8  violate 18 U.S.C., Section 1962(c), that is to
9  conduct and participate directly and indirectly in
10  the conduct of the affairs of the Board through a
11  pattern of racketeering activities.  That term is
12  defined in 18 U.S.C., Sections 1961(1) and 1961(5),
13  consisting of multiple acts indictable under 18
14  U.S.C., Sections 1341 and 186 and 46, and 18
15  U.S.C., Section 1951, and multiple acts of bribery
16  chargeable under the provisions of state law, that
17  is, KRS Section 119.205.  It is part of the
18  conspiracy that each defendant agreed that a
19  conspirator would commit at least two acts of
20  racketeering activity in the conduct of the affairs
21  of the enterprise.  That conduct, if proven, would
22  violate 18 U.S.C., Section 1962(d) and would call
23  for the potential penalty I went over a moment
24  ago.
25          Counts 2, 4, 5, and 6 all allege similar

1   violations of 18 U.S.C., Sections 1341 and 1346
2   known as honest services mail fraud.  And by way of
3   example, Count 2 alleges that on or about a date in
4   January, 2004, until on or about May 19, 2004, in
5   Clay County, again, in this district, that the
6   defendants named within Count 2 did knowingly
7   devise and intend to devise a scheme and artifice
8   to defraud and to deprive citizens of Manchester,
9   Clay County of the right of honest services
10  utilizing the manner and means as further described
11  within the body of Count 2.
12          Again, Counts 2, 4, 5 and 6 allege similar
13  offenses, and all carry the same potential penalty
14  I went over a moment ago.
15          Count 3 is under 18 U.S.C., Section 1951,
16  charging that on or about a date in September,
17  2004, in Clay County, again in this district, that
18  the named defendants did knowingly affect
19  interstate commerce by extortion.  That is, the
20  defendants attempted to obtain money not due them
21  or their office in the amount of $1,000 from the
22  person identified by initials in Count 3, a
23  candidate for city council induced by wrongful use
24  and threat of use of fear and economic harm and
25  under cover of official right allegedly, and that

1  conduct would violate 18 U.S.C., Section 1951.

2          Count 7 is under 18 U.S.C., Section 1503

3  and Section 2, which is the aiding and abetting

4  statute.  And it charges that on or about May 2,

5  2007, continuing through on or about May 17, 2007,

6  in Clay County, that the defendants named in Count

7  7 aided and abetted by each other did corruptly

8  endeavor to influence, obstruct and impede the due

9  administration of justice by communicating and

10  instructing a witness to testify falsely before a

11  federal grand jury in Lexington, Kentucky, while a

12  grand jury investigation in this district was

13  pending, in violation of the statute cited.

14          Count 8 also is under Section 1503 naming

15  only defendant not present here -- let me see.

16  There's no defendant here is named in that count.

17  I will skip Count 8.

18          Count 9 is under 18 U.S.C., Section 241,

19  alleging a conspiracy under that statute,

20  specifically that from on or about a date in June,

21  2004, to on or about November 7, 2006, at

22  Manchester, in Clay County, that the named

23  defendants did unlawfully conspire and agree with

24  each other, and others known and unknown, to injure

25  and impress qualified voters of the free exercise

1    and enjoyment of certain rights and privileges

2    secured to them by the Constitution and laws of the

3    United States; that is, the right of all qualified

4    voters under the equal protection and due process

5    clauses of the 14th Amendment to vote and have

6    their votes tabulated fairly and given full effect

7    and free from dilution by ballots illegally and

8    improperly cast by a person charged under state law

9    with the operation and safe-keeping of the poll, in

10   violation of Section 241 as further detailed within

11   the body of Count 9.

12          And then finally Count 10 is under 18

13   U.S.C. Section 371, the conspiracy statute with the

14   underlying offense being 42 U.S.C., Section 1973(i)

15   charging that from on or about a day in January,

16   2006, to on or about November 7, 2006, in

17   Manchester, Clay County, that the defendants named

18   in Count 10 conspired and agreed together and with

19   numerous other persons, known and unknown, to

20   violate laws of the United States, to wit, to pay

21   and offer to pay persons for voting in an election

22   held in part to select a candidate for federal

23   office, all in violation of 42 U.S.C., Section

24   1973(i) and 18 U.S.C., Section 371.

25          All right.  That's the nature and

substance of the indictment, and I did talk about

the penalties.  Let me just confirm from each

defendant whether you do understand the nature and

circumstances of the offenses charged that name you

and any potential penalties you might face as a

result.  Mr. Maricle?

DEFENDANT MARICLE:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Jones?

DEFENDANT JONES:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Stivers?

DEFENDANT STIVERS:  Yes, Your Honor.

THE COURT:  Thank you.  And, Ms. Morris?

DEFENDANT MORRIS:  Yes, Your Honor.

THE COURT:  All right.  Thank you.  All

right.  Each defendant having plead not guilty to

all charges, let me advise the defendants of just

some additional important rights that you have as

defendants in the federal system, including the

right to a speedy public trial by an impartial

jury.  Each of you has the right to confront and

cross-examine or ask questions of any witnesses

presented against you in open court.  Each of you

also has the right to compel witnesses to attend in

court to give testimony on your behalf.  If you

cannot afford the cost of compelling witnesses to

1    attend, the Government will bear that cost for

2    you.  None of you can be compelled to present

3    evidence against yourself.  And finally, as I

4    stated, your right to counsel extends to every

5    critical stage of the case, including an appeal, if

6    necessary.

7            Let me just confirm that each defendant

8    understands those rights as I've explained them to

9    you.  Mr. Maricle?

10           DEFENDANT MARICLE:  Yes, Your Honor.

11           THE COURT:  Thank you.  Mr. Jones?

12           DEFENDANT JONES:  Yes, Your Honor.

13           THE COURT:  Thank you.  Mr. Stivers?

14           DEFENDANT STIVERS:  Yes, Your Honor.

15           THE COURT:  Thank you.  Ms. Morris?

16           DEFENDANT MORRIS:  Yes, Your Honor.

17           THE COURT:  Thank you.  All right.  The

18   schedule for the trial of the case before Judge

19   Reeves will be as follows:  The trial date will be

20   May 19, 2009, at 9:30 a.m., with counsel appearing

21   at 9:00 a.m.  That will be here in London.  Judge

22   Reeves will have a pretrial on April 30, 2009,

23   beginning at 10:00 a.m. here in London.  I will

24   enter an order following the hearing today which

25   sets forth the schedule and addresses pretrial and

discovery matters in the case to be tried by Judge Reeves.

And the United States indicated at the arraignment of the other group of co-defendants in this case an anticipated trial length of approximately four weeks, and I'll reflect that in the order.  Obviously, that's a matter that the defendants would have significant input in.  But I'll pass that along to Judge Reeves, and obviously he'll be in charge of any scheduling in trial length issues.

All right.  Turning then to the issue of detention or release.  Let me first thank the probation office for its hard work in getting these matters prepared, and I believe that there are at least handwritten reports that have been circulated as to Defendants Jones, Stivers and Morris.

And  let me first make sure that the United States and defense counsel for those defendants have received sufficient access to those materials.  Mr. Smith?

MR. SMITH:  Yes, Your Honor.

THE COURT:  And, Mr. Crabtree?

MR. CRABTREE:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Nash?

1          MR. NASH:  Yes, Your Honor.

2          THE COURT:  And, Ms. Hughes?

3          MS. HUGHES:  Yes, sir.

4          THE COURT:  Thank you.  And then as to

5    Defendant Maricle, I received only an oral report

6    because of the timing, and I directed that the

7    probation office confer with counsel and provide

8    the information that the probation office had.  And

9    did counsel have a sufficient chance to meet with

10   probation?  Mr. Wohlander?

11         MR. WOHLANDER:  We did.

12         THE COURT:  Thank you.  And, Mr. Smith?

13         MR. SMITH:  Yes, we have, Your Honor.

14   Thank you.

15         THE COURT:  All right.  Thank you.  And,

16   Mr. Smith, if you could, indicate the position the

17   United States has as to each defendant regarding

18   detention or release.

19         MR. SMITH:  Your Honor, as to those which

20   we have a written report, particularly Defendant

21   Debra Morris, Charles Wayne Jones, and William E.

22   Stivers, the United States has reviewed the

23   recommendations from probation, and we would ask

24   that as in our previous hearing earlier this

25   afternoon, we would ask that the Court modify the

1    restriction as to contact with the potential

2    witnesses or the persons they believe to be

3    witnesses to be restricted through their attorneys

4    only.

