UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 6: 09-16-DCR |
| V. | ) ) | |
| RUSSELL CLETUS MARICLE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Following his arraignment on the charges contained in the Indictment, Defendant Cletus Maricle was ordered detained by the Magistrate Judge on March 26, 2009. The Magistrate Judge's order followed a hearing on March 23, 2009, during which the United States presented evidence supporting its contention that, if released, Defendant Maricle would present a danger to the community. More specifically, the Magistrate Judge concluded that:

> The problem with release centers narrowly on the danger that Maricle would, if released, obstruct or attempt to obstruct justice. Defendant, age 65, faces a potential penalty of up to 20 years if convicted (with a preliminary guideline range, upon conviction, in the 70 to 87 month area). He has shown some signs of desperation both in his personal life and in his view toward the investigation resulting in these charges. Those signs include a concession of suicidal thoughts, episodic depression, and recent questions regarding his "will to live." Further, the Defendant allegedly, with respect to the very federal investigation concluding with Indictment, has attempted to find the home address of law enforcement officers, has interfered with the grand jury's investigation by coaching witness testimony, and has participated in line-by-line orchestration of such testimony. His acts the United States calls paranoia (relocating meetings, patting down associates, avoiding phone use, fearing surveillance) may, in the end, suggest consciousness of guilt. Certainly, the gathered information and resulting inferences raise clear concerns about Maricle's potentialities on release.

>The United States solidified these concerns by the "past conduct" evidence provided at the detention hearing. While Defendant's record as a long-tenured circuit judge should virtually ensure release-worthiness, the Government effectively flipped the expectation by clearly establishing egregious judicial misconduct by Maricle. Judicial tampering and subornation of perjury – with the direct design of manipulating results for or against particular litigants – surely qualify as the gravest of public betrayals. Whether the events happened as described is an open question, but the proof at the hearing was strong, specific, and essentially unchallenged. Kenny Day is, perhaps, self-impeaching to a degree, but he did give a detailed version regarding the jury tampering under oath and faced no cross. The other incident of judicial misconduct allegedly finds corroboration on a tape, which Briggs described, featuring Maricle himself. Finally, the RICO count includes the assertion that Maricle also misused his judicial office as part of the election-related conspiracy.

[Record No. 66, pp. 10-11.]

Based on the evidence presented and the fact that the Defendant "offered little to counter or weaken the Government's strong showing," Magistrate Judge Wier determined that no set of conditions could reasonably assure that, if released pending trial, Defendant Maricle would not obstruct or attempt to obstruct justice. [Record No. 66, p. 12] As Magistrate Judge Wier aptly concluded, "[t]he Court simply has no confidence that Defendant would follow court restrictions designed to protect the integrity of the judicial process, a process that must unfold on the merits, and *only* on the merits, in this and every case." [*Id.*]

Following this hearing, Defendant Maricle retained new counsel and requested that the undersigned re-open the detention hearing and consider additional evidence. This motion was granted and an additional evidentiary hearing was held on April 20, 2009. In addition to the testimony and other evidence presented by the parties, both Defendant Maricle and the United States have filed memoranda in support of their respective positions. After considering these

additional materials, the undersigned has concluded that the Defendant may be released to home detention, subject to a number of restrictions.

In reaching this determination, the Court does not discount the Magistrate Judge's findings that strong evidence has been presented implicating Defendant Maricle in manipulating the verdict in a civil trial in Clay County. While the Defendant has challenged the credibility of Kenneth Day concerning this issue, the undersigned does not discount his statements based on the fact that he is a convicted felon[1] or because Defendant Maricle was not the judge assigned to the case in question. Likewise, the Court does not discount the weight of the evidence in the present case as the Magistrate Judge has described. However, the undersigned considers the fact that, with the restrictions that will be imposed, the likelihood that the Defendant will: (1) attempt to obstruct justice, (2) improperly contact or attempt to intimidate witnesses, or (3) threaten or attempt to threaten or harm law enforcement officers is greatly reduced.

The undersigned has also considered the evidence presented that the Defendant will be a danger to himself if released, but concludes that this likelihood does not compel his incarceration pending trial. Further, the likelihood of flight will be reduced substantially by electronic monitoring and home detention. Accordingly, in addition to the standard conditions typically imposed upon release, Defendant Maricle will be released subject to the following additional terms and conditions:

---

[1] While Kenneth Day did not appear before the undersigned during the April 20, 1009, hearing, the Court does not write on a blank slate regarding his credibility as a witness. Mr. Day has appeared before the undersigned on several occasions in connection with his case as well as a witness in other proceedings. To date, the Court has found Day's testimony to be credible.

1. The Defendant shall be placed on home incarceration at his residence. The Defendant may leave his home (defined as the house in which the Defendant resides and an area within 50 feet of the house) only for medical treatment for himself or his wife, meetings with counsel approved in advance by the United States Probation Office, and court appearances. Other than in emergency medical situations involving the Defendant or his wife, the Defendant must get prior approval from the United States Probation Office before leaving his home for any reason. Defendant's home detention condition shall be monitored electronically.

2. The Defendant may not have any direct or indirect contact with any person (except through or in the presence of his counsel) that in any way includes, involves, concerns, mentions, or discusses the subject matter of this case. The term "subject matter of this case" means any of the charges or allegations in the indictment, any Clay County election-related conduct, any reference to or mention of persons that were or may have been involved in Clay County elections, any discussion of defenses, and any other matters that fairly relate in any way to the prosecution of London Criminal No. 6: 09-16, including names of persons who may be witnesses in the case. Thus, except through counsel or in a situation with counsel physically present, the Defendant may not discuss the subject matter of this case with any person.

3. The Defendant may not receive visitors at his home except for clergy, attorney, United States Probation Officers, immediate and extended family members, and persons giving him or a family member medical care or treatment (the exception to this prohibition does not include any co-Defendant and any family member that may be a witness in the trial of this matter). The Defendant shall be require to maintain a log of all visitors which shall include the

time and duration of any and all visits.  This log shall be made available to the Court and to the United States Probation Office upon request.  Further, upon request by the United States, a pen register may be used to monitor calls to and from the Defendant's telephone(s).

      4.      The Defendant may not use any telephone, cell phone, computer, or other communication device to communicate with any person (other than regarding medical care) except to contact the United States Probation Office, clergy, Defendant's counsel, and the Defendant's immediate family or extended family.  However, any calls placed by or on behalf of the Defendant, or received by or on behalf of the Defendant shall be recorded on the log of visitors discussed in paragraph 3 above.

      5.      This Order shall not limit additional terms and conditions from being imposed by the United States Magistrate Judge as he deems appropriate.

      6.      The Defendant shall be brought before United States Magistrate Judge Robert E. Wier forthwith for the purpose of reviewing these – and imposing any additional – terms of release.

This 14th day of May, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge