**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
|     **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Criminal No. 6: 09-16-DCR** |
| | ) |
| **CHARLES W. JONES,** | ) |
|     **Defendant.** | ) |
| _____ | ) |

**MOTION & MEMORANDA FOR DISCOVERY,**
**TRIAL WITNESS AND EXHIBIT LIST, EARLY PRODUCTION OF *BRADY***
**AND *JENCKS* MATERIAL,**
**AND PRODUCTION OF GRAND JURY TESTIMONY**
***** ***** *****

The Defendant, Charles W. Jones ("Defendant"), by counsel, moves the Court pursuant Rule 16 of the Federal Rules of Criminal Procedure, as well as its inherent discretion, to direct the United States to provide the following information to the Defendant within thirty (30) days. Each separate request is accompanied, as appropriate, with legal analysis.

**1.**     All discovery within the scope of Rule 16 of the Federal Rules of Criminal Procedure, specifically including, but not limited to, *Jencks, Brady, and Giglio* material, statements of the Defendant, the criminal record of the Defendant, and any expert witness information. The Defendant requests that the Court order that this material be provided no later than at the initial pre-trial conference scheduled for August 4, 2009. This request is based on: the fact that the Defendant Jones has limited resources to conduct an investigation; the United States has used a rolling process to disclose audio and video evidence though much of it dates to 2007 and before; the United States has filed a

Superceding Indictment alleging substantive new Counts for which it is believed additional rolling discovery will be produced post-arraignment; and, the United States has depended heavily upon the use of confidential informants wearing a wire so that such evidence is likely voluminous.

Early disclosure of *Brady/Giglio* and *Jencks* should be a matter of routine practice by the government in order to insure that a defendant has an adequate opportunity to prepare his or her defense. *See, The American Bar Association Standards for Criminal Justice,* §11-2.2 (The Prosecution Function) (1980). The United States has indicated that its position is that *Jencks* and witness specific *Brady/Giglio* information (i.e., criminal records, exculpatory, or other impeachment material) will be made available following the testimony of a testifying witness).1 However, the United States contemplated disclosure schedule provides the Defendant Jones with no meaningful relief because it will not provide sufficient opportunity for counsel to investigate the disclosed information.

This prosecution has generated, to our knowledge, hundreds of hours of recorded audio, and other forms of tangible evidence. Although we have yet to complete discovery, we have already reviewed an enormous volume of material provided by the United States. Investigation and preparation for trial is truly a daunting task, particularly given the fact that defense counsel has significant responsibilities in other cases, and, more significantly, this is a CJA defense with very limited resources that can only be stretched so far. In order for the defense to be prepared, all *Brady/Giglio* material should be disclosed immediately, and all Jencks material should be disclosed no later than at the August pre-trial.

In this case, there is really no secret about the identity of many of the government's witnesses – particularly given the use of initials in the indictments as opposed to the use of non-personal identifiers such as numbers. And, given the strict pre-trial release conditions imposed, there are no safety considerations which would support a request for late disclosure of *Jencks*. Rather, the only reason for late disclosure in this case is to provide the government with a strategic and tactical advantage, even beyond the advantage that it has gained by having investigated this case for several years before deciding to seek an indictment and then filing just a week ago a Superceding Indictment.

*Jencks* Act material should be provided early so as to furnish the Defendant Jones and defense counsel with sufficient time to examine and utilize this material in a meaningful manner before and during trial. *United States v. Holmes*, 722 F.2d 37, 40 (4th Cir. 1983). What that means in terms of timing depends on the specific facts and circumstances of the case. It is clear, however, that the Court, pursuant to the Fifth and Sixth Amendments to the U.S. Constitution, Rule 2 of the Federal Rules of Criminal Procedure and its inherent supervisory powers, has the authority to override the timing provisions set forth in the Act and in Rule 26.2. *See, United States v. Snell*, 899 F. Supp. 17, 24 (D. Mass. 1995) ("nothing in the statute [] pre-empts the court's ability, consistent with its obligations over case management, to order earlier disclosure than required by the Act."). Indeed, Rule 26.2, unlike its predecessor the Jencks Act, contains no language explicitly precluding the disclosure of witness statements prior to trial. *Compare* Fed. R. Crim. P. 26.2 with 18 U.S.C. §3500(a).

The Rule also provides that the Court may make an accommodation, upon request by accussed's counsel, so that counsel is provided adequate time to make use of *Jencks* material. *Fed. R. Crim. P. 26.2(d).* That section states:

> Upon delivery of the statement to the moving party, the court, upon application of that party, may recess proceedings in the trial from the examination of such statement and for preparation for its use in the trial.

Thus, the United States should disclose *Jencks* material to defense counsel as soon as practicable following the defense request for disclosure as it will not only assist the Defendant Jones in achieving a fair trial, but, nearly as important, serve the public interest in expediting the fair resolution of criminal cases. *See ABA Standards for Criminal Justice,* §11-2.2; *see*, e.g., *United States v. Tarantino,* 846 F.2d 1384, 1415 n.12 (D.C. Cir.), *cert. denied*, 488 U.S. 840 (1988); *United States v. Hinton*, 631 F.2d 769, 782 (D.C. Cir. 1980); *United States v. Poindexter*, 727 F.Supp. 1470, 1484-85 (D.D.C. 1989).

