UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CRIMINAL ACTION NO.: 6:09-CR-16-02-DCR

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v

RUSSELL CLETUS MARICLE;
DOUGLAS C. ADAMS;
CHARLES WAYNE JONES;
WILLIAM E. STIVERS,
a/k/a AL MAN;
FREDDY W. THOMPSON;
WILLIAM B. MORRIS, a/k/a BART;
DEBRA L. MORRIS, a/k/a DEBBIE;
and STANLEY BOWLING                                                                     DEFENDANTS

*Electronically Filed*
*** *** ***

MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS STATEMENTS
MADE BY DEFENDANT DOUGLAS C. ADAMS

Defendant Douglas C. Adams ("Adams") has moved the Court to suppress statements made by him to Police Chief Jeff Culver ("Culver") shortly following his arrest on or about March 9, 2009. In support of said motion, Defendant states as follows:

FACTS

On March 3, 2009, the Indictment in this case was filed under seal and the United States obtained arrest warrants for each of the eight named defendants. On March 19, 2009, the Indictment was unsealed. Also on that date, Adams arrived at his office at the Clay County Board of Education and was greeted by Culver and FBI Agent Timothy Briggs. Adams has known Culver for many years and the two are friends. Agent Briggs informed Adams that he was under arrest.

Adams was not presented with an arrest warrant; likewise, he was not read his <u>Miranda</u> rights.[1] Adams was handcuffed and placed in Culver's police cruiser for transportation to the FCI in Manchester while Agent Briggs and another agent rode in a separate vehicle.

During the course of the transportation, Culver began talking to Adams about his arrest. Culver made some statements to the effect of Culver being "sorry" he had to "do this" and that "these guys don't have to live here but they expect us to go out and arrest these people and then they go back to London. I would much prefer to be frog gigging." It was in response to Culver's comments that Adams purportedly made a statement to the effect that Adams believed 2002 was behind him.

Culver and Adams ultimately arrived a the FCI in Manchester. After Adams and the other defendants were fingerprinted, the defendants were taken for formal interviews. It was during this interview that Adams was informed of his <u>Miranda</u> rights for the first time.

## ARGUMENT

The issue before the Court in this motion is whether or not the statements made by Adams to Culver during the trip to the Manchester FCI were obtained in violation of his Fifth and Fourteenth Amendment rights. Specifically, this Court must determine whether Adams, who had been placed under arrest, was subjected to custodial interrogation by Culver, resulting in any statements Adams made being inadmissible because he was not read his <u>Miranda</u> rights prior to the interrogation.

Before introducing into evidence any exculpatory or inculpatory statements made by a defendant during custodial interrogation, the government must demonstrate "the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Miranda v. Arizona</u>, 384

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966.)

U.S. at 444.  "Custodial interrogation" was defined as by the Miranda court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id.  The definition of "interrogation" includes not only express questioning by law enforcement, but also its "functional equivalent."  Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).  The Innis Court elaborated that "functional equivalent" means "any words or actions on the part of the police...that the police should known are reasonably likely to elicit an incriminating response."  Id.  Undoubtedly, Adams' arrest rendered him "in custody" for Miranda purposes at the time he made statements to Culver.  And as was noted in "Facts," above, Adams was first read his Miranda rights after he arrived at the FCI in Manchester.  Thus the question of whether his statements are admissible turns on whether he was subjected to interrogation in Culver's police cruiser on the ride to Manchester.

Culver's statements to Adams in his police cruiser would not qualify as "express questioning" as Culver did not explicitly ask Adams any questions.  Instead, it was "functional equivalent" of interrogation, i.e. the words and conduct of Culver and the FBI agents involved, that turned the situation into the type of "interrogation" prohibited by Miranda in the absence of the required warnings.  See Rhode Island v. Innis, 446 U.S. at 301.  Without a doubt, the FBI agents were in charge of this case and, ultimately, Adams' arrest.  When the arrest warrant was issued, the agents took the police chief with them to arrest Adams.  The agents were certainly aware of Adams' friendship with Culver.  After Agent Briggs placed Adams under arrest, it was Culver–not Agent Briggs–that transported Adams to the Manchester FCI.  During the trip, Culver played upon his friendship with Adams to obtain statements by Adams about the case.  Specifically, Culver acted as though he was on Adams' "side" in the case, purporting to be sympathetic with Adams' cause and expressing reluctance to be involved in Adams' arrest.

The facts in this case are analogous to the facts in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In Brewer, the defendant had been arrested for the murder of a young girl and given appropriate Miranda warnings. While being transported to another city, the officer began talking to the defendant about finding the young girl's body so she could be given a proper Christian burial. Although the officer talked at length about finding the girl's body, they explicitly told the defendant not to answer them but to think about what they said. Ultimately, the defendant told officers the location of the young girl's body. Id. at 390-393. The United States Supreme Court determined that the officer's actions in Brewer amounted to an interrogation and noted that the officer's statements were "deliberately and designedly set out to elicit information from Williams just as surely as and perhaps more effectively than if he had formally interrogated him." Id. at 399.

The same rationale applies here. The words and conduct of Culver and the FBI agent were "tantamount to interrogation" just the same as the officer's actions in Brewer. Id. at 400. Simply put, the point of putting Adams in a car with Culver–and of having Culver "side" with Adams–was to get Adams to make statements against his interest. But Adams, unlike the defendant in Brewer, had not been given Miranda warnings before Culver's statements nor was he explicitly told by the officer not to respond to the officer's comments. Instead, officers subjected Adams to custodial interrogation without first giving him the required Miranda warnings. Consequently, all statements Adams made to Culver during the ride from Adams' office to the FCI facility in Manchester must be suppressed.

Respectfully submitted,

 s/ R. Kent Westberry
R. Kent Westberry
Kristin N. Logan
LANDRUM & SHOUSE, LLP
220 W. Main St., Ste. 1900
Louisville, KY 40202-1395
Ph: (502) 589-7616
Fx: (502) 589-2119
kwestberry@landrumshouse.com
klogan@landrumshouse.com


Bennett E. Bayer
LANDRUM & SHOUSE, LLP
106 West Vine Street
Lexington, KY 40588-0951
Ph: (502) 255-2424
Fx: (502) 233-0308
bbayer@landrumshouse.com

***COUNSEL FOR DEFENDANT
DOUGLAS C. ADAMS***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

It is further certified that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants:

N/A

    /s R. Kent Westberry
*Counsel for Defendant*
*Douglas C. Adams*