UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NO. 6:09-CR-00016-DCR

UNITED STATES OF AMERICA                          PLAINTIFF

V.            ORDER DENYING DISQUALIFICATION

RUSSELL CLETUS MARICLE                        DEFENDANT

\* \* \* \* \* \*

Defendant Maricle filed a motion to disqualify AUSA Stephen C. Smith from representing the United States in this case. *See* DE #296 Motion. The United States responded in opposition. *See* DE #326 Response. The Court has listened to the entirety of a tendered recording cited by Maricle as yielding the basis for disqualification. Upon consideration of the record in this matter,[1] the Court finds no grounds for disqualification and DENIES the motion.

Maricle's request rests on the content of a recorded conversation from 2007 between Ed Jordan, a former Clay County Sheriff, and cooperating witnesses ("CWs"). The CWs utilized a surreptitious recording device and spoke with Jordan prior to the appearance of one of the CWs before a federal grand jury in this District. The CW had received a subpoena and sought Jordan out to discuss the matter. As interesting as the 72 minutes may be, in terms of the participants' views about Clay County political intrigue, the portion of the discussion relevant to this motion is narrow and concerns Jordan's comments referencing his purported relationship with prosecutor Smith.

In essence, Jordan suggests on the tape that he has contacted or will contact Smith's father in an effort to secure leniency for Daugh White, a former Manchester mayor who was then before

---

[1] Neither party sought a hearing, and the Court sees no independent need for one.

the Court on various federal charges.  Jordan  – who makes derogatory remarks on the tape about Defendant Adams and Maricle – describes himself as related to Smith, but he denies knowing Stephen Smith "well."  He touts a closer bond with Preston Smith, Stephen Smith's father, and indicates his plan to contact Preston Smith in an effort to impact the Government's handling of Clay County prosecutions.  Jordan expresses as his primary goal keeping Daugh White out of prison.

Maricle seeks to disqualify Smith, but offers thin justification and spare analysis for the serious remedy pursued.  The motion relies on 28 U.S.C. § 528, a statute that tasks the Attorney General with promulgating regulations to govern disqualification among DOJ officers/employees.  The motion then cites to 28 C.F.R. § 45.2 as providing the substantive motion basis.[2]  The conclusory contention is that Stephen Smith has a "personal relationship" with Ed Jordan and that Jordan obviously "believed he had significant influence over who would be charged and who would receive leniency" related to the case.  *See* DE #296 Motion, at 5.  Maricle argues from no other source of law but the cited statute and regulation (*e.g.*, not from general legal ethics rules, the Constitution, or inherent court supervisory power) in pursuing disqualification.

The motion fails factually and legally.  First, Jordan's unilateral and unsubstantiated boast concerning his ability to impact any federal prosecution hardly justifies action against Smith.  While the taped content may raise an initial question, Smith has responded by categorically denying **any** relationship with Jordan.  The Government's response contains the following unequivocal representations from Smith, an officer of the Court:

> Jordan has had no contact with the undersigned or his family in regard to this or any other prosecution by the undersigned.  Moreover, the undersigned prosecutor **has**

---

[2] The § 528 "mandate has been accomplished through regulations found at 28 C.F.R. § 45." *See United States v. Vega*, 317 F. Supp. 2d 599, 603 (D.V.I. 2004).

**had no personal contact either directly or indirectly with Jordan during his lifetime**.

*See* DE #326 Response, at 2 (emphasis added), 4.  Smith is unable to confirm that Jordan even is a relative, and if so, the degree of relation is unknown.  *See id.* at 2.

Additionally, whatever Jordan's statements or perceptions of access to the prosecutor, the conclusion as to Daugh White's sentencing negates Jordan's expressions.  The public record shows that White later received an 84-month term of imprisonment, and he currently is a BOP inmate.  *See United States v. Daugh K. White*, No. 6:06-CR-82-DCR (E.D. Ky. 2006), DE #416.  As such, and based on Smith's certification, Jordan had no influence whatsoever on the prosecution's advocacy as to White and at no point has actually contacted Smith or a Smith family member concerning any prosecution.

The regulation Maricle relies on – 28 C.F.R. § 45.2 – clearly does not require disqualification in this scenario.[3]  That section bars an employee from participating in a prosecution "if he has a personal . . . relationship with . . . [a]ny person . . . substantially involved in the conduct that is the subject of the investigation or prosecution; or [a]ny person . . . which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution."  *See* 28 C.F.R. § 45.2(a)(1)-(2).  A "*[p]ersonal relationship* means a **close and substantial connection** of the type normally viewed as likely to induce partiality."  *See id.* § 45.2(c)(2)(italics in original; emphasis added).  An alleged (but unconfirmed) remote family relationship raises no presumptive conflict, and the specifics here offered could not possibly be

---

[3]

Whether Maricle has the right to make an argument under the regulation is not clear.  The regulation itself expressly states: "This section pertains to agency management and is not intended to create rights enforceable by private individuals or organizations."  *See* 28 C.F.R. § 45.2(d).

deemed to establish a "close and substantial" connection between Smith and Jordan. Again, Smith has never had any contact with Jordan (with respect to any case or otherwise), and Smith cannot even identify – and movant has not shown – the degree (if any) of family relationship between Smith and Jordan. Any connection between Smith and Jordan is not close or substantial, and thus Smith has no "personal relationship" with Jordan that would implicate § 45.2.[4] [Because no personal relationship exists, the Court need not analyze how or whether Jordan would qualify as having a substantial involvement or interest in the relevant investigation or prosecution, for § 45.2 purposes.]

There is no basis for disqualification by operation of 28 C.F.R. § 45.2, and the Court DENIES Maricle's motion to disqualify Attorney Smith.

The Court issues this Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult the statute and Fed. R. Crim. P. 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

This the 7th day of August, 2009.



Signed By:
Robert E. Wier
United States Magistrate Judge

---

[4] The United States also analyzed the matter under the cross-referenced (*i.e.*, by 28 C.F.R. § 45.1) executive branch ethics rules of 5 C.F.R. Part 2635. The defense raised no argument under that regulatory section, but the answer would be the same. If Jordan qualifies as a "party" to the "matter" at issue (a big if), he still would not be in a "covered relationship" with Smith. For the same reasons the Court rejects any conflict under § 42.5, Jordan cannot be described as having the requisite "close personal relationship" with Smith, since Smith has never had any contact with Jordan during his lifetime.