UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NO. 09-CR-16-DCR-1

UNITED STATES OF AMERICA                                                    PLAINTIFF


v.                                                ORDER


RUSSELL CLETUS MARICLE                                                      DEFENDANT

* * * *

The Court considers Defendant R. Cletus Maricle's motion to strike alleged surplusage

from the Superseding Indictment. *See* DE #298 (Motion); DE #272 (Superseding Indictment).

The United States has responded in opposition. *See* DE #331 (Response). Because the language

at issue is not "surplusage" in the context of the case, and under Rule 7(d)'s standard, the Court

DENIES the motion.

Maricle targets but one clause in the 24-page, 13-count Superseding Indictment. Count 1

alleges a RICO conspiracy, from 2002-07, involving all Co-Defendants and allegedly centered on

operation of the Clay County Board of Elections. In a section describing each Defendant's

purported role in the conspiracy, the Indictment states: "The Defendants, Russell Cletus Maricle

and Douglas C. Adams, were considered political bosses in the county and used their influence to

appoint corrupt members to the Board and cause its election officers to commit acts of extortion,

mail fraud, and bribery." *See* DE #272, ¶ 12.a. The motion alleges that the characterization of

Maricle and Adams as being "considered political bosses in the county" should be stricken.

Rule 7(d) authorizes a court, on "defendant's motion" to "strike surplusage from the

indictment or information." Fed. R. Crim. P. 7(d). The language (*i.e.*, "may") is permissive, and

the Rule invests the trial court with discretion in evaluating a motion to strike. *See United States*

*v. Williams*, 158 F. App'x 651, 654 (6th Cir. 2005) (noting that Rule 7(d) motion "is subject to

the district court's discretion."). The standard, however, has been "'strictly construed against

striking surplusage[.]'" *See United States v. Garton*, No. 3:08-CR-31-JMH, 2009 WL 1424429,

at *2 n.1 (E.D. Ky. May 21, 2009) (quoting *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.

1974)).

The key question is materiality or relevance concerning the indictment. Thus the rule is "a

means of protecting the defendant against immaterial or irrelevant allegations in an indictment or

information, which may, however, be prejudicial." *See* Fed. R. Crim. P. 7(d) advisory

committee's note to subdivision (d) (1944). Further,

> The determinative question in a motion to strike surplusage is not the potential
> prejudice, but rather the relevance of the allegation to the crime charged in the
> indictment. If the evidence of the allegation is admissible and relevant to the
> charge, then despite prejudice, the language will not be stricken.

*Garton*, 2009 WL 1424429, at *2 (quoting *United States v. Jiminez*, 824 F. Supp. 351, 370

(S.D.N.Y. 1993)); *see also United States v. Lawson*, No. 3:08-CR-21-DCR, 2009 WL 62145, at

*2 (E.D. Ky. Jan. 8, 2009) (striking matters included in information that were "irrelevant and

serve no purpose"). If included allegations meet the relevancy or materiality threshold, prejudice

alone will not justify relief under Rule 7(d):

> [T]his court has noted that "if the language in the indictment is information which
> the government hopes to properly prove at trial, it cannot be considered
> surplusage no matter how prejudicial it may be (provided, of course, it is legally
> relevant)."

*United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (quoting *United States v. Thomas*, 875

F.2d 559, 562 n.2 (6th Cir. 1989)) (citation omitted).

The United States calls its challenged characterization of Maricle and Adams "directly relevant to the United States' theory of the case," because the "RICO conspiracy centers around the corruption of the political power structure within Clay County." *See* DE #331. Indeed, ¶ 2 of the Superseding Indictment describes Maricle as "active in the political affairs of the county by . . . exerting influence over the selection of precinct workers for local elections." *See* DE #272; *see also* ¶ 3 (similar allegation as to Adams). The conspiracy's alleged purposes were "to obtain, solidify, preserve and expand . . . political power and control within the county. . . through the use and misuse of the authority and power of the Board[.]" *See id.* ¶ 11.

The "political boss" is a recognized term in American politics, carrying a negative connotation. *Webster's Unabridged Dictionary* (2d ed. 2001) (defining "boss" as "a politician who controls the party organization, as in a particular district"); *see N.Y. State Bd. of Elections v. Lopez Torres*, 128 S. Ct. 791, 799 (2008) (using the term "party bosses"); *Political Reform. Bosses*, 48 *The Century* 312, 313 (1894) (defining political bosses as "agents and promoters of corruption" and as "the gamblers and brigands of politics"). While use of that term may reflect some editorial flair, the concept itself, a person in charge de facto of a political organization or group, is not surplusage in the context of the charges. *See United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982) (refusing to strike as surplusage indictment's use of terms such as "Boss," "Crews," "Capodecino," and "La Cosa Nostra" in RICO context because government was "entitle[d] to prove" existence of enterprise and terms were "material and relevant" to case). The United States will seek to prove that Maricle and Adams held great political influence in the county and were decision makers relative to Clay County politics. Conceptually, proof that these Defendants "were considered political bosses" would help explain their basis for having influence or sway over others. The clause at issue is relevant and material and thus not

surplusage. The Court DENIES the motion to strike.

The Court issues this Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult that statute and Rule 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

This the 10th day of August, 2009.

Signed By:

_Robert E. Wier_   REW

United States Magistrate Judge