UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 6:09cr00016-DCR<br>Judge Danny C. Reeves |
| v. | : | |
| RUSSELL CLETUS MARICLE, et al., | : | Electronically Filed |
| Defendants. | : | |

**MOTION TO SUPPRESS
AND MEMORANDUM IN SUPPORT
AND REQUEST FOR EVIDENTIARY HEARING**

Now comes, Defendant, Russell Cletus Maricle, by and through counsel, and respectfully moves this Honorable Court to Suppress any and all evidence obtained as the result of the unconstitutional search of his home on March 19, 2009. The reasons for this Motion are more fully set out in the attached memorandum in support. Defendant requests an evidentiary hearing on this issue.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ Martin S. Pinales<br>Martin S. Pinales (Ohio Bar No. 0024570)<br>Candace C. Crouse (Ohio Bar No. 0072405)<br>*Admitted Pro Hac Vice*<br>Sirkin, Pinales & Schwartz LLP<br>105 West Fourth Street, Suite 920<br>Cincinnati, Ohio 45202<br>Telephone: (513) 721-4876<br>Telecopier: (513) 721-0876<br>mpinales@cinci.rr.com<br>ccrouse@sirkinpinales.com | /s/ David S. Hoskins by MSP w/permission<br>David S. Hoskins<br>107 E. First Street<br>Corbin , KY 40701<br>Telephone: 606-526-9009<br>Fax: 606-526-1021<br>davidhoskins@bellsouth.net |

**MEMORANDUM IN SUPPORT**

**I.    FACTUAL BACKGROUND:**

On March 3, 2009, a sealed indictment was handed down naming Defendant, Russell Cletus Maricle, in four counts of a ten-count indictment.[1] The counts of the indictment center around allegations of voter fraud by members of the Clay County Board of Elections and its associates. On March 16, 2009, FBI Special Agent, Timothy Briggs, signed a search warrant affidavit requesting permission to search Maricle's residence, which the search warrant described as being located at 393 Circle Drive, Manchester, Kentucky. (Ex. A, Affidavit). The affidavit describes the residence as a "two story stucco home, tan in color with white window casings." (*Id.*) It further states that "[t]here are two stone pillars that lead into the driveway and the garage area." (*Id.*) The affidavit states that "Affiant has verified the correct address for all subjects through Source information, surveillance, and public records . . . ." (Ex. A at 5, ¶6). Nevertheless, this description, and the photograph attached to the affidavit, did not accurately describe Maricle's home. The search warrant was issued by Magistrate Judge Wier on March 16, 2009. (Ex. B, Search Warrant).

According to the FD-302 by TFO Hopkins that was provided in discovery, Officers attempted to execute the search warrant and an arrest warrant for Maricle on March 19, 2009 at approximately 8:45 a.m. Based on the description of Maricle's residence in the warrant, officers entered the home of a neighbor. Realizing that the warrant described the wrong residence, agents forcibly entered into Maricle's residence approximately 15 minutes later without obtaining a new warrant. Agents did not knock and announce their presence, but rather stormed into the upstairs area of the home. Maricle was not present at this time because he had left for work. His wife, daughter, daughter's

---

[1] A superseding Indictment was handed down on July 9, 2009.

2

boyfriend, and their baby were present. According to agents, Judy Maricle gave consent to search while she was being detained in her own home. Maricle arrived at the residence at approximately 9:30 a.m. and was placed under arrest. He informed the agents that he did not consent to a search of his home. At approximately 11:30 a.m., agents were notified that a corrected search warrant with the correct photo and description of the home had been signed and agents resumed their search of the residence. (Ex. C, Amended Warrant).

II.     ARGUMENT:

    A.     **The Evidence Obtained as the Result of the Search Must Be Suppressed Because The Search Was an Egregious Violation of the Fourth Amendment.**

The Fourth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV. In this case, officers intended to serve an arrest warrant on Maricle and also a search warrant on his residence. As will be argued below, the search warrant was invalid because it did not describe the place to be searched with sufficient particularity, the affidavit did not establish the reliability of the confidential informants, the agent's mischaracterizations in the affidavit were made with reckless disregard for the truth, the affidavit failed to establish a proper nexus between the residence and the alleged criminal activity, and the affidavit relied upon stale information to establish probable cause. Thus, the search warrant did not give officers the authority enter Maricle's home.

