UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LONDON**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Criminal Action No. 6:06-82-DCR |
| | ) |
| v. | ) |
| | ) |
| TODD ROBERTS and VERNON HACKER, | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| Defendants. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Plaintiff's motion to transfer [Record No. 100] and Defendants' joint motion to disqualify [Record No. 109]. Having heard arguments on the motions and being otherwise sufficiently advised, it is the decision of this Court that, for the reasons discussed below, Plaintiff's motion to transfer [Record No. 100] is granted and Defendants' motion to disqualify [Record No. 109] is denied.

**Motion to Transfer**

This case is currently pending in the London division and the United States argues that in the interest of justice, the case should be transferred to another division within the Eastern District. The instant case is part of a two year FBI investigation into drug and public corruption in Clay County. The United States has prosecuted over thirty defendants in related cases. The United

States contends, and this Court agrees, that due to the extensive publicity of the investigation in the London division, it will take an inordinate amount of time to seat a fair and impartial jury there.

Attached to the United States's motion to transfer are over forty articles from a local newspaper, *The Manchester Enterprise*, which it offers as evidence of the extensive pretrial publicity of the case. These articles, while large in number, represent only a portion of the articles regarding the case found in newspapers circulated within the London division. In addition, during Judge Reeves's hearing on the motion to transfer, Neil Middleton, vice president of news for WYMT-TV, a local news station whose viewing audience includes a large portion of the London division, produced a DVD containing numerous stories the station had run on the investigation. It is also important to note that both Defendants Roberts and Hacker held prominent local offices within the Manchester community. Additionally, Defendant Roberts's mother, Sallie Davidson, owns a realty company that employs sixteen agents and operates in the Whitley, Knox, and Clay county areas, which are all within the London division. Indeed, at the hearing conducted on October 20, 2007, the defendants called several witnesses, all of whom either worked as agents for Ms. Davidson or had some other form of business relationship with her. None of these witnesses lived in Clay County. Finding jurors who have not heard of the

Clay County investigation or who do not know the defendants or Roberts's mother would be an exhaustive, expensive and time-consuming process.

> Fed. R. Crim. P. 18, Place of Prosecution and Trial, provides:
>
> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place for trial within the district with due regard for the convenience of the defendant and the witness, and the prompt administration of justice.

The trial judge has broad discretion in determining the proper place for trial within a district. *United States v. Lewis*, 504 F.2d 92, 98 (6th Cir. 1974); *see also United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999)(when the interests of justice outweigh the expense and inconvenience of transfer, transfer from one division within a district to another is permitted). When the requirements for transfer set forth in Fed. R. Crim. P. 18 are met, transfer of a case from one location within the district to another does not require the assent of the defendant. *Lewis*, 504 F.2d at 98.

This case is currently set for trial in the London division. While trial in the Ashland or Covington divisions would be a great inconvenience to the parties, travel from the London division to the Frankfort division does not present such an inconvenience to the defendants or witnesses as to outweigh the interests of justice that would be served by such a transfer. Because there are no statutory jury divisions within the Eastern District of Kentucky

3

which could restrict transfer, this Court finds that the prompt administration of justice would best be served by transferring the case to the Frankfort division for trial.

## Motion to Disqualify

In their joint motion to disqualify, Defendants Roberts and Hacker request that Judge Reeves disqualify himself from hearing the case, or, alternatively, that he disqualify himself from proceeding on the motion of the United States to transfer the case to another location within the district. Essentially, Defendants' alternative request that Judge Reeves not proceed on the motion to transfer was satisfied when Judge Reeves referred the motion to the undersigned for a ruling; however, Defendants continue to assert that Judge Reeves should be disqualified because his impartiality to preside in this case might reasonably be questioned.

Defendants base their argument that Judge Reeves should be disqualified on statements he made during the course of Kenneth Day's sentencing hearing in London criminal case number 05-cr-30-DCR ("Day sentencing hearing"). The comments of Judge Reeves which Defendants point to as evidencing his bias were made after hearing arguments from both the United States and Day's counsel on the motion of the United States for a downward departure from the Sentencing Guidelines. The comments with which Defendants take issue include, among others, Judge Reeves's statements that: "[I]t was a very large drug conspiracy that was allowed to develop in a

4

culture of corruption in Clay County"; "[T]he only way these type (sic) of conspiracies can exist is for those at the local level to turn their heads"; and "it [the corruption in Clay County] threatens a lot of things, it threatens the join federal-state operations like HIDTA and UNITE." These statements by Judge Reeves were made so as to justify granting Defendant Day a downward departure from the sentencing guidelines based upon his high level of cooperation with the United States's investigation into a complex drug conspiracy.

