UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 09-16-S-DCR                                     *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.     **RESPONSE OF UNITED STATES TO
DEFENDANT'S MOTION TO SUPPRESS
FRUITS OF SEARCH OF MARICLE RESIDENCE**

RUSSELL CLETUS MARICLE                                                     DEFENDANT

\* \* \* \* \*

The United States, for the reasons set forth below, requests the Court overrule the defendant's motion to suppress the fruits of the search of Russell Cletus Maricle's residence and request for a *Franks* hearing. [Record No. 387]. First, the defendant has failed to meet the heavy burden of showing that the affidavit of Special Agent Briggs contained false statements which were material and that were made intentionally or with reckless disregard for the truth. Second, the affidavit contained probable cause to search the Maricle residence.

## FACTS

On March 16, 2009, at 4:40 p.m., Special Agent Timothy S. Briggs of the Federal Bureau of Investigation, presented a 32-page affidavit in support of his application for a search warrant of the residence of Russell Cletus Maricle[1]. (Exhibit 1, March 16, 2009,

---

[1] On March 16, 2009, Agent Briggs simultaneously applied for warrants for the residences of William Stivers, William Bart Morris and Debra Morris. In addition, on March 19, 2009, the agents executed the arrests of eight subjects all in the Manchester area.

search application, warrant, affidavit).  The residence of Maricle was described in the first application as a two-story, stucco home being located at 393 Circle Drive, Manchester, Kentucky.  During the execution of the arrest warrants on March 19, 2009, agents determined that Maricle's residence was in fact a two-story, brick home on the left at 393 Circle Drive, Manchester, Kentucky.  Agents, after learning that the Maricle residence was across the street, went promptly to Maricle's residence.  Upon arrival, agents knocked and announced their presence.  Agents found no answer and opened the front door.  Members of the household were asleep and upon further inquiry responded to the agents.  Judy Maricle, wife of the Defendant, advised the agents that the Defendant, Maricle, was not home.  Upon request, Judy Maricle gave consent for the agents to conduct a search.  However, before beginning their search Defendant Maricle arrived at the residence and advised that he would not consent to the search.  Defendant Maricle was arrested and Special Agent Briggs returned to Magistrate Wier and presented him with the amended description of the premises to be searched to include the corrected description of the two-story, brick home.  Magistrate Wier, at 11:32 a.m., issued an amended search warrant for the correct premises and agents conducted a search pursuant thereto. (Exhibit 2, March 19, 2009, search application, warrant and affidavit).

In the 32-page affidavit, Special Agent Briggs summarized the affiant's experience including in public corruption and election fraud, the investigation including the numerous recordings by reliable sources, numerous FBI interviews of cooperating defendants and witnesses, sworn plea agreements with factual basis, prior fruits from

2

searches of election fraud subjects, admissions of Maricle to Inside Edition, voter statistics, and other evidence. Special Agent Timothy S. Briggs reported in his affidavit that he has been active in drug, public corruption, and election fraud investigations for the past twelve (12) years and is currently assigned to the Southeastern Kentucky Organized Crime Drug Enforcement Task Force (OCDETF)/Public Corruption Task Force.

## LAW

**1. Properly Described Premises to Be Searched.**

As a general rule the burden of proof is on the defendant who seeks to suppress the evidence. *United States v. Feldman*, 606 F.2d 673 (6th Cir. 1979). Once the defendant has established a basis for his motion the burden of proof shifts to the government. *United States v. Williams*, 604 F.2d 1102 (8th Cir. 1979). The burden of proof is by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 (1974).

The test for determining whether the place to be searched is described with sufficient particularity has two components: (1) whether the place is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort and (2) whether there is a reasonable probability that some other premises may be mistakenly searched. *United States v. Gahagan*, 865 F.2d 1490 (6th Cir. 1989).

In the present case, the Defendant's assertion that the agent's conducted the search of the residence pursuant to the March 16, 2009, search warrant is wrong. There was no search conducted prior to obtaining the amended warrant on March 19, 2009. Agents

3

after learning of the mistaken photo, proceeded to conduct a safety sweep of the Maricle residence for officer safety and executed the arrest of Defendant Maricle. While Judy Maricle, wife of Defendant, gave written consent, the Defendant revoked consent prior to any search. The agents made an amended search application on March 19, 2009, which was sufficiently particular. For instance, the search warrant "attachment A" provides GPS coordinates, mileage, and driving directions, describes the residence as a "two story brick home, with dark shingles, light colored shutters, with wooden deck/porch attached to the right side of the residence, with driveway entering from the right side of the residence." (See Exhibit 2, attachment A). To further describe the subject residence, Agent Briggs attached and incorporated by reference a photo depicting the subject residence. There was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house.

### 2. Affidavit Provided Probable Cause.

Under *Illinois v. Gates*, 462 U.S. 213, 230 (1983), courts are to take a totality-of-the-circumstances approach to the question of whether probable cause existed to believe that incriminating evidence was located in a particular place at the time the warrant was issued. "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false."

*Texas v. Brown*, 460 U.S. 730, 742 (1982) (plurality opinion) *Accord*, *United States v. McClain*, 444 F.3d 556, 569 (6th Cir. 2005) (Probable cause standard requires significantly less than 50% likelihood. In concurrence, Judge Boggs notes that less than 50% is required, but more than 5-10% probability)

In reviewing the affidavit, the test is whether the totality of the circumstances related in the affidavit support the fair probability that the evidence is to be found in the specified premises. *Id.* at 1044. Certainty is not required. *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir. 1996) (probable cause for a search warrant does not require certainty that a crime has been committed or that evidence will be present in the place to be searched). Rather, the facts and circumstances within the officer's knowledge, and of which she has reasonably trustworthy information, are sufficient to establish probable cause. A magistrate judge's finding of probable cause is given "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

This Court should keep in mind that "affidavits in support of search warrants are normally drafted by non-lawyers in the midst of haste and criminal investigation," *United States v. Ventresca*, 380 U.S. 102, 108 (1965), and therefore should be tested and interpreted in a common sense and realistic manner. *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985). "[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept." *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999), *quoting United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996); *United States v. Newton*, 389 F.3d 631 (6th Cir. 2004), *rev'd*

*on other grounds*, *Newton v. United States*, 546 U.S. 803 (2005)(recognizes presumption that, at least for drug dealers, evidence of criminal activity likely reside where they live). See also, *United States v. Hulett*, 22 F.3d 779, 780 (8th Cir. 1994)("Few places are more convenient tha[n] one's residence for use in planning criminal activity and concealing fruits of crime.")

    The Defendant argues that the affidavit relies upon informants who were not sufficiently corroborrated or shown to be sufficiently reliable in the past. However, the affidavit clearly provides both. In the present case, the agent had worked with both known sources, not anonymous tipsters, since March 2007(approximately 2 years). Agent Briggs deemed them reliable as their statements were corroborrated by other witnesses, audio recordings, and independent investigation. It is well settled that anonymous tips require closer scrutiny than hearsay from a known confidential informant. There must be some basis for determining that an anonymous tip is reliable in asserting illegality. It may not be sufficient if only innocent, descriptive information has been corroborated. *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003); Accord, *United States v. Elkins*, 300 F.3d 638 (6th Cir. 2002) (Anonymous tip of marijuana growing in home corroborated by police officers' detection of marijuana smell); *United States v. Mick*, 263 F.3d 553 (6th Cir. 2001) (Insufficiency of proof of three informants' reliability cured by corroboration); *United States v. Tuttle*, 200 F.3d 892 (6th Cir. 2000) (Sixth Circuit reverses order suppressing fruits of warrant-based search due to independent corroboration of unknown informant's tip). See also, *United States v. Sonagere*, 30 F.3d

51 (6th Cir.1994)(specificity of anonymous tip plus some independent corroboration i.e. officers observing two nervous men welding warehouse doors shut, provided probable cause for warrant); *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000)(the Court emphasized that under a "totality of the circumstances" approach, the confidential informant's information need not always by independently corroborated, nor must confidential informant's expertise in a particular offense under investigation be set forth).

The task of the issuing magistrate is simply to make a practical, common sense decision, whether, given all of the circumstances set forth in the affidavit before him, including the "veracity" and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). In the case at hand, Magistrate Wier clearly had a substantial basis for concluding that probable cause existed based upon the track record of the informants, and the independent corroboration provided in the affidavit.

In the affidavit, Source #1 and #2 related among other things that Maricle was responsible for a scheme to commit election fraud by inter alia, organizing meetings in which election officers were recruited, providing others to coach officers on how to steal votes, scheming to buy votes, all in an effort to help elect Maricle's family member as well as others on a "slate" in May 2006. (Ex. 2, pp.7-8 Affidavit of Briggs). This information was corroborated by audio recordings including numerous taped admissions

7

by Maricle on 5/02/07 and 5/04/07. The Defendant argues corroboration is not present in the affidavit.

The Defendant intentionally avoids the "totality of the circumstances" and attempts to "divide and conquer" by arguing that the Court should ignore the multiple interviews of cooperating defendants and individuals including Darnell Hipsher, former City Council member, Richard Todd Roberts, former Assistant Police Chief, Vernon Hacker, former City Council member, Daugh White, former Manchester Mayor, Charles Weaver, former Chief of Manchester Fire Department and Emergency Management, Clinton Johnson, former Clay County Magistrate, Jennings White, former Clay County Clerk, Deshae Henson, Ella Wagers, William Stivers, co-conspirator, taped admissions on May 17, 2007, voter statistics for early voting in Clay County showing over 7 % voted absentee in 2006, and boasting by Maricle to "Inside Edition" of the ease in which votes are bought in Clay County.

As to the tapes, the Defendant argues that the tape of 5/02/07 of Source #1 tape was misconstrued by Agent Briggs and fails to establish that Maricle acknowledged to the Source that he/she would be given assistance in obtaining a job. To the contrary, female CW states "I just want to work a job and go home. I'd be a good drug court counselor you know that . . . he said I'd be the one to get it. . ." Judy Maricle says "you will as soon as one becomes available." (See attached Exhibit 3, P. 54 transcript of 5/02/07; Exhibit 7, audio of 5/02/07; See also Exhibit 3a[2]) 1:49:53. Source #1 "(my spouse thinks) I have

---

[2]The United States is also attaching for the Court's Convenience both transcripts of the May 2, 2007, recordings. Both Source #1 and Source #2 were wearing a wire, therefore, there are 2 audio recordings and 2 transcripts to correspond with the recordings.

8

put my ass on the line, I don't have a job." Source #2 "he has got me covered on a job." Maricle says "you'll get a job." (Exhibit 3, p. 72-73 and Exhibit 7; See also Exhibit 3a). As to the job for Source #1, Maricle acknowledges several other times of his past record in helping out people who help him in elections. Maricle assures the Source that he got Charles "Dobber" Weaver (previously entered his guilty plea to the election fraud scheme in 2006), a job for his assistance in helping Maricle in the election. "I got him the job at the highway department." (Exhibit 3, p. 80 and Exhibit 7; See also Exhibit 3a).

      The Defendant argues the tape fails to support Agent Brigg's conclusion that Maricle promised to give leniency to a brother in a court case. However, the 5/02/07 tape of Source #2 clearly states that Maricle knows what the agreement is and that the attorney needs to only file the motion. (Exhibit 3, p. 65 of transcript and 2:21:41 and Exhibit 7; See also Exhibit 3a). Source states "what about Cork? (Source's brother) I know Anthony (lawyer for brother) didn't get his paperwork in." Maricle responds "he needs to get it down here. . . so I can see what I can do for him . . . how much time has he been in now?" Source answers " a long time." Maricle "**because I know what the agreement was** . . ." (Speaking of reducing the sentence for the family member of Source #1). Id.

      The Defendant argues the tape fails to support Agent Briggs' conclusion that Maricle was obstructing a grand jury investigation. However, on the 5/02/07 tape Maricle advised the witness to stop volunteering information. For instance, Maricle stated to the witness "just don't go off with statements about Jennings (Jennings White, former County Clerk convicted and cooperating) and Vernon (Vernon Hacker, former council member convicted) again." The Defendant added "don't make no statements like

9

that." Maricle stated to the witness "don't go volunteering stuff (to the grand jury)..." Maricle's wife stated "don't tell'em (the grand jury) nothing." Maricle added "Yeah...no." (Exhibit 3, p.23 and Exhibit 7; See also Exhibit 3a).

In accordance with FBI directions, the witness asked Maricle "how would a person answer it (questions by the grand jury) is what I am saying. Do you say I plead the Fifth Amendment on each individual question or do you say I don't know?" Maricle responded "No, if you don't want to answer the question, plead the fifth..." (Exhibit 3, p. 43 and Exhibit 7; See also Exhibit 3a) *United States v. Cioffi*, 493 F.2d 1111, 1118 (2d Cir. 1974)(holding that one who advises a witness to take the 5th amendment with a corrupt motive does obstruct justice).

Maricle further stated to White that "you're going to be alright...don't go down there with any indication that you're going . . . to lay it to this one, (incriminate by testimony) and I'm going to lay it to that one." Maricle further stated "well, I'm, I mean I'm not saying not to tell the truth or anything..but I mean you know; ain't no need... I've got confidence in you..." (Exhibit 3, p. 86-87 and Exhibit 7; See also Exhibit 3a).

The Defendant argues Agent Briggs misconstrued the 5/04/07 recording claiming Maricle did not mention Susan McDougal. On May 4, 2007, Maricle met with the witness and he suggested that he would refuse to answer questions and be willing to go to jail like Susan McNewton (sic) (McDougal) had done for President Clinton. (Exhibit 4, p. 36-37). The witness asked Maricle "would you sit that long (as many months as McDougal) for somebody?" Maricle responded "yes." The witness asked "would you

10

sit that long for me?" Maricle responded "that's right. . . I'll be there for you. . . I will not (talk to the grand jury) (unless) ... I've seen somebody shoot somebody yes (I would testify) as for other things (any other information other than an eyewitness to a shooting), no." (Exhibit 4, p. 38).

    The Defendant argues that Agent Briggs misconstrues the 5/04/07 tape to conclude that Maricle was paranoid of an FBI investigation. However, the affidavit points clearly to Maricle's statement that "forty" FBI agents were on the case. (Exhibit 4, p. 29). The Defendant also ignores the corroboration by Stivers admissions on May 17, 2009. The witness advised Stivers "Let me tell you what I had to do, they asked, they asked me this question and I pled the Fifth Amendment." Stivers responded "that there's the answer for every damn one of 'em." (Exhibit 5, p. 9 & Exhibit 6, Audio Recording). The witness continued to read from a list of questions "Did you change anyone's vote without their consent?" Stivers responded "why no. . . you don't admit to nothing ". . . (Exhibit 5, p. 24 & Exhibit 6, Audio Recording). The witness read another question- "Did Charles Dobber Weaver change anyone's vote without their consent?" Stivers responded "not to your knowledge...no, not to your knowledge . . ." (Exhibit 5, p. 24 & Exhibit 6, Audio Recording). The witness further recited "Was you or anyone else to your knowledge. . . involved in the absentee voting process?" The witness interupted "I just sent people in there to vote on the absentee. . . I took about 10 people. . ." Stivers responded "I wouldn't admit it." (Exhibit 5, p. 25& Exhibit 6, Audio Recording). The witness asked "Do you think this is how Cletus (Russell Cletus Maricle) would want me to answer?" Stivers responded "yeah." (Exhibit 5, p. 30 & Exhibit 6, Audio Recording).

11

The Defendant claims that Agent Briggs affidavit is without support beyond the statements of Sources 1 and 2. However, the Defendant ignores the many admissions on tape by Maricle and Stivers, the records kept in a desk of Maricle and provided by Maricle to the witnesses, the guilty plea of Charles Weaver admitting to the scheme while acting as an election officer, the multiple elected officials and defendants who admitted to the scheme, and the voter statistics, as well as, the boasts of Maricle to "Inside Edition" that 30% of the voters in Clay County are open to bribes.

### 3. Alleged Knowing and Intentional False Statement or Reckless Disregard for the Truth.

> In order to obtain a hearing, **the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth**, **was included** in the affidavit. *Franks*, 438 U.S. at 155-56, 98 S.Ct. 2674. If the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires a hearing be held at the defendant's request. *Id.* at 171, 98 S.Ct. 2674. **The defendant must specifically point to the disputed portions of the challenged affidavit, and must support these charges with an offer of proof.** *Id.* If the defendant meets this burden, the court must then reconsider the affidavit without the disputed portions and determine whether probable cause still exists. **If probable cause does not exist, the court must hold a full evidentiary hearing** to determine whether the affidavit was properly submitted.

*United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002)(emphasis added).

"It is not enough to show that the affidavit contained false information; in order to obtain a Franks hearing, defendants must make a 'substantial preliminary showing' that false statements originated with the government affiant, not with the informants, or that the government affiant repeated stories of informants with reckless indifference to the truth." *United States v. Giacalone*, 853 F.2d 470, 475 (6th Cir. 1988).

12

As to omissions, they are not immune from inquiry but are much less likely to result in a problem of inclusion of false information. *United States v. Martin*, 920 F.2d 393 (6th Cir. 1990). For example, courts have held that even where omissions of fact that witnesses gave prior inconsistent statements would not negate probable cause. *United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004). An alleged omission will rarely justify a Franks hearing. *United States v. Graham*, 275 F.3d 490 (6th Cir. 2001). While within each tape Maricle displays that he is "on guard" and suspicious of the cooperation of the witnesses, it is expected of Maricle considering he has been a judge for almost two decades and a trained and experienced criminal defense lawyer. Moreover, the cooperating witnesses were making these tapes while a family member, Mayor Daugh White, was under federal indictment. Notwithstanding an occassional exculpatory remark which are not required to be included, the recordings are replete with admissions of Maricle which clearly refute the allegations that the affidavit of Briggs contained false statements which were material and that were made intentionally or with reckless disregard for the truth.

Finally, the defendant cannot establish that consideration by the Court of the affidavit minus the alleged false statements would result in the affidavit being without probable cause. *United States v. Campbell*, 878 F.2d 170 (6th Cir. 1989). Under *Illinois v. Gates*, 462 U.S. 213, 230 (1983), courts are to take a totality-of-the-circumstances approach to the question of whether probable cause existed to believe that incriminating evidence was located in a particular place at the time the warrant was issued. In

13

reviewing the affidavit, the test is whether the totality of the circumstances related in the affidavit support the fair probability that the drugs are to be found in the specified premises. *Id.* at 1044.  Certainty is not required. *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir. 1996) (probable cause for a search warrant does not require certainty that a crime has been committed or that evidence will be present in the place to be searched). Rather, the facts and circumstances within the officer's knowledge, and of which he/she has reasonably trustworthy information, are sufficient to establish probable cause.

> **4. Nexus Between the Maricle Residence and the Alleged Criminal Activity.**

This Court should first keep in mind that "to demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).  Moreover, it is clear that "one does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home." *Id.*  In the present case, Agent Briggs outlined in the affidavit that Maricle actually produced records in 2006 from his desk and furnished them to the witnesses.  (Exhibit B, Affidavit p. 29).  Moreover, Briggs stated that in his experience, over 12 years investigating such crimes, that election fraud records are usually kept for a number of years. (Id., p. 30).  Agent Briggs goes on to give case specific examples including a search of Jennings White's, former Clay County Clerk, residence which produced similar records dating back as much as 14 years prior.  (Id., p. 30-31).   Finally,

Agent Briggs outlined his reasons for believing that Maricle had a continued interest in future elections based upon his close family relationship with Mobley, Clay County PVA. (Id., p. 29).

### 5. Staleness.

The Defendant argues that the affidavit is stale since it was 2006 since the witnesses last observed records in Maricle's residence. The Sixth Circuit has found that business records are a type of evidence that defy claims of staleness. *Abboud*, 438 F.3d 574 citing *United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986). Moreover, Agent Briggs outlined a continuing election fraud scheme that spanned 2002, 2004, and 2006 elections. The Court has held that "evidence of ongoing criminal activity will generally defeat a claim of staleness." *Id.* citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001).

### 6. Arrest Warrant and Entry into Residence.

The Defendant argues that even armed with an arrest warrant the agents could not enter the home of the Defendant. It has long been settled that, as long as, the agents are armed with an arrest warrant they may enter the subject's residence. *Payton v New York*, 445 U.S. 573 (1980). In the present case, Maricle, a retired senior judge, was reasonably believed to be in his home at 8:30 a.m. Agents will testify that they properly knocked and announced before entry into the dwelling. Suppression may not be ordered to remedy a violation of the knock and announce rule. *Hudson v. Michigan*, 126 S. Ct. 2159 (2006). *United States v. Smith*, 526 F.3d 306 (6th Cir. 2008)(exclusionary rule does not apply to knock-and-announce violation even when officers had no search warrant).

## CONCLUSION

For the reasons set forth above, the United States respectfully urges the Court to DENY the Motion to Suppress and Motion for an Evidentiary hearing.

        Respectfully submitted,

        JAMES A. ZERHUSEN
        UNITED STATES ATTORNEY


By:   s/ Stephen C. Smith
       Assistant United States Attorney
       601 Meyers Baker Road, Suite 200
       London, KY 40741
       Tel: (606) 864-5523
       Fax: (606) 864-3590
       stephen.smith4@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send notice of filing to all counsel of record.

        s/Stephen C. Smith
        Assistant United States Attorney