UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CRIMINAL ACTION NO. 09-16-DCR

UNITED STATES OF AMERICA,                                                                    PLAINTIFF,

V.         **MAGISTRATE JUDGE'S REPORT**
           **& RECOMMENDATION**

RUSSELL CLETUS MARICLE, ET AL.,                                                          DEFENDANTS.

## I. INTRODUCTION

The Defendant, Russell Cletus Maricle, seeks suppression of all evidence seized from his home during a search performed on March 16, 2009. [R. 387]. For the reasons set forth below, the motion should be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

At 8:45 a.m. on March 16, 2009, federal agents in possession of search and arrest warrants, entered a two-story, stucco home at 393 Circle Drive, Manchester Kentucky, 40962, believed to be Maricle's residence. When they learned that it was a neighbor's home, they proceeded to the Defendant's residence across the street, a two-story, brick home on the left at 393 Circle Drive, Manchester, Kentucky. Upon entry, Judy Maricle, the Defendant's wife advised that Maricle was not home. Although she consented to a search the home, moments later the Defendant arrived and revoked consent to search. Maricle was arrested and officers performed a protective sweep to secure the premises while agents presented an amended search warrant properly identifying the defendant's home to the issuing magistrate judge. "At approximately 11:30 a.m. agents were notified that a corrected search warrant with the correct photo and description of the home had been

signed and agents resumed their search of the residence." [R. 387, p. 3].

Among the Defendant's arguments for suppression is his request for an evidentiary hearing. The Defendant asserts that in the affidavit in support of the application for a search warrant, agents mis-characterized the contents of two recorded conversations with the defendant. These mis-characterizations, the Defendant contends, were intentionally or recklessly made with intent to mislead the issuing magistrate and without them there is no probable cause.

In addition, Maricle contends that as a result of the events of March 16, 2009, his constitutional rights were violated for a number of reasons, including: the warrant did not describe the place to be searched with sufficient particularity; that agents failed to knock and announce their presence before entry; that the affidavit did not establish the reliability of confidential informants or otherwise independently corroborate the information they provided; that the affidavit failed to establish a proper nexus between the residence and the alleged criminal activity, and that the affidavit relies on stale information to establish probable cause.

For the reasons stated below, the motion for a hearing and to suppress should be denied.

### III. ANALYSIS

1. Particularity of the affidavit and warrant.

The Defendant argues that the affidavit did not describe the premises to be searched with sufficient particularity. "The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979), *cert. denied*, 444 U.S. 871 (1979). It is undisputed that

agents initially entered the wrong home when executing the search warrant on March 16, 2009. However, upon identifying the proper residence across the street, the Defendant asserts that " . . . officers forcibly entered Maricle's residence and *began a search*." (emphasis added) [R. 387, p. 5]. The United States contends, and the Defendant does not argue to the contrary, that upon entry into the Defendant's residence, the Defendant's wife initially consented to a search. However, moments later the Defendant arrived and revoked consent. Officers then arrested Maricle, performed a protective sweep to secure the residence, and obtained an amended search warrant properly identifying the Defendant's residence. There is no evidence that the search continued upon Maricle's revocation of consent, and prior to presentation of an amended warrant. In addition, the Defendant does not argue for suppression of any evidence discovered upon entry into the residence and before officers obtained the amended search warrant properly describing the premises. Therefore, as the search was suspended and only resumed upon officers securing an amended search warrant, the Defendant does not present a viable argument for suppression based upon lack of particularity.

    2. Lack of reliability or corroboration.

The Defendant contends that Special Agent Briggs' affidavit is insufficient to establish probable cause because it does not establish the reliability of the confidential sources' information. [R. 387, p. 5]. The Defendant argues that the veracity of the two confidential sources , "Source 1 and Source 2" [R. 387, Ex. p. 6], is unknown, the affidavit fails to establish probable cause as there is no independent corroboration or a demonstrated relationship with the informants. [R. 387, p.6]. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause..." U.S.

3

Const. Amend IV.  Probable cause has been defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois .v Gates, 462 U.S. 213, 238 (1983). Probable cause "is a fluid concept, turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232.  When determining whether an affidavit containing information from a confidential informant establishes probable cause, the Court "must look to the totality of the circumstances, including [the] confidential informant's veracity, reliability, and basis of knowledge..." U.S. v. May, 399 F.3d 817, 822 (6th Cir. 2005) (internal citation omitted).

Of course, reviewing courts must pay "great deference" to the issuing judge's determination of probable cause.  Id. (citation omitted); see also U.S. v. Terry, 522 F.3d 645, 648 (6th Cir. 2008) ("this circuit has long held that an issuing magistrate's decision should only be reversed if it was arbitrarily exercised.") (citation omitted).  Such deference, however, "is not boundless." U.S. v. Czuprynski, 8 F.3d 1113, 1116 (6th Cir. 1993).  Indeed, the Supreme Court has emphasized that courts must continue to "conscientiously review the sufficiency of affidavits on which warrants are issued."  Gates, 462 U.S., at 230.  However, a line by line scrutiny is inappropriate. Gates, 462 U.S., at 246.  "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informat[s'] reliability, courts insist that the affidavit contain substantial independent police corroboration." Frazier, 423 F.3d at 532 (citations omitted.  "As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." U.S. v. Coffee, 434 F.3d 887, 893 (6th Cir. 2006) *citing* United States v. McCraven, 401 F.3d 693, 697 (6th Cir. 2005).

4

In this case, Briggs' affidavit contains facts to support the confidential informant's reliability. For instance, the affidavit states that the sources participated in twenty (20) audio recordings of conversations with subjects of the investigation, at the direction of federal authorities, for the purpose of gathering evidence. [p. 6]. The information in the affidavit that the Defendant made taped statements about securing jobs for others, [p. 13]; that Maricle advised that the sources should not volunteer information before a federal grand jury "just don't go off with statements about Jennings and Vernon again" [p. 13]; making statements that the source should assert the 5th if he/she does not wish to answer a question before the grand jury [p. 13]; and perhaps spend time in jail for refusing to answer questions before the grand jury. [p. 14]; and that he suspected that federal agents were following the sources and Maricle [p. 15].  Finally, the agent presents statistics of absentee voter information showing a spike in absentee ballots for the 2004 general election and the 2006 primary and general elections.  Based upon this information, the undersigned finds that the issuing judge properly concluded that the information provided in the affidavit was reliable, and therefore supports a finding of probable cause.

3.  Maricle's request for a hearing.

The affidavit references recorded conversations with the defendant on May 2, 2007 and May 4, 2007, and at pages 13-15, makes the following statements regarding those conversations:

> During one recording on May 2, 2007, Maricle advised Source #2 to stop volunteering information, "just don't go off with statements about Jennings and Vernon again", (referring to former County Clerk Jennings White, and former City Council member Vernon Hacker, both convicted and cooperating). Maricle added, "don't make no statements like that".  Maricle's wife Judy Maricle stated "don't tell 'em nothing, Maricle added "nothing."
>
> The Source #2 inquired "how would a person answer it is what I am saying." "Do

5

you say I plead the Fifth Amendment on each individual question or do you say I don't know?" Maricle responded, "No, if you don't want to answer the question, plead the fifth . . ."

During a recorded conversation between Source #2 and Maricle on May 4, 2007, Maricle suggests Source #2 refuse to answer questions and go to prison like Susan McDougall had done for President Clinton. Source #2 asked Maricle, "would you sit that long for somebody?" Maricle responded "yes". Source #2 asked, "would you sit that long for me?" Maricle responded "that's right . . . I'll be there for you . . . I wil not . . . (unless) I've seen somebody shoot somebody yes, as for other things, no". (Maricle suggested Source #2 not tell the FGJ any information, short of being the eye witness to a shooting.)

At one point Maricle advised Source #1 and S#2 that they should stop coming to talk to Maricle, and they should seek direction from William Stivers as Maricle was afraid the FBI may be watching Source #1 and #2, or conducting surveillance on them.

\* \* \*

Maricle advised Source #1 and #2 on May 4, 2007, during a recorded meeting, that he believed the FBI was following them and Maricle. Maricle further stated that "forty" agents were assigned to the case and that in his opinion the FBI was listening to his phone conversations.

[R. 387, Ex. C at 13-15].

Maricle requests an evidentiary hearing arguing that Special Agent Briggs, intentionally or with reckless disregard for the truth, mis-characterized the contents of two recorded conversations. Without such mis-characterization, Maricle contends, the affidavit is completely lacking in probable cause. The United States opposes the request for a hearing, relying on the case of United States v. Stewart, 306 F.3d 295 (6th Cir. 2002). Upon review of the matter, the Court finds such reliance appropriate. Stewart was convicted with others of conspiracy to distribute and possess with intent to distribute "crack" cocaine. Id. at 302. Stewart appealed her conviction arguing that the district court improperly denied her request for an evidentiary hearing in violation of Franks v. Delaware, 438 U.S. 154 (1978), after alleging that some statements in an affidavit were either knowingly false,

6

or made with reckless disregard for the truth. Id. at 303-304. The court, upon considering the matter, stated as follows:

> In *Franks,* the Supreme Court recognized a defendant's right to challenge the sufficiency of a previously issued and executed warrant by attacking the statements made in an affidavit in support of the warrant. In order to obtain a hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit. *Franks,* 438 U.S. at 155-56, 98 S.Ct. 2674. If the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Id.* at 171, 98 S.Ct. 2674. The defendant must specifically point to the disputed portions of the challenged affidavit, and must support these charges with an offer of proof. *Id.* If the defendant meets this burden, the court must then reconsider the affidavit without the disputed portions and determine whether probable cause still exists. If probable cause does not exist, the court must hold a full evidentiary hearing to determine whether the affidavit was properly submitted.

Id. at 304-305.

In the instant matter, the Defendant has not shown that the affiant's statements are false or made with reckless disregard for the truth. In fact, although Maricle alleges that statements made in the recorded conversations were mis-characterized, a review of the recordings and the tendered transcripts indicates that the statements were in fact made. Under these circumstances the Defendant has not made the preliminary showing of a false statement, and is not entitled to an evidentiary hearing.

4. Nexus

Next, the defendant argues that there was no nexus between the place to be searched and the alleged criminal activity. Although the government alleges a nexus based on the alleged presence of documents during the 2006 election, the Defendant contends it is unreasonable to believe that any evidence would still be present 3 years later. [R. 387]. A review of the affidavit reveals the

following as matters relevant to the inquiry: (1) That the defendant held regular meetings at his residence to discuss the election bribery scheme; (2) that he maintained a list of registered voters, which was also provided to Source 1 and Source 2; (3) that conversations regarding the matters continued and were recorded during May 2007; (4) that at the meetings, the Defendant, among others, was in possession of documents such as absentee ballots; lists containing the names of voters, lists of political candidates on the slate, lists of elections judges, sheriff's and officers, money for voter bribes, names of persons who applied for absentee ballots, lists of vote buyers, list of vote sellers, lists of candidates, tickers and stickers with "I voted" slogans; and that Source 1 and Source 2 were furnished documents by the Defendant which he produced from a desk inside his residence in 2006 including a copy of the recapitulation sheet for the 2004 General Election and a one page, hand written list of names Maricle believed were subpoenaed to the Federal Grand Jury.

In this case, the Defendant's argument that there is no nexus between the evidence sought and the place to be searched is without merit. The affidavit chronicles meetings allegedly attended by the defendant at which these documents were present, as well as meetings at the Defendant's residence and where he produced documents to the confidential sources. The affidavit clearly presents facts demonstrating a fair probability that evidence of a crime would be located on the premises. Frazier, 423 F.3d at 531. In addition, the nature of the records, records of illegal activity, indicates that they would likely be maintained at the place searched. See U.S. v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006).

     5. Stale information in the affidavit.

The Defendant contends that the information in the affidavit was "stale" and could not

support a finding of probable cause. As stated above, the search warrant was issued in March, 2009, and the recorded conversations were made in May, 2007. However, as the United States points out, evidence of ongoing criminal activity will generally defeat a claim of staleness. U.S. v. Greene, 250 F.3d 471, 481 (6th Cir. 2001)(citing United States v. Canan, 48 F.3d 954, 958 (6th Cir. 1995)). In addition, the United States relies on U.S. v. Abboud, 438 F.3d 554, 574 (6th Cir. 2006) for the proposition that business records are a type of evidence that defy claims of staleness. In the instant matter, the 2004 and 2006 elections formed the basis of the investigation. Recordings made by the confidential sources occurred in May, 2007. In addition, the items of information sought in the search warrant were records of various types that would reveal evidence of ongoing criminal activity. The recordings arguably show a pattern of activity both in the past (as it relates to past elections), in the present (as it relates to the then ongoing criminal investigation and appearance of individuals before the grand jury, and in the future (as it relates to use of influence to secure employment for others). Both because the affidavit shows a pattern of ongoing activity, and the fact that the warrant allowed for search of records within the category of business records, the information in the affidavit and warrant was not stale, and will not form a basis for the motion to suppress.

### 6. Knock and Announce.

Finally, the Defendant seeks suppression of evidence as a result of agents' alleged failure to knock and announce their presence before entering Maricle's residence. However, "[t]he United States Supreme Court and the Sixth Circuit have both recently held that suppression of evidence obtained as the result of unlawful search is not an appropriate remedy for the violation of the knock-

and-announce rule. Hudson v. Michigan, 547 586, 598-99 (2006); United States v. Smith, 526 F.3d 306, 311 (6th Cir. 2008). Rather, a criminal defendant's remedy, if any, is monetary damages under 42 U.S.C. § 1983." United States v. Rivera, 2009 WL 2512849 at *1 (N.D. Ohio, 2009). Therefore, the motion to suppress based upon an alleged violation of the knock-and-announce rule will be denied.

## IV.  CONCLUSION

Therefore, the Defendant's Motion to Suppress [R. 387] should be DENIED. Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 59(b)(2), Fed. R. Crim. P.59(b)(2).

Signed September 25, 2009.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge