UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RUSSELL CLETUS MARICLE, | ) | |
| DOUGLAS C. ADAMS, CHARLES | ) | |
| WAYNE JONES, WILLIAM E. | ) | |
| STIVERS, a/k/a AL MAN, FREDDY W. | ) | **MEMORANDUM OPINION** |
| THOMPSON, WILLIAM MORRIS, a/k/a | ) | **AND ORDER** |
| BART, DEBRA L. MORRIS, a/k/a | ) | |
| DEBBIE, and STANLEY BOWLING, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 2, 2009, the undersigned conducted a preliminary pre-trial conference with all parties present. [Record No. 469] Prior to this hearing, the Court filed the following Notice:

> In light of the extensive pre-trial publicity of this action through various media outlets in the London jury division, the parties are NOTIFIED that, during the preliminary pre-trial conference currently scheduled for September 2, 2009, the Court will address the possibility of transferring the trial of this matter to another jury division within the Eastern District of Kentucky. The parties are expected to address the relevant factors contained in Rule 18 of the Federal Rules of Criminal Procedure with respect to this issue.

[Record No. 437] During the hearing, the United States submitted a number of exhibits in response to the Court's directions and in support of transfer. [Record No. 467] All Defendants

-1-

orally objected to transfer during the September 2 hearing.[1]  Thereafter, the Defendants filed a written, joint response opposing transfer. [Record No. 490]

After reviewing the materials filed by the parties and considering their respective positions, the Court believes that the interests of justice will be best served by moving the trial of this matter to the Frankfort Jury Division.  Further, while this transfer will create some inconvenience for the parties and members of the Defendants' families, such inconvenience does not overcome the Court's strong belief that transfer of the trial is warranted under the circumstances presented.

## I.      Analysis

Trial judges have wide discretion in determining the location of trial within a district. *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974) (citing *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964)).  "Transfer of a particular case from one place within the district to another place within the district is a matter for the local district judges to decide."  *Lewis*, 504 F.2d at 98.  And while either party may make a motion for an intra-district transfer, the Court has the authority to transfer trial to another location on its own.  25 *Moore's Federal Practice*, § 618.22[1], p. 618-27 (3d ed. 2009).

The Court's discretion in making this determination is rooted in Federal Rule of Criminal Procedure 18 and this district's Local Criminal Rule 18.2(b).  Both rules restate the traditional

---

[1]      Defendant Jones filed a written response in advance of the September 2, 2009, preliminary pre-trial conference opposing transfer. [Record No. 459] While recognizing the Court's discretion regarding this issue, Jones argues that this discretion should be tempered by the "convenience of the defendant and witnesses" and the "interests of justice."  He contends that this matter had not received the volume of pre-trial publicity as other cases have received and that no Defendant favors transfer.  [*Id.* at pp. 1-4.]

rule of *forum non conveniens* and vest the trial court with the authority to set the location of the trial based on convenience—for the court, defendant, and witnesses—and the interest of justice. Fed R. Crim. P. 18, E.D. Ky. L. Cr. R. 18.2(b).[2]  The Court may also take into account other factors relevant to a particular case.  *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002); 2 Charles Alan Wright, *Federal Practice and Procedure* § 305, at 383 & n.10 (2009).

A specific factor to be considered under both the federal and local rules is whether transfer will avoid or mitigate the effect of prejudicial pre-trial publicity.  *Lipscomb*, 299 F.3d at 343; *United States v. Roberts*, No. 6:06-82-DCR, 2006 WL 3068807, at *1-2 (E.D. Ky. Oct. 26, 2006).  In *Roberts*, the Court was faced with whether trial of an assistant police chief of the Manchester Police Department should be transferred from London to another jury division within the district due to extensive pre-trial publicity.  After analyzing the relevant factors, Judge Joseph M. Hood of this Court determined that transfer was proper and trial was moved to Frankfort, Kentucky.[3]  As outlined below, the factors that are present here clearly support transfer of this matter to another jury division for purposes of trial.

This case involves a number of well-known former officials from Clay County, Kentucky.  Clay County is located in southeastern Kentucky in the London Jury Division.  In

---

[2]    Transfer of a case to a different district is governed by Rule 21 of the Federal Rules of Criminal Procedure and requires consent of the Defendants.  Where, however, the requirements for transfer set forth in Rule 18 are met, transfer of the case from one location within the district to another does not require such consent.  *United States v. Lewis*, 504 F.2d at 98.

[3]    Roberts later entered a guilty plea prior to the commencement of trial.  The undersigned subsequently presided over other matters in the London Jury Division arising out of the FBI's investigation of corruption, drug activities, and money-laundering in the Clay County area.  *See, e.g.*, *United States v. Wayne Reid, et al.*, U.S. Dist. Ct., E.D. Ky., Southern Div. at London, Crim. No. 6: 07-110.  On September 17, 2008, Wayne Reid, a minister residing in Clay County, Kentucky, and Donna Reid, his wife, were convicted on numerous money-laundering charges.

recent years, a large number of individuals from the area have been convicted and sentenced by this Court.  As discussed more fully below, one of the current Defendants, Cletus Maricle, has served as a state circuit judge for several years in Clay and other counties throughout southeastern Kentucky.  And while there has been a good deal of pre-trial publicity regarding this matter throughout the entire region, the case has drawn more interest in the London, Kentucky, area.

The present matter concerns allegations that the Defendants engaged in a scheme to purchase hundreds of votes from Clay County voters and to defraud other voters by the manipulation of voting machines.  Although jury selection will take a significant amount of time regardless of the ultimate location chosen for trial, the nature of the charges and the evidence to be produced during trial would likely eliminate most—if not all—potential jurors from Clay County.[4]  Clay County is adjacent to Laurel County, and the case has received much attention there as well.  Based on the evidence expected to be presented, the United States will attempt to prove at trial that the Defendants prevented fair elections from being conducted by controlling "slates" of candidates.  Further, it is reasonable to assume that many potential jurors from Clay and surrounding counties will have supported or opposed one or more Defendants or combination of Defendants.  Based on the amount of money allegedly pooled by the Defendants to further the scheme, it is expected that the United States will offer proof that vote-buying in several election cycles was extensive.

---

[4]    In recognition of the fact that the nature of the charges and identity of the Defendants would likely affect all potential jurors from Clay County, Counsel for Defendant Jones inquired during the September 2, 2009, hearing whether the Court could simply eliminate all such jurors from being called for service in this case.

-4-

The United States has submitted copies of numerous articles appearing in local and regional newspapers concerning this case. [Record No. 467, Exhibit 1] While regional newspapers (*i.e.*, the *Lexington Herald-Leader* and *The Courier-Journal* in Louisville) have reported on the proceedings, a far greater number of detailed reports are contained in local papers in the London/Manchester, Kentucky, area. For example, one article from the *Clay County Times* quotes at length from the original indictment. [*See* Record No. 467, Exhibit 1, pp. 3-6] The charges were again repeated verbatim by the local newspaper following the filing of the Superseding Indictment adding Bowling as a Defendant.

Various newspapers have also reported on a related matter in which Richard Brian Hubbard was charged with intimidating and threatening potential witnesses in the current case. Hubbard, an alleged associate of one or more Defendants in this case, initially pled not guilty to the charges filed against him. However, on June 15, 2009, Hubbard pled guilty. In relevant part, Hubbard has admitted that, before sending the threatening message, he and his father met with Defendant Jones and discussed the current case and possible witnesses. [*See United States v. Hubbard*, U.S. Dist. Ct., E.D. Ky., Southern Div., at London, Criminal No. 6: 09-25-DCR; Plea Agreement, Record No. 44.][5] While articles about the *Hubbard* case have appeared regionally as well as locally, the local coverage in the London, Kentucky, area is more in-depth and includes publication of the threatening photograph and message sent by Hubbard to the potential witnesses.

---

[5] Based on pre-trial proceedings conducted in this action, the Court expects the United States also will offer evidence at trial that one or more Defendants have engaged in attempts to influence the outcome of state criminal and civil proceedings.

Further, although the parties have not submitted a list of television newscasts regarding this matter, the Court is aware that several broadcasts have occurred during the same time period as reflected by the newspaper articles. The Court is also aware of numerous local and regional articles and broadcasts regarding individuals from the Clay County area who have been charged and convicted of other crimes and who are expected to testify during the upcoming trial.[6] The actions of these potential witnesses extend beyond Clay County and into the entire southeastern Kentucky region. In this regard, the Court agrees with the arguments advanced by the United States that, with respect to pre-trial publicity, there has been a greater volume of stories in the London, Kentucky, area about this and related cases, and the impact of the stories will have a greater and longer-lasting effect on potential jurors within the London Jury Division. Simply stated, unlike Dallas, Texas, the London Jury Division is composed of several small, rural towns and close-knit communities.[7] Its residents are keenly aware of the federal government's past and continuing investigation and prosecution of individuals involved in drug activity and public corruption in the region.

---

[6] One local newspaper, *The Manchester Enterprise*, has published an edition listing defendants from Clay County who have been charged and convicted in this Court. That edition is not included in the articles submitted by the parties. However, counsel for the United States estimated during the September 2, 2009, hearing that over 60 defendants have been prosecuted in the course of the FBI's investigation in this particular area.

[7] The Defendants cite *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002), in support of their argument that transfer of the present matter to Frankfort would be an abuse of discretion. In *Lipscomb*, the trial court transferred the matter from Dallas to Amarillo, Texas—a distance of over 360 miles. Based on the populations of the respective areas, the information available to potential jurors in the London Jury Division, the relatively modest distance from London to Frankfort, Kentucky, and other factors discussed below, the Court finds the Fifth Circuit's decision in *Lipscomb* is easily distinguished.

Under the circumstances presented here, it should be obvious that the impact of pre-trial publicity upon potential London jurors will be significant, notwithstanding the caution taken by the Court and parties during voir dire proceedings. This case presents a scenario in which jury selection in London will be more than just challenging and arduous. Further, the Court does not believe it would be appropriate as a prophylactic measure to exclude an entire county from the jury pool, as counsel for one Defendant suggests. However, without such wholesale exclusion, the Court does not believe that a fair and impartial jury can be chosen from the London Jury Division.

Additionally, and as noted above, one Defendant (Maricle) has served as a Kentucky circuit judge for a number of years. During the September 2nd hearing, the United States produced evidence that Defendant Maricle has presided over hundreds of cases in Bell, Clay, Harlan, Jackson, Knox, Laurel, Leslie, McCreary, Pulaski, Rockcastle, Wayne, and Whitley Counties as either a regular or special judge. [Record No. 467, Exhibit 2] The United States has also submitted information from the Kentucky Registry of Elections listing the vote totals garnered by Maricle while running for elective office. [Record No. 467, Exhibit 3] While Defendant Maricle[8] is not the only elected official in this case, this information also demonstrates that selecting a fair and impartial jury in the London Jury Division would be extremely difficult and time-consuming even if he were the only Defendant in the case.[9]

---

[8]    Defendant Maricle and his wife also have business interests in other counties in southeast Kentucky.

[9]    The Court anticipates that all eight Defendants will proceed to trial and that trial of the current charges will take approximately eight weeks to complete.

The Defendants oppose transfer, citing primarily the convenience of the Defendants and witnesses and the corresponding increased cost if the matter is transferred to Frankfort, Kentucky, for trial. [Record No. 490] They point to the fact that they will be required to rent hotels and incur other travel-related expenses that would not be incurred if trial remains in London. And in this regard, they contend that the hardship will be particularly onerous for the Defendants who have been found to be indigent for purposes of appointment of counsel under the Criminal Justice Act. They also argue that the pre-trial publicity cited above is an insufficient reason to justify a transfer.[10]

While several Defendants will incur some additional direct costs due to transfer (*i.e.*, meal and hotel expenses), transfer of the trial to Frankfort should reduce indirect costs because many of the attorneys are located in Lexington and Louisville, Kentucky, and will not incur those same costs following the transfer. Five Defendants (*i.e.*, Maricle, Adams, Thompson, William Morris, and Bowling) have retained counsel. Defendant Maricle is represented by one attorney from Corbin, Kentucky, and two attorneys from Cincinnati, Ohio. Defendant Adams is represented by one attorney from Lexington and at two attorneys from Louisville, Kentucky. Defendant Thompson is represented by two Lexington attorneys. And while Defendant William Morris has retained counsel from Richmond, Kentucky, his wife, Defendant Debra Morris, has appointed counsel from Lexington. Finally, Defendant Bowling is represented by retained counsel from

---

[10] The Defendants argue that, if the Court transfers the matter for trial, it should be to the Covington Jury Division to avoid the effect of articles appearing in the *Lexington Herald-Leader*. However, the Court does not believe that the articles appearing in that newspaper will have a prejudicial effect on jury selection or the ability of the parties to receive a fair trial in Frankfort.

Richmond, Kentucky. The attorneys representing the two remaining Defendants with appointed counsel (Defendants Jones and Stivers) are both located in Lexington, Kentucky.[11]

The Defendants also note correctly that lodging and meal expenses for Defendants Debra Morris, Jones, and Stivers will not be paid under the Criminal Justice Act. Likewise, the United States Marshal will only provide one-way transportation for these Defendants at the beginning of trial, if such transportation is directed by the Court. *See* 18 U.S.C. § 4285; *United States v. Gunderson*, 978 F.2d 580 (10th Cir. 1992); *United States v. Sandavol*, 812 F. Supp. 1156 (D. Kan. 1993); *United States v. Forest*, 597 F. Supp. 2d 163 (D. Me. 2009). In fact, the Court has determined that the only subsistence relief available to "indigent" defendants released on bond is through pretrial services. 18 U.S.C. § 3152-56. However, the Court is also mindful of the fact that being unable to afford counsel under the Criminal Justice Act does not necessarily mean that a Defendant is unable to pay other expenses during trial. Thus, in the event Defendants Debra Morris, Jones and/or Stivers seek assistance with lodging and meals during trial, a separate inquiry will be conducted by the United States Magistrate Judge to determine whether housing at a half-way house or other facility under contract with the United States Probation Office would be appropriate. A separate motion by the individual Defendant will be necessary in this regard.

In summary, in light of the parties' assertions regarding costs, the Court believes that transferring the matter to the Frankfort Jury Division is the best option available. Frankfort,

---

[11]    The Court believes that attorneys from Lexington, Richmond, and Louisville, Kentucky, should be able to commute to Frankfort, Kentucky, for trial. Conversely, commuting during trial would not be likely for attorneys from Cincinnati, Ohio, regardless of whether the trial occurs in London or Frankfort.

Kentucky, is approximately 100 miles from London, and it is much closer to the offices of most of the Defendants' attorneys. Although the Court is unable to consider the location of unidentified and unknown witnesses who may be called during trial, it is anticipated that the government will call the vast majority of witnesses. The government has not complained that transfer to Frankfort presents any hardship for the witnesses it intends to call during trial. Further, it will not be necessary for the Defendants to have their witnesses available until the government completes presentation of its case-in-chief. Thus, the greatest inconvenience will be to the Defendants and non-parties who choose to attend trial.[12] And while not insignificant, this inconvenience does not overcome the interests of justice which will be served by a transfer.

Defendants cite extensively to *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002), in support of their argument that transfer is inappropriate here. The defendant in *Lipscomb* was, like several of the Defendants here, a well-known former elected official indicted on corruption charges. *Id.* at 308. Less than a month before Lipscomb's trial was scheduled to begin, the district court, sua sponte and without giving the parties prior opportunity to object, ordered that the trial be transferred from Dallas to Amarillo, Texas, approximately 360 miles away. *Id.* at 338. In its order, the court expressed concern about pre-trial publicity in the Dallas area regarding the case and cited "the prompt administration of justice" as the objective to be served by the transfer. *Id.* No examples of pre-trial publicity were mentioned in the order, nor were any

---

[12]    Frankfort is not the distant land portrayed by the Defendants. Further, the Defendants have not claimed that transfer will be disruptive of any business interests or prevent their access to necessary documents. Instead, when all factors are considered, the additional cost and inconvenience is likely offset by the lesser burden and expense imposed on the majority of the attorneys who reside and practice in central Kentucky. However, notwithstanding the balancing of these costs, the remaining concerns detailed above greatly tip the balance in favor of transfer to Frankfort, Kentucky.

-10-

in the record at the time the order issued. *Id.* The court did not address the inconvenience to the parties that would result from the transfer, except to note that it had "given due consideration of the convenience of the witnesses and the parties." *Id.*

*Lipscomb* is distinguishable on a number of grounds. First, in *Lipscomb*, the increase in distance from the original trial location in Dallas to Amarillo, Texas, was substantially greater than in the instant case. All the defendants, witnesses, and defense attorneys in *Lipscomb* were based in Dallas; to reach Amarillo, they had to drive at least five hours or travel by plane. *Id.* at 340-41. Here, however, the new trial location is less than a two-hour drive from the original location and, as noted above, will be closer for most of Defendants' attorneys, thereby reducing Defendants' costs to some extent. The inconvenience to Defendants and witnesses is thus not as extreme as in *Lipscomb*.

Further, unlike *Lipscomb*, the Defendants in this case had advance notice that the Court was considering transferring the trial to another jury division, and they were given opportunities to present both oral and written objections. [*See* Record Nos. 437, 469] The Court has carefully considered and analyzed the factors weighing against transfer, including inconvenience to Defendants and witnesses, whereas the district court in *Lipscomb* mentioned the defendant's and witnesses' convenience only in passing. 299 F.3d at 340-41. Also, as discussed above, the government has presented, and the Court has considered, extensive evidence supporting transfer of the trial. [*See* Record No. 467] In *Lipscomb*, by contrast, no such evidence was in the record at the time the transfer decision was made, 299 F.3d at 338, and "the district court neither

-11-

identified nor analyzed the publicity that it conclusionally relied on as sufficiently prejudicial" to necessitate transfer. *Id.* at 343.

Finally, Defendants quote *Lipscomb* as support for their contention that "the fact that jury selection may be challenging is not an appropriate factor for the Court's consideration in deciding whether to transfer the case." [Record No. 490, p. 17]  However, the Fifth Circuit's holding that jury selection was an improper consideration in the district court's decision to transfer was based on the language of Federal Rule of Criminal Procedure 18, which calls for consideration of "the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice" prior to an intra-district transfer. Fed. R. Cr. P. 18; *see Lipscomb*, 299 F.3d at 340.  The *Lipscomb* court concluded that Rule 18's provision regarding the "prompt administration of justice," cited by the district judge in support of transfer, was not concerned with the length or complexity of the voir dire process and thus was an improper basis for the district court's decision where all other factors weighed against transfer. 299 F.3d at 342. The Court's decision to move the trial of this case to Frankfort is not motivated by Speedy Trial Act concerns, but rather on a careful analysis of the factors weighing in favor of and against transfer.  In this district, a local rule permits transfer "in the discretion of the Court . . . for the convenience of the Court, the defendant, witnesses, or in the interest of justice." E.D. Ky. L. Cr. R. 18.2(b).  Difficulty in seating a jury in the assigned division is relevant to the issue of the Court's convenience as well as the interests of justice.  Contrary to the Defendants' assertions, it is not an improper consideration in the transfer determination.  In summary, the holding in *Lipscomb* was based upon circumstances that are not applicable here.

-12-

II.    **Conclusion**

Both the Defendants and the United States are entitled to a fair trial by a impartial jury. Having considered the parties' arguments and the materials submitted regarding transfer, the Court has determined that, due to extensive local pre-trial publicity, several Defendants' positions as former local officials, the history of related prosecutions by the government, and anticipated proof of jury tampering to be offered by the United States involving one or more Defendants, justice dictates that the matter be transferred to the Frankfort Jury Division for trial. Under the facts presented, the interests to be served by the transfer clearly outweigh any additional expense and inconvenience to the Defendants, their family members, and potential witnesses. Accordingly, it is hereby

**ORDERED** that the trial of this matter is hereby **TRANSFERRED** from the London Jury Division to the Frankfort Jury Division for purposes of trial.

This 1st day of October, 2009.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**

-13-