UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CRIMINAL ACTION NO. 09-16-DCR

UNITED STATES OF AMERICA,                                    PLAINTIFF,

v.

**DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

RUSSELL CLETUS MARICLE,                                      DEFENDANT.

Now comes Defendant, Russell Cletus Maricle, and respectfully objects to the Magistrate Judge's Report and Recommendation Denying Maricle's Motion to Suppress. In this case, the Government has stretched the contours of the Fourth Amendment beyond the breaking point and clearly beyond any reported opinions from the Sixth Circuit's Fourth Amendment jurisprudence. The warrant at issue in this case was based on speculation and shortcuts by a government agent and was issued without probable cause and in violation of Maricle's constitutional rights.

      I.      **Particularity of the affidavit and the warrant**.

There is no dispute that agents forcibly entered Maricle's home without a valid warrant. It is also undisputed that Maricle's wife, Judy, did not give consent to the agents' entry into the home. The magistrate relies on the improper assumption that Maricle's wife gave consent to agents to search Maricle's residence once agents were already inside of the residence. Agents claim that Judy Maricle gave consent to search the residence while she was being detained in handcuffs in her own living room. However, it is the voluntariness of this consent that must be the subject of an evidentiary hearing. Maricle claims that any consent by Judy Maricle was completely involuntary.

The magistrate judge goes on to say that "[t]here is no evidence that the search continued upon Maricle's revocation of consent, and prior to presentation of an amended warrant." R & R at 3. There is no evidence because the magistrate judge improperly refused to allow Maricle an evidentiary hearing. At the hearing, Maricle intends to reveal that prior to obtaining an amended warrant at approximately 11:30 a.m., agents spent over two and a half hours unconstitutionally present in Maricle's home. An evidentiary hearing will reveal what agents did and when they did it. Without a hearing, it is impossible for Maricle to produce evidence that the search continued upon his revocation of consent and prior to the presentation of an amended warrant. Without a hearing, Maricle can not identify which evidence was discovered upon entry into the residence and before officers obtained the amended warrant.

Furthermore, the agents knew the search warrant was completely defective prior to entering into Maricle's home. The residents of Maricle's home were asleep and there is no indication that they were "tipped off" by the agents' entry into the neighbor's home. There were absolutely no exigent circumstances requiring entry into Maricle's residence prior to the issuance of an amended warrant. Such a blatant disregard for Maricle's constitutional right to privacy must lead this Court to conclude that suppression of any and all evidence obtained as the result of the unconstitutional entry into Maricle's residence, is required. *See Elkins v. United States*, 364 U.S. 206, 217 (1960)(purpose of the exclusionary rule is "to deter – to compel respect for the constitutional guaranty . . . by removing the incentive to disregard it."). At a very minimum, an evidentiary hearing is required in order to supply the Court with the evidence the magistrate judge claims is lacking.

## II. Lack of reliability or corroboration.

An affidavit must contain a sufficient statement indicating why the affiant concluded that the informant was credible and the information reliable. An affidavit does not establish reliability of an informant by simply stating that an informant is reliable. Rather, an affidavit must at least state that the informant has provided reliable information in the past about the same type of criminal activity that is the subject of the warrant.

S/A Briggs attempted to get around the requirement of demonstrating the reliability of the confidential informants by simply making the statement that the informants participated in twenty audio recordings of conversations with subjects of the investigation. However, the affidavit does not state that these audio recordings contained evidence of criminal activity that proved to be true. S/A Briggs attempted to get the issuing magistrate judge to believe that the information provided by the CIs lead to criminal charges, but he does not actually make such a statement. Simply stating that the CI participated in undercover recordings does nothing to establish the CI's reliability. The magistrate judge's reliance on this statement as a sufficient demonstration of reliability is, therefore, misplaced.

The fact that an informant is a person of proven reliability may be sufficient in itself to establish the veracity of the informant's hearsay statements. See *McCray v. Illinois*, 386 U.S. 300, 302-04 (1967). However, because S/A Briggs' affidavit did not establish that the CIs were people of proven reliability, this Court must examine whether S/A Briggs independently corroborated information given to him about Maricle.

The magistrate judge is incorrect in his determination that the undercover tapes corroborate the information given to S/A Briggs by the CIs. There is no discussion or admission by Maricle of his involvement in any of the alleged criminal activity. There is no

3

discussion of meetings that were held at Maricle's home, lists of candidates possessed by Maricle, or anything that would confirm the information given by the informants to the FBI. On the May 2, 2007 tape, the CI was prodding Maricle for advise on how to testify before a grand jury. It is evident from the tapes that Maricle simply told the CI to take the Fifth if she did not want to say anything and to listen to her lawyer. A review of the entire conversation demonstrates that Maricle was not attempting to get the CI to hide information from the grand jury. Furthermore, Maricle did not acknowledge promises on the tapes. The issue of a job for the CI came up numerous times by the CI and Maricle was simply trying to help the CI with ideas on where to find one. At one point he reassured the CI that she would find a job. However, there is no indication that he would be the person to get her a job in exchange for anything.

The magistrate judge is also incorrect in stating that the presentation of statistics indicating a spike in absentee ballots for the 2004 and 2006 elections demonstrates independent corroboration of the information provided by the CIs. First, a spike in absentee voting during the 2004 and 2006 elections is not limited to Clay County. Time magazine reported in September 2008:

> A decade ago, only a handful of states offered early-voting options. Nationwide, 15% of the electorate cast early ballots in the 2000 presidential election. By 2004, 20% did so, and in the 2006 congressional elections, nearly one-quarter of all votes came from early voters.
>
> At the state level, the percentages are even higher. Early voting accounted for almost 30% of Montana ballots in 2006 and 34% of votes in the state's primary this June. In Colorado, county clerks estimate that almost half of active voters in this year's general election will vote before Election Day; in some particularly competitive counties, as many as 60% are expected to vote at early-voting centers.

4

*Virginia Sounds the Starting Gun for Early Voting*, Amy Sullivan, Time Magazine, Sept. 19, 2008 (attached as Ex.1). Clay County's spike in absentee voting does nothing to corroborate the alleged criminal activity of Maricle and his co-defendants.

Furthermore, the allegations in this case concern more than just absentee voting. The CIs advised S/A Briggs that "in the primary and general elections in 2006, votes were to be stolen from voters unfamiliar with the new electronic voting machines utilized in recent elections." Affidavit at 9. With regard to the Morris,' the informants allegedly told S/A Briggs that various individuals would be transported to the polls to cast their votes and then to the Morris' to get paid for their votes during the 2004 and 2006 elections. According to the affidavit, fraud by Stivers, Bishop, and Vernon Hacker with regard to absentee voting occurred in 2002, but the affidavit provides no statistics regarding the 2002 elections.

The magistrate judge was incorrect in his finding that the issuing judge properly concluded that the information provided in the affidavit was reliable and supported a finding of probable cause.

### III. Maricle's request for a hearing.

The magistrate judge incorrectly concludes that Maricle has not made a preliminary showing that the agent's statements were made with reckless disregard for the truth. Maricle argues that S/A Briggs severely mischaracterized and took statements used in the affidavit out of context in order to make them sound incriminating and in order to attempt to corroborate the CIs. The magistrate simply states that a review of the recordings and tendered transcripts "indicates that the statements were in fact made." R & R at 7. However, Maricle never argued that all of

the statements mentioned in the affidavit were not made, but rather that the agent mislead the issuing magistrate by mischaracterizing the statements and taking them out of context.

The *Franks* test also applies when affiants omit material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). Taking statements out of context in order to support a probably cause finding is an omission of material facts with the intent to make an affidavit misleading. Suppression is required when disclosure might have undermined the CIs credibility because the judicial officer who issued the warrant was unable to fully evaluate on a proper understanding, the information provided to him in the affidavit. *Id*.

It is important to understand the context of these conversations. Nowhere on the tape did Maricle acknowledge a promise that he would get one of the CIs a job in exchange for helping to buy votes. Throughout the 3-hour conversation, the CI repeatedly complained about not being able to find a job. Maricle and his wife are heard giving the CI various ideas of where she can find a job and consoling her that she will eventually find a job. However, a review of this conversation reveals that it is not more than an innocent conversation between friends. Also during this conversation, the CI goes on and on about how nervous she was about appearing before the grand jury. Maricle simply told the CI that if she does not want to answer a question, then she can take the Fifth. However, Maricle also tells the CI that she has a good lawyer and that she should listen to his advice. During the May 4, 2007 recording, Maricle did not bring up the topic of Susan McDougal. S/A Briggs attempts to show the issuing magistrate that Maricle was telling the CIs that they should sit in jail like McDougal did for Clinton. However, the CIs are the ones who asked Maricle if he would sit for them like Susan McDougal did.

Maricle has made a preliminary showing of statements made in reckless disregard for the truth and is entitled to a *Franks* hearing.

IV.   **Nexus and Staleness.**

The magistrate judge improperly relied upon an incorrect determination that the May 2007 conversations concerned matters that would establish a nexus between the place to be searched and the alleged criminal activity. These 2007 recorded conversations also do not defeat Maricle's claim of staleness. A review of the conversations will demonstrate that there is no mention of any meetings held in Maricle's home or lists of registered voters maintained in his home. There is absolutely no indication that any documents pertaining to the 2006 election would be found in Maricle's residence in 2009.

V.   **The Arrest Warrant.**

The magistrate judge is also incorrect in determining that the evidence should not be suppressed in this case due to the way the officers executed the arrest warrant for Maricle. The magistrate does not address Maricle's argument that officers may only enter a residence to execute an arrest warrant if they have sufficient evidence to form a reasonable belief that the suspect was inside of the residence. In *United States v. Hardin*, 539 F.3d 404, 410 (6th Cir. 2008), the court held that the defendant's Fourth Amendment rights were violated and suppression was warranted because officers who were executing an arrest warrant failed to establish a reasonable belief that the defendant was inside of the apartment. Officers entered Maricle's home on March 19, 2009 at approximately 9:00 a.m. Officers knew Maricle was a judge who would typically be at work at that time. The government has not established a reasonable belief that Maricle would have been home at the time they executed the warrant.

Accordingly, any and all evidence obtained as the result of their illegal entry into Maricle's home must be suppressed.

For the reasons set forth above and in Maricle's Motion to Suppress, Maricle respectfully moves this honorable Court to sustain his objections to the magistrate judge's report and recommendation, to grant his Motion to Suppress, and/or to grant him an evidentiary hearing.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ Martin S. Pinales<br>Martin S. Pinales (Ohio Bar No. 0024570)<br>Candace C. Crouse (Ohio Bar No. 0072405)<br>*Admitted Pro Hac Vice*<br>Sirkin, Pinales & Schwartz LLP<br>105 West Fourth Street, Suite 920<br>Cincinnati, Ohio 45202<br>Telephone: (513) 721-4876<br>Telecopier: (513) 721-0876<br>mpinales@cinci.rr.com<br>ccrouse@sirkinpinales.com | /s/ David S. Hoskins by MSP w/permission<br>David S. Hoskins<br>107 E. First Street<br>Corbin , KY 40701<br>Telephone: 606-526-9009<br>Fax: 606-526-1021<br>davidhoskins@bellsouth.net |

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing system upon the parties of record, on the 5th of October, 2009.

                                                /s/ Martin S. Pinales

                                                Martin S. Pinales (Ohio Bar No. 0024570)