**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON**

**CRIMINAL NO. 09-16-S-DCR** *ELECTRONICALLY FILED*

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.**    **NOTICE/MEMORANDUM IN SUPPORT
OF ADMISSION OF INEXTRICABLY
INTERTWINED BACKGROUND EVIDENCE**

**RUSSELL CLETUS MARICLE,** **DEFENDANTS**
**DOUGLAS C. ADAMS,**
**CHARLES WAYNE JONES, et. al.,**

\* \* \* \* \*

The United States of America offers the following memorandum in support of the introduction of background evidence which is inextricably intertwined.

## Introduction

The indictment alleges that defendants, Russell Cletus Maricle, Douglas C. Adams, and their co-defendants sought to conduct and control the political process in Clay County, Kentucky, directly and indirectly through the Board of Elections ("the Board"), its election officers, and the offices of County Clerk, Superintendent of Schools, and Circuit Judge, through a pattern and practice of misconduct and illegal acts, including the crimes of bribery, mail fraud, extortion, and obstruction of justice, all for the personal, pecuniary, and political benefit of the defendants and others. Russell Cletus Maricle and Douglas Adams were considered political "bosses," and they used their status to recruit members to the Board and candidates for office.

**Law**

Background evidence does not implicate Fed. R. Evid. 404(b). *United States v. Martinez*, 430 F.3d 317, 334-335 (6th Cir. 2005). Proper background evidence has a causal, temporal, or spatial connection with the charged offense and includes evidence that is (1) a prelude to the charged offense, (2) is directly probative of the charged offense, (3) arises from the same events as the charged offense, (4) forms an integral part of the witness's testimony, or (5) completes the story of the charged offense. *Id.* at 335 (citations omitted).

Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of criminal activity. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Specifically, acts committed by members of a racketeering enterprise are admissible, without 404(b) consideration, if those acts are part of a continuing pattern of illegal activity. *See United States v. Hohn*, 293 Fed. Appx. 395, 402 (6th Cir. 2008) (unpublished) (holding that an act of violence that served to further an enterprises's reputation and power as a "fearsome group" was properly admissible against a defendant who did not personally commit the offense because the act was part of the overall criminal scheme); *United States v. Thai*, 29 F.3d 785, 813 (2nd Cir. 1994) (holding that evidence of an assault committed by defendant, not charged in indictment, was admissible to show the existence and structure of the racketeering enterprise, as to the respective roles played by members, and to show purpose of action in furtherance of the enterprise).

In the context of a RICO charge, evidence of uncharged criminal conduct may be properly introduced to establish the existence, organization, nature, and membership of an alleged criminal enterprise. *United States v. Diaz*, 176 F.3d 52, 80 (2nd Cir. 1999); *See also*

*Thai*, 29 F.3d at 813. This conduct does not require 404(b) analysis because it is part of the very act charged. *Diaz*, 176 F.3d at 80. Evidence may also be admitted, without 404(b) implication, to show the circumstances surrounding events within a racketeering enterprise, or to furnish an explanation as to why certain act were performed. See *United States v. Samet*, 200 Fed. Appx. 15, 21 (2nd Cir. 2006) (unpublished) (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2nd Cir. 1991)).

Evidence not admissible as background may still be introduced under Rule 404(b). A three-step analysis is used to evaluate the admissibility of 404(b) evidence. *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992) (*en banc*). First, a party must demonstrate that other bad acts occurred. *Id.* Next, the party must cite a specific purpose for which the evidence is offered. *Id.* The court then evaluates whether the probative value of the identified purpose outweighs the risk of unfair prejudice. *Id.* Examples of specific allowable purposes are enumerated in Rule 404(b), and include proof of motive, intent, preparation, plan, and knowledge.

The weighing test prescribed by Fed. R. Evid. 403 does not exclude evidence because it is damaging or prejudicial to a defendant's case. It must be "unfairly prejudicial." See *United States v. Centracchio*, 265 F.3d 518, 531-32 (7th Cir. 2001)(probative evidence is always prejudicial in the literal sense of making the defendant look guilty); *United States v. Bonds,* 12 F.3d 540 (6th Cir. 1993); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (abrogated on other grounds) (Rule 403 is not a tool designed "to permit the Court to even out the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none...").

## Other Evidence

As part of their scheme to obtain power and positions, Russell Cletus Maricle and Douglas C. Adams formed relationships with a number of drug dealers in Clay County, Kentucky.

**Kenneth Day**:

Prior to obtaining their leadership positions in the enterprise, both Maricle and Adams served as election officers. Public records show that Maricle, Adams, Stephan Charles, and William Richmond served as election officers in the Burning Springs precinct beginning in 1984. Kenneth Day will testify that both Adams and Maricle bought votes "side by side" with Day during the 80's. Particularly, in the 1983 race between Oscar Gayle House and Clay Bishop for circuit judge, Adams furnished Day $30,000 to purchase votes for Bishop. Maricle was buying votes for House and bid against Day to buy votes at the polls. During election day, Maricle asked Day how much money it would take to get him to go home. In the 1985 race between Corky McKeehan and Mike Hooker, Adams and Maricle both bought votes for Hooker and they were assisted by Day. In 1988, Cletus Maricle and Roy Morgan secured Kenneth Day the appointment as Republican Election Commissioner for Clay County Board of Elections. Day would serve in that position until his arrest in Florida with over 7 kilograms of cocaine in 1997. Day operated as a conduit for Maricle and allowed him to call the shots as to who to appoint as election officers for the Clay County Board of Elections. This arrangement preceded the election of Maricle to circuit judge in November 1990.

In September 1990, Day acting as the legal representative for an estate, proceeded to trial against Gary Runyon for civil damages. Maricle agreed to accompany Day to meet with Preston Henson, husband of a juror, to ensure that the jury not return a verdict for less than $1 million. Day understood that Maricle represented Runyon as his attorney and that Day was to make sure that Runyon did not get indicted for the death if Maricle assisted in fixing the jury. A verdict was returned on September 21, 199, for over $3 million. After the verdict Maricle requested that Day accompany him to Jackson County to show the people in that county that Maricle, a Democrat, had Day's support. Day was the Clay County Republican Election Commissioner at that time.

### J.C. Lawson:

Lawson also formed relationships with Charles Wayne Jones, Stanley Bowling and Cletus Maricle. Lawson was a well known drug dealer who appeared in the Lexington Herald Leader and USA Today boasting of his marijuana trade. In the 1980's Lawson contributed heavily to the campaigns of Maricle and Oscar Gayle House. Lawson advised that Alan Roberts would pick up between $8,000 and $10,000 at a time to be used in the election to buy votes.

In 2002, Lawson was approached by Charles Wayne Jones and Stanley Bowling to buy votes for a slate of candidates. Lawson was paid $500 by Jones and Bowling after the election.

### Inside Edition:

In a 1989 interview with Inside Edition, a copy of which is attached as "exhibit

A", Maricle then Democrat Chairman in Clay County, acknowledged that marijuana was the "number one" cash crop in Clay County and that drugs brought more money than anything else into Clay County. Maricle further stated that the economy in Clay County was "dependent" upon the drug trade for its success. Maricle admitted that marijuana growers influence the elections in Clay County and that "30% of the voters in Clay County can be bought".

In that same year, a Clay County Grand Jury indicted thirteen people including Doug Adams for voter fraud. Cletus Maricle defended Adams. The charges were eventually dismissed. (Clay County Circuit Court Case # 89-CR-147). Adams, working as an election officer, was indicted for having improperly voted one citizen, by not filling out a voter assistance form, and was alleged to have intimidated another voter who failed to vote as Adams requested.

**Eugene Lewis:**

Lewis began as election officer at the request of Cletus Maricle in the late 70's. During the next twenty years, Lewis operated inside the polls as a vote buyer. Maricle and Jones brought candidates to Lewis prior to elections including Roy Morgan and Freddy Thompson with money to purchase votes. Maricle advised Lewis that he would help Lewis if he ever needed anything. Lewis interpreted that to mean his drug trade was protected by the judge. Lewis and Charles Wayne Jones were partners in the marijuana trade for several years while Lewis acted as election officer. Jones and Lewis both were later convicted in federal court for marijuana and drug distribution charges. Lewis was first convicted in 1996 and Jones in 1994.

## Analysis

As outlined above, Maricle, Adams, and Jones began operating in the political affairs of Clay County well before the conduct alleged in the Indictment. Maricle and Adams became political "bosses," and the jury needs to understand the origins. Maricle began by unjustly enriching others within the county through jury fixing. Adams, Jones and Maricle started as vote buyers and election officers themselves before controlling the enterprise and corrupting the voting process in the entire county. Maricle accessed the same mechanism as alleged in the indictment to get himself elected as circuit judge. Maricle continued to foster the enterprise and its activities through the 1990's through voter fraud. This activity "completes the story" of how Maricle and Adams elevated to the status of bosses of the racketeering enterprise, and is, therefore, intertwined with the charged conduct.

Moreover, the referenced evidence would also be properly admitted under Rule 404(b) should the Court find it to not be intertwined background evidence. The evidence would be admissible to show proof of motive, intent, preparation, plan, and knowledge. Maricle and Adams could not rise to the status of a political boss who controls an entire county without a great deal of maneuvering. Maricle's actions in jury-fixing and Adams, Jones and Maricle in prior vote buying show motive, intent, and plan to garner favor with politically powerful individuals. The actions also show preparation in an escalating pattern of gaining corrupt influence within the county.

The alleged RICO enterprise operates as much on community perception as on actual power. Maricle's actions in jury fixing create the perception that he, and therefore

the enterprise, controlled everything that occurred within the county. Then, when a citizen was approached and asked to vote for a slate of candidates blessed by the enterprise, the citizen would be more inclined to submit to the request. For example, given the perceived power of the other alleged political boss, Doug Adams, many witnesses will testify that if Adams, who controlled the school board, was against a candidate, then the candidate had no chance of winning an election. The perceived power of the racketeering enterprise creates the ability to unlawfully influence an entire electorate.

The "Inside Edition" interview shows Maricle's knowledge of the functioning of the enterprise. It shows his awareness, from the genesis of the enterprise itself, that the entire political process can be controlled, and can be maintained and fostered through the income of drug trafficking revenue. The statements made provide insight into Maricle's intent, preparation, and plan, as to how future control of the entire county can occur. The racketeering enterprise, as alleged in the indictment, is the result of this plan.

Jones has a criminal history involving marijuana cultivation and trafficking. He was convicted in 1994 of Conspiracy to Distribute Marijuana. Witnesses will testify to Jones' 20+ year history of marijuana cultivation / distribution. His status as a drug dealer explains his need to participate in the racketeering enterprise. Jones, a long standing drug dealer, had the need to be involved with individuals in a position to expose his drug activity. In turn, Jones was able to provide enterprise members with contacts that could then buy votes – large blocks of votes – in certain areas of Clay County. Jones marijuana trafficking activity establishes his role within the enterprise, provides insight into the

structure of the enterprise, and explains the circumstances surrounding the existence of the enterprise. Under Rule 404(b), Jones' drug trafficking history reveals his intent, preparation, and plan behind being involved in the racketeering enterprise. The evidence is not being offered to show "criminal propensity," as marijuana dealing and the conduct alleged in the indictment are very distinct behaviors. However, one activity fueled the other, and the drug trade in Clay County created the need for the racketeering enterprise that is alleged in the indictment, and provided for a mutually beneficial relationship between the two entities.

## **CONCLUSION**

The United States submits that the proposed evidence is intertwined and provides proper background to the existence and functioning of the racketeering enterprise. In the alternative, the evidence is admissible under Rule 404(b) as proof of motive, opportunity, intent, knowledge, preparation, plan or knowledge.

        Respectfully submitted,

        JAMES A. ZERHUSEN
        UNITED STATES ATTORNEY

BY:   s/ Stephen C. Smith
        Assistant United States Attorney
        601 Meyers Baker Road, Suite 200
        London, KY 40741
        Tel: (606) 864-5523
        Stephen.Smith4@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send notice of filing to all counsel of record.

        s/Stephen C. Smith
        Assistant United States Attorney