UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RUSSELL CLETUS MARICLE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

The United States provided notice of its intent to admit inextricably intertwined background evidence or, in the alternative, to admit the proffered evidence pursuant to Rule 404(b). [Record No. 581] Defendants Maricle, Jones, and Adams filed written objections to the introduction of the evidence and moved to exclude it. [Record Nos. 604, 606, 612, 616]. At the request of several Defendants, a hearing on this matter was held on January 19, 2010. For the reasons discussed below, the Court concludes that most of the testimony the United States seeks to introduce is admissible. However, some items will be excluded.

I.      **Background Evidence**

Proper background evidence, also known as "res gestae" evidence, has a causal, temporal, or spatial connection with the charged offense and includes evidence that is: (1) a prelude to the charged offense, (2) directly probative of the charged offense, (3) arises from the same events as the charged offense, (4) forms an integral part of the witness's testimony, or (5) completes the story of the charged offense. *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005) (*citing United*

*States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).  Background evidence falls outside the parameters of 404(b), so there is no reasonable notice requirement for its admission.  *United States v. Joseph*, 270 Fed. App'x 399, 405 (6th Cir. 2008) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir.2000)).

The Sixth Circuit explained the distinction between acts that are intrinsic to the offense charged – and thus not subject to Rule 404 – and extrinsic "other acts," which are subject to the rule:

> [w]hen the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts, on the other hand, are those that are part of a single criminal episode.  Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity.  When that circumstance applies, the government has no duty to disclose the other crimes or wrongs evidence.

*United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995).

Background evidence includes "those other acts [that] are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."  *Joseph*, 270 Fed.Appx. at 405 (quoting *Hardy*, 228 F.3d at 748).  However, the Sixth Circuit cautions that:

> rather than providing unfettered rein, the definition of background or *res gestae* evidence . . . imposes severe limitations in terms of the temporal proximity, causal relationship, or spatial connections that must exist between the other acts and the charged offense.  Before a court decides whether other acts fall into the "background circumstances" exception to the general proscription against such evidence, it must first analyze the proffered evidence in light of these constraints.

*Hardy*, 228 F.3d at 749.

In addition, the Sixth Circuit has held that evidence which constitutes "a continuing pattern of illegal activity" is not considered an "other act" and, therefore, is not governed by Rule 404(b).

*See United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000).[1] The *res gestae* exception is most often applied in conspiracy cases. *United States v. Rice*, 90 Fed. App'x 921, 924 (6th Cir. Feb. 20, 2004) (unpublished). In *Buchanan*, the defendant was charged with participation in a drug conspiracy stretching from 1990 to 1997. During trial the district court admitted evidenced that the defendant sold drugs to an informant in 1994 and that police had seized drugs from him in 1990. The Sixth Circuit held that Rule 404(b) did not apply because the evidence showed a continuing pattern of illegal activity associated with the charged drug conspiracy. *Id.* By contrast, in *Hardy*, the Sixth Circuit held that drug transactions carried out by the defendant and an alleged co-conspirator six years before the charged conspiracy began could not be admitted as background evidence, because this evidence lacked a close enough connection to the charged events. 228 F.3d at 749–51.

In the present case, the United States seeks to introduce testimony from Kenny Day, Eugene Lewis, and J. C. Lawson. Kenny Day, a former Clay County Republican Election Commissioner. Day seeks to testify that Maricle and Adams bought votes in a 1983 election and that Maricle was involved in influencing a juror in September 1990. Eugene Lewis will testify that in the late 70's-90's, he operated as a vote buyer at the request of Defendants Maricle, Jones and Thompson. J.C. Lawson will testify that he contributed to Maricle's campaign in the 1980's and that he was approached by Charles Jones and Stanley Bowling to buy votes and was either paid or reimbursed $500 by Stanley Bowling immediately after an election. The government further seeks to introduce evidence that Maricle served as Doug Adams's defense attorney when Adams was charged with

---

[1] The Second Circuit has long held that "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other act' within the meaning of Rule 404(b); rather it is part of the very act charged." *United States v. Quinones*, 511 F.3d 289, 308 (2d Cir. 2007) (quoting *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992)).

voter fraud/voter intimidation in 1989. In addition to this testimony, the United States seeks to introduce an "Inside Edition" telecast from 1989 during which Maricle, then a local attorney, provided his perspective on the pervasive drug operations and related corruption in Clay County.

### A.    Kenny Day's Testimony

During the evidentiary hearing held on January 19, 2010, Kenny Day testified that Defendants Adams and Maricle bought votes "side by side" with him during the 1980's. According to Day, during a 1983 judicial election contest involving Oscar Gayle House and Clay M. Bishop, Adams furnished Day with money to purchase votes for Bishop. Day testified that Maricle was buying votes for House and bidding against Day to buy votes at the polls. Day further testified that, on the day of the election, Maricle asked him how much it would take to get him to go home.

Day also testified that during a 1985 race involving Corky McKeehan and Mike Hooker, both Adams and Maricle bought votes for Hooker and were assisted by Day. According to Day, in 1988, Maricle and Roy Morgan secured for Day the appointment as Republican Election Commissioner for the Clay County Board of Elections. Day would serve in that position until his drug-related arrest in Florida in 1997.

Day testified that he received a list from Maricle regarding who should be appointed as election officers for the Clay County Board of Elections. This arrangement preceded the election of Maricle as circuit judge in November 1990.

Day further testified that, during September 1990, and while acting as the legal representative for an estate in an civil action involving Gary Runyon as a defendant, he and Maricle approached Preston Henson (the husband or ex-husband of a juror) to ensure that the jury would return a civil

verdict in excess of $1,000,000.[2]  At the time of this activity, Day understood that Maricle represented Runyon as his attorney.  In exchange for fixing the verdict in the civil case, Day testified that he would not take action to cause Runyon to be indicted for the death which was the subject of the civil action.  The United States offered independent proof that a civil verdict was returned on September 21, 1990, for over $3,000,000 in the civil action.  Day testified that, in Clay County, the old adage "you scratch my back, I scratch yours" applies when dealing with Adams and Maricle.

The United States seeks to offer this testimony to show the origins of the enterprise, as charged, and the roles of the respective members of the enterprise.  It contends that this evidence "completes the story" of how the enterprise formed, and establishes its existence, organization, and membership. *See United States v. Diaz*, 176 F.3d 52, 80 (2nd Cir. 1999).  To "complete the story," the United States argues that it must explain how Maricle and Adams worked their way up through the "ranks" of the enterprise to become "political bosses."  According to the United States, to work their way up the "ranks," Adams and Maricle bought votes and served as corrupt election officers.  Maricle also worked his way up the ranks by unjustly enriching others within the county through jury tampering.  According to the United States, these activities "complete the story" of how Maricle and Adams were elevated to the status of bosses within the racketeering enterprise.  Thus, it asserts that this evidence is intertwined with the charged conduct.

The Defendants object to the admission of Day's testimony because, they claim, it: (1) does not qualify as background evidence; (2) is not relevant; (3) is untrustworthy or false; and (4) is more prejudicial than probative.

---

[2]  During the January 19, 2010, hearing, Day referred to returning a "guilty" verdict.  The Court assume that Day, a lay person, intended to refer to a verdict of liability with an accompanying damage award.

1.     <u>Background Evidence</u>

The Defendants assert that Day's testimony does not qualify as background evidence because the events outlined in his testimony (*i.e.*, vote-buying and jury tampering) do not establish the inception of the conspiracy charged in the Superseding Indictment; do not help "complete the story"; do not have a proximate temporal connection to the dates of the charged conspiracy to be considered "background evidence"; and do not connect to the charges alleged. The United States does not assert that the inception of the conspiracy occurred in the 1980's with Maricle and Adams participating in vote-buying. Instead, the government contends that this activity was the origin of Maricle and Adams joining in the enterprise and working their way up through the ranks to become "political bosses."

The Defendants further argue that the testimony from Day regarding the alleged tampering with a juror is not connected in any way to the vote-buying alleged in the Superseding Indictment. Yet, the claimed jury tampering was also an activity allegedly committed by Maricle as a power play for him to work his way up to become a "political boss."

The allegation that Maricle was gaining favor with politically powerful individuals in an escalating pattern of gaining corrupt influence within the county is relevant to the charges contained in the Superseding Indictment. Moreover, the Superseding Indictment charges the Defendants with more than vote-buying. It specifically sets forth acts such as extorting money from candidates, falsifying elections results, and changing votes at the voting machines. Given the extensive nature of the conspiracy, it is necessary for the United States to show the incidents leading up to it. Day's testimony describes the acts that are a prelude the conspiracy charged and "complete the story."

Such evidence certainly helps to explain why one would participate in a pattern of racketeering activity, consisting of acts of mail fraud, extortion, bribery and obstruction of justice.

There is no question that a substantial period of time has passed since the alleged vote-buying of the 1980's and alleged jury tampering in 1990. This is significant because background evidence requires a close "causal, temporal, *or* spatial connection" between the evidence and the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (emphasis added). However, a lack of temporal connection is not necessarily decisive on the question of whether the evidence qualified as background evidence. *United States v. Rice*, 90 Fed. App'x 921, fn2 (6th Cir. 2004) (no temporal connection when six months lagged between background evidence and charged offense, but was still background evidence). Approximately nineteen years passed from the 1983 election to the start of the charged conspiracy in 2002 and twelve years passed from the date of the alleged jury tampering in 1990. At first glance, this conduct may seem to lack a sufficient temporal connection. However, a person cannot commit a crime in an election or attempt to fix a jury every day. After all, few civil cases go to trial and elections are not held every day. Further, not every election will be contested. Thus, the time lapse must be viewed in light of the facts presented in a particular case. The Defendants' argument that the events in Day's testimony are too remote to be considered "background evidence" would be more compelling if this case alleged a routine drug conspiracy because crimes dealing with drugs can be committed everyday. However, by their very nature, alleged criminal activity involving vote buying and jury tampering require events beyond the control of the person charged.

The United States explains that there is a causal connection between the evidence and the charged offense. Evidence that shows the circumstances from which the conspiracy arose, such as

-7-

a description of the personal relationships and events in which the conspiracy took root, is proper background evidence. *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000); *United States v. Reyes*, 51 Fed. App'x 488, 494 (6th Cir. 2002). And both are present here. The origin of Maricle's and Adams's participation in these activities provide a causal connection to the alleged RICO conspiracy from March 2002 to July 17, 2007. In addition, the description of Maricle and Adams shows their personal relationship with one another that led to the alleged RICO conspiracy.

### 2.    Relevancy

The Defendants also contend that Day's testimony is irrelevant. "Relevant evidence" is evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Since the testimony qualifies as background evidence to explain how Maricle and Adams became "political bosses" and shows their relationship, it clearly meets the relevancy standard.

### 3.    Untrustworthy or False

Next, the Defendants argue that Day's testimony is untrustworthy and/or false because he is a convicted drug dealer and was an admitted drug user for many years. While the Court must make a preliminary determination under Rule 404(b) that there is sufficient evidence that the alleged evidence occurred, *See United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008), there is no such requirement in a "background evidence" analysis. However, the purpose of the Federal Rules of Evidence is to ascertain the truth. Fed. R. Evid 102. This Court would not permit the admission of evidence it found to be untrustworthy or false. However, the fact that the testimony is from a convicted felon who used drugs and is hoping for a reduction in sentence does not make the

testimony inherently unreliable. *Thompson v. U.S.*, 2006 WL 1129377 (M. D. Tenn. 2006) (not published) (citing *United States v. Ware*, 161 F.3d 414, 421 (6th Cir. 1998) ("No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." (quoting *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987)).

The fact that Day is a convicted felon, has used drugs, and is hoping for a reduction in sentence are fair game for cross-examination, but it does not make the testimony untrustworthy or false. The United States provided other evidence supporting and corroborating Day's testimony. In summary, the Court does not find Day's testimony to be untrustworthy or false under the analysis that must be undertaken.

### 4.    More Prejudicial than Probative

The Defendants also claim that Day's testimony is more prejudicial than probative and, therefore, should be excluded. The Defendants correctly note that, even if the evidence is admissible as background evidence, it must overcome a Rule 403 determination. Fed. R. Evid. 403 states, in relevant part, that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence is not excluded because it is damaging or prejudicial to a defendant's case; it must be "unfairly prejudicial." *See United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993).

Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403. *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (*citing United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)). Clearly, Day's testimony

is damaging to the Defendant's case. However, it is probative because it will provide a more complete picture of the origins of the conspiracy allegedly involving Maricle and Adams. With respect to this issue, the Court concludes that the probative value of the testimony is not outweighed by the dangers of unfair prejudice. Thus, Day's testimony will not be excluded under Rule 403.

### B.    Eugene Lewis's Testimony

The United States asserts that Eugene Lewis  was a vote buyer for nearly twenty years starting in the late 1970's. Around 1980, he became an election officer at the request of Cletus Maricle. He continued in this position until approximately 1994. According to Lewis, Defendants Maricle and Jones brought candidates to him (including Roy Morgan and Freddy Thompson) prior to elections with money to purchase votes.

Lewis also testified that Maricle agreed to help if Lewis ever needed his assistance. Lewis interpreted that to mean his drug trade was protected by Maricle through his position as circuit judge. Lewis and Jones were partners in the marijuana trade for several years while Lewis acted as election officer. Later, Jones and Lewis were convicted in federal court for marijuana and drug distribution charges. (Lewis was initially convicted in 1996 and Jones in 1994.)

The United States seeks to offer this testimony for a similar purpose as Day's testimony: to show the origins of the enterprise and the roles of the respective members of conspiracy. The government contends that this evidence "completes the story" of how the enterprise formed, and establishes the existence, organization, and membership of the enterprise. *See United States v. Diaz*, 176 F.3d 52, 80 (2nd Cir. 1999). To "complete the story," the United States argues that it must explain how Maricle and Jones became involved in the enterprise and participated in corrupting the

-10-

voting process in the entire county. According to the government, to work their way up the "ranks," Maricle and Jones bought votes and served as corrupt election officers.

The money used to buy votes allegedly originated from Jones's joint ownership in a farm in Henry County where marijuana was grown. According to the United States, Maricle gave the impression that Lewis's drug trade would be protected by Maricle. Further, it asserts that this activity helps to "complete the story" of how Maricle and Jones were elevated to the status of bosses within the racketeering enterprise. Thus, it contends that the testimony is intertwined with the charged conduct.

Again, the Defendants object to the admission of Lewis's testimony for the same reasons that they objected to Day's testimony. They argue that this proposed testimony: (1) does not qualify as background evidence; (2) is not relevant; (3) is untrustworthy and/or false; and (4) is more prejudicial than probative.

### 1.    Background Evidence

The Defendants do not assert any new or specific reasons regarding their argument that Lewis's testimony does not qualify as background evidence. However, the burden is still on the United States to show that the testimony constitutes background evidence. The government contends that the activities alleged by Lewis show the origin of Maricle and Jones joining in the enterprise and working their way up the ranks to become "political bosses." It is alleged that Maricle was gaining favor with politically powerful individuals in an escalating pattern of gaining corrupt influence within the county by using a drug dealer and his money to buy votes. The fact that Maricle chose Lewis to be an election officer further shows their relationship.

-11-

The United States also contends that Maricle gave the impression to Lewis that his drug trade would be protected through his position as circuit judge. Lewis's testimony additionally shows one source of Jones's money (*i.e.*, the farm where marijuana was grown) which was used to participate in vote-buying. Likewise, this testimony establishes the relationship between Maricle and Jones. The testimony also shows Defendant Thompson's role in the enterprise because Maricle and Jones allegedly brought him to Lewis with money to purchase votes. Given the extensive nature of the conspiracy that has been alleged, it is necessary for the United States to show the incidents leading up to it and the role of each respective member. Lewis's testimony describes the acts that are a prelude the conspiracy charged and "complete the story."

Again, the Court notes that the testimony sought to be offered by Lewis relates to a time several years before the events charged in the Superseding Indictment. However, for the same reasons discussed above, the apparent lack of temporal connection must be viewed in light of the specific facts presented. The length of time between the alleged activities involving Lewis and the charged conspiracy is a factor to be considered, but it does not prevent the testimony from being admitted as background evidence. Using drug proceeds to purchase votes obviously requires an election. Further, choosing corrupt election officers and buying votes are crimes that cannot be committed every day. Background evidence requires a  "causal, temporal, *or* spatial connection" between the evidence and the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (emphasis added). However, the Defendants' arguments that the events described in Lewis's testimony are too remote to be considered as "background evidence" are not persuasive.

And again, the government explains that there is a causal connection between the evidence and the charged offense. Evidence that shows the circumstances from which the conspiracy arose,

-12-

such as a description of the personal relationships and events in which the conspiracy took root, is proper background evidence. *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000); *United States v. Reyes*, 51 Fed. App'x 488, 494 (6th Cir. 2002). Both are present here. The origins of Maricle's and Jones's participation in these activities provide a causal connection to the alleged RICO conspiracy from March 2002 to July 17, 2007. In addition, the testimony concerning Defendants Maricle, Jones, and Thompson is relevant to establish their personal relationship with one another that led to the alleged RICO conspiracy, as well as their individual roles in the enterprise.

The United States must next meet its burden in showing how Jones's conviction in federal court for marijuana and drug distribution in 1994 is inextricably intertwined. Evidence of a conviction can be utilized as background evidence to "complete the story," *see United States v. Olds,* 309 Fed. App'x 967, 974 (6th Cir. 2009). However, it must be integral to the story and necessary to complete the story of the charged offense, *see United States v. Joseph*, 270 Fed. App'x. 399, 405 (6th Cir. 2008). In the present case, the United States has a taped recording of Maricle telling a cooperating witness that Jones "has been tried and tested."[3] The government intends to show that this means the cooperating witness can count on Wayne Jones because he has gone to trial twice and gone to jail once in the past, and Maricle knows this because he represented him in the first trial for federal bank robbery in 1978.[4] The government contends that this evidence shows the ability of this organization to intimidate and control its members, which was why it was so successful.

---

[3] The admissibility of this tape as an alleged co-conspirator statement is discussed in a separate order.

[4] The United States does not list Maricle's representation of Jones in the federal bank robbery case in its notice regarding background evidence. The government only seeks its introduction to explain the taped conversation. [Record No. 659] Thus, the Court will only rule on its admissibility as it relates to the admissibility of the taped conversation.

-13-

Without evidence that Maricle represented Jones in the first trial for federal bank robbery in 1978 and evidence of Jones's 1994 conviction for marijuana and drug distribution,[5] the United State would be left with an incomplete story. Thus, if the government can meet the requirements to have this tape conversation admitted, then the evidence that provides an explanation and understanding of the taped conversation can be admitted as background evidence.

2.    Irrelevant, Untrustworthy, and Unfairly Prejudicial

The Defendants make the same argument that Lewis's testimony is irrelevant, untrustworthy, and unfairly prejudicial. For the same reasons contained in the analysis of Kenneth Day's proposed, the Court concludes that Lewis's testimony is not irrelevant, untrustworthy, or unfairly prejudicial. Again, this testimony "completes the story" of the charged conspiracy and, therefore, is relevant.

The Defendants contend that Lewis's testimony is untrustworthy because he is a convicted drug dealer, is hoping for a reduction in sentence, and has given conflicting stories as to whether he discussed cooperating together against witnesses with Day. However, as the Court has previously indicated, the testimony of a convicted drug dealer hoping for a reduction in sentence is not inherently unreliable. Instead, these issues are the proper subject of cross-examination during trial.

During the January 19, 2010, evidentiary hearing, Lewis was asked, "What did you [and Kenny Day] talk about regarding what you were going to do to cooperate with the United States

---

[5]  The United States does seek to introduce Jones's 1994 conviction for marijuana and drug distribution through Lewis's testimony as background evidence. This evidence is not admissible as background evidence because it does not "complete the story" of the charged conspiracy. However, it is admissible to explain Maricle's statement in the taped conversation. Thus, this evidence is only admissible if the taped conversation is admitted.

[while cell mates] regarding what was going on in Clay County?" Lewis responded, "zero." When asked again, Lewis responded that they "never mentioned that to one another." When further pressed Lewis agreed that he and Day did not talk about how they could cooperate and who they could cooperate against to get their sentences reduced. However, Lewis apparently gave an earlier statement that Day told him that he could "give information" on a number of people. Lewis was never given the opportunity to clarify these two statements. While the answers seem conflicting, given the line of questioning, Lewis could have been assuming, as Special Agent Timothy Briggs pointed out, that the question was referring to cooperating against individuals who committed election fraud or "cooperating" and "giv[ing] information" could mean different things to Lewis. Regardless, the Court views this topic as a issue for cross-examination. However, it does not render his testimony inadmissible as being untrustworthy. The Court further notes that the United States provided other evidence supporting Lewis's testimony. In summary, the Court does not find Lewis's testimony to be untrustworthy.

The Defendants also claim that Lewis's testimony is more prejudicial than probative and should be excluded. While Lewis's testimony does paint the Defendants in a bad light, it has probative value because it offers a more complete explanation as to the origins of how Defendants Maricle and Jones became involved in the alleged RICO conspiracy. The probative value of the testimony is not outweighed by the dangers of unfair prejudice. Thus, Lewis's testimony will not be excluded under Rule 403.

### C.    J. C. Lawson's Testimony

The United States seeks to offer the testimony of J. C. Lawson to establish that he was a well-known drug dealer whose exploits were described in articles in the *Lexington Herald Leader*

and *USA Today* newspapers. Lawson seeks to testify that, shortly after the article was first published in the *Lexington Herald Leader*, he was asked by Alan Roberts (a known long-time vote-buyer) for campaign contributions for Defendant Maricle and Oscar Gayle House. If permitted, Lawson will testify that he gave Roberts $8,000 to $9,000 from profits in his drug business for these campaigns. However, during the evidentiary hearing, Lawson was unable to state whether Roberts gave any of the money to Maricle. Instead, Lawson testified that he believed that his campaign contribution helped to "keep the law and stuff off [his] back." Lawson also testified that he hauled voters to the polls and paid them to vote in numerous elections.

Lawson also testified that, on one occasion, he observed Charles Wayne Jones tending to a marijuana crop near Lawson's own crop. Additionally, he observed Jones in Maricle's courthouse office on a couple of occasions. Lawson will testify that, in 2002, he was approached by Charles Wayne Jones to buy votes for a slate of candidates. Afterwards, Lawson was approached by Stanley Bowling to help buy votes for him and was either paid or reimbursed $500 by Bowling shortly after the polls closed. The United States intends to offer this testimony for the same purposes as discussed above. And the Defendants make the same objections to its admission.

1.   Background Evidence

Again, the United States contends that the activities alleged by Lawson show how Maricle rose to power as a "political boss" in Clay County. The United States is seeking to introduce this testimony to establish a casual connection to the charged offense. In other words, the assertion that Maricle had Roberts solicit money from Lawson after the newspaper article appeared in the *Lexington Herald Leader* is allegedly relevant to show Maricle's willingness to enlist the help of known drug dealers in exchange for the protection and assistance he could provide.

-16-

The Defendants argue that the testimony that Lawson contributed to Maricle's campaign in the 1980's is not substantially similar to the charges in the Superseding Indictment. However, this allegedly provides an example of how Maricle utilized drug profits to rise to power. Lawson's lack of knowledge regarding whether Maricle received the money is the proper subject of cross-examination; however, it does not prevent the admission of this testimony. In addition, the fact that Lawson felt he received protection in exchange for his contribution is also relevant to the relationship between Lawson, a drug dealer, and Maricle. Testimony regarding Lawson witnessing Jones grow marijuana also demonstrates his role in the enterprise and explains the source of the funding used to purchase votes. The United States can offer this testimony to "complete the story" of the origins of the enterprise, as charged, and the roles of the respective members. The objections relating to temporal connection have been throughly discussed, and the Court's earlier findings and conclusions are adopted as they relate to Lawson's testimony.

The testimony regarding activities occurring in 2002 is admissible as background evidence or substantive evidence of the conspiracy. The Superseding Indictment accuses the Defendants of conspiring from March 2002 to July 17, 2007, to participate in the conduct of the Clay County Board of Elections through a pattern of racketeering activity, which consisted of acts of mail fraud, extortion, bribery and obstruction of justice. The Superseding Indictment specifically sets forth acts such as vote buying, changing votes at the voting machines, extorting money from candidates, and falsifying elections results. The 2002 events mentioned in Lawson's testimony fall within the time frame of the charged conspiracy and are specifically mentioned as the type of acts committed by the enterprise. Even if the activities are not alleged to be part of the conspiracy, the evidence can be admitted to "complete the story" because they are clearly related to the charged conspiracy.

-17-

2.    Irrelevant, Untrustworthy, and Unfairly Prejudicial

The Defendants also argue that Lawson's testimony is not relevant, untrustworthy, and unfairly prejudicial. For the same reasons discussed above the Court rejects the Defendants' arguments with respect to this testimony. Instead, the Court concludes that this proposed testimony "completes the story" of the charged conspiracy and is relevant to the crimes charged in the Superseding Indictment. The Defendants also contend that Lawson's testimony is untrustworthy because he is a convicted drug dealer and is hoping for a reduction in sentence. However, for the reasons discussed above, the Court disagrees with the position the Defendants have advanced.

Likewise, the standard for excluding evidence pursuant to Rule 403 has been previously outlined. While Lawson's testimony does paint the Defendants in a bad light, it is probative because it provides a more complete explanation regarding how Defendants Maricle and Jones became involved in the criminal conduct alleged. It also explains their respective roles in the alleged RICO conspiracy. The testimony is also relevant to Bowling's involvement and role. The probative value of the testimony is not outweighed by the dangers of unfair prejudice. Thus, Lawson's testimony will not be excluded under Rule 403.

### D.    Maricle's Representation of Adams

A Clay County Grand Jury indicted thirteen people, including Doug Adams, for fraudulent and/or intimidating conduct in connection with a Clay County election. Maricle defended Adams. Adams, working as an election officer, was indicted for having improperly voted one citizen (*i.e.*, by not filling-out a voter assistance form), and was alleged to have intimidated another voter who failed to vote as Adams requested. The charges were eventually dismissed.

-18-

The United States seeks to introduce evidence that Maricle served as Doug Adams's defense attorney when Adams was charged with this improper conduct in 1989. The Defendants argue that the fact that Maricle served as a defense attorney for Doug Adams on a vote-buying case that was dismissed does nothing to show that Maricle and Adams were "political bosses" of Clay County or engaged in any of the acts alleged in the Superseding Indictment. The fact that Maricle represented Adams in a criminal case demonstrates a relationship between the two defendants. However, the fact that the charge was for voter fraud is not necessary to "complete the story." Thus, the United States can illicit testimony or admit evidence showing that Maricle represented Adams in a past criminal charge but cannot admit the nature of the charge as background evidence.[6]

### E.    Inside Edition

The United States also seeks to introduce a report from a 1989 television broadcast of "Inside Edition," during which Maricle, then a local attorney, provided his perspective on the pervasive drug operations and corruption in Clay County. In this broadcast, Maricle acknowledged that marijuana was the "number one" cash crop in Clay County and that drugs brought more money than anything else into the county. Maricle further stated that the economy in Clay County was "dependent" upon the drug trade for its success. Maricle also states that marijuana growers influence the elections in Clay County and that "30% of the voters in Clay County can be bought."

The United States argues that the "Inside Edition" interview shows Maricle's knowledge of the importance of drug trafficking as well as the relationship between drug trafficking and the political process in the county. The government asserts that Maricle's statements demonstrate his

---

[6] In connection with this issue, the Court notes that the United States has not provided notice that it will offer proof that Adams actually committed the crimes charged. If such evidence were offered, a separate analysis would be necessary.

-19-

awareness, from the genesis of the enterprise itself, that the entire political process can be controlled, maintained and fostered through the revenue generated by drug trafficking. The government contends that Maricle's statements also provide insight into his intent, preparation, and plan, regarding how future control of the entire county can occur. The racketeering enterprise, as alleged in the indictment, is the result of this plan. Knowledge, intent, preparation, and plan are all purposes allowing admissibility under Rule 404(b). Because the United States has argued for the admissibility of this evidence under under 404(b), the 1989 "Inside Edition" tape will be analyzed under that rule.

### F.    Adams Relationship with Drug Dealers

The United States lists in its notice that it plans to introduce "other evidence," which includes the assertion that, "As part of their scheme to obtain power and positions, Russell Cletus Maricle and Douglas C. Adams formed relationships with a number of drug dealers in Clay County, Kentucky." The government does not provide any further information in its notice relating this claim. Likewise, the government did not offer any evidence regarding this assertion during the evidentiary hearing held on January 19, 2010.

Adams argues that the assertion is false. He also contends that any such evidence, if offered, would be unrelated to the charges in the Superseding Indictment and unfairly prejudicial because a jury hearing such evidence is likely to convict for crimes other than those charged or because a bad person deserves punishment.

Because the United States has not provided sufficient information justifying the admission of this evidence, it will be excluded as background evidence. However, if the United States can

provide a purpose justifying how this evidence is necessary to complete the story, the admissibility of this evidence will be reconsidered.  If that occurs, Adams may renew his objection to it.

## II.    Rule 404(b) Evidence

The United States provided notice of its intent to admit inextricably intertwined background evidence or, in the alternative, to admit the proffered evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.[7]  The admissibility of four pieces of evidence from the government's notice need to be analyzed pursuant to Rule 404(b): (1) Lewis's testimony regarding Jones's 1994 conviction for marijuana and drug distribution; (2) the nature of the charge against Adams while Maricle represented him; (3) the 1989 "Inside Edition" Tape; and (4) Adams alleged relationship with drug dealers.

Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it tends to introduce at trial.

FED. R. EVID. 404(b).  Before assessing admissibility under Rule 404(b), the Court must make a preliminary determination that there is sufficient evidence that the alleged evidence occurred. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008).   If the government provides sufficient evidence, the Court must then assess: (1) whether the evidence is offered for a proper purpose, (2) whether the evidence is admitted to prove a material issue; (3) whether the probative value of the

---

[7]  The government only seeks to introduce its proffered evidence pursuant to Rule 404(b) if it is determined inadmissible as background evidence.

evidence is substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) whether reasonable notice of the evidence was provided to the defendants. FED. R. EVID. 404(b) Committee Notes; *United States v. Davis*, 547 F.3d 520, 526 (6th Cir. 2008); *Bell*, 516 F.3d at 441.

The "proper purposes" allowed under 404(b) are proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. FED. R. EVID. 404(b). A "material purpose" under 404(b) means whether it is "in issue" in the case. *U.S. v. Mason*, 114 F.3d 1190 (6th Cir. 1997) (not published) (*citing United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir.1996)). If a proper purpose is shown, the Court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403. Finally, the Court must determine whether the Defendants had reasonable notice of all Rule 404(b) evidence the government seeks to admit regardless of whether the evidence will be admitted in the case-in-chief, for impeachment, or on rebuttal. FED. R. EVID. 404(b) Committee Notes. The Court has discretion to determine reasonableness under the circumstances. *Id.* (explaining that "what constitutes a reasonable . . . disclosure will depend largely on the circumstances of each case"). If the Court finds that the government's notice is not reasonable, then the evidence is inadmissible. *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1998) (internal citation omitted).

### A.    Jones's 1994 Conviction

The United States seek to introduce Jones's 1994 conviction for marijuana and drug distribution through Lewis's testimony. It has been previously determined that this conviction is conditionally admissible as background evidence *if* the previously-discussed taped conversation is admitted. Without the taped conversation, the conviction is not necessary to "complete the story"

and explain Maricle's statement.  If the taped conversation is not admitted, the evidence that Jones cultivated and distributed marijuana is enough to "complete the story."   Under those circumstances (that is, if the recorded conversation is not admitted), other evidence of Jones's 1994 conviction will not be admitted under Rule 404(b).

### B.    Nature of Charge against Adams

It has been previously determined that the United States can illicit testimony or admit evidence showing that Maricle represented Adams in a past criminal charge but cannot admit the nature of the charge as background evidence.  Since this evidence involves litigation with verifiable court records, there is sufficient evidence that the conviction occurred. The government seeks admission for the specific purpose of showing proof of motive, intent, preparation, plan, and knowledge.  Again these reasons are appropriate under Rule 404(b).

The Court agrees that, without more, only admitting the nature of the charge would be unfairly prejudicial.  The Superseding Indictment specifically sets forth acts such as vote buying, changing votes at the voting machines, extorting money from candidates, and falsifying elections results.  Without further evidence, a reasonable juror might conclude that, because Adams was indicted for having improperly filling-out a voter assistance form and intimidating a voter, he committed the charges alleged in the Superseding Indictment.  Thus, the nature of the charge against Adams will be excluded under FED. R. EVID. 403.

### C.    The "Inside Edition" Tape

The government seeks to introduce an "Inside Edition" broadcast from 1989 during which Maricle, then a local attorney, provided his perspective on the pervasive drug and corruption problems in Clay County.  Before assessing admissibility under Rule 404(b), the Court must make

-23-

a preliminary determination that there is sufficient evidence that the alleged evidence occurred. *Bell*, 516 F.3d at 441. The tape was played in open court during the evidentiary hearing on January 19, 2010. Agent Briggs also testified to its authenticity. Thus, the Court concludes that there is sufficient evidence that the "Inside Edition"tape is an accurate depiction of what it purports to be: a segment from a national television broadcast containing the thoughts and opinions of several Clay County residents, including Defendant Maricle.[8]

Having reviewed the tape and having considered the parties' respective positions, the Court concludes that the tape is being offered for a proper, material purpose. As the United States points out, the statements made by Maricle provide insight into his intent, preparation, and plan, regarding how control of the political process with the county can be accomplished. The government alleges that the racketeering enterprise, as alleged in the indictment, is the result of this plan. The video evidences Maricle's awareness that the entire political process can be controlled, maintained and fostered through revenues derived from drug trafficking. These matters are all at issue in the case at hand.

The Court also concludes that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. The Defendants assert that Maricle's statements during the taped interview are not probative because they do not prove that he was involved in the RICO conspiracy charged in the Superseding Indictment. However, the United States has offered

---

[8] In the video, an unidentified female states that "everyone" grows marijuana in Clay County. Defendants point out that it is impossible to believe that everyone in the county does, in fact, grow marijuana in the county and , therefore, the statement is false. However, it is obvious that the woman is exaggerating to emphasize that the drug problem in the county is extensive. A reasonable person watching the video is not going to believe every resident in Clay County grows marijuana after watching the tape.

several valid reasons demonstrating the probative nature of the "Inside Edition" clip, including knowledge, intent, preparation, and plan.

Evidence is not excluded because it is damaging or prejudicial to a defendant's case; it must be "unfairly prejudicial." *See United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993). Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403. *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (*citing United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)). The introductory portion of the tape containing commentator O'Reilly's opinion is not relevant. Likewise his concluding remarks are not necessary to put Maricle's comments in context. However, the Court concludes that the remaining portions of the "Inside Edition" tape are not unfairly prejudicial.

Finally, the Court must determine whether reasonable notice of the evidence was provided to the Defendants. According to the United States, Defendants have had copies of this tape since early 2009. However, the government did not provide notice that it intended to seek its admissibility pursuant to Rule 404(b) until December 30, 2009. The Sixth Circuit has determined that under certain circumstances, one week notice was reasonable because "[t]here was ample opportunity before trial to prepare for the consequences of [the] damaging evidence." *See United States v. French*, 974 F.2d 687, 694–95 (6th Cir. 1992); *See also United States v. Sutton*, 41 F.3d 1257, 1258–59 (8th Cir. 1994) (holding that two days notice was reasonable when the government discovered the evidence only five days prior to trial); *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994) (holding that six days notice before admission – but only two days before the start of the trial – was reasonable where (1) the government could not have learned about the evidence earlier; (2) having more time would not have been of significant value to the defense; and

(3) the evidence was material to the government's case). Here, the Court concludes that the notice given is entirely reasonable. It is clear that the Defendants have had sufficient time to prepare for this evidence to be played at trial. Therefore, the "Inside Edition" tape (without the beginning and ending comments by commentator O'Reilly) will be admissible under 404(b).[9]

### D.    Adams Relationship with Drug Dealers

As discussed previously, the United States lists in its notice that it plans to introduce as "other evidence" relationships that Adams and Maricle formed with a number of drug dealers in Clay County. Except as outlined above, the government has not provided the Court with information sufficient to determine if this *generic* claim relating to Adams's specific dealings with drug dealers would be admissible under Rule 404(b).

### III.    Conclusion

For the reasons outlined above it is hereby,

**ORDERED** as follows:

1.    Defendants Maricle, Jones, and Adams motions to exclude [Record Nos. 604, 606, 612, 616] are **GRANTED** in part, and **DENIED** in part.

2.    The following subjects/topics are admissible as background evidence:

A.    The testimony of Kenny Day and/or other evidence that Maricle and Adams bought votes in the 1983 election and that Maricle was involved in attempting to influence a juror in 1990;

---

[9]  The Court has also considered the age of the tape and concludes that it does not prevent introduction of the recording for the reasons outlined above.

B.     The testimony of Eugene Lewis and/or other evidence that, in the late 70's-90's, Lewis operated as a vote buyer at Maricle, Jones and Thompson's request.;

C.     The testimony of J. C. Lawson and/or other evidence that Lawson contributed to Maricle's campaign in the 1980's, that Lawson was approached by Jones and Bowling to buy votes and that Lawson was paid $500 by Bowling after an election;

D.     Testimony and/or other evidence that Maricle represented Adams's as his attorney.

E.     Jones's 1994 conviction for marijuana and drug distribution through Lewis's testimony will be admitted as background evidence if the above-referenced taped conversation is subsequently admitted.

3.     The 1989 "Inside Edition" tape, without the beginning and ending comments from commentator O'Reilly, is admissible under Rule 404(b) of the Federal Rules of Evidence. However, the beginning and ending segments containing comments by commentator O'Rilley will not be admitted.

4.     The following evidence is not admissible as background evidence or under Rule 404(b) of the Federal Rules of Evidence:

A.     The nature of the specific charges against Adams in 1989.

B.     Generic statements or testimony that Adams formed relationships with a number of drug dealers in Clay County, Kentucky.

This 21st day of January, 2010.



**Signed By:**

*__Danny C. Reeves__*  DCR

**United States District Judge**