UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RUSSELL CLETUS MARICLE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*

The parties have filed numerous motions in limine seeking to exclude certain portions of the audio recordings and accompanying transcripts that have been the subject of several prior rulings.  The Court will consider these motions globally.

## I.  DEFENDANTS' MOTIONS IN LIMINE

The United States has designated certain segments of the audio recordings that it seeks to introduce at trial.  [Record No. 632]  Several defendants have moved to exclude statements within these segments.[1]

### A.    Overview of Defendants' Arguments for Exclusion

Most of the defendants take a "kitchen-sink" approach, arguing multiple bases for exclusion regarding each challenged statement.  Each defendant's motion is based on arguments as to one or more of the following: (1) relevancy; (2) hearsay (specifically, that the recordings

---

[1]    To the extent challenged statements are not sought to be introduced by the United States or any other party, the defendants' motions will be denied as moot.

do not contain coconspirator statements that are excluded from the hearsay rule); (3) Federal Rule of Evidence 403 (*i.e.*, that the probative value of statements is substantially outweighed by the risk of unfair prejudice, confusion, *etc.*); or (4) the Confrontation Clause. Each of the urged bases for exclusion will be discussed in general terms before the Court turns to the arguments of individual defendants.

## 1.    Relevancy

Rule 402 of the Federal Rules of Evidence sets forth the general rule that relevant evidence is admissible, subject to certain exceptions, and irrelevant evidence is not admissible. Fed. R. Evid. 402. "Relevant evidence" is defined in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In other words, relevancy can be determined by asking whether "the item of evidence tend[s] to prove the matter sought to be proved[.]" Fed. R. Evid. 401 Advisory Committee's note.

Relevancy is an extremely broad concept. Both the Supreme Court and the Sixth Circuit have noted that the standard set forth in Rule 401 is a liberal one. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993); *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 713 n.15 (6th Cir. 1979)). The Court has reviewed the recordings that the United States proposes to play at trial and finds them relevant to prove the charged offenses. Each recording involves one or more of the defendants discussing matters in some way related to the allegations in the indictment. Any argument as to relevancy is not well-taken.

## 2.    Hearsay/Coconspirator Statements

Many of the defendants argue that the statements contained in the recordings constitute inadmissible hearsay. Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). By definition, then, hearsay does not include statements offered for reasons other than to prove the truth of the matter asserted – for example, to provide context. *See United States v. Sexton*, 119 F. App'x 735, 743 (6th Cir. 2005). Nor does the hearsay definition encompass statements that cannot be characterized as assertions, such as questions or commands. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009) (citing *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003)). Moreover, certain categories of statements are expressly excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d). The most pertinent of these exclusions for present purposes is 801(d)(2)(E), which provides that "statement[s] made by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E).

The United States argues that the conversations on the recordings are admissible as coconspirator statements.[2]    [Record Nos. 632, 659]    Several defendants contend that the statements on the recordings do not qualify as coconspirator statements and, therefore, are inadmissible hearsay. The Sixth Circuit has set forth a three-part showing that must be made by a party seeking to introduce an alleged coconspirator statement under Rule 801(d)(2)(E): first,

---

2    Of course, to the extent the United States intends to use a statement against the party who made it, the basis for admission would be 801(d)(2)(A), as a simple admission by a party-opponent. *See* Fed. R. Evid. 801(d)(2)(A).

that a conspiracy existed; second, that the defendant against whom the statement is offered was a member of the conspiracy; and third, that the statement was made during the course and in furtherance of the conspiracy. *United States v. Conrad*, 207 F.3d 424, 429 (6th Cir. 2007) (citing *United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998)). Each of these elements must be proved by a preponderance of the evidence. *Id.*

        **a.**        **Existence of Conspiracy and Defendants' Membership**

Rule 801 provides that "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered" cannot be established by the contents of the statement alone, though the contents must be considered. Fed. R. Evid. 801(d)(2). The Sixth Circuit has held that a trial court may make a conditional ruling as to the admissibility of alleged coconspirator statements, with the final determination to be made at the conclusion of the government's case-in-chief. *United States v. Barrett*, 933 F.2d 355, 358 (6th Cir. 1991); *see also United States v. Brown*, No. 97-1618, 2000 U.S. App. LEXIS 14522, at *19- *20 (6th Cir. June 20, 2000). Because there has been no separate evidentiary showing as to these two elements, the instant rulings regarding admissibility of alleged coconspirator statements will be subject to the government's showing at trial, by a preponderance of the evidence, that a conspiracy (or conspiracies) existed and that the defendants were members. The Court's findings herein regarding whether the statements were "in furtherance of" the alleged conspiracy will necessarily be based on the assumption that the government can sufficiently prove these elements.

Recorded statements of cooperating witnesses are not admissible as coconspirator statements because cooperating witnesses are no longer coconspirators. *See United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997). However, the fact that a former conspirator is cooperating with the government does not affect the admissibility of other conspiracy members' statements to the cooperator under Rule 801(d)(2)(E), nor does it necessitate exclusion of the cooperator's statements. *Wright*, 343 F.3d at 866 ("Under Rule 801(d)(2)(E) and *Hamilton*, the statements of co-conspirators gained from a cooperating conspirator may be used by the government. Therefore, as a matter of law, [the cooperating witness'] statements may not be excluded solely because he was cooperating with the government at the time that the tape recordings were made." (citing *United States v. Hamilton*, 689 F.2d 1262, 1268 (6th Cir. 1982))). A cooperating witness' statements are admissible to provide context for coconspirator statements. *See Rogers*, 118 F.3d at 477.

### b.    "During the Course and in Furtherance of"

The recordings at issue were all made during the period the conspiracy is alleged to have existed. [*See* Record No. 272] Thus, assuming the United States makes the necessary showing as to the existence of the conspiracy and the defendants' membership in it, the alleged coconspirator statements will meet the "during the course" requirement.

The "in furtherance of" prong of the third element is more difficult to establish. However, the Sixth Circuit has found a broad range of statements to be "in furtherance of" a conspiracy for purposes of Rule 801(d)(2)(E). A statement is in furtherance of a conspiracy if it is "made to apprise a coconspirator of the progress of the conspiracy, to induce his continued

participation, or to allay his fears." *United States v. Martinez*, 430 F.3d 317, 327 (6th Cir. 2005) (citing *United States v. Rios*, 842 F.2d 868, 874 (6th Cir. 1988)). Also satisfying this element of the rule are "[s]tatements that are designed to facilitate the concealment of a conspiracy's criminal accomplishments"; "[s]tatements that identify participants and their roles in the conspiracy"; and "statements that keep a conspirator abreast of a co-conspirator's activities." *United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005) (internal quotation marks omitted). Statements made "to gain the 'trust and assurance' of coconspirators" likewise meet the "in furtherance of" requirement. *United States v. Brown*, No. 97-1618, 2000 U.S. App. LEXIS 14522, at *23 (6th Cir. June 20, 2000) (citing *Rios*, 842 F.2d at 874). It is not required that a statement has been made "exclusively, or even primarily," in furtherance of the conspiracy in order to qualify as a coconspirator statement. *Id.* Moreover, a statement "need not actually further the conspiracy" to be admissible under Rule 801(d)(2)(E); it is enough that the statement "was intended to promote conspiratorial objectives." *Martinez*, 430 F.3d at 327.

The Court will address individual challenged statements below. As a general matter, however, the statements sought to be introduced by the United States appear to fall under one or more of the categories of statements held by the Sixth Circuit to satisfy the "in furtherance of" element of 801(d)(2)(E).

### 3.    Rule 403

A number of the defendants argue that the recordings are inadmissible based on Rule 403 considerations. Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Evidence is not excluded merely because it is damaging or prejudicial to a defendant's case.  Instead, it must be *unfairly* prejudicial.  *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993).  Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403.  *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (citing *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)).  Moreover, to warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially outweigh* its probative value.  Fed. R. Evid. 403.  The Sixth Circuit has found this requirement significant.  *See Koloda v. Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983).  Rule 403 is not concerned with "the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis."  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).  Subject to a few exceptions, the Court finds that the recordings at issue survive Rule 403's balancing test.

### 4.    Confrontation Clause

Several of the defendants argue that use of the recorded statements against them would violate their rights under the Confrontation Clause of the Sixth Amendment.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required:  unavailability and

a prior opportunity for cross-examination." As the Sixth Circuit has recognized, "[b]y its own terms, this rule is applicable only if the contested evidence is testimonial in nature." *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2006) (*Johnson I*). In other words, the Confrontation Clause is not implicated when the statements in question are not testimonial. *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (*Johnson II*).

To determine whether a statement is testimonial, a court must inquire "whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). Applying this rule to the recordings at issue, it is clear that the defendants' Confrontation Clause arguments are inapplicable to statements made by anyone other than the cooperating witnesses, as only the cooperating witnesses were aware that the conversations were secretly being recorded and thus might be used in investigating and prosecuting the alleged crimes.[3] *See id.*; *see also Johnson II*, 581 F.3d at 325 (finding that secretly recorded statements "are not testimonial, and the Confrontation Clause does not apply").

Moreover, even if a contested statement is testimonial, the Confrontation Clause does not come into play where the statement is not offered to prove the truth of the matter asserted.

---

3    In any event, the Sixth Circuit has held that coconspirator statements do not raise Confrontation Clause concerns. *See United States v. Warman*, 578 F.3d 320, 337 n.2 (6th Cir. 2009) ("[O]ur precedent is clear that [coconspirator] statements are not testimonial, and their admission does not violate the Confrontation Clause." (citing *Martinez*, 430 F.3d at 328-30)). Thus, to the extent the Court finds the challenged statements admissible pursuant to 801(d)(2)(E), the Confrontation Clause is inapplicable. *See id.*

*United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007). As a result, statements introduced for some other reason – for example, to provide context for other admissible statements – do not run afoul of the Confrontation Clause (or, as noted previously, the rule against hearsay). *Sexton*, 119 F. App'x at 743.

The government's notice of recordings it seeks to introduce at trial, as well as its response to the motions in limine currently under consideration, suggest that the statements it finds significant are primarily the statements of *defendants*, not the cooperating witnesses. [*See* Record Nos. 632, 659] Without the cooperating witnesses' side of the conversations, however, the defendants' statements would make little sense. The statements of the cooperating witnesses are admissible for context – subject to the Court's ultimate ruling on coconspirator statements – and will not implicate the Confrontation Clause or the hearsay rule. *See Rogers*, 118 F.3d at 477; *see also Sexton*, 119 F. App'x at 743.

Finally, the Court notes that any Confrontation Clause argument as to the cooperating witnesses will be rendered moot in the event they testify at trial, as the defendants would then have an opportunity for cross-examination.[4] *See Crawford*, 541 U.S. at 68.

**B.    Individual Defendants' Arguments for Exclusion**

**1.    Adams [Record No. 586]**

Adams makes several general objections, as well as challenges to numerous specific sections of the recordings. His first contention is that the references to him on the recordings are irrelevant – and therefore inadmissible – because they "serve no purpose other than to show the

---

[4]    The government has stated that it expects cooperating witnesses to testify at trial. [*See* Record No. 659, p. 16]

animus of the person uttering the statement toward Adams." [Record No. 586, p. 3] As stated above, the Court is not persuaded by arguments concerning the relevancy of the recordings the government seeks to introduce. Likewise, the Court has already explained why arguments based on the Confrontation Clause (as is Adams' fourth general objection) are unavailing.

Adams' second general objection is to repeated comments by the cooperating witnesses suggesting that Adams was a primary target of the federal investigation. Adams argues that the probative value of these comments is substantially outweighed by the danger of unfair prejudice they present and that they should be deemed inadmissible under Federal Rule of Evidence 403. [*Id.*] The statements Adams challenges were made by the cooperating witnesses and will be admitted not for the truth of their content but for context. The Court will instruct the jury accordingly upon request. *See* Fed. R. Evid. 105. Any risk of unfair prejudice from these statements can be sufficiently mitigated by the cautionary instruction. *See id.* & Advisory Committee's note (noting that "[a] close relationship exists between [Rule 105] and Rule 403").

The third general argument for exclusion urged by Adams is that the statements on the recordings constitute inadmissible hearsay. Adams' discussion of the rule regarding coconspirator statements – which he presumably contends is inapplicable – appears to be incomplete. [*See* Record No. 586, p. 4] This error is of little consequence, however, as the Court finds there is sufficient evidence to make a conditional determination of admissibility under Rule 801(d)(2)(E).

Adams also seeks to exclude numerous specific statements within the recordings.[5]  Most of Adams' recurring arguments for exclusion can be disposed of summarily.  First, his repeated contention that admission of statements made by the cooperating witnesses would violate the Confrontation Clause is untenable as admission of these statements would be for purposes of context, not to prove the truth of the matter asserted and, therefore, the Confrontation Clause is inapplicable.  *See Sexton*, 119 F. App'x at 743.

Another argument raised repeatedly by Adams is that, because there is more than one person named Doug discussed on the tapes, any references simply to "Doug" are irrelevant or a waste of time.  This does not follow.  In many instances, it is clear from the context of the statement which "Doug" was intended.  Some of the references clearly do relate to Adams and the charged offenses.  Others relate to Daugh ("Doug") White who, while not a defendant in this case, does figure into the alleged scheme, as he was a former mayor and a mayoral candidate in elections at issue in the indictment and also related to the two primary cooperating witnesses. [*See* Record No. 659, p. 6-8]

Adams' contention that such references would be confusing or misleading to the jury is more persuasive.  However, this concern is not so great that it tips the Rule 403 balance in favor of exclusion. As Adams suggests, any risk of confusion could be easily reduced with an appropriate admonition to the jury.  Moreover, as described below, the United States has

---

5       Several of the statements Adams moves to exclude are not part of the recordings the United States intends to play.  As noted previously, his motion will be denied as moot to the extent he challenges statements no party seeks to introduce.

-11-

indicated that for many of the statements, the government witness will clarify at trial that Daugh White, not Defendant Adams, was being discussed.

Adams also argues that several of the statements are substantially inaudible and, therefore, irrelevant and inadmissible under the Rule 403 balancing test.  The Court has previously ruled on more than one occasion that the recordings are sufficiently audible.  While the unintelligible segments are not so substantial as to render the recordings as a whole inadmissible, it would be utterly infeasible to extract every portion that is less than clear.  In any event, if these segments are as inaudible as Adams alleges, their prejudicial effect, if any, would be slight.  Likewise, the Rule 403 considerations would not weigh so heavily as to require exclusion.

Adams argues with regard to each of the statements that the coconspirator-statement exclusion is inapplicable.  He is correct that statements of the cooperating witnesses do not qualify for this exclusion but as the Court has explained previously, these statements would be admitted only for context and would not constitute hearsay notwithstanding the inapplicability of 801(d)(2)(E).  *See Rogers*, 118 F.3d at 477.  Whether challenged statements by persons other than the cooperating witnesses would be admissible under the coconspirator exclusion will be addressed in detail below.

Finally, many of the recording segments challenged by Adams either contain or consist solely of questions.  Questions do not qualify for exclusion under Rule 801(d)(2)(E) because they are not "statements": Rule 801(a) defines a statement as "an oral or written *assertion*," and

a question "does not assert the truth or falsity of a fact." *Wright*, 343 F.3d at 865. For the same reason, however, questions generally do not trigger the hearsay rule at all. *Id.*

The Court now turns to Adams' lengthy list of challenged statements. In the interest of efficiency, only arguments not already discussed will be addressed below. For most of the statements, the sole remaining issue is whether the statement was "in furtherance of" the alleged conspiracy for purposes of Rule 801(d)(2)(E).

<u>March 31, 2007, Stivers' Recording</u>

(00:12:07)

The challenged statements were part of a conversation regarding why the female cooperating witness was not selected as an election officer. The statements identify Maricle and Adams as figures with control over political appointments in Clay County. "Statements that identify participants and their roles in the [alleged] conspiracy . . . qualify as statements made in furtherance of the conspiracy." *Franklin*, 415 F.3d at 552 (internal quotation marks omitted).

(00:22:13)

These statements were also part of a conversation about selection of election officers in Clay County and who made those decisions. The fact that Mary Betty Stivers was not indicted in this case does not mean that she was not a coconspirator for purposes of Rule 801(d)(2)(E). There is no requirement that the statement have been made by a co-defendant to qualify as a coconspirator statement. *See* Fed. R. Evid. 801(d)(2)(E). The indictment alleged that the defendants participated in conspiracies "together with other persons known and unknown." [Record No. 272, p. 7] The recordings suggest that Mary Betty Stivers may have been a member

-13-

of the alleged conspiracy. The United States will have the opportunity to prove this at trial. If nothing else, Mrs. Stivers' statements, like those of the cooperating witnesses, would likely be admissible for context.

(00:31:20)

This statement is also part of the conversation regarding appointment of election officers and is an update on the status of the alleged conspiracy. Such statements are "in furtherance of" a conspiracy for purposes of Rule 801(d)(2)(E). *Martinez*, 430 F.3d at 327.

(00:53:48)

The challenged statements were made by the cooperating witnesses. Moreover, any confusion regarding which "Doug" was referred to in these statements can be mitigated with a cautionary instruction and/or government witness testimony, as discussed above.

### April 9, 2007, Stivers Recording

(00:49:35)

See above regarding references to "Doug." These statements were part of a discussion about the activities of other members of the alleged conspiracy regarding to a recent election. Such statements are "in furtherance of" a conspiracy. *Franklin*, 415 F.3d at 552.

### April 10, 2007, Stivers, Maricle & Jones Recording

(00:19:53)

These statements identify Adams and his role in the alleged conspiracy. Such statements satisfy the "in furtherance of" requirement. *Id.*

(00:24:32)

-14-

See above regarding references to "Doug" and statements made by the cooperating witnesses and Mary Betty Stivers.  Jones and Mrs. Stiverss statements were part of a discussion about activities of another member and concealment of the alleged conspiracy.  Such statements satisfy the "in furtherance of" requirement.  *Id.*

(00:58:44)

See analysis of previous statements.

(01:00:16)

The challenged statements were made by the cooperating witnesses.  See above regarding statements made by Mary Betty Stivers.

(01:23:55)

See above regarding references to "Doug" and statements of the cooperating witnesses.  The United States has indicated that the government witness will clarify that this statement refers to Daugh White.  [Record No. 659, p. 8]  The statement by Stivers, an alleged coconspirator, was part of a discussion regarding the status of the alleged conspiracy and activities of its members, and efforts to conceal it.  Such statements are "in furtherance of" a conspiracy.  *Franklin*, 415 F.3d at 552.

<u>April 11, 2007, Stivers, Maricle & Jones Recording</u>

(00:29:23)

See analysis of previous statements.

(00:34:00)

-15-

See above regarding references to "Doug."   The United States has indicated that the government witness will clarify that this statement referred to Daugh White.  [Record No. 659, p. 8]  The statements by Jones and Stivers, alleged coconspirators, were apparent attempts to give assurance to the cooperating witnesses.  Such statements may be "in furtherance of" a conspiracy.  *See Brown*, 2000 U.S. App. LEXIS 14522, at *23.

<u>April 18, 2007, Maricle & Stivers Recording</u>

(01:01:10)

The revised transcript of this recording leaves out the name "Doug."  The statements by Jones, an alleged coconspirator, were part of a discussion about ongoing federal investigation of the alleged conspiracy, activities of other members, and concealment.  Such statements appear to be "in furtherance of" a conspiracy.  *Franklin*, 415 F.3d at 552.

(01:12:19)

See analysis of previous statements.  The revised transcript of this recording also leaves out the name "Doug."

(01:17:45)

See above regarding references to "Doug."  The United States has indicated that the government witness will clarify that this statement referred to Daugh White.  [Record No. 659, p. 9]

<u>April 30, 2007, Cletus Maricle Male Cooperator 1 Recording</u>

(01:11:02)

See above regarding references to "Doug."

-16-

<u>April 30, 2007, Cletus Maricle Male Cooperator 2 Recording</u>

(00:54:55)

The United States does not seek to introduce the challenged portions of this recording. Defendant Maricle seeks to introduce the recording in its entirety. Because there is no basis for its admission by Maricle, however, these statements will be excluded.[6]

(01:38:04)

See previous analysis.

<u>May 1, 2007, Freddy Thompson Recording</u>

(00:08:16)

Thompson's statements were made during a conversation about the ongoing federal investigation and attempts to conceal the alleged conspiracy; *i.e.*, "in furtherance of" the alleged conspiracy. *See Franklin*, 415 F.3d at 552.

(00:15:45)

See above regarding references to "Doug." The statement was made by Defendant Thompson, an alleged coconspirator, during a conversation about activities of the alleged conspiracy and its members, the ongoing federal investigation, and attempts to conceal the alleged conspiracy. It was thus "in furtherance of" the alleged conspiracy. *See id.* Thompson's question is not hearsay "because it does not assert the truth or falsity of a fact"; rather, it "merely seeks answers and . . . has no factual content." *See Wright*, 343 F.3d at 865.

<u>May 1, 2007, Cletus Maricle & Morris Recording</u>

---

6    The lack of basis for admission by Maricle will be discussed in more detail in part II below.

-17-

(00:16:59)

The challenged statements were made by the cooperating witnesses.

(00:18:05)

This statement was part of a conversation regarding the status of the federal investigation of the alleged conspiracy and attempts to conceal the alleged conspiracy and thus was "in furtherance of" the alleged conspiracy. *See Franklin*, 415 F.3d at 552.

(00:29:03)

This statement was also part of a conversation regarding the status of the federal investigation and attempts to conceal the alleged conspiracy and thus meets the "in furtherance of" requirement. *See Franklin*, 415 F.3d at 552. It also identifies members of the alleged conspiracy. *Id.*

(00:39:38)

Except for the initial statement by Defendant Morris, an alleged coconspirator, the challenged statements were made by the cooperating witnesses. Morris' statement was made during a conversation about the status of the federal investigation of the alleged conspiracy and concealment and thus was "in furtherance of" the alleged conspiracy. *See Franklin*, 415 F.3d at 552.

(00:42:37)

These statements identify members of the alleged conspiracy and their roles. *See id.* Most of the challenged statements were made by the cooperating witnesses.

(00:45:28)

-18-

See above regarding references to "Doug."  The United States indicates that the government witness will clarify that this statement referred to Daugh White, not Defendant Adams.  [*See* Record No. 659, p. 11]  This statement related to the status of the federal investigation of the alleged conspiracy and concealment and thus was "in furtherance of" the alleged conspiracy.  *See Franklin*, 415 F.3d at 552.  Moreover, the statement was apparently meant to provide assurance to other members of the alleged conspiracy.  Such statements may also be "in furtherance of" a conspiracy.  *See Brown*, 2000 U.S. App. LEXIS 14522, at *23.

(00:46:16)

Most of the challenged statements in this segment of the recording were made by the cooperating witnesses.  Defendant Morris' statements were part of a conversation regarding ongoing federal investigation of the alleged conspiracy and the status of the alleged conspiracy and were thus "in furtherance of" the alleged conspiracy.  *See Franklin*, 415 F.3d at 552.

(00:57:35)

Most of the challenged statements in this segment of the recording were made by the cooperating witnesses.  Defendant Maricle's questions are not hearsay.  *See Wright*, 343 F.3d at 865.  Defendant Maricle's statements identify an alleged coconspirator and his role and were made during a discussion about the ongoing federal investigation and the status of the alleged conspiracy.  Such statements are "in furtherance of" a conspiracy.  *See Franklin*, 415 F.3d at 552.

(01:00:57)

-19-

Most of the challenged statements in this segment of the recording were made by the cooperating witnesses. Maricle's question is not hearsay. *See Wright*, 343 F.3d at 865.

(01:02:32)

See above regarding references to "Doug." Maricle's statement was made during a conversation about the status of the alleged conspiracy and the ongoing federal investigation and thus may be considered "in furtherance of" the alleged conspiracy. *See Franklin*, 415 F.3d at 552.

(01:36:08)

The cooperating witness' statement would be admissible only for context. Maricle's question is not hearsay. *See Wright*, 343 F.3d at 865.

(01:37:48)

The challenged statement was made by the cooperating witness.

(01:38:07)

Maricle's statements were made during a discussion of the status of the alleged conspiracy and the ongoing federal investigation, and he was seeking assurance from other members of the alleged conspiracy. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552; *Brown*, 2000 U.S. App. LEXIS 14522, at *23. The cooperating witness' question is not hearsay. *See Wright*, 343 F.3d at 865.

(01:40:19)

The challenged statement was made by the cooperating witness.

(01:41:30)

-20-

The statements of the cooperating witnesses would be admissible only for context. Maricle's question is not hearsay. *See Wright*, 343 F.3d at 865.

(01:54:16)

See above regarding references to "Doug." The cooperating witness' question is not hearsay. *See Wright*, 343 F.3d at 865. Moreover, the United States indicates in its response that the government witness will clarify that this question referred to Daugh White, not Defendant Adams. [*See* Record No. 569, p. 13]

(01:54:41)

See above regarding references to "Doug." This statement was part of a discussion of the ongoing federal investigation and the status of the alleged conspiracy. It thus was "in furtherance of" the alleged conspiracy. *See Franklin*, 415 F.3d at 552. Moreover, the United States indicates in its response that the government witness will clarify that this question referred to Daugh White, not Defendant Adams. [*See* Record No. 569, p. 13]

(01:55:37)

See analysis of previous statement.

<u>May 2, 2007, Cletus Maricle Recording</u>

(02:24:07)

Maricle is discussing the possibility of one of the cooperating witnesses getting a job from an alleged coconspirator. "Statements that identify participants and their roles in the [alleged] conspiracy" may be in furtherance of a conspiracy. *Franklin*, 415 F.3d at 552.

(02:31:05)

-21-

The United States also seeks to exclude this statement because it is exculpatory. Defendant Maricle seeks to introduce it. However, because there is no basis for its admission by Maricle this statement will be excluded.

(02:44:27)[7]

Most of the statements in this portion of the recording were made by the cooperating witnesses. Maricle's statements were part of a discussion about federal investigation of the alleged conspiracy, the status of the alleged conspiracy, and efforts to conceal it. Such statements are "in furtherance of" a conspiracy. *See id.* Maricle's question is not hearsay. *See Wright*, 343 F.3d at 865.

(02:51:14)[8]

Most of this challenged portion of the recording consists of a statement and a question by the cooperating witness. Questions are not hearsay. *See id.* Maricle's statement was part of a discussion about federal investigation of the alleged conspiracy, the status of the alleged conspiracy, and efforts to conceal it. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552.

<u>May 2, 2007, Wanda White with Maricle Recording</u>

(00:14:12)

Most of the challenged statements in this segment of the recording were made by the cooperating witnesses. Maricle's questions are not hearsay. *See Wright*, 343 F.3d at 865.

---

7    This time marking is incorrect, as the challenged segment is actually from the May 2, 2007, "Wanda White with Maricle" recording.

8    This segment is also part of the May 2, 2007, "Wanda White with Maricle" recording.

-22-

Maricle's statements were part of a discussion about federal investigation of the alleged conspiracy, the status of the alleged conspiracy, and efforts to conceal it, and he was providing assurance to other members of the alleged conspiracy. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552; *Brown*, 2000 U.S. App. LEXIS 14522, at *23.

(00:18:18)

The challenged statement was made by the cooperating witness. The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams. [*See* Record No. 659, p. 15]

(00:20:19)

See analysis of previous statements.

(00:40:34)

See analysis of previous statements.

(01:08:40)

See analysis of previous statements. Judy Maricle's statement would not be offered for the truth of the matter asserted and thus would not violate the rule against hearsay regardless of whether she is an alleged coconspirator.

(02:21:52)

See above regarding references to "Doug." The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams. [*See* Record No. 659, p. 15] Maricle's statements were part of a discussion about the ongoing federal investigation, the status of the alleged conspiracy, and efforts to

conceal it, and he was providing assurance to other members of the alleged conspiracy in an attempt to allay their fears. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552; *Martinez*, 430 F.3d at 327.

(02:41:29)

See analysis of previous statements.

(02:46:00)

See analysis of previous statements.

May 4, 2007, Cletus Maricle Recording

(01:32:26)

See above regarding references to "Doug." The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams. [*See* Record No. 659, p. 15] This statement by Defendant Maricle was part of a discussion about the federal investigation of the alleged conspiracy, the status of the alleged conspiracy, and efforts to conceal it. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552.

(01:46:48)

See above regarding references to "Doug." The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams. [*See* Record No. 659, p. 15]

May 9, 2007, Cletus Maricle Recording

(01:15:57)

See above regarding references to "Doug."  The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams.  [*See* Record No. 659, p. 15]  The cooperating witness' questions are not hearsay.  *See Wright*, 343 F.3d at 865.

### May 16, 2007, Cletus Maricle Recording

(00:29:08)

See above regarding references to "Doug."  The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams.  [*See* Record No. 659, p. 15]  Maricle was discussing the ongoing federal investigation of the alleged conspiracy and attempting to allay the fears of other members.  Such statements satisfy the "in furtherance of" requirement in Rule 801(d)(2)(E).  *See Franklin*, 415 F.3d at 552; *Martinez*, 430 F.3d at 327.

(01:02:40)

See above regarding references to "Doug."  The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams.  [*See* Record No. 659, p. 15]

(01:04:51)

See above regarding references to "Doug."

### May 22, 2007, Cletus Maricle Recording

(00:31:07)

The challenged statement was made by the cooperating witness.

(00:37:29)

See analysis of previous segment.

June 7, 2007, Wayne Jones Recording

(00:18:10)

See above regarding references to "Doug." The United States indicates in its response that the government witness will clarify that the reference to "Doug" means Daugh White, not Defendant Adams. [*See* Record No. 659, p. 15]

April 30, 2007, Ed Jordan Recording

Adams seeks to exclude the Ed Jordan recording on several bases. The United States does not seek to introduce the Ed Jordan recording; however, Defendant Maricle seeks to introduce this recording in its entirety. The United States has moved to exclude it. The Ed Jordan recording will be addressed below in the discussion of the government's motion in limine. Because the Court concludes that the entire Ed Jordan recording should be excluded, this portion of Adams' motion does not require analysis.

**2.      Thompson [Record No. 590]**

Thompson asserts that the statements contained in the recordings are not coconspirator statements and, therefore, are inadmissible.[9]   Again, a final determination regarding the admissibility of coconspirator statements will be made at a later date. However, the Court makes a conditional determination of admissibility herein.

_____

9      The heading over Thompson's first argument refers to his "constitutional right to confront the witnesses against him" but his argument does not mention the Confrontation Clause. [*See* Record No. 590, p. 2-3]  In any event, as noted previously, Confrontation Clause arguments are unavailing here.

-26-

Thompson also seeks to exclude certain portions of the recordings. His first objection is to transcript references to "unidentified" speakers. In the final, certified version of the transcripts, the United States replaced all references to unidentified speakers with the names of the speakers. [*See* Record No. 659, p. 23] This portion of Thompson's motion will thus be denied as moot. Likewise, the government does not object to striking the comment "That went pretty good, didn't it?" from the May 1, 2007, recording of Stivers, Jones, and Colter. However, this point is also moot as the statement is not part of the recordings the United States or any other party seeks to play at trial. [Record No. 659, p. 22] The United States agrees with Thompson that a statement in the May 1, 2007, recording is incorrectly attributed to "Freddy" in the transcript, instead of Jones.

The remainder of the specific statements challenged by Thompson are as follows:

<u>March 31, 2007, – Stivers</u>

Thompson objects on the basis of hearsay and the Confrontation Clause to a statement by Stivers that "Him and Freddy took care of it."[10] Assuming the United States makes a sufficient showing regarding the existence of a conspiracy and Thompson's and Stivers' membership in the conspiracy, this statement will be admissible as a coconspirator statement under Rule 801(d)(2)(E). The statement was made during the time the conspiracy to obstruct justice is alleged to have been in existence, and it related to ongoing federal investigation of the alleged conspiracy and attempts to conceal information from investigators. This statement related to the status of the alleged conspiracy and the activities of an alleged coconspirator and

---

10      "It" refers to "a bunch of . . . papers" the female cooperating witness said she had signed. "Him" appears to refer to Defendant Jones.

was meant to allay the fears of the cooperating witness in advance of her appearance before the grand jury. Such statements are "in furtherance of" a conspiracy. *See Franklin*, 415 F.3d at 552; *Martinez*, 430 F.3d at 327.

### May 1, 2007

Thompson argues that the statement by Jones "I'd say they had a subpoena for Freddy" is inadmissible speculation. This statement was made in the context of a conversation about ongoing federal investigation of the alleged conspiracy and related to the status of the alleged conspiracy and members thereof. Thus, it meets the "in furtherance of" requirement of Rule 801(d)(2)(E). *See Franklin*, 415 F.3d at 552.

### May 2, 2007

Thompson seeks to exclude Maricle's comment that, in his opinion, there would be "some people that's in trouble" if the United States had obtained bank records from 2002 because there was "a lot of money spent on that clerk's race." Contrary to Thompson's assertion, this statement is clearly relevant and relates to the status of the alleged conspiracy.[11]

### May 4, 2007

The challenged statements regarding whether Thompson will be indicted also relate to the status of the alleged conspiracy and satisfy the "in furtherance of" element of Rule 801(d)(2)(E). Finally, Thompson seeks to exclude as irrelevant Maricle's statements regarding Jones having previously been through a trial and in jail, "[i]nasmuch[] as Jones is Thompson's

---

11    Thompson also asserts that this statement and two statements in the May 4, 2007, recording are prejudicial. The Federal Rules of Evidence do not proscribe the admission of prejudicial evidence, but rather evidence whose probative value is substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403.

father-in-law and alleged co-conspirator." [Record No. 590, p. 4] These statements are also challenged by Jones and are addressed below.

### 3.    Bowling [Record No. 592]

Bowling's primary argument regarding the recordings involves his claim of immunity, which is addressed in a separate opinion. Bowling also suggests that because he was not present when the recordings were made, they are inadmissible against him. However, the rule regarding coconspirator statements does not require that a party have been present when the statement was made in order for it to be used against him. *See* Fed. R. Evid. 801(d)(2)(E). Thus, the Court's conditional determination of admissibility concerning alleged coconspirator statements renders this argument moot. Bowling also adopts Adams' general arguments against use of the recordings. These arguments were addressed above. Bowling's motion will be denied insofar as it does not pertain to immunized testimony.

### 4.    William and Debra Morris [Record No. 596]

Defendants William B. ("Bart") Morris and Debra Morris filed a motion in limine to exclude references to Mr. or Mrs. Morris in the recordings and transcripts. [Record No. 596] The Morrises seek to exclude six specific statements contained in the recordings the United States intends to introduce. [Record No. 596, Ex. A] The Morrises' arguments for exclusion are substantially identical for each of the six challenged statements or groups of statements. The Morrises argue that: (1) the statements are irrelevant; (2) even if relevant, their marginal probative value is substantially outweighed by the danger of unfair prejudice; (3) the statements are confusing; (4) the factual basis underlying the statements is unknown; (5) the statements will

mislead the jury; (6) the statements are a waste of time; and (7) the statements are hearsay and "fall[] within no exception to the hearsay rule as [they] do[] not further any conspiracy and thus do[] not qualify under the so-called coconspirator exception."[12]  Each of the statements the Morrises seek to exclude contains a reference to "Bart"– *i.e.*, Mr. Morris.

The Court noted previously that it has found the recordings designated by the United States to be generally relevant.  The portions of the recordings specified in the Morrises' motion are no exception.  Furthermore, the statements challenged by Mr. and Mrs. Morris, when heard in the context of the clips the government seeks to introduce, are not unfairly prejudicial nor are they particularly likely to confuse or mislead the jury or waste time such that exclusion under Rule 403 would be appropriate.  The Morrises' contention that the factual bases of the statements are unknown is likewise inapposite.  This leaves only their hearsay arguments, which are inapplicable to all but one of the statements they seek to exclude, as all but one of the statements were made by a cooperating witness and therefore would not be admitted to prove the truth of the matter asserted.  *See Sexton*, 119 F. App'x at 743.

The Morrises' only remaining objection is to a portion of the April 6, 2007, recording of Stivers, Jones, and the cooperating witnesses, in which Jones says that Morris and Defendant Bowling are "partners" and "partners in every damn thing."  Statements identifying members of the alleged conspiracy and their roles are "in furtherance of" a conspiracy.  *Franklin*, 415 F.3d at 552.  The Morrises' motion will be denied.

---

12      The argument for exclusion of the first group of challenged statements is identical to the arguments against the other statements except that it also asserts that the statements in the first group "contain mere personal opinion as to business dealings."  [Record No. 596, Ex. A, p. 1] The sixth challenged statement is argued to be hearsay within hearsay.  [*Id.*, p. 6]

### 5.   Jones [Record No. 612]

Jones first makes the broad assertion that all statements on the recordings referring directly or indirectly to Jones or his alleged conduct are inadmissible hearsay.  He further argues that the rule regarding coconspirator statements is not applicable to the statements of the cooperating witnesses.  The Court agrees as a general matter.  However, as explained previously, the cooperating witnesses' statements, if admitted, will be admitted not for the truth of the matter asserted, but to provide context for the alleged coconspirator statements.  Thus, they are not hearsay.  *See Sexton*, 119 F. App'x at 743; *see also* Fed. R. Evid. 801(c).  Jones' hearsay and hearsay-within-hearsay arguments are inapposite.  His argument based on the Confrontation Clause is equally unavailing, for reasons explained above.

Jones also moves to exclude specific portions of two recordings.  First, he argues that a discussion between Maricle and the cooperating witnesses regarding Jones – including references to Maricle's representation of Jones in a federal bank robbery trial in 1978, Jones' imprisonment following a drug conviction, and Jones' current status as a convicted felon – is inadmissible because it is hearsay, does not fall under any of Rule 404(b)'s exceptions, and is unfairly prejudicial, confusing, and misleading.

Maricle's comments to the female cooperating witness, in response to her concerns that Jones would talk to federal investigators, that Jones "can deal" and has "been there" were meant to allay her fears regarding the investigation of the alleged conspiracy and her impending grand jury appearance and would be in furtherance of the alleged conspiracy.  *See Martinez*, 430 F.3d at 327.  While Maricle's subsequent statements about Jones' past trials, conviction, and

imprisonment are relevant to clarify what Maricle meant by "He can deal. He's been there," they are not so essential that their admission is warranted under the Rule 403 balancing test. Accordingly, this portion of Jones' motion will be granted.[13]

Finally, Jones argues for exclusion of a portion of the March 31, 2007, recording that contains repeated use of a racial epithet by Defendant Stivers. Jones contends that, because this is a conspiracy case, allowing jurors to hear this portion of the tape could unfairly prejudice all defendants. The United States has joined Jones' request to exclude racial slurs from the recordings. [Record No. 651, p. 20] The Court finds that removal of derogatory racial terms from the recordings would be appropriate and will grant this request. To the extent Jones seeks to exclude the entire segment of recording containing these terms (as opposed to merely the terms themselves), that request will be denied.

## II. GOVERNMENT'S MOTION IN LIMINE [Record No. 575]

The United States has moved to exclude a number of statements contained within the portions of the recordings it seeks to introduce, as well as several entire recordings. [Record No. 575, p. 3-4] Most of the recordings and statements the United States seeks to exclude were not designated by any defendant to be introduced at trial. Defendant Maricle was the only defendant who identified specific recordings he intends to play for the jury. [*See* Record No. 617]

### A.    Ed Jordan Recording

Of the recordings the United States has moved to exclude entirely, only the April 30, 2007, recording of the cooperating witnesses' conversation with Ed Jordan (the "Ed Jordan

---

13      This decision resolves the issue left open in the Court's prior opinion as to admissibility of Jones's 1994 drug conviction as background evidence. [*See* Record No. 671, p. 13-14 & nn.3-5]

recording") is sought to be introduced.[14]  [*See* Record No. 617, p. 3]  Maricle has given notice that he intends to play the Ed Jordan recording in its entirety.  [*Id.*]  The United States argues that the conversations on this recording are inadmissible hearsay.  [Record No. 575, p. 3]  The government further argues that the statements contained in the Ed Jordan recording are not relevant or, if relevant, are nevertheless excludable under Federal Rule of Evidence 403.  [*Id.* at 3-4]

Maricle lumps the Ed Jordan recording with the other recordings from April 30, 2007 (both of which contain portions the United States does seek to introduce).  He argues generally that all three recordings from this date are admissible pursuant to Rules 401, 402, and 106. [Record No. 617, p. 3]  The statements on this recording might be relevant, but they are clearly hearsay.  Only Jordan, the cooperating witnesses, and Jordan's wife (briefly) are on this recording.  Even if Jordan were alleged to be a coconspirator (which, for obvious reasons, is not an argument Maricle would be likely to make), Rule 801(d)(2)(E) only applies where a statement or statements are "offered *against* a party."  Thus, Maricle could not avail himself of this exclusion.  *See* Fed. R. Evid. 801(d)(2)(E) (emphasis added).  This leaves Rule 106 as the only possible basis for admission of the Ed Jordan recording by Maricle.  The Court does not find that admission of the Ed Jordan recording is necessary for completeness.  Even if it were, however, the Sixth Circuit has held that Rule 106 does not make admissible evidence that should otherwise be excluded.  *See United States v. Holden*, 557 F.3d 698, 706 (6th Cir. 2009) (citing *United*

---

14      To the extent there is no overlap between the recordings Maricle seeks to introduce and the recordings the United States seeks to exclude in their entirety, the government's motion will be denied as moot.

*States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982)). The Ed Jordan recording, therefore, is not admissible, and the government's motion in limine will be granted as to this recording.

**B.    Exculpatory Statements**

Attached to the United States' motion in limine is a "Chart of Exculpatory Statements" the government seeks to exclude. [*See* Record No. 575, Ex. B] The government's assertion that such statements "are specifically excluded by FRE 802" is inaccurate. [*See id.*, p. 4; Fed. R. Evid. 802] However, the bulk of the "exculpatory statements" the United States seeks to exclude are nevertheless inadmissible under the hearsay rule.

Most of the statements in the chart are sought to be introduced only by the government itself. However, Defendant Maricle has given notice that he intends to introduce several of the recordings in their entirety. [*See* Record No. 617] Maricle argues that these recordings are admissible under Rules 401, 402, and 106. [*Id.*] Several other defendants oppose exclusion of these statements on the basis of Rule 106. However, the exculpatory statements are not admissible by the defendants, because the defendants seek admission of the statements to prove the truth of the matter asserted – *i.e.*, that Maricle and the other defendants did nothing wrong. The statements are thus inadmissible hearsay and, as discussed above, the Sixth Circuit has held that Rule 106 does not make otherwise inadmissible evidence admissible. *See Holden*, 557 F.3d at 706. Most of the statements in the government's chart, therefore, will be excluded.

However, some of the "exculpatory statements" the United States seeks to exclude are instructions to a cooperating witness regarding an impending grand jury appearance. Instructions or commands are not hearsay because they cannot be offered for their truth, since

-34-

they do "not assert a proposition that could be true or false." *See Rodriguez-Lopez*, 565 F.3d at 314. These parts of the recordings are relevant because they are probative as to the allegations that the defendants conspired to obstruct justice, and because they are not inadmissible hearsay, they can – and should – be admitted under Rule 106 if the alleged coconspirator statements are to be played.

## III.  CONCLUSION

Most of the defendants arguments for exclusion are unavailing. Provided the United States can show, by a preponderance of the evidence, the existence of a conspiracy and the membership of the defendants therein, the bulk of the recordings sought to be introduced at trial will be admissible as coconspirator statements or as essential context for those statements. Accordingly, it is hereby

**ORDERED** as follows:

(1)    The United States' Motion in Limine [Record No. 575] is **GRANTED** regarding the Ed Jordan recording and exculpatory statements other than those specifically excepted below. The motion is **DENIED AS MOOT** as to the remaining recordings sought to be excluded in their entirety and **DENIED** as to the following sections of its "Chart of Exculpatory Statements by Defendants": 4/30/07, Maricle Transcript from Kennon #2, p. 7; 5/16/07, Maricle Transcript, p. 7 ("But she needs to tell the truth what she thinks, I mean you know?"), p. 8 ("I mean you have to answer truthfully."), p. 12 ("I mean, if she, if she remembers such a meeting, tell 'em that"); 5/17/07, Stivers Transcript, p. 2, 10, 13, 14, 18, 28, 29.

(2)    Defendant Adams' Motion in Limine to Exclude Certain Portions of Audio Recordings and Accompanying Transcripts [Record No. 586] is **GRANTED** as to the April 30, 2007, Cletus Maricle Male Cooperator 2 Recording and the May 2, 2007, Cletus Maricle Recording at 02:31:05 (Maricle: "I'm wondering . . . as far as I know he didn't do that in this 2006 election.").  The motion is **DENIED AS MOOT** as to statements not sought to be introduced and **DENIED** as to all other challenged statements.

(3)    Defendant Thompson's Motion in Limine to Exclude Audio Recordings and Transcripts, or Specific Portions Thereof [Record No. 590] is **DENIED**.

(4)    Defendant Stanley Bowling's Motion in Limine to Exclude Audio Recordings and Accompanying Transcripts [Record No. 592] is **DENIED** to the extent it does not relate to immunized testimony.

(5)    Defendants William B. Morris' and Debra L. Morris' Motion in Limine to Exclude Certain Portions of Audio Recordings and Accompanying Transcripts [Record No. 596] is **DENIED**.

(6)    Defendant Jones' Motion in Limine [Record No. 612] is **GRANTED** as to removal of racial epithets from the March 31, 2007, recording and transcript and as to the May 4, 2007, recording.  The United States shall remove all racial slurs from the March 31, 2007, recording and the accompanying transcript.  The following segment shall be excluded from the May 4, 2007, recording and accompanying transcript: "CM: . . . "He's been in jail and trial" through "CM: Yeah, Wayne ran again, he ran against . . . ."  Jones' motion is **DENIED** as to all other statements.

This 26th day of January, 2010.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**