5              THE COURT:  And other than that

6    alteration, the remaining suggested conditions are

7    acceptable to the United States as to those three

8    defendants, Morris, Jones, and Stivers?

9              MR. SMITH:  Yes, Your Honor.

10             THE COURT:  All right.  Thank you.  And,

11   Mr. Crabtree, first, do you have any general

12   objection to the proposed conditions, and then

13   second, any objection to the modification Mr. Smith

14   has requested?

15             MR. CRABTREE:  No general objections,

16   Judge.  On the recommendation of no contact with

17   co-defendants, I find sometimes that I meet with

18   counsel and co-defendants are present, and I would

19   take it that if counsel's present, that is an

20   exception.

21             THE COURT:  I would intend that if counsel

22   is involved, that that not be prohibited.

23   Mr. Smith, do you have an objection to interaction

24   that involves presence of counsel?

25             MR. SMITH:  No, Your Honor.

```
 1            THE COURT:  All right.

 2            MR. CRABTREE:  Other than that, I have no

 3    objection.

 4            THE COURT:  All right.  Thank you,

 5    Mr. Crabtree.  And, Mr. Nash?

 6            MR. NASH:  No objections, Your Honor.

 7            THE COURT:  All right.  Thank you.  And,

 8    Mrs. Hughes?

 9            MS. HUGHES:  No objections, except that I

10    will point out that my client is married to a

11    co-defendant, and so I would ask the Court to

12    except their communications from the communications

13    between co-defendants.

14            THE COURT:  All right.  Thank you,

15    Ms. Hughes, and that will be built into the

16    conditions as to Ms. Morris.

17            All right.  And then, Mr. Smith, as to

18    Defendant Maricle?

19            MR. SMITH:  Your Honor, as to Defendant

20    Maricle, the United States will move under

21    3142(f)(2)(a) and (b) for he to be detained,

22    pending the outcome of this matter.

23            THE COURT:  All right.  Mr. Wohlander,

24    obviously you're going to have a chance to respond

25    on that.
```

1          What I propose to do right now is complete

2     the process of evaluating conditions and announcing

3     them as to the three defendants that there's not a

4     dispute on, and complete the arraignment for those

5     defendants, and then circle back and complete --

6     and go through the process and complete it as to

7     Defendant Maricle.  So any objections to that,

8     Mr. Wohlander?

9          MR. WOHLANDER:  No, Your Honor.

10          THE COURT:  All right.  So what I'm going

11     to do as to the three defendants that we've just

12     been discussing, I am going to talk about release

13     conditions.  I've reviewed the proposed conditions

14     that the probation office has put together, and

15     given that the United States has not made a motion

16     for detention, I've evaluated those under the Bail

17     Reform Act and find that they are appropriate, and

18     essentially they're the same set of conditions for

19     all three of you.  What I'm going to do is go

20     through them at one time with the three of you to

21     try to save a little bit of time and explain what

22     the conditions are.

23          Now, it's real important to remember,

24     you're going to be on release, but it is a

25     conditional release, and that means there are going

1    to be restrictions on your conduct.  And it's

2    critical that as we go through these conditions

3    today, that each of you understands exactly what's

4    expected of you.

5           And, Ms. Hughes, if you could move back

6    just a little bit so I can make eye contact with

7    your client.

8           MS. HUGHES:  I'm sorry.

9           THE COURT:  Thank you.  It's critical that

10   each of you understand what's expected of you.  So

11   if as we're going through these conditions, if you

12   have any question or something doesn't make sense

13   to you, please raise your hand or poke your lawyer

14   and we'll take as much time as we need to to talk

15   about it, and you can confer privately with your

16   lawyer, if you need to.  Once you leave here today,

17   on these conditions, I am going to assume that you

18   understand them completely and I'm going to hold

19   you to them completely.  So I don't want you to

20   come back later in the case having allegedly

21   committed a violation and say, "Judge, I didn't

22   understand that condition."  Today's the day.  I'll

23   explain it in as much detail as I need to, and

24   we'll take as much time as we need to.  I want you

25   to understand it today.  If something confuses you,

1    I'm putting the burden on you to let me know that
2    as we go through these.  And, Mr. Jones, will you
3    do that?
4              DEFENDANT JONES:  Yes, sir.
5              THE COURT:  And, Mr. Stivers?
6              DEFENDANT STIVERS:  Yes, sir.
7              THE COURT:  And, Ms. Morris?
8              DEFENDANT MORRIS:  Yes.
9              THE COURT:  Okay.  The conditions will be
10   as follows:  The first couple of conditions -- and
11   you'll get all of these in writing in the form of
12   an order -- the first couple of conditions really
13   apply to any defendant released across the entire
14   nation, and include the following:  That while
15   you're on release, that you not engage in any
16   criminal conduct of any type, federal, state or
17   local.  So any violation of federal, state or local
18   law, while you're on release, in addition to
19   violating whatever law might be at issue, also
20   would violate your release conditions from the
21   Court, and we'll talk about what can happen if
22   there is a violation here in a moment.
23              Additionally, you are required to appear
24   here in court any time we're having a court event
25   in your case.  So that -- you've already heard me

1    announce the schedule.  Your counsel will help you

2    keep track of when you're supposed to be here.  If

3    we're having a hearing that involves you in the

4    case, you do have to be physically present.

5          Additional specific conditions will

6    include the following:  You will report to the

7    probation office here in London.  That will begin

8    after court today.  You'll be processed and

9    released on these conditions.  The probation office

10   will explain how the mechanics of supervision work,

11   what's expected of you, how to contact them, and

12   answer any questions you have in that regard.

13         Additionally, each of you is forbidden

14   from obtaining a passport during your release.

15   Each of you is restricted in terms of travel to the

16   Eastern District of Kentucky.  That means the

17   district that we're in now, the district of the

18   court.  It includes your home.  The probation

19   office will show you on a map what's included in

20   that area.  But you cannot travel outside the

21   district without advanced permission from the

22   court.  If you leave the district, then you've

23   violated the conditions of your release.

24         As discussed, I am going to order that

25   each of you avoid contact directly or indirectly

1    with any person who is or may become a victim or

2    potential witness in the investigation or

3    prosecution, including, but not limited to, any

4    co-defendant in this case.  As to Ms. Morris, that

5    will exclude her husband William Morris, and he has

6    the same restriction with the same exception.  But

7    other than that, the conduct -- the contact

8    restriction between co-defendants is categorical.

9         Now, as to potential witnesses or victims,

10   the restriction will be clarified to state that the

11   defendant shall have no discussions with or contact

12   with potential witnesses or victims regarding the

13   subject matter of the case, except through

14   counsel.  And that will include if there's a

15   meeting where counsel is present, as long as

16   counsel's physically present, then that would be

17   permissible.  Otherwise, any contact would be

18   forbidden.

19        All right.  Additional restrictions will

20   include the following:  Each of you is to refrain

21   from possessing a firearm, destructive device, or

22   other dangerous weapon.  Each of you is to refrain

23   from the excessive use of alcohol.  Each of you is

24   to refrain from the unlawful possession of a

25   narcotic drug or other controlled substance as

1    defined in 21 U.S.C., section 802.  If you have a

2    valid medical prescription, that's a different

3    matter.  But if you do have a valid prescription,

4    you have the additional duty of notifying the

5    probation office of that prescription and the

6    obligation to take any prescription strictly in

7    accordance with the directions of your licensed

8    medical practitioner.

9         Further, should any of you have any

10   contact with law enforcement, and that would

11   include being arrested, questioned, even pulled

12   over in a traffic stop, you would need to report

13   that promptly to the probation office.  Even if you

14   don't think it's significant, you have a duty to

15   report it to probation and let them decide how

16   important it is concerning your conditions.

17        All right.  Any question about those

18   conditions, Mr. Jones?

19        DEFENDANT JONES:  No, sir.

20        THE COURT:  All right.  Mr. Stivers?

21        DEFENDANT STIVERS:  No, sir.

22        THE COURT:  Ms. Morris?

23        DEFENDANT MORRIS:  No.

24        THE COURT:  Okay.  All right.  Now, let me

25   just briefly go over the potential penalties and

1    sanctions for any violation of release conditions.

2    I don't anticipate that you're going to violate

3    release conditions or I wouldn't be letting you

4    out, so I'm not saying this to threaten you in any

5    way, but I do want you to be aware that there are

6    significant negative consequences for any violation

7    of release conditions.  Those would begin with

8    likely an arrest warrant being issued, if probable

9    cause is shown to indicate that a violation has

10   occurred, and that can result in revocation of your

11   release, and you could be held in jail pending the

12   trial in the case.  Should you commit an offense

13   while you're on release because of what you're

14   charged with, if you should commit a felony, you

15   could face additional time of up to ten years in

16   prison, and that would be consecutive to any other

17   punishment that you might face.  There are laws

18   that apply to all of us that make it illegal to

19   obstruct justice or tamper with witnesses or

20   retaliate against witnesses, things of that

21   nature.  Those are designed to protect the

22   integrity of our justice system, and those laws

23   apply to everybody, but I want you to be aware of

24   them because you will be on release pending trial,

25   and they carry significant penalties, including

1    imprisonment of up to ten years.

2           Finally, should any defendant knowingly

3    fail to appear or surrender when you're supposed to

4    be here, you can, based on what you're charged

5    with, face punishment of up to ten years

6    imprisonment.  Again, that would be consecutive to

7    any other punishment you might face.

8           All right.  Having gone over that,

9    Mr. Jones, do you understand those potential

10   penalties?

11          DEFENDANT JONES:  Yes, sir.

12          THE COURT:  Thank you.  Mr. Stivers?

13          DEFENDANT STIVERS:  Yes, sir.

14          THE COURT:  And, Ms. Morris?

15          DEFENDANT MORRIS:  Yes.

16          THE COURT:  All right.  Ms. Morris, I did

17   want to add, although I did make an exception in

18   terms of contact that you may have with Mr. Morris,

19   I want to point out for you, just as I did for him,

20   that discussions that you might have with him about

21   your case may or may not be privileged.  There is a

22   risk that such discussions would not be privileged,

23   and I would encourage you to confer with your

24   lawyer about that topic before having any

25   discussions with him about the subject matter in

1  your case.  And I'll leave it at that with that

2  warning as you should consider that issue and talk

3  to your counsel about it.

4        All right.  I have signed those three

5  release orders, and those defendants will be

6  processed and released on the conditions I've

7  covered following the conclusion of the hearing

8  today.  And once we get to the end of this process,

9  as to these three defendants, then we'll break the

10  hearing and continue on as to the remaining

11  defendant, Mr. Maricle.

12        And, Mr. Smith, as to these defendants,

13  just as I asked you earlier, has the United States

14  fulfilled any victim notification duties under 18

15  U.S.C., Section 3771?

16        MR. SMITH:  Yes, Your Honor.

17        THE COURT:  All right.  Is there anything

18  else for the United States as to Defendants Morris,

19  Jones, or Stivers?

20        MR. SMITH:  Not at this time.  Again, Your

21  Honor, I've looked at the matter at this point for

22  purposes of planning, and I do anticipate that

23  there will be a motion that will need to be filed

24  as to disqualification of counsel as to Mr. Jones,

25  and I'll address the other one later.

1          THE COURT:  All right.  Very good.  Thank

2     you.  For counsel for Defendants Morris, Jones or

3     Stivers, is there anything further that we need to

4     take up at this time?  Mr. Crabtree?

5          MR. CRABTREE:  No, Your Honor.

6          THE COURT:  Mr. Nash?

7          MR. NASH:  Not on behalf of Mr. Stivers.

8          THE COURT:  Ms. Hughes?

9          MR. HUGHES:  No, sir.

10          THE COURT:  All right.  Thank you.

11     Mr. Wohlander?

12          MR. WOHLANDER:  Your Honor, if it please

13     the Court, there is a matter that I think other

14     counsel may want to be here for.  I was going to do

15     this after we finished the issue.

16          THE COURT:  Okay.

17          MR. WOHLANDER:  First of all, Your Honor,

18     I'd like to make an oral motion; I'll follow it up

19     with a written motion, that if there were search

20     warrant affidavits issued in this case, I'd ask

21     that those search warrant affidavits remain sealed

22     until counsel for the defense have had an

23     opportunity to view them.  If there are any

24     transcripts from any consensual monitorings, that

25     those also remain under seal, that they don't end

1    up in the record some way that will prejudice the

2    clients.  And based on the reading of the

3    indictment, I assume there must be some matters

4    that may eventually relate to wire taps that were

5    done in earlier cases, and we'll want to ensure

6    that that matter doesn't slip into the record

7    also.

8            And then one final matter, Your Honor.

9    I'd ask that the U.S. Attorney's Office be

10   cautioned not to make anymore press releases.  I

11   read an article this morning that said this is an

12   ongoing investigation.  If that's the case, then

13   it's probably ongoing with the grand jury, and if

14   that's the case, that's a Rule 16 violation, and

15   all that does is sensationalize this case and make

16   it more difficult for our clients to get a fair and

17   unbiased jury when it comes time for trial, and so

18   we'd ask the Court to rule on those matters.

19           THE COURT:  All right.  Mr. Smith, any

20   response you care to make today?

21           MR. SMITH:  Well, Your Honor, I want to

22   address Mr. Maricle's choice of counsel at some

23   point.  I think that is one in which I would like

24   to address before the Court hears Mr. Wohlander's

25   motions.

1        We had -- I assume counsel, having been

2    aware that we've unsealed the record, that he is

3    also aware of the date of which this matter has

4    been noticed, all parties when it was opened in the

5    U.S. Attorney's Office.  And without the

6    opportunity to inquire further with him, I was just

7    notified of his entry of appearance just prior to

8    the hearing.  I would like an opportunity to look

9    into this matter further because of department

10   regulations, and I'm sure Mr. Wohlander's very

11   familiar with those, as to the propriety of him

12   representing Mr. Maricle.  And making any motions

13   here today in regard to discovery, issues of press

14   releases, and otherwise, I would object until we

15   have resolution on the first matter at hand, and

16   that is, again, whether he can represent

17   Mr. Maricle in the matter.

18        THE COURT:  All right.  Well, thank you,

19   Mr. Smith.  And what I'd say is you both should

20   file such written motions as you think are

21   warranted, and the Court in due course will

22   certainly consider the merits of anything presented

23   from either side or any other party in the case.

24        And specifically on the oral motions

25   you've made to seal, Mr. Wohlander, you will need

1  to file any such motions in writing specifying your

2  basis for same.

3          MR. WOHLANDER:  Well, if it please the

4  Court, I see a dilemma here.  Mr. Smith is saying I

5  can't continue in the case --

6          THE COURT:  He's suggesting that.

7          MR. WOHLANDER:  Well, but the suggestion

8  is, is that he's apparently of some knowledge that

9  I might have some kind of conflict here, so I'm --

10  the dilemma is, is how do I even represent my

11  client here today as it relates to this matter?

12  Maybe it should be something that might require

13  other representation for the purposes of a

14  detention hearing also.

15          You know, I -- very candidly, Judge, we

16  probably could have handled this matter if we would

17  have been before the Court yesterday.  My

18  understanding is my client was arrested early

19  yesterday morning, and it's now 3:30, 4:00 on

20  Friday afternoon.  There was no reason this was a

21  sealed indictment.  There was no reason that

22  these -- that at least my client; I'm not speaking

23  for the other defendants, that my client wasn't

24  brought before the Court immediately pursuant to

25  Rule 5.  So that could have been handled yesterday,

1    and my client could have had somebody here today to

2    represent him, if there was going to be an issue as

3    it relates to a conflict.  But again, I don't know

4    how the Court wants to address that.

5          THE COURT:  Well, I don't think there's a

6    motion before me.  There's a suggestion of a coming

7    motion, and if Mr. Smith files or makes a motion,

8    then that's something the Court will have to take

9    up, as you would have to respond to it, and the

10   merits of anything presented.

11         Your motions having to do with sealing any

12   evidence of the categories that you talked about,

13   I'm just asking that you memorialize that motion

14   and provide me your specific basis for that.  All

15   right.

16         MR. NASH:  Your Honor, if I may, on behalf

17   of Mr. Stivers, I guess I need to adopt those same

18   oral motions with the same admonitions, and they

19   need to be followed up with a written motion, and

20   I'll certainly do that, but for purposes of today,

21   I want to adopt the same oral requests made by

22   Mr. Wohlander on behalf of Mr. Stivers.

23         THE COURT:  All right.  Very good.

24         MR. CRABTREE:  Likewise for Mr. Jones,

25   Judge.

```
 1            THE COURT:  All right.  And, Ms. Hughes?
 2            MS. HUGHES:  I would love to join in my
 3     co-counsels' motion.
 4            THE COURT:  All right.  Very good.  The --
 5     I don't believe, at least from the Court's
 6     perspective, the status on any of those issues will
 7     change before Tuesday at the earliest, and so any
 8     motion -- any written motion addressing anything
 9     concerning search warrant applications would need
10     to be filed by no later than Tuesday.  All right.
11            MR. SMITH:  Your Honor, the United States
12     may inquire as to an opportunity to respond as well
13     in writing to those?
14            THE COURT:  Oh, certainly.  I'm just
15     indicating the status quo would not be changed by
16     then.  A motion would need to be filed by then, and
17     then, of course, the United States would have a
18     chance to respond.
19            MR. SMITH:  Thank you.
20            THE COURT:  All right.  Okay.  Anything
21     additional, Mr. Wohlander, concerning the --
22            MR. WOHLANDER:  Not concerning the other
23     defendants, Your Honor.
24            THE COURT:  Okay.  The other defendants
25     are welcome to stay.  I've signed the orders, so
```

1   they need to be processed, so each counsel can make

2   his or her own decision about that, about staying

3   or going ahead and going, but the remainder of the

4   hearing is only going to concern Defendant

5   Maricle.  And we'll take about one minute for

6   counsel to make that decision, and then we'll forge

7   ahead.

8          All right.  Let's continue on in 09-16,

9   United States of America versus Russell Cletus

10  Maricle.  We broke off in the arraignment process.

11  I think we covered everything except further

12  consideration of the detention issue.  And the

13  United States has made a motion for detention and

14  has cited 3142(f)(2)(a) and (b) as a basis for that

15  motion, and it's only been generally stated at this

16  point.  Mr. Wohlander, your initial response.

17         MR. WOHLANDER:  Well, my initial response,

18  Your Honor, is that I'm at a total loss to

19  understand what might trigger 3142(f)(2)(a) and

20  (b).  We have three other defendants before the

21  Court that have been released on bond that were

22  also charged with 15.03 counts.  The last contact

23  that my client has alleged to have had with some

24  witness was back in 2007, sometime in May, 2007,

25  and, of course, this is not a rebuttable

1    presumption case.  This is a straight-up indictment

2    where my client has the presumption of innocence,

3    and so I believe it would be up to the United

4    States to show that there's some reason that it

5    would apply to this defendant, yet not apply to the

6    other three defendants, especially when you look at

7    the indictment and there's no recency of charges as

8    it relates to any potential or alleged

9    obstruction.  And when it comes to danger of the

10   community or when it comes to risk of flight, I

11   think the probation officer has already made a

12   recommendation to the Court that there are

13   conditions of release as it relates to my client.

14   And so to hear this motion, I stand here just at a

15   total loss to understand what grounds or what basis

16   there might be to suggest that those two sections

17   might apply, Your Honor.

18        THE COURT:  All right.  Thank you,

19   Mr. Wohlander.  And just so we're all talking about

20   the same language, 3142(f)(2) provides for a

21   detention hearing upon motion of the attorney for

22   the Government, or upon the judicial officer's own

23   motion in a case that involves A, a serious risk

24   that such a person will flee, or B, a serious risk

25   that such person will obstruct or attempt to

1    obstruct justice, or threaten, injure or intimidate
2    or attempt to threaten, injure or intimidate a
3    prospective witness or juror.  And when the Court
4    faces this issue, which does come up from time to
5    time, I approach it as a two-step inquiry.  The
6    first question is whether the United States has a
7    right to make the motion, and if so, then a
8    detention hearing is required.  That's the first
9    step, a threshold inquiry.  And the second step,
10   whether detention is warranted is a much broader
11   3142(g) analysis, which encompasses all the
12   familiar 3142(g) factors.
13          And, Mr. Smith, I'd be curious your
14   formulation of what proof standard the United
15   States has to hit to invoke that 3142(f)(2) basis
16   for a hearing.
17          MR. SMITH:  Thank you, Your Honor.  The
18   United States would point to the Court that the
19   language of the statute does specifically state
20   where there is a serious risk of either a risk of
21   flight or an obstruction, or an attempt to obstruct
22   justice, threaten, injure, or intimidate or attempt
23   to threaten, injure or intimidate a prospective
24   witness.
25          In this case, Your Honor, there are

1    particular findings by probable cause findings by

2    the grand jury set out in the indictment, which I

3    think give us sufficient basis to conclude that

4    there is a serious risk of violation of (a) and

5    (b), particularly as it relates to Mr. Maricle in

6    that he is a leader and principal actor in Count 7,

7    indicted as such, one who has been indicted and

8    found by a grand jury by a finding probable cause

9    to believe that he has been aided and abetted by

10   another in corruptly endeavoring to influence,

11   instruct and impede the due administration of

12   justice by communicating and instructing a witness

13   to testify falsely before a federal grand jury in

14   Lexington, Kentucky, while a grand jury

15   investigation was pending.

16          And it's the position of the United

17   States, Your Honor, that under 3142(f)(2)(a) and

18   (b), that a finding by a grand jury of probable

19   cause as to offenses relating to obstruction of

20   justice are sufficient to trigger a necessity for a

21   hearing under the Bail Reform Act.

22          THE COURT:  Do you think probable cause

23   alone is a standard?

24          MR. SMITH:  I would submit to the Court

25   that based upon the plain reading of the statute,

1  that's the position that the United States would

2  take in this matter, Your Honor.

3  　　　　THE COURT:  Well, I agree it says serious

4  risk, but that's the definition of the -- that's

5  the definition of the ultimate finding that has to

6  be made.  What evidentiary or standard applies to

7  that finding is my question, a serious risk by

8  probable cause, a serious risk by a preponderance

9  of the evidence, a serious risk by clear and

10  convincing evidence?  At the threshold, you're

11  saying that you believe it's a probable cause

12  standard?

13  　　　　MR. SMITH:  I do, Your Honor.  And the

14  reason, of course, is that the ultimate finding, as

15  the Court has already alluded to, would require us

16  to that higher finding, but to require the

17  Government to essentially at the request of a

18  detention hearing to put on its case to establish

19  by clear and convincing evidence, or by the other

20  lesser standard, would in effect eviscerate, I

21  think, the necessity for a later hearing, as I read

22  the procedure, in which the Bail Reform Act sets

23  forth.  We believe that a lesser standard, such as

24  probable cause, is sufficient to trigger again, at

25  a hearing in the case be held, and in this case, we

1    do have a grand jury finding.

2         THE COURT:  And the grand jury finding

3    establishes probable cause that the defendant would

4    present a serious risk of flight or a serious risk

5    of obstruction today how?

6         MR. SMITH:  It sets forth, Your Honor,

7    that this defendant -- there's probable cause to

8    believe that he has already, in fact, obstructed

9    justice by those acts set forth in the indictment.

10   And it is the position of the Government that a

11   person who has committed such an act will continue

12   to pose a serious risk to other witnesses that the

13   United States has.

14        THE COURT:  All right.  Mr. Wohlander?

15        MR. WOHLANDER:  With all deference to

16   Mr. Smith, Your Honor, I think the statute

17   specifically states that has to be shown by clear

18   and convincing evidence.  If the Court would just

19   look at the bottom of 3142, subsection 2,

20   subsection B, the very bottom, it says that, "No

21   condition or a combination of conditions will

22   reasonably assure the safety of any other person in

23   the community shall be supported by clear and

24   convincing evidence."  The return of an indictment,

25   as the Court knows, is nothing more than a finding

1    of probable cause by a grand jury.

2          THE COURT:  Well, but, Mr. Wohlander,

3    you're collapsing things.  I've already told you

4    it's a two-step inquiry.  The first, does the

5    United States have a right to a hearing?  And then

6    if there's a hearing, then is detention warranted?

7    And there's no question that once you get to the

8    detention hearing, if the Court is to detain based

9    on danger, that it has to be based on facts

10   supported by clear and convincing evidence; I agree

11   with that.  My question is the first step.  And so

12   what's your response on the threshold; how do we

13   get to a hearing?

14         MR. WOHLANDER:  I don't think under the

15   threshold, under the statute that this is the type

16   of statute that was contemplated by Congress, or

17   this is the type of indictment contemplated by

18   Congress to trigger that automatically.  If that

19   was the case, every time somebody came in that had

20   a 15.03 charge, they'd automatically have to go

21   through a detention hearing.  The Government could

22   detain them for three days and wait for the

23   hearing.  At the end of the day, the Government

24   still has to prove by clear and convincing

25   evidence, not just what's in there -- what the

1    Court is asking is, is Mr. Smith correct in saying
2    the return of the indictment triggers it?  If that
3    was what it was, then he would have put that in
4    3142(e), they would have set forth in here, "This
5    is the time of crime that automatically triggers a
6    detention hearing."  They're saying a lot more than
7    that in 3142(f).  They're saying that it has to be
8    a serious danger to the community, a serious risk
9    of flight.  And then the standard after that, as
10   the Court notes, is that it has to be shown by
11   clear and convincing evidence.  There is no clear
12   and convincing evidence here just based on the
13   indictment, absolutely none.  It's a probable cause
14   finding.  There's been a return of an indictment,
15   and that standing alone isn't enough to trigger
16   this portion of the statute.  Otherwise, Congress
17   would have put it in the other portion that said
18   these require a rebuttable presumption.  These
19   require being rebutted.
20          THE COURT:  All right.  Well, Mr. Smith,
21   I've confronted this issue on a couple of occasions
22   in the past, and the guidance out there is not --
23   it's not terribly plentiful, but I do believe the
24   motion of a two-step inquiry is certainly
25   established, and I'd cite to you as one example,

1    U.S. vs. Friedman, 837 F.2d. 48, Second Circuit

2    from 1988, and that talks about the two steps in

3    the process, and talks about the threshold showing

4    that is required.  And I believe that to get to the

5    hearing, the United States does have to make an

6    evidentiary showing sufficient to establish that

7    there is a current serious risk that the defendant

8    will flee or will obstruct or attempt to obstruct

9    justice, otherwise, within the context of that

10   (2)(b).

11          So I will call upon you today -- you've

12   talked about the indictment, and I would ask you if

13   you have any evidence beyond the indictment to

14   present today as a basis for your hearing.

15          MR. SMITH:  Your Honor, the United States

16   has, as the Court announced, been verbally advised

17   of the information reported by the defendant to

18   probation in their investigation, and within that,

19   we have related a sizable number of assets of

20   hundreds of thousands of dollars that the defendant

21   has reported, in addition to an ongoing medical

22   condition and a life event that has occurred within

23   the last seven weeks, which in my, again, notes

24   from that verbal report, included that he

25   acknowledged to the interviewer that he was

1    struggling with the will to live.  And in this

2    circumstance in which the defendant is looking at

3    potentially 20 years imprisonment, at his stage in

4    life with again, those charges that are serious

5    charges, which include the obstruction of the due

6    administration of justice.

7         I would further state to the Court that

8    the inquiry, I believe at this particular stage, is

9    one in which the Court has to make on its own, and

10   I know that before the Court are in fact a sealed

11   affidavit of an agent in the case which sets forth

12   that within this investigation, there have been

13   reports that Mr. Maricle has sought --

14        MR. WOHLANDER:  I'm going to object, Your

15   Honor.

16        THE COURT:  Mr. Wohlander, I promise you,

17   you're going to get your chance to speak.

18   Mr. Smith.

19        MR. SMITH:  -- has sought to identify the

20   residence and the vehicles of which the

21   investigators have been seen in and operate in

22   during this investigation.

23        THE COURT:  But it's not something

24   Mr. Wohlander has had access to?

25        MR. SMITH:  It is under seal, and he has

1    not had.

2          THE COURT:  Well, I can't see how I can

3    make a decision based on something that the

4    defendant has not had a chance to review and would

5    not have a chance to respond to.

6          MR. SMITH:  Well, if the Court would

7    entertain my argument a little further, under the

8    Bail Reform Act, I would suggest to the Court that

9    in this early stage -- this is stage one.  This is

10   not the stage in which the Court has to make an

11   ultimate finding, I would argue and urge the Court

12   that matters which are before the Court, even

13   matters which are sealed and have not been again,

14   opened up to cross-examination, do not appear to be

15   required under the bare terms of the Bail Reform

16   Act.

17         If the Court again, was at this point to

18   find otherwise, I think that it would again, open

19   us up to, in my estimation, a detention hearing

20   before a detention hearing, and that is, that would

21   provide the defendant again, witnesses to

22   cross-examine, and I fail to see how the Bail

23   Reform Act requires that.  Of course, I certainly

24   respect the Court's ruling, if that's the Court's

25   ruling.

1          THE COURT:  Well, I mean, as is always my

2     goal, Mr. Smith, I'm trying to get to the right

3     decision, not only substantively, but procedurally,

4     and so I think we can all read the Bail Reform Act

5     and come to the conclusion that there are six

6     circumstances under which a detention hearing is

7     warranted, four of those under (f)(1) are not in

8     issue today, and those circumstances are matters of

9     record.  They have to do with generally the

10    elements of the offense presented or the

11    defendant's subjective criminal record under

12    (f)(2), as we've talked about.  It does involve an

13    assessment, an assessment of whether there is a

14    serious risk that has been demonstrated either as

15    to flight or as to obstruction or likely

16    obstruction.

17          Mr. Wohlander, respond, if you would, to

18    Mr. Smith's proffer.

19          MR. WOHLANDER:  Well, the only response I

20    could have, Your Honor, is, is this certainly can't

21    be secret justice.  The Act puts in a sentence that

22    we can't ignore that says that the defendant should

23    have an opportunity to cross-examine any testimony

24    the Court's going to consider in that regard.  And

25    again, Mr. Smith wants the Court to consider

1   matters that might be under seal that the Court has

2   knowledge of and take those matters into

3   consideration.  I know the Court has already said

4   that they won't, but, Judge, there is nothing

5   here.  He has offered nothing else to the Court,

6   other than the fact that there is an indictment,

7   and I don't think in and of itself that's

8   sufficient to detain, even for a detention hearing,

9   to hold my client for a couple more days.  The fact

10  of the matter is, is that he may not have the will

11  to live.  He has not reported to the Court any

12  suicidal ideations.  He just said that things have

13  been tough for the last seven weeks, since his son

14  died of a heart attack.  That would cause all of us

15  some difficulty on the will to live.  And the fact

16  of the matter is, Judge, that if, if the Court goes

17  along with the conditions recommended by the

18  probation officer, he'll be able to address that,

19  and we'll be able to address that issue more by

20  seeking professional help.

21          But again, Your Honor, I haven't heard

22  anything that Mr. Smith has offered beyond here's

23  an indictment, and that's sufficient for the Court

24  to hold him, and that's even over the

25  recommendation of the pretrial services officer,

1  who's had an opportunity to review it.  There are

2  conditions, Your Honor.  If at the point in time

3  Mr. Smith believes he has other evidence, he can

4  certainly appeal that, file a motion for the Court

5  to reconsider the motion of detention, but that

6  shouldn't be something that's done in advance of

7  him presenting some additional proof here today.

8          I believe my client's entitled, under the

9  Bail Reform Act, he's entitled to be released here

10  today pursuant to conditions, the same as all of

11  the other seven defendants have been released.  He

12  has a right to be able to be released, even if

13  those conditions are, is that he has to be on

14  electronic monitoring at home with his family.  His

15  wife and his family are here today.  They will do

16  whatever is necessary for the Court, including

17  putting up any of the property.  And whatever

18  property he has, Your Honor, he doesn't have any

19  great wealth that he can go put in his back pocket

20  and run.  You can look at the report and ask the

21  probation officer to show the Court.  Everything

22  that he's got is tied up.  It's either real estate

23  that's mortgaged to the hilt, or he might have two

24  or three thousand dollars in one account, or four

25  or five thousand dollars in a CD, and so forth.

1 But, Judge, at the end of the day, what the statute

2 says is that if there are conditions, the Court

3 should consider the conditions.  And again, I have

4 heard nothing from Mr. Smith here today that

5 overcome the presumption.  I think that this man

6 should be released and sent home to his family

7 today.

8    THE COURT:  Mr. Wohlander, if the grand

9 jury has found probable cause to believe that

10 Mr. Maricle did corruptly endeavor to influence,

11 obstruct and impede the due administration of

12 justice by communicating to a federal grand jury

13 witness, that the witness should testify falsely to

14 the grand jury, does that conceptually raise the

15 risk that Mr. Maricle would obstruct or attempt to

16 obstruct justice, if released, facing charges

17 against the defendant himself?

18    MR. WOHLANDER:  No, Your Honor.

19    THE COURT:  It doesn't raise a risk at

20 all?

21    MR. WOHLANDER:  I don't think it even

22 comes close.  Because again, we go back to what is

23 an indictment?  A grand jury indictment is a

24 finding of probable cause.  It's no different than

25 the Court having a complaint put before it, and

1    then the Court making a finding of probable cause.

2    There's a reasonable belief that a crime has been

3    committed.  That's what the grand jury has said.

4    There's a reasonable belief that a crime has been

5    committed.  That's far short of preponderance of

6    the evidence, and very -- and extremely far short

7    of clear and convincing, and way short of beyond a

8    reasonable doubt.

9           And I -- you know, again, Your Honor,

10   we're standing here looking at something from back

11   in 2007.  If Mr. Smith seriously had something that

12   raised that issue for this defendant, where is it

13   in this indictment?

14          Now, there might be some troubling aspects

15   to it if on March 12 or March 11, the day before

16   this grand jury returned its true bill, that

17   there's another allegation, or there's been a

18   complaint applied for by the FBI because they have

19   some recent information that he's done something to

20   obstruct justice, but that's not before the Court.

21   There is nothing here before the Court.  The last

22   incident was in May, 2007, and I don't believe

23   that, standing alone, is enough and sufficient to

24   be able to raise that issue of serious risk of

25   flight or serious danger to the community.

```
 1              THE COURT:  Mr. Parman, I'm curious if you
 2      agree that there's no requirement that evidence be
 3      presented to substantiate the existence of a
 4      serious risk giving the United States a right to a
 5      detention hearing.
 6              MR. PARMAN:  Your Honor, I think the
 7      United States has three bases that will establish a
 8      serious risk.
 9              First of all, as Mr. Smith has stated, we
10      have a grand jury indictment.  The grand jury,
11      which determined that there was sufficient evidence
12      to charge this man with obstructing justice.  By
13      its very nature, a serious risk has to be less than
14      a preponderance of the evidence.  Because a
15      preponderance of the evidence is a standard that
16      has to be found for flight risk at the detention
17      hearing itself, not at this preliminary hearing,
18      which we're here at today.  So our standard has to
19      be something less than preponderance, from the word
20      go.  I believe the probable cause standard is
21      probably the correct standard, which by its very
22      nature, has occurred by the grand jury returning an
23      indictment.
24              Second of all, Your Honor, Mr. Smith has
25      proffered information that this defendant has
```

1    engaged in activity that certainly shows an attempt

2    to intimidate a potential government witness, that

3    being the FBI agents that investigated this case.

4    In any Bail Reform Act concept, we can proffer

5    information to the Court for the Court's

6    consideration.

7         THE COURT:  Exclusive of the defendant's

8    knowledge?

9         MR. PARMAN:  Well, it's been provided to

10   the defendant here today, Your Honor.  Mr. Smith

11   proffered it.  It doesn't have to be through sworn

12   testimony.  A proffer's always, even in a detention

13   hearing itself, able to be brought forward as

14   evidence for the Court to consider.  In effect,

15   Your Honor, a proffer could be the sole evidence

16   used to detain an individual.  So certainly, it

17   could be used in a preliminary context to actually

18   get to the hearing.  The United States could come

19   into a detention hearing and proffer all of its

20   evidence, and that would be appropriate under the

21   Bail Reform Act and could lead to the detention of

22   an individual defendant.  Therefore, certainly in a

23   preliminary context, we can proffer at least part

24   of the evidence that we're using to even get to a

25   detention hearing itself.

1          And finally, Your Honor, we have the

2     information that Mr. Smith provided regarding the

3     potential for flight under subsection (2)(a), and

4     that's based on the instability of this defendant

5     through the pretrial services officer's oral

6     report, combined with a substantial amount of

7     assets, and combined with a great potential for

8     imprisonment.  So that's the three bases, each of

9     which, I think, go to raise the serious risk, at

10    least to the point to get us to a hearing.

11          THE COURT:  All right.  Mr. Smith, I'd

12    appreciate you giving me as specific a proffer as

13    you can concerning the information that you alluded

14    to a few moments ago with respect to the defendant

15    and your belief that he's engaged in recent conduct

16    that would qualify heightening his risk.

17          MR. SMITH:  Your Honor, the United States

18    would proffer to the Court that Mr. Maricle himself

19    communicated to those cooperating in this

20    investigation, that he was seeking to find out the

21    place in which the investigative agent lived, and

22    also to identify the vehicle in which he was

23    driving.

24          It is further a proffer of the United

25    States that corroboration of that statement made by

1    the witness would come in the form of a recording

2    which would be authenticated and identify

3    Mr. Maricle himself, which he would identify his

4    interest in learning again, the present location of

5    the agent.

6           It is again, our position, Your Honor,

7    that based on that proffer, that there are no good

8    reasons why Mr. Maricle would want to know where an

9    agent lives, unless he was up to no good, and that

10   would be intimidating a potential witness for the

11   Government.

12          THE COURT:  And how recent was that

13   exchange that you proffer?

14          MR. SMITH:  I do not have the date, but I

15   would state to the Court that it would have

16   occurred sometime within the time period of which

17   the grand jury has indicted him for obstructing

18   justice, and that would have been in May or June,

19   2007.

20          THE COURT:  All right.  Thank you.

21   Anything else you want to point out, Mr. Smith?

22          MR. SMITH:  Well, Your Honor, I just

23   again, I think the clear language of 3142 within

24   the first paragraph there of subsection (f)(2)(b),

25   which were in a part of there, it says, "The rules

1    concerning admissibility of evidence in criminal

2    trials do not apply to the presentation and

3    consideration for information at the ultimate

4    hearing."  And I believe that if that's a correct

5    reading of the statute's language, then I would

6    likewise urge the Court to consider this proffer

7    for this hearing.

8          THE COURT:  All right.  Mr. Wohlander, and

9    let me just point out a couple of things that

10   are -- and I deal with the Bail Reform Act all the

11   time, and there is, it seems to me, there's tension

12   within the Act.  On the one hand, the defendant has

13   sort of some trial type rights, the right to

14   cross-examine.  On the other hand, the statute

15   undoubtedly says, as Mr. Parman pointed out, that a

16   proffer from counsel is an appropriate element of

17   proof at a detention hearing, and those arguably

18   are not perfectly consistent.  The Rules of

19   Evidence don't apply; no question they don't apply

20   at the final hearing, and so why would they apply

21   at this preliminary stage?  And I do think that

22   there is -- there would be tension in the Court

23   holding the Government to its ultimate standard at

24   the threshold inquiry of whether a detention

25   hearing is warranted.

1          Now, at the same time, the Act says what

2     it says and requires, I think, that a serious risk

3     of one of these elements exist.  So that's what I'm

4     wrestling with.  And so you can respond to the

5     proffer and those issues.

6          MR. WOHLANDER:  Well, I stand here just

7     amazed that Mr. Smith would stand here and say that

8     that conduct that he has, allegedly on a tape, a

9     recording of some nature, was not presented to the

10    grand jury.  If it happened in May, 2007, as he

11    indicated to the Court, then where is it?  If that

12    was truly a criminal act, that should have been

13    presented to the grand jury, and the Court could

14    have considered it.  And again, it was in May,

15    2007, when this alleged activity took place, and

16    he's got a recording, which I would ask that we be

17    provided, but again, that was May, 2007.  Where is

18    it?  The grand jury apparently didn't make a

19    finding that there was probable cause on it because

20    it isn't in the indictment.  It changes nothing as

21    we're here today, absolutely nothing.  You're still

22    talking about an act back in May, 2007, the same as

23    the act that's put forth in here.  And I still

24    think it discounts the very fact of why did

25    Congress put in the language clear and convincing,

1    and then have everybody argue here today, no, it's

2    only a probable cause finding?  There's a reason

3    Congress put that language in there, Judge.

4         THE COURT:  But Congress wouldn't have

5    intended that the ultimate clear and convincing

6    standard have to be met in order for a hearing to

7    occur, at which the Court would reapply the

8    identical standard.  Does that make sense?

9         MR. WOHLANDER:  It does make sense, but

10   there's a Constitutional right to bail, Your

11   Honor.  And what I'm saying here as we stand here

12   today, if the Court wants to consider this evidence

13   that he has, let my client out on conditions today,

14   set a detention hearing for next week, and then

15   consider all of the evidence in a hearing that I

16   can cross-examine and at least have an opportunity

17   to review before we have the hearing, instead of

18   sitting here today saying, "Let's hold him.  Let's

19   give the Government more time."

20        THE COURT:  I'm not proposing giving the

21   Government more time; I'm going to make a finding

22   today whether a hearing's warranted.  I'm trying to

23   understand why it would make sense for me to hold

24   the Government to a clear and convincing proof

25   standard on the threshold question, if that's the

1   standard they're going to ultimately face.  I mean,
2   wouldn't that -- that would be curtains for your
3   client, wouldn't it?  If I found that a hearing was
4   warranted under clear and convincing evidence, how
5   I could ever release your client?
6           MR. WOHLANDER:  My argument still is, Your
7   Honor, though, that this is not one of those set
8   forth in 3142(f)(1).
9           THE COURT:  Oh, you're right about that.
10          MR. WOHLANDER:  I mean, there's no
11  question about it.  So the only other thing that's
12  there is, is he a serious risk of flight and/or a
13  serious danger to the community?  And again, if you
14  go to the indictment, that act took place a year
15  and a half ago.  If it was so serious, why wasn't
16  my client arrested a year and a half ago?  Or if
17  this other incident actually took place, why wasn't
18  it set forth in the indictment?  I mean, that's the
19  tension.
20          Although, I mean, I know the Bail Reform
21  Act, Your Honor, I know exactly where the Court's
22  struggling; I struggle every day I look at this
23  Bail Reform Act.  It's a poorly written statute, I
24  think.  I think it needs some clarification in some
25  of the areas.  And I think the Courts have

1    struggled with it.  There's not much out there on

2    it.  There's not much repot -- there aren't very

3    many reported decisions on the Bail Reform Act

4    because it very candidly doesn't get appealed very

5    often, other than in the very rare instance.  So we

6    don't have much guidance from the Appellate Courts

7    on it.

8            But again, Your Honor, I would ask the

9    Court to hold the Government to at least a

10   minimally higher standard, which they haven't even

11   met a standard of preponderance of the evidence, to

12   get this to trigger this detention hearing aspect

13   of it.  I'd ask that my client be released on the

14   conditions recommended by the probation officer,

15   Your Honor.

16           THE COURT:  All right.  I'm going to take

17   about ten minutes and think about it.  I'm going to

18   come back and announce whether I think a detention

19   hearing is warranted by the Government's showing.

20   If so, and in the interim, I want the parties to be

21   thinking about issues like if I find that there's

22   not a basis for a hearing, does the United States

23   request that the defendant be held in custody

24   pending an appeal of that decision?

25           On the other hand, if I decide there is a

1   basis for a hearing, when should a hearing occur?

2   Are the parties ready today, or is there a motion

3   to continue that?  And so use the interim ten

4   minutes wisely, and I'll try to do the same, and

5   we'll be in recess until about 5:00 p.m.  Thank

6   you.

7            [RECESS - 4:52 p.m. - 5:07 p.m.]

8            THE COURT:  Thank you.  Continuing in

9   09-16, the United States versus Maricle.

10            I appreciate the presentations by both

11   counsel on a fairly esoteric Bail Reform Act issue

12   that is also a bit of a rarity.

13            As I point out, it really is, I believe, a

14   two-step process, and the U.S. has proceeded under

15   subsection (f)(2)(a) and (b) of 3142.  The

16   indictment, as I went over it, does include a

17   detailed RICO allegation of the obstruction of

18   justice count, and then counts alleging conspiracy

19   to interfere with the exercise of federal rights

20   and conspiracy to vote buy.  It's only an

21   indictment, which only means probable cause.  But

22   that's not certainly a meaningless document; it

23   does carry the weight that probable cause

24   represents as found by the grand jury.

25            The question today is, and the only

1   question today is, has the United States adequately

2   shown that the case involves a serious risk under

3   one of those subsections?  And I've thought

4   carefully about it.  The U.S. pointed out probable

5   cause under the indictment, and those are it's not

6   just an obstruction count, of course, as I went

7   over.  There's probable cause to believe that there

8   was serious adulteration of our legal system and

9   really a fundamental civic institution of voting.

10  The conduct alleged is somewhat dated, but the

11  defendant only now faces the specter of federal

12  charges.

13          The proffer is concerning as it relates to

14  risk, some evidence by proffer of gathering

15  information about law enforcement, which could be

16  read perhaps different ways, but it is concerning

17  in this context.  And then there's the proffer from

18  the bond interview that the defendant has some

19  depression, maybe has some incentive -- not maybe,

20  he does have some incentive to flee under these

21  charges, and has access to some assets.

22          Now, again, a defendant being depressed

23  after what has happened this year is not in and of

24  itself anything unusual, but he does now face

25  additional stressors, including the existence of

1    this indictment.

2         I think it's not an easy call on the

3    preliminary showing, but I do believe that a

4    serious risk is to be judged by a lower standard

5    than the ultimate detention hearing standard.  I

6    think that has to be the case under the statute,

7    and the Court is evaluating that, without respect

8    to conditions.  The ultimate detention hearing

9    involves the consideration of conditions.  Here,

10   the question is, does this case involving a serious

11   risk?  And as I've evaluated everything that has

12   been presented to me, I find that it does by a

13   preponderance of the evidence, noting that the act

14   does envision proof by way of proffer as the basis

15   for an ultimate decision, and so certainly would be

16   the basis for a preliminary decision.

17        The ultimate finding at a detention

18   hearing would call for a much different level and

19   type of analysis, including, as we've discussed,

20   the clear and convincing evidence standard that

21   would apply to any danger-based detention, and the

22   parties, I know, are aware of that.

23        Now, I am going to schedule then a

24   detention hearing.  I do want to point out I'm not

25   basing my decision in any way on any information

1    that has not been a part of this hearing, and so I

2    just want to state that for the record, and that's

3    the case today, and that would certainly be the

4    case at any detention hearing.  Any basis for

5    detention would have to be part of the hearing

6    record itself, and something the defendant would

7    have access to hear and contest in open court

8    within the confines of the Bail Reform Act.

9                So, Mr. Wohlander, I want to give you some

10   options.  I want to talk about the scheduling of

11   the hearing.  I suppose one option you might want

12   to pursue would be to appeal my preliminary finding

13   and --

14                MR. WOHLANDER:  No, Your Honor --

15                THE COURT:  Okay.

16                MR. WOHLANDER:  -- we don't have any

17   intention to do that.  We just want the most -- the

18   most convenient date available.  We'd ask for

19   Monday.  My client's already been in custody since

20   yesterday.  If he had been brought before the Court

21   yesterday pursuant to Rule 5 in a timely fashion,

22   we believe that we could have had this hearing

23   today and not necessitated him sitting in the

24   Laurel County Jail for the next couple of days.  So

25   we'd ask if you're available on Monday, Judge, we'd

1    ask that it be in the early afternoon, if at all

2    possible, to give me a chance to meet more with

3    family and my client on Monday morning.

4              THE COURT:  All right.  Mr. Smith, can the

5    United States be prepared for that hearing on

6    Monday?

7              MR. SMITH:  Your Honor, I do not, at this

8    point, believe that we can.  I would ask for a

9    continuance through Tuesday or Wednesday.  I have

10   consulted the calendar of Ken Taylor, who's also

11   part of this case and asked to be a part of this

12   hearing.  I understand the Court may choose to set

13   it otherwise, but he's unavailable Monday,

14   according to his calendar.

15             We also again, are very concerned about

16   our ability to bring forth the issue of counsel's

17   ability to engage in a detention hearing in the

18   prospect of witnesses being called based upon

19   again, what we perceive to be a situation in which

20   this matter was open during and while Mr. Wohlander

21   was a part of the office.  So I would like an

22   opportunity to brief that to the Court and just

23   again, for the record, because I do believe that

24   that is a critical stage of the case and one which

25   could necessarily be implicated in a conflict

1    issue.

2          THE COURT:  Well, certainly, Mr. Smith, I

3    want you to raise issues on behalf of the United

4    States as you deem appropriate.

5          Mr. Wohlander, you hear what he's saying.

6    He's saying the case was opened at a time -- I

7    mean, I'm not making the argument for him.  I

8    presume it's going to be something like, the case

9    was open at a time when Mr. Wohlander was

10   affiliated with the Government, and that's

11   potentially a basis for disqualification.  I'm not

12   asking you to respond to that, but you see the

13   contours of what he's saying.  I know you're

14   sensitive certainly to your ethical

15   responsibilities, of course.  And you tell me.  Do

16   you feel like we can go forward?  Do you need --

17   well, you tell me how you feel about the posture of

18   going on with a detention hearing with that issue

19   looming out there.

20         MR. WOHLANDER:  Well, I guess there's two

21   points, and I don't think I can address either of

22   them at this short -- but first of all, I really

23   would like to understand why Mr. Smith believes

24   that my just being a part of the office would have

25   some -- would implicate my inability to be part of

1    this, if I wasn't part of any of the investigations
2    and had no knowledge of it.  I guess that's the
3    first issue.  And I'd certainly have to look and
4    re-look at the Department of Justice regulations.
5    That's the first thing.
6            The second thing is, is all that this does
7    is cause further delay to my client if we can't go
8    forward on this matter.
9            I would ask the Court to -- and, of
10   course, that's a dilemma, but I'll talk to my
11   client more, but I would ask the Court to set this
12   on Monday in the afternoon.  I'll meet with my
13   client -- before we leave here today, I'll meet
14   with his family, and I'll find, if nothing else,
15   I'll find some other counsel that'll be here for
16   Monday.
17           The fact that Mr. Taylor can't be here is
18   too bad, so sad, because my client shouldn't be
19   penalized because Mr. Taylor can't be here.
20   Mr. Smith should be able to handle this hearing;
21   he's been with that office long enough.  So we'd
22   ask the Court to set it.  I'll try to find other
23   counsel.  And I'd ask Mr. Smith if he has a true
24   motion to disqualify me, I'd ask him to go ahead
25   and get it filed immediately, and I'd ask the Court

1    to order him to file that by Monday morning so that

2    can be addressed immediately before my client's

3    rights are further impeded.  This does nothing more

4    than prejudice my client.  We've got a May 19 trial

5    date.  He's entitled to have counsel of his

6    choice.  His family has called me.  We were talking

7    about getting retained, and for him to raise this

8    issue this morning, or this afternoon, leaves me in

9    a position where my client's rights can't be

10   protected.  So I'd ask that he file any motion and

11   serve it upon me by Monday morning any reasons he

12   thinks I should be qualified, and I will tell the

13   Court that I will get with the family and find

14   counsel for him for Monday so we can have this

15   hearing on Monday, Your Honor.

16              THE COURT:  All right.  Well, I mean, I

17   think Mr. Smith's raising it -- he's raising it

18   timely; he couldn't raise it before you made an

19   appearance, Mr. Wohlander.  I do think -- it sounds

20   like, Mr. Smith, you want to raise the issue and

21   formally right away.  I do think it's something

22   that should be considered at the outset, and so I

23   would direct that that motion be filed by Monday

24   morning.

25              I am going to set the hearing for

1    1:00 p.m. on the 23rd, which is Monday, and,

2    Mr. Smith, I understand Mr. Taylor can't be here,

3    but having watched you practice over the last

4    several years, I'm certainly convinced that you can

5    handle the detention hearing issues without

6    Mr. Taylor's presence.

7          I would also, just out of protection for

8    the defendant's rights, I would encourage there to

9    be some conversation between the prosecutor and

10   Mr. Wohlander concerning the basis for

11   disqualification, if there is one, so that

12   Mr. Wohlander can make an informed decision as he

13   tries to advise his client and the client's family,

14   even in advance of Monday.  And so I think that a

15   discussion of what those bases might be would

16   potentially be helpful in short-circuiting this

17   issue.  And certainly, I don't want to introduce

18   any delay that would prejudice the defendant with

19   respect either to Monday's proceeding or his

20   defense in the case.

21          All right.  So Monday at 1:00 p.m.  Just

22   mechanics on the detention hearing.  I know counsel

23   is all familiar with the Bail Reform Act.  I'll

24   just point out again, the Rules of Evidence don't

25   apply.  The parties can proceed in whole or in part

1  by proffer, certainly can put on evidence and use

2  documents.  The defendant will have the opportunity

3  to cross-examine any witnesses presented, as would

4  the United States, for any defense witnesses

5  presented.  The question ultimately becomes in a

6  case that's not a presumption case, and this is not

7  a presumption case, whether there are any

8  conditions the Court could impose that will

9  reasonably assure that the defendant appear and not

10 pose a danger to the community or any other

11 person.  Counsel should certainly consider how the

12 vehicle for getting into a detention hearing, the

13 (f)(2)(a) and (b) subsections might impact the

14 danger analysis; that's something I would be

15 looking at.  And so we'll go forward with the

16 hearing where the United States would have both the

17 burden of production and persuasion.  Any

18 danger-based finding would have to be based on

19 facts established by clear and convincing

20 evidence.  A preponderance standard would have to

21 support any flight-based detention facts.

22         And by statute, the defendant will have to

23 remain detained pending the Court's ruling from

24 that detention hearing on Monday.

25         All right.  Mr. Smith, having covered

1  those matters, is there anything additional for the

2  United States today concerning this defendant?

3  MR. SMITH:  Judge, given the time of this

4  hearing, what time on Monday morning would you like

5  to set as a deadline for the United States?

6  THE COURT:  Well, if you have it by 11:00,

7  Mr. Wohlander?

8  MR. WOHLANDER:  That'd be fine, Your

9  Honor.  I anticipate that whoever I get to come

10  down here, I'll travel down with that individual

11  and I'll have an opportunity to -- now, 10:30 would

12  be better.  That will give me enough time to get

13  down here.

14  THE COURT:  All right.  Let's say 10:30,

15  Mr. Smith?

16  MR. SMITH:  Is that okay with you, 10:30?

17  Yeah, that will be fine, Your Honor.

18  THE COURT:  All right.  Anything

19  additional, Mr. Smith?

20  MR. SMITH:  Your Honor, just so I'm clear,

21  that Mr. Wohlander and I are on the same page here,

22  it's my understanding that he's referring to

23  bringing another attorney here so we don't delay it

24  again.  Is that a clear understanding, just so I'm

25  not confused?

1           MR. WOHLANDER:  If I can find somebody
2    this weekend that doesn't have an additional
3    conflict, I think I have someone in mind, and I
4    think that person will be available for the Court.
5    I certainly haven't contacted him.  I haven't even
6    talked to my client thoroughly about what my
7    recommendation would be, but we anticipate having
8    somebody here at 1:00, if they don't have another
9    conflict, Your Honor, so we can go forward with
10   that hearing.
11          THE COURT:  All right.  So either way, you
12   file a motion, you'll be able to evaluate,
13   Mr. Wohlander, that you're going to have someone
14   here, prepared to go forward with the merits of the
15   detention hearing at 1:00 p.m.?
16          MR. WOHLANDER:  I think that, Judge, I
17   think I have to do that for my client's -- to
18   protect my client's rights.  Whether or not I
19   decide that there's some question, I'll walk away
20   before I'll leave my client to not have that
21   hearing on Monday.
22          THE COURT:  All right.  Anything
23   additional, Mr. Wohlander?
24          MR. WOHLANDER:  There is one very
25   important and additional matter, Your Honor.

1          When they arrested my client, they took a

2     prescription that he had just written for him on

3     Wednesday of this week for a medication that he

4     should be on at this point in time that goes to an

5     issue of mental health, and we'd ask if, whoever

6     sees that prescription, could make it available to

7     the family so they could have it filled, and then

8     drop it off at the Laurel County Jail.

9          One of the things that they've argued is,

10    is that he ought to be detained because he might

11    have an issue with mental health.  Well, we're not

12    doing him any good if we don't get him the

13    medication.

14         MR. SMITH:  Your Honor, there's no

15    objection to that, of course.  We've got the agent

16    here in the courtroom, and if Mr. Maricle will name

17    a family member to meet him downstairs, we'll make

18    sure they're given that prescription.

19         MR. WOHLANDER:  His wife Judy will be

20    available to get the prescription.  Thank you.

21         THE COURT:  All right.  Thank you,

22    Counsel.  Anything additional, Mr. Wohlander?

23         MR. WOHLANDER:  Not on behalf of --

24    nothing further, Your Honor.

25         THE COURT:  All right.  Thank you to all

1  counsel and to Mr. Maricle.  That will conclude

2  matters in this case for today, and Court will

3  stand adjourned.

4         [END OF PROCEEDINGS - 5:22 p.m.]

5               * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          The undersigned Court Reporter hereby

2     certifies that:  (1) The foregoing 74 pages

3     represent an accurate and complete transcription of

4     the record of the proceedings before the United

5     States District Court for the Eastern District of

6     Kentucky at London before U.S. Magistrate Judge

7     Robert E. Wier, presiding, in the matter of United

8     States of America vs. Russell Cletus Maricle;

9     Charles Wayne Jones; William E. Stivers; and Debra

10    L. Morris, and (2), these pages constitute an

11    original of the transcript of the proceeding.

12

13              */s/ Sandy C. Wilder*

14              SANDY C. WILDER, RMR, CRR

15              COURT REPORTER

16

17

18    ***TRANSCRIPT HAS BEEN FILED ELECTRONICALLY***

19

20

21

22

23

24

25