In *Hinton*, the District of Columbia Circuit recognized the potential impact of late Jencks disclosure upon the defendant's Sixth Amendment rights. 631 F.2d at 782. There, during a suppression hearing, defense counsel was provided with "voluminous *Jencks* material" in the form of FBI 302s. *Id.* at 781. The Circuit Court held that "in the rush and confusion" of the hearing, counsel failed to recognize "the critical importance of the 302's" and, as a result, the appellant was deprived of her constitutional right to the "informed, professional deliberation of counsel." *Id.* at 782.

Here, in order to accomplish even a rudimentary investigation so as to begin to be able to provide effective assistance to the Defendant Jones, the defense will require obtaining the Jencks material well before the jury is sworn. See, *United States v. Holmes,* 722 F.2d 37, 41 (4th Cir. 1983) (Noting that providing materials one day before trial

4

began did not "afford[] a reasonable opportunity to examine and digest" the documents.). Given that the United States has estimated that this case will last 4 weeks, and there are now eight defendants who may put on cases, the recesses which will be required by will substantially delay what promises to be an already protracted proceeding. In addition to the obvious adverse impact on this Court's calendar, the attentiveness and endurance of jurors, such delays will unfairly prejudice the Defendant Jones' Fifth and Sixth Amendment rights as he and his counsel will be viewed by the jury as responsible for the delays and overall length of the trial.

The remedy is obvious.

As the Fourth Circuit noted, it is not uncommon, particularly "in cases where there are many statements or where the bulk of witness statements is large," for the government to agree or for the court to order early disclosure of Jencks material." *Holmes*, 722 F.2d at 40.

Unlike our request for *early* disclosure of *Jencks* material, this request is also for *timely* disclosure of *Brady/Giglio* material – a different kettle of fish. This material is *immediately* discoverable under both Fed. R. Crim. P. 16(a)(1)(C) (information which is "material to the preparation of the defendant's defense") and *Brady v. Maryland*, 373 U.S. 83 (1963). It is typical in these cases for the United States to distinguish *Brady* material from "merely impeachment" information; however, the United States Supreme Court has expressly rejected such a distinction. In *Stricker v. Greene*, 527 U.S. 263 (1999), the Court emphasized that Brady material includes "impeachment evidence as well as exculpatory evidence." *Id.* at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985).

The United States will likely take the position that witness statements are exempt from disclosure by virtue of the *Jencks* Act; however, it is clear that the fact that material may be *Jencks* does not insulate it from disclosure if the material is also producible as *Brady/Giglio*. *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir.), *cert. denied*, 488 U.S. 840 (1988); *United States v. Recognition Equipment, Inc.*, 711 F. Supp. 1, 14 (D.D.C. 1989) (holding that the "government is not permitted to refuse to disclose Brady material merely because it is also Jencks material"); *United States v. Poindexter*, 727 F. Supp. 1470, 1485 (D.D.C. 1989) (noting that "Brady obligations are not modified merely because they happen to arise in the context of witness statements"); *United States v. Snell,* 899 F. Supp. 17, 21 (D. Mass. 1995) (holding that Brady obligations, which are constitutional in origin, trump the protections against disclosure set forth in the Jencks Act, which are statutory in origin). As the Supreme Court noted in *Strickler*, "[o]ur cases make clear that *Brady's* disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." *Strickler*, 527 U.S. at 282, n.21 (emphasis added, citation omitted).

With regard to *Brady* material, such information is to be turned over "at such time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case. ..." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir.), *cert. denied,* 429 U.S. 924 (1976); see also, *United States v. Starusko,* 729 F.2d 256, 261 (3d Cir. 1984) (noting that *Brady* information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case); see, e.g., *Poindexter,* 727 F. Supp. at 1485 (noting the government's obligation to "immediately" produce to the defendant any exculpatory evidence, even if that evidence

is contained in its Jencks materials); *Recognition Equipment, Inc.,* 711 F. Supp. at 14 (ordering immediate disclosure of exculpatory and impeachment evidence).

The United State's only possible basis for resisting both early disclosure of *Jencks* and timely disclosure of *Brady/Giglio* is to argue that such disclosure will pose a threat to the government's witnesses. There is no basis for such an assertion in this case. Here, the witnesses are generally known to the defense and the entire Clay County community due to the pre-trial publicity and publishing of the two indictments (which the United States itself created any risk by employing initials. Any unidentified, potential threats to witnesses is far outweighed by the Defendant Jones' right to a fair trial. See, *Pollack*, 534 F.2d at 974 (Noting that courts should balance in each case "the potential dangers of early disclosure against the need that Brady purports to serve of avoiding wrongful convictions," and that "early disclosure should be required where the 'dangers' are speculative and where early disclosure is necessary ...for a fair trial.").

Here, defense counsel is not aware of any potential risk posed by the disclosure of this information, other than the risk that the defense will have an opportunity to investigate these witnesses and conduct a more thorough cross-examination. To the extent that the government maintains that any threat exists, the government should be required to demonstrate on a case-by-case basis the threat to a particular witness before the court issues a blanket order with regard to every witness. Moreover, as noted earlier, this Court has prophylactically dealt with such risks via its pre-trial release orders.

Accordingly, in order to afford the Defendant Jones a meaningful opportunity to contest the charges against him by confronting his accusers with the effective assistance of counsel in a fashion which will not jeopardize his standing before the jury, we request

that the United States be ordered to disclose all *Brady/Giglio* material to defense counsel immediately, and all *Jencks* material at the August pre-trial date.

**2.**    Any evidence seized or obtained by subpoena *duces tecum,* search warrant, electronic or wire surveillance, mail cover, or similar interception. The Defendant requires such evidence in a timely fashion so as to be able to assess whether such evidence was obtained illegally and thus subject to a suppression motion.

**3.**    The identity, opinions, bases of opinions, and *vitae* of any expert witness (es) the United States intends to use at trial. We request that this information be provided no later than the August pre-trial date. *FRCrP 16(a)(1)(G).*

**4.**    A list of trial witnesses, with a summary of anticipated testimony, and trial exhibits to be produced at the initial pre-trial conference on August 4, 2009. Given the complexity of the case and the substantial number of person(s) identified in the wire evidence, the Court should require the United States to make this disclosure at that time. *See,  United States  v. Sclamo*, 578 F.2d 888, 890 n.1 (1st Cir. 1978); and,  *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975); *United States v. Napue,* 834 F.2d 1311 (7th Cir. 1987); *United States v. Russell,* 109 F.3d 1503 (10th Cir. 1997); and, *United States v. Turkish,* 458 F. Supp. 874, 881 (S.D.N.Y. 1978).

**5.**    A copy of any plea agreements, correspondence, electronic mail or any other documentation of any promise of immunity, leniency, or preferential treatment, or agreement, plea, deal, or understanding between the United States and any person used by the United States in the investigation that lead or contributed in any fashion to the indictment of the Defendant. Such promise or agreement is not limited to prosecution in this action or as fruit of this particular investigation, but specifically includes, but not

8

limited to, the earlier Clay County corruption and drug interdiction prosecutions prosecuted in this Court. *U.S. v. Boffa*, 513 F. Supp. 444, 500-01, 7 Fed. R. Evid. Serv. 1734 (D. Del. 1980). It is the good faith belief of the Defendant Jones that the United States is relying upon wire evidence and other evidence procured or provided by confidential informants "WW" and "CW", and that one or both have entered into plea and deferred sentencing agreements from one or both of such earlier prosecutions.

**6.**     Pursuant to FRCrP 26.2(f)(3), the transcript of all Grand Jury proceedings pertinent to this criminal action against the Defendant regardless of whether the witness will or is anticipated to be called at trial. Given the complexity of this action, the Court is within its discretion to order early production so as to avoid unnecessary delay at trial and to insure that the Defendant Jones' constitutional right to a fair trial is protected.

**7.**     All documents related to any conflict of interest or disqualification analysis by any employee or agent of the Department of Justice, including local ethics counsel of the United States Attorney for the Eastern District of Kentucky, regarding the involvement of Assistant United States Attorney Stephen Smith in this action given the mention of his relative on a wire recording of a conversation between the KW, WW, and Ed Jordan dated April 30, 2007, regarding the upcoming grand jury testimony of WW, or any other reason.

**8.**     The identity of all confidential informants and co-operating witnesses, and to provide for defense interviews of same. It is clear from the discovery produced by the United States to date that the prosecution is relying heavily upon evidenced gathered and provided by informants/cooperating witnesses. Thus, their identity and the subject matter

of their information is material and critical to the defense of this case and must be disclosed now. *United States v. Sanchez,* 429 F.3d 753 (8th Cir. 2005).

**9.**      All transcriptions and/or enhanced recordings of audio and video recordings obtained by the United States in this investigation. Again, given the unintelligible nature of many of the recordings and the disparity in resources between the United States and the Defendant Jones it is appropriate to require production of such materials if prepared, or, if to be prepared, to be produced well before trial. It is disingenuous, and somewhat chauvinistic to blame the quality of recordings on the accents of the persons recorded, and the difficulty of counsel for defense to discern such accents and speech patterns.

For these reasons, the Defendant Jones respectfully requests that the Court order the United States to provide the above discovery by the specific dates listed, but no later than August 4, 2009.

This the 15th day of July, 2009.

/s/ Scott White_____.
Scott White
Morgan & Pottinger, P.S.C.
133 W. Short Street
Lexington, KY  40507
859. 226-5288 (DIRECT)
859. 255-2038 (FAX)
tsw@m-p.net

Certificate of Service

This Motion is being served to all parties via ECF system.

/s/ Scott White_____.
Scott White

10