Officers also did not have authority to enter Maricle's home based on the arrest warrant because they failed to knock and announce their presence and wait a reasonable period of time before they forced entry into Maricle's home. Officers also lacked a reasonable belief that Maricle would be inside the residence when they executed the warrant on a weekday at 9:00 a.m., and knowing that

3

Maricle worked outside of the home during the week as a judge.

The Fourth Amendment's prohibition on unreasonable searches and seizures includes the general rule that an officer's announced entry into a home, absent special circumstances, is unconstitutional. *See Wilson v. Arkansas*, 514 U.S. 927 (1995). "As the Supreme Court has observed, the zone of privacy protected by the Fourth Amendment is most clearly defined 'when bounded by the unambiguous physical dimensions of an individual's home.'" *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999)(citing *Payton v. New York*, 445 U.S. 573, 589 (1980). Because the officers' entry into Maricle's home violated the Fourth Amendment, all evidence obtained as the result of this unlawful entry must be suppressed.

 1. **Invalid Search Warrant.**

    a. **The Search Warrant Was Invalid Because it Did Not Describe the Place to be Searched With Sufficient Particularity.**

The Fourth Amendment to the United States Constitution provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment categorically prohibits the "general, exploratory rummaging [of] a person's belongings" by requiring "a 'particular description' of the things to be seized." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). By limiting searches "to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). In determining whether the place to be searched is described with sufficient particularity, the

Court questions "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir.1989) (citations omitted).

The original search warrant obviously did not enable the executing officers to locate and identify the premises with reasonable effort because officers went to the wrong residence. Without obtaining a new search warrant, officers forcibly entered Maricle's residence and began a search. The search was in violation of Maricle's Fourth Amendment right to be free from unreasonable searches and seizures and all evidence obtained as the result of the search must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963)(describing evidence that came to light as the result of the exploitation an illegal search as "fruits of the poisonous tree" and holding that such evidence is subject to suppression).

### b. The evidence supporting the warrant was not reliable.

The affidavit attempts to establish probable cause to search Maricle's residence based solely on information provided by "Source # 1 and Source # 2." However, as will be discussed below, the Affiant does not sufficiently demonstrate the reliability of these Sources' information.

In *Illinois v. Gates,* the Supreme Court adopted a "totality of the circumstances" test to determine the sufficiency of probable cause in a search warrant's supporting affidavit. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The Court acknowledged that "veracity," " reliability," and "basis of knowledge" were central considerations, but cautioned against framing these highly relevant factors as independent elements to be mechanically applied. *Id.* at 232-33. Instead, the considerations should be understood as closely intertwined, as an exceptional showing of one might

compensate a weaker demonstration of another. For example, while the veracity of an anonymous informant can rarely be known to a detached magistrate, sufficient independent police corroboration may still support a finding of probable cause. *Id*. at 233-34.

Because the evidence informing the affidavit and supporting the subsequent warrant was not reliable, the warrant was not supported by probable cause. Where the affidavit largely relies on a confidential source, the veracity, reliability, and basis of knowledge of that information must be considered as part of the totality of the circumstances analysis. *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). Because the confidential informant's identity is unknown, his veracity is unknowable. Under a totality of the circumstances analysis, probable cause may still be rightly found where the supporting affidavit sufficiently demonstrates the reliability of the unknown informant's information, **through substantial independent police corroboration or a demonstrated relationship with the informant characterized in detail by past reliability with respect to similar investigations**. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000); *United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996). Here, the supporting affidavit failed to compensate for this weakness by sufficiently demonstrating the reliability of the informants' information through independent corroboration or past reliability in similar contexts.

      **i.**      **Relationship of past reliability**

Where the identity of the informant is unknown to the magistrate from whom a warrant is sought, an affiant could instead "attest 'with some detail' that the informant provided reliable information in the past." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006), citing *Allen*, 211 F.3d at 976. Where a confidential informant's information is substantially relied upon for the basis of a warrant application, this absence of demonstrated veracity must be overcome. The reliability

of a confidential informant can be bolstered by an affiant's averment about the informant's past reliability in similar situations. Here, the affidavit failed to satisfactorily demonstrate a prior relationship of reliability.

In *Frazier*, the Sixth Circuit, holding that the warrant lacked probable cause, noted with disdain that "[t]he *Frazier* affidavit contains no facts supporting the confidential informants' reliability. There are no averments about the reliability of the information provided by the anonymous informants in the past, there are no averments about the length of the relationship between [the affiant] and the confidential informants, and there is no suggestion that [the affiant] disclosed the informants' true identities to the issuing magistrate." *Frazier*, 423 F.3d at 532.

Here, the affidavit similarly failed to demonstrate the reliability of the confidential informants. The only mention of the reliability of the informants in this case appears in paragraph 8 of the affidavit. Special Agent Briggs states, "Affiant knows and has worked consistently with Source's since March of 2007, with regard to investigating these election fraud/bribery violations." (Ex A at 6). SA Briggs goes on to say that the CIs "made approximately twenty (20) audio recordings of conversations with various subjects of the investigation, at the direction of the FBI" and the CIs "are deemed reliable as they have been independently corroborated by other witnesses as well as independent investigation conducted by the Affiant and other FBI investigators." (*Id.*)

As will be demonstrated below, these audiotapes do nothing to substantiate any of the information given by the CIs against Maricle. Furthermore, the affidavit does not mention any other witnesses who corroborated any of the information about Maricle. The affidavit makes no attempt to establish that the CIs have provided any form of reliable information on even one past occasion. According to the affidavit, the CIs have been working in an undercover capacity since March of 2007

on this particular case, but the affidavit fails to indicate how the relationship between the CIs and the Affiant came about. On page 7 of the affidavit, the Affiant refers to "multiple sources," but does nothing to establish who these sources are or their reliability. Because the past reliability of Sources #1 and #2, or the "multiple sources" referred to on page 7, was not adequately demonstrated, the issued warrant was not supported by probable cause.

### ii.     Independent police corroboration

"While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant['s] reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532. (citations omitted). Here, the supporting affidavit failed to demonstrate any substantial independent police corroboration.

In *Frazier*, the Sixth Circuit held that insufficient independent police corroboration of a confidential informant's statements, coupled with a failure to demonstrate past reliability, rendered the resultant search warrant invalid. The affidavit at issue in *Frazier* offered as corroboration the affiant's observations of the defendant's coming and going from his residence and telephone record searches showing calls to "known drug dealers" *Id*. Viewing the evidence in the light most favorable to the warrant's validity, the corroboration was held to be "insufficient to corroborate the confidential informants' statements." *Id.*

Similarly, in *Weaver*, the Sixth Circuit held that a detective's affidavit did not support a search warrant to search a defendant's residence where demonstrations of both independent police corroboration and past reliability were lacking. Invalidating the search warrant, the *Weaver* Court sternly observed that the affiant possessed informant statements "yet undertook no substantive

independent investigative actions to corroborate his informant's claims, such as surveillance of the Weaver residence for undue traffic or a second controlled purchase made with officers viewing." *Weaver*, 99 F.3d at 1379.

Here, the supporting affidavit is as lacking, if not more so, in independent police corroboration as those at issue in *Frazier* and *Weaver*. The affidavit sets forth many assertions by Sources # 1 and #2, but there is no independent police corroboration to back up these statements. On page 8, the affidavit states, "Source #1 and #2 are also aware that Maricle delivered money to Vernon Hacker at the 911 building so that Hacker could bribe voters during the 2006 Primary election." (Ex. A at 8). This sentence does not even signify that Sources 1 and 2 had first hand knowledge of this event and there is no other evidence set forth to back up the statement. Sources 1 and 2 stated that they attended "regular meetings at Maricle's residence to discussed [sic] the election fraud scheme for the 2006 Clay County and Primary Elections." (*Id.*). The meetings are also mentioned on pages 20, 21 and 28 of the affidavit, but there is no independent corroboration that these meetings actually took place. No other informant mentioned in the affidavit states that Maricle hosted or attended meetings. In fact, no other informant mentioned in the affidavit gives any information about Maricle whatsoever.

Sources 1 and 2 stated that Maricle provided them a list of voters who were against his slate of candidates that needed to be talked to and approached, but it is apparent from the affidavit that no such list was produced to the FBI to corroborate this assertion. The Sources told the FBI that Maricle said and did many things, but none of these allegations were substantiated by police investigation.

Source 2 alleged that Maricle promised her a job and leniency for her brother in an upcoming

court case in exchange for helping to buy votes. However, these alleged promises never came to fruition. Furthermore, Briggs states that a during a May 2, 2007 recorded conversation, which lasted over 3 hours, Maricle acknowledged these promises. (*Id*. at 12-13). However, a review of the recording reveals that Maricle and his wife discussed with Source 2 possible available jobs and suggested that she obtain an application (May 2, 2007 recording at approx. 1:35:00). Briggs attempts to demonstrate Maricle's alleged knowledge of wrongdoing by referring to the May 2, 2007 recording during which Maricle told Source 2 not to make certain statements. A review of that recording will demonstrate that Maricle was actually telling Source 2 not to lie to the grand jury and to listen to her attorney.

Agent Briggs completely misconstrues the May 4, 2007 recorded conversation discussed on page 13 of the affidavit. A review of that over one-hour conversation will show that Maricle did not tell Source 2 to go to prison like Susan McDougall did for Clinton, but rather that Sources 1 and 2 brought up McDougall. Furthermore, the allegation that Maricle told Sources 1 and 2 to seek direction from Stivers is completely untrue and not substantiated by the recording. Briggs attempts to demonstrate Maricle's knowledge of wrongdoing by referring to Source 1 and 2's *belief* that Maricle was paranoid that the FBI was investigating him, but he does not point to any specific statements on the recordings. Briggs's assertion that Source 2 informed him that Maricle had a private investigator to determine where agents reside and what kind of vehicles they drive is completely untrue and not corroborated by any of the recordings.

Although Briggs takes several statements out of context, these statements do not corroborate Source 1 and 2's information regarding Maricle's alleged involvement in election fraud. Several named informants gave Briggs information regarding Bartley and Debra Morris, however, none of

10

this information had to do with Maricle. *See id.* at 16-18 ( Darnell Hipsher (convicted of RICO charges and making a false statement to the grand jury), Richard Todd Roberts (convicted of RICO charges), Vernon Ray Hacker (convicted of cocaine conspiracy), and several other named informants. These informants, along with Clinton Johnson, who was convicted of election fraud, gave Briggs information regarding William Stivers, but no information about Maricle. *See id.* at 22-24. Interestingly, none of the people who were previously convicted of RICO violations and election fraud gave any information to the FBI to corroborate Source 1 and 2's allegations. Briggs' sole source of information with regard to Maricle was Sources 1 and 2.

The affidavit states that Sources 1 and 2 saw Maricle produce certain election documents from a desk in his residence, but there is no independent corroboration of this allegation. In the affidavit, Briggs attempts to put a spin on the recorded conversations between Maricle and Sources 1 and 2 by setting forth his interpretation of what Maricle meant or by taking statements out of context in order to misconstrue what Maricle was trying to say. However, none of these conversations substantiate any of Source 1 or Source 2's allegations and none of these conversations substantiate any allegation that Maricle would be keeping evidence of a crime at his residence.

The affidavit fails to demonstrate any meaningful independent police corroboration sufficient to offset the unknowable veracity of a confidential informant. To the contrary, the scanty independent information available not only fails to corroborate any allegation of illegal activity, but contradicts the general and substantively lacking information offered by the informant. Because the confidential informant's statements were not sufficiently corroborated, the issued warrant was not supported by probable cause.

      **c.    SA Briggs' Characterization in the Affidavit of the Contents of Two Undercover Recordings was Made With Reckless Disregard for the Truth and Without Such Characterization, The Affidavit Lacks Probable Cause.**

As discussed above, SA Briggs deliberately misrepresented the contents of the May 2, 2007 and the May 4, 2007 undercover recordings in order to attempt to corroborate Sources # 1 and # 2. These misrepresentations were made with reckless disregard for the truth and intended to mislead the magistrate judge into believing that the sources were actually corroborated.

In *Franks v. Delaware*, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56. Because the affidavit is lacking in any other independent corroboration, the false and reckless statements made by the agent regarding the recordings were necessary to the finding of probable cause. If this false material is set to one side, the affidavit's remaining content is insufficient to establish probable cause. Accordingly, the search warrant must be voided and the fruits of the search excluded. Counsel will file the recordings as a conventional exhibit with the Clerk of Court as Exhibits D & E for this Court's review of whether the agent mischaracterized the content of the recordings.

### d. The affidavit failed to establish a proper nexus between the residence and the alleged criminal activity.

In order to demonstrate probable cause sufficient to search, a warrant request must "state a 'nexus between the place to be searched and the evidence sought.'" *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998); *see also United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir.1994) (no probable cause without an "evidentiary nexus ... between the [place to be searched] and the criminal activity"); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). The evidentiary nexus requirement is faithfully adhered to and upheld in Sixth Circuit jurisprudence.

In *Frazier*, the Sixth Circuit was, as here, confronted with a warrant affidavit based largely upon uncorroborated informant testimony ultimately resulting in the search of a residence in which no illegal activity had actually been observed. In such situations, the Court held, "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Frazier*, 423 F.3d at 533; *see also United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985).

Here, there was no police surveillance of Maricle's residence whatsoever. Based solely on the scanty observations alleged by Sources 1 and 2 of a couple of documents allegedly possessed by Maricle at some point during the 2006 elections, Briggs believed that evidence of election fraud would be located in Maricle's home some three years later.

The Sixth Circuit has been careful to remain faithful to the central tenets of evidentiary nexus jurisprudence, most recently addressing the issue in *United States v. Gunter*, 551 F.3d 472 (6th Cir. 2009). In *Gunter*, the Court found that the nexus was reasonably assumed between a residence and criminal drug activity where the informants' past reliability had been established, the duration of the

13

informants' relationships with the affiant had been provided, and the affiant disclosed the informants' identities to the issuing magistrate. Therefore, the informant's statements recounting a history of repeated drug transactions were sufficiently reliable. When an individual's status as a drug dealer is supported by probable cause demonstrated through such regular, reliable interactions, the Court found that it *then* becomes reasonable to conclude that probable cause exists to search the alleged drug dealer's residence. *Id*. at 481. The holding in *Gunter* is not out of step with totality of the circumstances considerations. Because warrant affidavit in *Gunter* was able to show what this affidavit cannot, it was then reasonable to connect the residence to the illegal activity. *Id.* at 480.

Unlike the affidavit under consideration in *Gunter*, the Briggs affidavit fails to establish the informant's history of similar reliability. Because the reliability of the evidence of election fraud by Maricle was not present, there existed no nexus between the alleged criminal activity and Maricle's residence.

    e.  **The Warrant Affidavit Contained "Stale" Information That Could Not Support a Finding of Probable Cause.**

In determining whether a warrant application is based on stale information, a court must consider the following: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir.1995). The information given by Sources 1 and 2 is from 2006 and earlier. There was absolutely no recent information to corroborate the stale information. The lack of corroboration and the extreme lapse of time between the affidavit and the alleged criminal activity demonstrates that the information relied upon to establish probable cause was stale.

> **2.     Officers Violated the Fourth Amendment by Failing to Knock and Announce Their Presence Before Entering the Residence and Lacking the Reasonable Belief that Maricle Was Within the Residence.**

The Fourth Amendment requires officers to knock and announce their presence and authority before entering a private residence, even if they are executing a valid arrest warrant. *See Ingram*, 185 F.3d at 588 (citing *Wilson*, 514 U.S. at 929). In *Ingram*, the Sixth Circuit discussed the different considerations that "motivate the two Fourth Amendment requirements regarding entry by officers into a private home":

> The requirements that an officer obtain a warrant before entering a dwelling to arrest a suspect aims to 'interpose the magistrate's determination of probable cause between the zealous officer and the citizen.' On the other hand, the knock and announce requirements allows individuals 'an opportunity to themselves comply with the law and to avoid the destruction of property occasioned by a forcible entry,' as well as an opportunity to prepare themselves for entry. Moreover, the time officers must spend knocking and announcing is surely shorter than the time they must spend obtaining a warrant.

*Id.* (citations omitted). Police may only justify an unannounced entry into a person's home if, "under the circumstances, knocking and announcing their presence would 1) be dangerous or futile; and 2) inhibit effective investigation of the crime." *Id.* An examination of the circumstances in this case will lead this Court to conclude that the officers' noncompliance with the knock and announce rule is inexcusable and all evidence subsequently obtained must be suppressed.

Furthermore, police officers may only enter a residence to execute an arrest warrant if they have sufficient evidence to form a reasonable belief that the suspect was inside the residence. *See United States v. Hardin*, 539 F.3d 404, 410 (6th Cir. 2008)(citing *Payton v. New York*, 445 U.S. 573, 603 (1980)). Officers entered Maricle's home on March 19, 2009 at approximately 9:00 a.m. March 19, 2009 was a Thursday. Officers knew that Maricle was a judge who would typically be at work

at that time. In fact, when officers entered the residence, Maricle was not there. Accordingly, officers did not have a reasonable belief that Maricle was within his residence at the time that they entered and their entry violated the Fourth Amendment. *See Hardin*, 539 F.3d at 424.

Lastly, the Government cannot argue that Judy Maricle or anyone else in the home gave them consent to enter. It is without dispute that officers entered the home without permission and found the occupants of the home in the upstairs bedrooms. Officers handcuffed the occupants and ordered them downstairs at gun-point. It was under these circumstances that the officers claim Judy Maricle gave consent to search. Nevertheless, shortly after this involuntary consent, Maricle arrived at the residence and told the officers that he did not give consent to search. *See Georgia v. Randolph*, 547 U.S. 103 (2006)(holding that a physically present co-occupant's stated refusal to permit entry renders warrantless entry and search unreasonable and invalid as to him). Thus, there was no valid consent to search in this case.

### III.   CONCLUSION:

The officers in this case blatantly violated Maricle's Fourth Amendment rights by entering his private residence without a valid search warrant and without knocking and announcing their presence, and without a reasonable belief that Maricle would be in the residence. The driving legal purpose underlying the exclusionary rule is the deterrence of unlawful government behavior. *See Elkins v. United States*, 364 U.S. 206, 217 (1960) (purpose of the exclusionary rule is "to deter-to compel respect for the constitutional guaranty ... by removing the incentive to disregard it"). Accordingly, due to the egregious Fourth Amendment violations in this case, suppression of all evidence obtained as the result of the illegal entry and search of Maricle's residence is warranted. Maricle respectfully requests an evidentiary hearing on these issues.

| | |
|---|---|
| Respectfully submitted,<br><br>  /s/ Martin S. Pinales<br>Martin S. Pinales  (Ohio Bar No.  0024570)<br>Candace C. Crouse (Ohio Bar No. 0072405)<br>*Admitted Pro Hac Vice*<br>Sirkin, Pinales & Schwartz LLP<br>105 West Fourth Street, Suite 920<br>Cincinnati, Ohio 45202<br>Telephone: (513) 721-4876<br>Telecopier: (513) 721-0876<br>mpinales@cinci.rr.com<br>ccrouse@sirkinpinales.com | Respectfully submitted,<br><br>  /s/ David S. Hoskins by MSP w/permission<br>David S. Hoskins<br>107 E. First Street<br>Corbin , KY 40701<br>Telephone: 606-526-9009<br>Fax: 606-526-1021<br>davidhoskins@bellsouth.net |

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing system upon the parties of record, on the 17th day of August, 2009.

                                                /s/ Martin S. Pinales  
                                           Martin S. Pinales (Ohio Bar No. 0024570)