Because Defendants Roberts and Hacker are charged with conspiracy to distribute drugs in Clay County, they assert that Judge Reeves's comments evince his bias and prejudice toward them. Additionally, Defendants Roberts and Hacker, who were the assistant police chief in Manchester and the 911 Director for Clay County, respectively, state that they are just the types of individuals Judge Reeves was referring to when he discussed the corruption of local officials. Finally, Defendants contend that Judge Reeves's comments about the threat to joint "federal-state operations" can only be viewed as a product of his advocacy for the prosecution.

Title 28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court addressed § 455 and the conditions under which it

5

does and does not require disqualification of a judge. According to the Supreme Court, "opinions held by judges as a result of what they learned in earlier proceedings" are not the type of bias or prejudice that require disqualification. *Id.* at 551. The Court goes on to say that even though a judge who presides at a trial may, at the completion of the trial, be "exceedingly ill disposed" toward the defendant, that disposition, in itself, does not require disqualification of the judge upon remand of the case. *Id.* The Court tempers this proposition by stating that the favorable or unfavorable disposition of a judge may be the type of bias or prejudice that requires disqualification if it is "so extreme as to display clear inability to render fair judgment." *Id.*

The Supreme Court's interpretation of § 455 is best summarized by the following:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* at 555. The Sixth Circuit Court of Appeals "looks to the Supreme Court's decision in [*Liteky v. United States*] to provide the standard for deciding judicial bias claims." *Getsy v. Mitchell*, 456 F.3d 575, 594 (6th Cir. 2006); *see also Williams v.*

*Anderson*, 460 F.3d 789, 814 (6th Cir. 2006).

In support of their motion to disqualify, Defendants rely on *Anderson v. Sheppard*, 856 F.2d 741 (6th Cir. 1988) for the proposition that "not only must litigants actually receive a fair trial, they must also believe they have been given a fair trial." *Id.* at 746. Defendants also quote the *Anderson* Court's statement that "we require not only an absence of actual bias, but an absence of even the appearance of judicial bias." In *Anderson*, which was decided several years before the Supreme Court's decision in *Liteky*, the Court of Appeals reversed the judgment of the lower court due to the judge's bias or prejudice against the plaintiff. In reversing the lower court's order denying Plaintiff's motion for an extension of time to retain new counsel, the *Anderson* Court relied on several comments made by the district judge to the plaintiff, including telling the Plaintiff that had the case gone to trial "the jury would have sent [him] down the tube" and voicing the opinion that the plaintiff was "doing a dumb thing" by attempting to find a third attorney when trial was imminent. *Id.* at 747.

The instant case is easily distinguished from *Anderson* because Judge Reeves's comments do not evidence a clear inability to render fair judgment in the case. Here, Judge Reeves never made comments regarding Defendants Roberts and Hacker. Judge Reeves's statements at the Day sentencing hearing were necessary for finding, by a

7

preponderance of the evidence, that Defendant Day was entitled to a downward departure from the sentencing guidelines, and were not related to Defendants Roberts and Hacker. Consequently, Defendants' joint motion to disqualify is denied.

Accordingly, **IT IS ORDERED:**

(1) that Plaintiff's motion to transfer [Record No. 100] be, and the same hereby is, **GRANTED** and the matter is hereby **transferred to Frankfort for trial;**

(2) that the matter is set for **trial in Frankfort** on **December 5, 2006, at 9:00 a.m.**, subject to intervening Orders of the Court;

(3) that Defendants' joint motion to disqualify Judge Reeves from presiding over the motion to transfer [Record No. 109] be, and the same hereby is, **DENIED AS MOOT**; and

(4) that Defendants' joint motion to disqualify Judge Reeves from the case [Record No. 109] be, and the same hereby is, **DENIED.**

This the 26th day of October, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge