United States District Court
Eastern District of Kentucky
Southern Division at London

| | |
|---|---|
| UNITED STATES OF AMERICA | ) London Criminal |
| | ) Action No. 09-16-S |
| vs. | ) |
| | ) London, Kentucky |
| RUSSELL CLETUS MARICLE | ) December 22, 2009 |
| DOUGLAS C. ADAMS | ) 9:35 a.m. |
| CHARLES WAYNE JONES | ) |
| WILLIAM E. STIVERS | ) |
| FREDDY W. THOMPSON | ) |
| WILLIAM B. MORRIS | ) |
| DEBRA L. MORRIS | ) |
| STANLEY BOWLING | ) |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE DANNY C. REEVES

Appearances of Counsel:

On behalf of the United States:    STEPHEN C. SMITH, ESQ.

On behalf of the Defendant         DAVID S. HOSKINS, ESQ.
Russell Cletus Miracle:            MARTIN S. PINALES, ESQ.
                                   CANDACE C. CROUSE, ESQ.

On behalf of the Defendant         BENNETT E. BAYER, ESQ.
Douglas C. Adams:

On behalf of the Defendant         T. SCOTT WHITE, ESQ.
Charles Wayne Jones:

On behalf of the Defendant         ROBERT L. ABELL, ESQ.
William R. Stivers:

On behalf of the Defendant         RUSSELL JAMES BALDANI, ESQ.
Freddy W. Thompson:

On behalf of the Defendant         JERRY W. GILBERT, ESQ.
William B. Morris:

On behalf of the Defendant         ELIZABETH SNOW HUGHES, ESQ.
Debra L. Morris:

On behalf of the Defendant         DANIEL A. SIMONS, ESQ.
Stanley Bowling:

Court Reporter:                    CYNTHIA A. OAKES, CRR

```
 1   Appearances of Counsel:

 2

 3   On behalf of the United States:      STEPHEN C. SMITH, ESQ.
                                          Assistant U.S. Attorney
 4                                        601 Meyers Baker Road
                                          Suite 200
 5                                        London, Kentucky  40741

 6
     On behalf of the Defendant          DAVID S. HOSKINS, ESQ.
 7   Russell Cletus Miracle:             107 East First Street
                                          Corbin, Kentucky  40701
 8
                                          MARTIN S. PINALES, ESQ.
 9                                        CANDACE C. CROUSE, ESQ.
                                          105 West Fourth Street
10                                        Federal Reserve Bldg.
                                          Cincinnati, Ohio  45202
11

12   On Behalf of the Defendant          BENNETT E. BAYER, ESQ.
     Douglas C. Adams:                   106 West Vine Street
13                                        Suite 800
                                          Lexington, Kentucky  40507
14
     On Behalf of the Defendant          T. SCOTT WHITE, ESQ.
15   Charles Wayne Jones:                133 West Short Street
                                          Lexington, Kentucky  40507
16
     On behalf of the Defendant          ROBERT L. ABELL, ESQ.
17   William E. Stivers:                 120 N. Upper Street
                                          Lexington, Kentucky  40507
18

19   On behalf of the Defendant          RUSSELL JAMES BALDANI, ESQ.
     Freddy W. Thompson:                 300 West Short Street
20                                        Lexington, Kentucky  40507

21
     On behalf of the Defendant          JERRY W. GILBERT, ESQ.
22   William B. Morris:                  212 North Second Street
                                          Richmond, Kentucky  40475
23
     On behalf of the Defendant          ELIZABETH SNOW HUGHES, ESQ.
24   Debra L. Morris:                    201 West Short Street
                                          Lexington, Kentucky  40507
25
```

1

2  On behalf of the Defendant          DANIEL A. SIMONS, ESQ.
   Stanley Bowling:                    116 West Main Street
3                                      Suite 2A
                                       Richmond, Kentucky  40476
4

5  Court Reporter:                     CYNTHIA A. OAKES, CRR
                                       Official Court Reporter
6                                      United States District Court
                                       560 Athens Boonesboro Road
7                                      Winchester, Kentucky  40391
                                       (859) 983-4346
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by mechanical stenography,
    transcript produced by computer.
25

```
 1              THE COURT:  Thank you.
 2              Madam Clerk, if you could call the matter scheduled
 3    for 10:00, please.
 4              THE CLERK:  Yes, Your Honor.  London Criminal
 5    No. 09-16-S, United States of America v. Russell Cletus
 6    Maricle, Douglas C. Adams, Charles Wayne Jones, William E.
 7    Stivers, Freddy W. Thompson, William B. Morris, Debra L.
 8    Morris, and Stanley Bowling.
 9              THE COURT:  Thank you.  If counsel could state their
10    appearances, and Mr. Smith we'll start with you.
11              MR. SMITH:  Good morning, Your Honor, I'm Stephen
12    Smith and I'll be representing the United States this morning.
13              THE COURT:  All right.  Thank you.
14              Mr. Hoskins.
15              MR. HOSKINS:  Good morning, Your Honor, David Hoskins
16    for the defendant Mr. Maricle, along with Martin Pinales and
17    Candace Crouse.
18              THE COURT:  All right.  Thank you.
19              MR. BAYER:  Good morning, Judge, Bennett Bayer.  I'm
20    here on behalf of Doug Adams.  My client is also with me, and
21    I'll be here singularly today.
22              THE COURT:  All right.  Thank you.
23              MR. BAYER:  Thank you, Judge.
24              MR. WHITE:  Good morning, Your Honor, Scott White.  I
25    am here on behalf of the defendant Charles Jones, who is
```

1    sitting over there.

2              THE COURT:  All right.  Thank you.

3              Mr. Abell.

4              MR. ABELL:  Robert Abell on behalf of Mr. Stivers.

5              THE COURT:  All right.  Thank you.  And Mr. Stivers

6    is present as well.

7              MR. ABELL:  Yes, sir.

8              MR. BALDANI:  May it please the Court, Russ Baldani

9    on behalf of Freddy Thompson, who is seated behind me to my

10   right.

11             THE COURT:  All right.  Thank you.

12             MR. GILBERT:  If Your Honor, please, Jerry Gilbert on

13   behalf of William Bart Morris, who is seated behind me on my

14   right.

15             THE COURT:  All right.  Thank you.

16             Ms. Hughes.

17             MS. HUGHES:  Elizabeth Hughes on behalf of Debra

18   Morris, who is seated behind me.

19             THE COURT:  Mr. Simons.

20             MR. SIMONS:  Dan Simons on behalf of Stanley Bowling,

21   who is also behind me.

22             THE COURT:  All right.  Thank you, Counsel.

23             This matter is scheduled today to resolve issues with

24   respect to the audiotapes and transcripts that the United

25   States anticipates offering into evidence during the upcoming

1    trial.  The purpose of the hearing, as we discussed at the

2    last —— the last time we were together, is not to determine

3    admissibility, it's just to address the issue of accuracy of

4    the transcripts.  And originally, I had asked the parties to

5    provide me with the portions of the transcripts that were in

6    dispute, for the parties to identify those areas by the 14th,

7    by last Monday, I think it was.

8         I have reviewed everything —— I believe everything

9    that has been submitted with the exception of a transcript that

10   I believe my office received yesterday from —— maybe from

11   Mr. Hoskins on a tape that the defendants plan to play —— it

12   may not be Mr. Hoskins, a conversation with Ed Jordan.

13        Mr. Hoskins, was that not you?

14        MR. HOSKINS:  Your Honor, I don't think we sent

15   anything out yesterday.

16        THE COURT:  All right.  Well, let me see what I've

17   got.

18        MR. WHITE:  Your Honor?

19        THE COURT:  Yes.

20        MR. WHITE:  If I may interrupt, I sent something late

21   yesterday afternoon that Ms. Poynter and I tried to work out

22   the final things, and that may be what you're thinking about.

23        THE COURT:  No, I actually received that.  No, this

24   is a ——

25        MR. BAYER:  Judge, I think the United States sent a

1  couple of transcripts yesterday, one on Stivers and one on

2  Jordan, I think is what you would have gotten yesterday.

3          THE COURT:  The transcript that I have not reviewed

4  is a transcript involving — or has the caption at the top of

5  Ed Jordan.

6          MR. BAYER:  Yes, sir, that would have gone out

7  yesterday.

8          THE COURT:  Who submitted that yesterday, the United

9  States?

10         MR. SMITH:  Your Honor, it's my understanding that it

11 was first introduced as an offer of proof by the defense.  We

12 had very limited time to review that under the time in which we

13 received it.  We turned it around as quickly as possible to

14 show the Court our objections to this proposed transcript.

15 This was one in which the United States had originally not

16 transcribed.  The defense at a late date decided that they

17 wanted to transcribe it and submitted it to this Court, so —

18         THE COURT:  Well, I guess the question is — I'm not

19 sure who submitted it, and that's what I'm trying to figure out

20 at this point.

21         MR. SMITH:  It would have been submitted by the

22 defense, Your Honor.

23         THE COURT:  Everybody?  All the defendants or —

24         MR. SMITH:  Let me check.

25         THE COURT:  If you submitted this transcript, please

1    raise your hand.

2            Mr. Hoskins, I thought it was you.

3            All right.  Well, here's where we are on it.  I

4    received the disk late last night from the government, so I

5    have not listened to the audiotape to compare the versions that

6    have been submitted.  I will do that.  And what I'll do is, I'm

7    going to follow pretty much the same practice with all of

8    these.  What I have done is — as I said, I have listened to

9    these tapes, and because you have to stop the tape several

10   times and go back and listen and go back and listen, it would

11   be virtually impossible for us to go through all of the changes

12   today.  It's taken me the better part of a week to do this.

13   But I have made copies for everyone.  Well, I've made nine

14   copies, I hope that's enough for all the parties here.  I may

15   need to make one more.  But I have made copies with my

16   handwritten notes, and these are the changes that I will

17   approve in the transcripts.

18           Now, sometimes these changes that have been made, for

19   example, addressing the issue Mr. White raised, some of the

20   changes that I've made, while the parties may have agreed to

21   the transcript, there's some parts that are missing from the

22   transcript, and so I have made those changes.  And I've used

23   the government's version, since the government anticipates

24   introducing these transcripts, and I've made my changes to that

25   version, to the clips that were submitted by the government.

9

1    In other words, if a particular transcript goes a couple of

2    hours and there's only a couple of sections that the government

3    plans to introduce, that's the portion that I've listened to

4    and I've made those corrections to.  So it will be necessary

5    for the government to take my version, make the changes to the

6    original transcripts if they wish to introduce those in the

7    upcoming trial.

8           The preferred procedure in the Sixth Circuit is for

9    the transcriber that prepared the original transcripts to make

10   a certification that he or she has listened to the recordings

11   and certifies that the transcripts are accurate to the best of

12   his or her knowledge and belief.  But what I've done —— and of

13   course, that will need to be done prior to the admission of

14   these —— not admission, prior to the use of the transcripts.

15   But I have listened to all of the sections that I've

16   referenced.  I have my copies up here, as you can see, and

17   there are a couple of boxes over here that have copies for

18   counsel.  So I'll be providing those to you at the conclusion

19   of the hearing today.  As I said, I think there are nine copies

20   that I've made in the box, and it may be that we'll need to

21   make one other copy.

22           Unless, Mr. Gilbert, you and Ms. Hughes would like to

23   perhaps share a copy for now or take those copies back and make

24   an additional copy?

25           MR. GILBERT:  That would be fine, Your Honor.

10

1        THE COURT:  All right.

2        MR. GILBERT:  We'll agree to that.

3        THE COURT:  All right.  So that's the issue of the

4    transcripts, and that should expedite things considerably, at

5    least today.

6        I do anticipate, based on I believe Mr. Bayer's

7    comments from the last hearing that the parties will be filing

8    motions in limine with respect to one or more of these

9    transcriptions in advance of the upcoming pretrial conference.

10   And what I would suggest that you do with respect to any such

11   motions is identify the transcript that you're objecting to,

12   provide a one-paragraph summary of the conversation that's

13   recorded on the audiotape, state the nature of your objection,

14   the specific rule, and a very short basis as to the reason that

15   you're objecting.  That will allow the parties seeking to

16   introduce the tape in the case of the ones that I've listened

17   to so far, it would be the United States, to respond in the

18   same manner; the nature of why you're attempting to introduce

19   the tape, why it's admissible, and if there's an exception, for

20   example, if it's an exception to the hearsay rule, you need to

21   state specifically what the exception is, and that will allow

22   us to then address any objection in an orderly fashion.

23       As I said, I have not yet listened to the Jordan

24   transcript, but I'll be doing that, and as soon as I complete

25   that review, I'll provide copies of the transcript to all

1    counsel.  That will go out by mail instead of having a hearing,

2    but I'll follow the same procedure with respect to that

3    transcript.

4           Any questions about the transcripts before we move on

5    to other issues?

6           Mr. Smith, are you clear as to what the Court experts

7    the parties to do?

8           MR. SMITH:  Yes, Your Honor.  I do believe that I'm

9    following the Court.  Obviously, once we, I guess, have an

10   opportunity to see these changes, we'll translate those into a

11   final version, which then will be distributed again pursuant,

12   of course, to the Court's directions.

13          THE COURT:  Well, I would want — I would certainly

14   want to review it, but I'm not going to go through the same

15   process of objections and changes and all of that.  It's taken

16   quite a bit of time to review these transcripts, and I've spent

17   hours and hours doing that.  And I do believe that the changes

18   that I have made are the appropriate changes that need to be

19   made.

20          I will ask the parties — there's one transcript of

21   May the 1st beginning at 4:30 that I'll be giving to you.

22          I do want to make sure that — Mr. Smith, that I have

23   reviewed all the sections that you plan to play from that

24   particular tape.  If you believe that there are certain

25   sections, certain clips that have not been reviewed, you can

1    bring that my attention, and I'll listen to that tape again.

2          MR. SMITH:  Your Honor, I would also just for the

3    Court and the parties, obviously we attempted and I think the

4    defense asked and we tried to accommodate them in showing them

5    exactly — or approximately where in these tapes we were

6    relying upon and, obviously, those are approximations and they

7    may be narrowed further or -- I did notice last night in

8    reviewing a couple of the start times it said 19.00, and

9    actually it had to be 19.01 where it began.  So it wasn't

10   exact, and I apologize that it was not, but the volumes that

11   we're dealing with, again, we had to operate under

12   approximations, and I apologize for that.

13         THE COURT:  I understood that would be the case.  And

14   my review would start perhaps a little before the starting time

15   on the tape or perhaps a little after the starting time on the

16   tape.  There was one particular tape, I believe the audio

17   portions that were provided to the Court, there were two

18   versions and the tape actually stopped during the conversation

19   and I actually went to the second audiotape and picked up from

20   that point, and the times may have been off a little bit,

21   perhaps as much as two minutes, but I did complete the entire

22   review of that conversation.

23         There was also a motion filed yesterday -- I believe

24   filed by counsel for Mr. Maricle to allow copies to be made of

25   some materials.

1          Mr. Smith, have you had a chance to review that

2   motion?

3          MR. SMITH:  Yes, Your Honor.  We have no objection.

4          THE COURT:  I assumed there would not be an objection

5   to it.

6          So, Mr. Hoskins, I'll sustain that motion to allow

7   the copying and use by co-counsel of the wire intercepts that

8   were, I suppose, provided to you, subject, of course, to the

9   same restrictions.

10          Next, let's see, Mr. Abell, I reviewed a transcript

11   of a hearing held on a bond revocation issue from last week.  I

12   know the magistrate judge has now issued an order on that

13   matter revoking the bond of Mr. Stivers.  Do you anticipate

14   raising any issues of that with me at any point?

15          MR. ABELL:  I haven't had an opportunity to discuss

16   that with Mr. Stivers.  I will advise the Court if we intend to

17   do so as soon as possible.

18          THE COURT:  All right.  Well, I will not attempt to

19   set any dates then if you're not prepared to discuss that

20   matter.

21          There are -- getting back to the transcripts and the

22   tape recordings, there are three recordings that I did not

23   listen to because my understanding is they are not disputed.  I

24   want to confirm that that's the case.  But they would be

25   transcripts dated April 10th of '07, and that's — I'm just

1  using the summary here – clips of Stivers and Jones; 4–11–07,

2  Stivers, Maricle, and Jones; and 4–18–07, Maricle and Stivers.

3  As I understand the parties are not disputing the accuracy of

4  the transcripts.  There may be some objection to the

5  admissibility, obviously, of the tapes but not to the accuracy

6  of the transcripts.

7           Mr. Hoskins, is my understanding correct on that

8  point?

9           MR. HOSKINS:  I think so, Your Honor.

10          THE COURT:  All right.  And, Mr. Smith, there was one

11  transcript that's described — it's 4–6 of '07, clips of

12  Stivers and Jones, it's described as clips one through seven.

13  What I received only had clips one through six on it.  I think

14  that might have just been an error, there was really only six

15  clips.  Is that correct, or am I mistaken?

16          MR. SMITH:  Yes, Your Honor, I'm advised that is our

17  mistake and I apologize.

18          THE COURT:  Okay.  I just want to make sure that I

19  had received everything.

20          Now, what I would like to do is I want to give the

21  attorneys an opportunity to get these copies that I have over

22  here and I want to give you a chance to look through these

23  materials while we're all here together.  So what I would like

24  to do is take about a 30–minute recess while you get these

25  copies and while you page through those to make sure you don't

1    have any other questions about my corrections, some of the
2    terms that I've used.  And what I've done when there's been
3    something that I haven't been able to discern from the tape, I
4    have added, as the attorneys have, UI for unintelligible.
5    Other than that, you should be able to make out most of these
6    changes.  But they are in my handwriting.  So if you can't read
7    my handwriting, you may need to raise those issues or the pages
8    that are not legible for you, I can certainly make additional
9    revisions.  But because time was short, I didn't have time to
10   do any redline versions, so you're just going to have to deal
11   with my handwritten notes on these.

12           So what we'll do is, in just a moment, we'll take
13   about a 30-minute recess to allow you to get your copies.

14           And, Jackie, it maybe, if we have time, we could
15   probably make —— after they've all gotten a set, maybe you can
16   get one set from someone to make another set.  I want the
17   attorneys to make sure they've got a copy.

18           We'll give you a chance to look through those
19   transcripts.  Before we do that, let me see if there are other
20   issues that the parties would like to take up today while we're
21   here together.

22           Mr. Smith, anything that you're aware of on behalf of
23   the United States at this time?

24           MR. SMITH:  No, Your Honor.

25           THE COURT:  All right.

1          MR. HOSKINS:  Your Honor, I do have some questions

2    about the Court's procedure on use of the transcripts at the

3    trial.

4          THE COURT:  All right.

5          MR. HOSKINS:  And, actually, before I get to that

6    point, I would like to register an objection to having to sit

7    so far away from my client as we have this hearing today.

8    We've communicated very closely through this and worked on

9    these transcripts a lot together, and I just think there ought

10   to be some way that we can confer as we go through this, and

11   sitting this far away makes it impossible to do that.

12         THE COURT:  Your objection is noted.

13         MR. HOSKINS:  Secondly, Your Honor, I would ask the

14   Court as to how the transcripts will be presented to the jury.

15   Are they going to be presented as this is the Court's

16   production or this is the government's production or how will

17   that be handled?  It would my preference, not having seen what

18   the Court has come up with, that if there's anything that we

19   dispute that the jury be given competing transcripts to

20   compare.  Otherwise, especially, if it comes from the Court, it

21   kind of puts the Court in the position of interpreting the

22   evidence, and I think that's something the jury is solely

23   empowered to do.

24         THE COURT:  Well, the jury is not advised of that.

25   The Court's duty is to make sure that the transcripts are

17

1  accurate, and that's what I have done.  The preferred method,

2  and I would refer you actually to pattern jury instructions and

3  the annotations that follow the particular Instruction 7.17.

4  The preferred method, of course, is for the parties to

5  stipulate to the accuracy of the transcript, and you've

6  certainly done that in a couple of circumstances here, the ones

7  that I've just referenced.

8          There's also the situation where the parties — it's

9  the situation I referred to with Mr. White where the parties

10  agreed to a transcript but the Court found that it was not

11  necessarily accurate.  And so under those circumstances, the

12  Court then can test the accuracy by listening to the tapes

13  outside the presence of the jury and make any necessary

14  corrections.

15          The third and least preferrable method would be to

16  submit two competing versions of transcripts to the jury, and

17  that's not one that the Court is going to use based on the

18  voluminous nature of these transcripts.  The Court does not

19  plan to advise the jury that these are the Court's transcripts.

20  This is a matter that takes place outside the presence of the

21  jury.  The transcripts are an aid for the jury to use to follow

22  as an audiotape is being played.  I don't know how the United

23  States plans to use transcripts, I don't know if they plan to

24  make copies, place those in notebooks, or if they plan to use

25  an overhead, which I would think would be probably the

1   preferred method, use an overhead and then use the transcript

2   as we're going through this at trial when a particular tape is

3   being played.  But I don't to plan to tell the jury that this

4   is the Court's version of the transcript, if that's what you're

5   asking.

6          MR. HOSKINS:  That is part of what I was asking, and

7   I guess that would leave us, the defense, free to tell the jury

8   that the transcript is incorrect in some ways.

9          THE COURT:  The Court will instruct the jury, the

10  Court will give a limiting instruction if requested that the

11  evidence that's being introduced, if it's admissible, if it's

12  admitted, is the tape itself, not the transcript.  The Court

13  will give that limiting instruction, in all likelihood, several

14  times during the course of the trial, and if either side wishes

15  to allow the transcripts to go back to the jury, the Court

16  would give a further limiting instruction at that time that the

17  transcripts themselves are not evidence but merely an aid to

18  follow or to use in evaluating the evidence, the same limiting

19  instruction that has been approved by the Sixth Circuit.

20         MR. HOSKINS:  Judge, does that preclude the defense

21  from offering a different interpretation of what's on the

22  recording in argument?

23         THE COURT:  You can certainly challenge that with a

24  witness if you wish to do that.  If you think — if you want to

25  spend time with a witness saying that's not what you said or if

19

 1  you want to challenge something, that doesn't preclude you from

 2  challenging it.  But in terms of introducing a competing

 3  version of the transcript, the transcripts aren't going to be

 4  admitted into evidence, so the Court can't see, at this time,

 5  allowing you to admit a competing version if the original isn't

 6  admitted.

 7          MR. HOSKINS:  I understand that, Your Honor.  I don't

 8  have an issue with that, I just wanted to make sure that if the

 9  jury sees a transcript in this case to use as an aid in

10  listening to these recordings, if in my closing argument I'm

11  entitled to say, you've seen a transcript but if you listen to

12  it, that's not what is on the recording.

13          THE COURT:  I'm not making any final rulings as to

14  what you may or may not argue at this time, Mr. Hoskins, I'm

15  just attempting to explain to you the procedure that we'll be

16  following.

17          MR. HOSKINS:  That's why I asked, Your Honor.

18          THE COURT:  All right.  I think I've explained it to

19  you fairly clearly at this point.

20          MR. HOSKINS:  One other question that I have in

21  regards to the transcripts, and I realize that the government

22  has identified parts that they intend to introduce in their

23  case in chief.  There are additional parts that the defense I'm

24  sure will want to introduce and I don't think it's the sole

25  province of the government to be able to prepare transcripts

1    for the Court's consideration.

2          THE COURT:  And that's the reason that I asked you to

3    get together and do all that and submit that me by Monday.

4    Last Monday, actually.

5          MR. HOSKINS:  We submitted everything by Monday,

6    Judge.

7          THE COURT:  I've been getting drips and drabs in all

8    week, Mr. Hoskins, I think maybe from your office.

9          MR. HOSKINS:  You have gotten —

10          THE COURT:  So you didn't do it by Monday, then, did

11    you?

12          MR. HOSKINS:  Well, we submitted a transcript that

13    had all the things on it that we wanted by Monday of last week,

14    and we did clean those up some in the hopes of making it easier

15    for everybody to interpret what we had prepared.

16          THE COURT:  So at this point — let me see if I

17    understand what you're asking.  At this point, there may be

18    additional portions of transcripts that you haven't identified

19    that you're wondering how to handle that in terms of — or

20    additional audiotapes that you would want to introduce, but you

21    don't have transcripts prepared, so there's nothing really for

22    the Court to review at this point; is that correct?

23          MR. HOSKINS:  I don't believe so, Your Honor.  I

24    believe we have submitted transcripts of everything that we

25    want to use.

1          THE COURT:  Okay.  Let me back up.  The United States

2    submitted on the 14th, as requested, those portions of

3    audiotapes that they plan to use that were disputed.  And I

4    have listened to those portions of the audiotapes and I have

5    made changes to the transcripts that I think were appropriate.

6    I don't really know what else I should be reviewing for

7    accuracy at this point, because I don't know what else is going

8    to be introduced at this point or attempted to be introduced.

9          MR. HOSKINS:  Well, Your Honor, there are a lot of

10   portions — I mean, it was my thinking that probably all these

11   recordings should be played for the jury to get the entire

12   sense of what was going on.  I mean, there may be objectionable

13   parts that the Court would sustain an objection to either side

14   on, but for the most part, most of these recordings would need

15   to be played.

16         THE COURT:  So it's your position, at this point, the

17   Court should — Well, I'm not sure what your position is.

18         MR. HOSKINS:  My position, Your Honor, is —

19         THE COURT:  I know you want the entire — I think

20   what you're saying is you think that all these tapes should be

21   played.

22         MR. HOSKINS:  All those that don't have objectionable

23   hearsay or some other objectionable material in them.  But

24   there's a lot of things on there that will show — put things

25   in context that I think will be important.

1          THE COURT:  And those portions — you haven't

2     attempted to identify specific portions, you're just saying

3     everything, unless it's objectionable, should be played to the

4     jury?

5          MR. HOSKINS:  At this point, that would be my

6     thinking.

7          THE COURT:  All right.  Well, at this point, I don't

8     know that we can really address that issue, Mr. Hoskins,

9     because what I have attempted to do is to listen to the

10    portions that the parties — the United States has identified

11    that they intend to play, and I have made corrections to those

12    portions of the transcript.  And at some point, if you wish to

13    introduce more than that, we will have to address that issue at

14    the appropriate time.  I have not reviewed more than what I've

15    told you about today in terms of the transcripts, and my

16    understanding was the parties were attempting to identify the

17    portions of the transcripts that they anticipated would be

18    played, but that hasn't happened, obviously.  But that's as

19    much as we can do today.

20          MR. HOSKINS:  I understand, Your Honor.

21          THE COURT:  All right.  Thank you.

22          Mr. Bayer.

23          MR. BAYER:  I just wanted to make sure from a

24    logistical standpoint for the hearing in January, the final

25    pretrial, how is it that you want us to bring the motions

23

1    before the Court regarding —— such as the ——

2              THE COURT:  Mr. Bayer, I'm not telling you how to do

3    it, I'm just making suggestions to you because you raised it at

4    the last hearing, that you anticipated filing some pretrial

5    motions in limine.

6              MR. BAYER:  Yes, sir.  What I'm saying is timewise,

7    do you want us to bring the motions with us that day, do you

8    want us to see if we can get them to you beforehand?

9              THE COURT:  I will have about two hours for the

10   pretrial conference on the 4th.  And I will be out of town a

11   substantial portion of the time between the 4th and the trial

12   date.  So file your motions and we'll get to them just as

13   quickly as we can.

14             MR. BAYER:  Also, anything as far as general motions

15   to object to the entry of, say, a recording in its entirety or

16   whatever, do you also want us to bring those to you ——

17             THE COURT:  No.  Many times — Well, let me make sure

18   I don't misstate anything.  The matters that you're attempting

19   to raise, most of the time, cannot be addressed in a motion in

20   limine pretrial until the Court's had the opportunity to

21   understand the evidence and the context in which it's being

22   offered.  So understanding that that's the case, many times, if

23   you file motion in limine attempting to exclude evidence that

24   the Court doesn't understand the context, you're going to lose

25   the motion.

1            MR. BAYER:  I understand.

2            THE COURT:  But if there's something that you think,

3    either as a matter of law or otherwise, can save time in the

4    course of the trial by raising it pretrial, through an in

5    limine motion, I'm not precluding you from doing that.

6            MR. BAYER:  I think that's fundamentally what I'm

7    hoping, that we might be able to create a methodology to help

8    the Court, is that we can file our motions in limine

9    specifically setting out the portions of the audio recordings

10   or whatever they might be as far as transcripts, presenting it

11   to the Court so that we can give you a roadmap or what we think

12   the Court should be aware of as we go into this process, which

13   hopefully will facilitate you as it comes up.  See, we have

14   some basic general objections to comments that are made on

15   these tapes regarding Mr. Adams that are completely hearsay,

16   they're unsolicited statements, they're not made by anybody

17   that we know of or have been identified to us as a

18   co-conspirator.  So we've got some general basic motions in

19   limine that we want to present to the Court, and if I

20   understand you correctly, that's what I'm looking for from you,

21   is guidance.

22           THE COURT:  I understood --

23           MR. BAYER:  If I can give you this roadmap, then that

24   may make it much easier for both of us.

25           THE COURT:  Right.  I understood that as of today

1   that we would have a limited number of issues that were in

2   dispute.

3           MR. BAYER:  Just as it relates to transcripts.

4           THE COURT:  The 18 portions or whatever.  Mr. Hoskins

5   is attempting to expand that to everything basically, every

6   tape that's been made in this case.  But my comments earlier

7   were intended to address those particular portions of the

8   transcripts.  I keep saying transcripts, but you understand I

9   mean the audio recordings.  Transcripts —

10          MR. BAYER:  I think my understanding is the United

11  States intends to play only those sections of the audio

12  recordings in which — that there is a transcript for so as

13  long as we don't necessarily have an objection to any provision

14  that's within the transcript.  But I do want the Court to know

15  that we'll give you kind of an outline of the things that we're

16  concerned about that would come in regarding Mr. Adams so that

17  as it comes up you'll be prepared to —

18          THE COURT:  Yes, sir.

19          MR. BAYER:  — understand what the issues are.  And

20  if that's acceptable to you, that would be the way I would like

21  to do it.

22          THE COURT:  That was my intention as we started, to

23  give you kind of a roadmap as to how some of these objections

24  you might — how you might want to outline those to give me an

25  idea as to what we're looking at in terms of objections.

1          MR. BAYER:  Thank you, Judge.

2          THE COURT:  All right.  Thank you.

3          Mr. White.

4          MR. WHITE:  Your Honor, on behalf of Mr. Jones, we

5   don't have any other issues to take up today other than what

6   the Court has identified with Mr. Hoskins.

7          THE COURT:  All right.  Thank you.

8          Anyone — I'm not going to ask everyone to respond

9   unless you have an issue to take up.

10         MR. BALDANI:  Judge, I have a question.

11         THE COURT:  Yes, sir, Mr. Baldani.

12         MR. BALDANI:  You described to us the procedure for

13  objection to, I think, the substantive things in the

14  transcripts or on the tapes, but I want to reserve the right to

15  object to the use of transcripts period.  And I don't know if

16  that's something you take up in a motion in limine or something

17  that we're going to do later today after we have reviewed the

18  work you've done on them.  I'm just trying to get clear on

19  that.

20         THE COURT:  All right.  You want to state a specific

21  objection or — other than what Mr. Hoskins has already stated?

22         MR. BALDANI:  Well, Judge, it's our position on

23  behalf of Mr. Thompson that despite the diligence and efforts

24  of the government and of us to prepare a transcript as best we

25  can, unless you heard things a lot better than I was able to, I

1  don't think the transcripts should be utilized at all.  And I

2  think the jury should be able —— I don't think that we're in

3  any better position to discern what's on those tapes than a

4  juror hearing them, so —— and I wasn't here, you know.  When we

5  submitted our transcripts, I think —— I know we made a point

6  that we, by submitting it, we're not agreeing that a transcript

7  should be used, period.  So I'm just trying to get a little

8  guidance on what ——

9          THE COURT:  Well, as to that issue, I will —— you're

10 basically objecting that the transcripts themselves contain

11 large sections that are unintelligible.

12         MR. BALDANI:  Yes, Your Honor.  Of course, I haven't

13 seen yours yet.

14         THE COURT:  Well, to the extent that that's the

15 objection, I'll overrule that.  I think it does help to

16 understand dialect in listening to these transcripts.  For

17 example, if someone uses the term "buddy" a lot and you hear

18 that a lot on the transcripts, sometimes the transcriber may

19 put that as but or but for.  And after listening to some of

20 these sections, I'm able to discern that and make those

21 distinctions.  And so, you know, I may have made a thousand

22 changes on these transcripts, but the stack here is probably

23 six or eight inches high, and 90 percent of the additions that

24 I've made are not substantive changes or additions, it's just

25 to make the transcripts more complete.  But I don't think that

1  the transcripts are unintelligible.  Sometimes the speaker, one
2  of the confidential witnesses speaks very rapidly, and that
3  certainly makes it more difficult but not impossible to
4  understand what's being said.  So if —- I will certainly
5  consider that as an objection, but it would be overruled,
6  because I think after listening to hours and hours of these
7  transcripts that they would be helpful to the jury, but the
8  sections that are difficult to hear don't make the use of the
9  transcripts —- it doesn't indicate to me that the transcripts
10  should not be used.  And so as a general objection, I would
11  certainly overrule that.

12         MR. BALDANI:  I just wanted clarity, Your Honor.  And
13  I would ask that, you know, after I've reviewed yours, maybe it
14  cleared up a lot of things that I couldn't hear, but I
15  anticipate I would just file perhaps a written objection if I
16  still have it, just so the record is clear, as to what our
17  position on the use of transcripts is, Your Honor.

18         THE COURT:  That will be fine.  If you raise issues
19  more than what you've told me about, if I need to respond, I
20  will do so, but otherwise the oral objection would be
21  overruled.

22         MR. BALDANI:  Thank you, Your Honor.

23         THE COURT:  All right.

24         MR. WHITE:  Your Honor, I'm sorry to make you come
25  back.

1          THE COURT:  Yes, sir.

2          MR. WHITE:  On behalf —— it was my understanding that

3    the issue you just addressed with Mr. Baldani was not going to

4    be raised today.  I think I put that in my e—mail to you.  So

5    we don't need to go through the whole colloquy again, but ——

6          THE COURT:  Mr. White, let me make sure that you

7    understand something about e—mails that go to my chambers.

8    They go to my secretary, to my secretary's e—mail box when

9    she's there, and sometimes they may or may not be passed along

10   to me.  If it's just an attachment, I may get the attachment.

11   But don't get the impression that you're communicating with the

12   Court when you send something to chambers e—mail address; okay?

13         MR. WHITE:  I understand, Your Honor.  I mean, the

14   e—mail I'm talking about is the e—mail that I addressed to you

15   that I copied everybody on that dealt with these two —— the

16   transcripts.  And what I'm saying, without —— I'm not trying to

17   force you into getting into the same discussion with

18   Mr. Baldani, I just want to say I have the same objection.  I

19   understand you're overruling it.  I'll probably file something

20   in the record, but don't expect you to feel the need to file an

21   actual order.

22         THE COURT:  All right.  Thank you.

23         MS. HUGHES:  Your Honor, I'm sorry.  With respect to

24   the two transcripts that Bart and Debra Morris presented, we

25   did not —— first of all, in the defenses' defense, we were

1    provided with full transcripts by the government, but we were

2    not provided with the clips to know exactly which portions they

3    were intending to use until after that December 14th deadline,

4    I believe, or right at it.  So it's not like we knew how to

5    whittle that down.  That being said, the two transcripts that

6    we provided were not full transcripts.  We just provided to the

7    Court the transcripts of the parts that we were interested in.

8    So I think that we've identified for the Court what we would be

9    interested in, but I did not provide — we did not provide

10   accompanying audio clips for the Court to compare, although I

11   think the Court had the audio clips because we all — or the

12   audio — the whole audiotape.  So I guess I just wanted to make

13   sure that we — we have provided with respect to those two

14   transcripts.

15          THE COURT:  All right.

16          Anyone else?  If not, we'll take about a 30-minute

17   recess and then we'll resume in 30 minutes.

18      (Whereupon, a short recess was had, after which the

19   following proceedings were had in open court.)

20          THE COURT:  All right.  Thank you.

21          We'll resume the hearing.  Let me confirm that all

22   counsel received copies of drafts that I had prepared?  Anyone

23   that didn't get a copy?

24          Mr. Gilbert, do you —

25          MR. GILBERT:  Yes, Your Honor, we got two separate

1    copies.

2                THE COURT:  All right.

3                Ms. Hughes, I briefly attempted to compare the

4    versions that had been submitted on behalf of the Morrises with

5    the version that the government had submitted that I was using

6    as my unofficial redlined copy.  It appears to me that the

7    portions that you wanted included are included in that section

8    as well.

9                MS. HUGHES:  I think that's right.  I was just trying

10   to be overly careful.  I think that's true, but I haven't done

11   the overlay exactly.

12               THE COURT:  All right.  If you see that there are

13   portions that you have included that may start before or after

14   the sections that the government plans to play, if you can

15   alert me to that and I'll review those sections.

16               MS. HUGHES:  I will.  And I do think you're right,

17   but I just don't want to make a promise of that sitting right

18   here at this moment.  Thank you.

19               THE COURT:  All right.  Understood.

20               With respect to the portions of the audiotapes that

21   the United States plans to play, having listened to those

22   portions, it would be the Court's determination that the

23   government should not be required to play the entire tapes.

24   It's not necessary to put the conversations in context to play

25   the entire tapes.  So the government would not be required, as

1  Mr. Hoskins has requested, to play the entire tapes.  If the

2  defendants wish to play portions of the tapes that have not

3  been included in the clips that were identified by the

4  government and if they wish to use transcripts of those

5  portions, they can identify those portions and they can submit

6  those portions to me and I will review those in advance of

7  trial before the defendants would then offer those either

8  during cross-examination or in their case in chief.

9           MR. ABELL:  Judge, with regard to the submissions by

10  the defense, I take it the Court has the complete recordings,

11  so you just need transcripts, not recordings; is that correct?

12           THE COURT:  Yes, sir, that's correct.  I have

13  audiotapes with the complete recordings listed.  I haven't

14  brought those up here today, but I do have all of the -- I've

15  got transcripts for all of the tapes.  I believe I have

16  transcripts for everything the United States submitted.

17           MR. ABELL:  Do you want us to communicate that to the

18  Court by e-mail or by filing it in the record?

19           THE COURT:  File it in the record.  I think, at this

20  point, that would be a little bit easier.  It's hard to keep

21  track of everything that's get submitted by e-mail and then

22  there are second and third versions of everything, and I'm not

23  sure really -- sometimes until I go back and spend quite a bit

24  of time I'm not really sure what the last version is that's

25  been submitted.

1          MR. BAYER:  Just —

2          THE COURT:  Yes.

3          MR. BAYER:  — to make sure that I understand what

4   you said.  If during the course of the trial there is a section

5   of audio that we feel is necessary to play so the jury will get

6   a full perspective on it, do we need to let you know about that

7   before the trial begins, or will we be allowed to do it during

8   the course of trial?

9          THE COURT:  If you attempt to play some portion, the

10  government may have some objection to playing that and we'll

11  have to take up the objection.  If it's relevant and isn't

12  excluded based on some objection, then you would be able to

13  play that portion of the tape.  If you would plan to use a

14  transcript with any portion of the tape that you would want to

15  play, then I would need to review that in advance based on

16  the — follow the same procedures that I followed with respect

17  to the sections the government has identified.

18         MR. BAYER:  That works well.  And if another

19  defendant has submitted a transcript, I'm assuming that we

20  would be allowed to use that transcript as well once the Court

21  approves it.

22         THE COURT:  If it's been approved, if it's been

23  reviewed and approved.

24         MR. BAYER:  Yes, sir.

25         THE COURT:  Yes.

1           I know that you—all haven't had a chance to look
2    through all of these copies that have been — that you've been
3    given, but is there any other questions about the procedures
4    that we'll be following?

5           I understand, Mr. Smith, that you will be using the
6    copies that I've given you to make corrections if you choose to
7    use those portions of the transcript.

8           And if any of the defendants wish to use the portions
9    that the government has identified, these same corrections that
10   I've made would apply to anything that the defendants would
11   attempt to use.

12          All right.  So we've got this much finished at this
13   point.

14          All right.  Mr. Smith, other issues on behalf of the
15   United States at this time?

16          MR. SMITH:  No, Your Honor.  I do — have taken
17   somewhat of a glimpse through it and I think we've got a good
18   grasp on the gist of most of the corrections.  And, obviously,
19   if the parties — I guess, what's the Court's timetable as far
20   as how the Court wishes to proceed from this point forward?  If
21   we're to take these changes and to memorialize them in a final
22   version, when would the Court like to have that back?

23          THE COURT:  You really don't have to give it back to
24   me at any particular time — well, prior to trial.  If you want
25   to use those at trial, you know, I would want to see those, you

1    know, in advance of trial, that you plan on using that.  And I

2    may actually kind of look over to make sure that the changes

3    have been made, but other than that, you don't have to provide

4    me with a copy in advance of the pretrial or anything of that

5    nature.

6              MR. SMITH:  Thank you.

7              THE COURT:  All right.  I mentioned earlier,

8    Mr. Smith, about certifying that the transcripts were

9    prepared –– were true and accurate, and you can submit a

10   written certification that the person or persons preparing the

11   transcripts listened to the tapes and that the versions that

12   were submitted by the government were true and accurate to the

13   best of that person or person's knowledge and belief, and then

14   that allows the Court, then, to go to the second part of the

15   analysis, which is the review that I've already conducted.  But

16   I do need a certification by the persons that prepared the

17   transcript.  And again, I would refer you back to the pattern

18   jury instruction.  I believe it's 7.17, if I'm not mistaken.

19             MR. SMITH:  Yes, Your Honor.

20             THE COURT:  All right.  Any other issues that we can

21   take up?

22             MR. BALDANI:  Judge, I have a question.

23             THE COURT:  Mr. Baldani?  Yes, sir.

24             MR. BALDANI:  I understood your directions about any

25   substantive objections to the transcripts.  My question is,

1    obviously, we haven't had a chance to go through all this, and

2    I know we can't keep going back and forth ad nauseam.  My

3    question is simply if we look through your final version here

4    and we think there's a pertinent word that you put in that we

5    disagree with, is that something we can bring up at the

6    pretrial conference as well if that happens?

7              THE COURT:  If it's a substantive change, why don't

8    you raise it at the pretrial conference?  And if you let me

9    know in advance, I can go back and listen to those again.  If

10   we wait until the pretrial, we're just not going to have time

11   to go through this volume of material.  But if there's a

12   substantive change that you think is necessary, certainly —

13             MR. BALDANI:  We'll let everybody know prior to the

14   pretrial.

15             THE COURT:  Yes, sir.  Yes, sir.

16             All right.

17             MR. BAYER:  I've got a couple of little housekeeping

18   measures and if the Court feels you're already to move on —

19             THE COURT:  Yes, sir, that's fine.

20             MR. BAYER:  First off, let me state on behalf of at

21   least myself, and I think it applies to all the other defense

22   counsel, when we submitted our comments to the Court's jury

23   questionnaire, it was not done as a criticism of the Court's

24   juror questionnaire, but we were under the impression that the

25   Court was soliciting information from us as to what we would

1  ask to be included and what we thought might help enlighten
2  both the Court and the parties regarding the jurors'
3  personalities and perspectives.  I would like to state that we
4  thought that the idea of the jury questionnaire was very good,
5  we thought that the Court had done a wonderful job on it.
6  Again, we were just adding on what we thought helped
7  short-circuit voir dire.

8          That being said, Judge, I would like to ask you to
9  reconsider your thoughts about not doing the jury
10 questionnaire.  Candidly, I think it will make voir dire with
11 all of these parties go much smoother and we'll get a much
12 better flavor of the jury panel, and I think it would be to
13 everyone's benefit if you would do that.

14         THE COURT:  Well, at this point, it's too late to go
15 back and revisit that issue with the timing and how long -- my
16 experience is how long it takes jurors to get information back,
17 number one; number two, what the parties had submitted was way
18 too much, and it's more than this Court would allow to be asked
19 in voir dire, quite frankly, some of these questions that were
20 included in there.  And I know what happens when you get
21 several people together and you try to improve and improve, and
22 at some point, though, you make it just too unwieldy for the
23 jury.  And you also need to understand that any questionnaire
24 that the Court submits, there's a practical element that goes
25 into that, too, and that is that you want to get honest and

1    complete answers from jurors.  And if they get a 20-page -- 19-
2    or 20-page questionnaire, they're probably not going to give
3    that as much attention as they should.  That's number one.
4    Number two, I'm a little bit leery, at this point, of giving
5    the parties information in advance of trial about jurors, quite
6    frankly.

7            And so at this point, number one, it's too late, what
8    was submitted by the defendants was much too much, and I have
9    serious concerns, at this point, about identifying potential
10   jurors to this group of people.

11           MR. BAYER:  Will the Court perhaps give us a little
12   leeway, then, during voir dire to ask perhaps --

13           THE COURT:  Probably not.  And we'll take that up at
14   the pretrial conference, but in all likelihood, I will ask
15   quite a few questions and I will give the defendants a block of
16   time to do voir dire, I'm not going to give every single -- I
17   will give -- if you can't divide the time up, then I'll do that
18   for you, but I plan to give each side a block of time to use
19   for voir dire.

20           MR. BAYER:  And then one of the things that I've been
21   thinking about that I was hopeful that might make the trial a
22   little bit smoother for everybody is, what does the Court think
23   about the possibility of us being able to prepare a flowchart
24   to give to the jurors so that they can actually hold onto it
25   during the course of the trial and made notes on it.  Because

1  we've got so many different defendants and the United States'
2  proof is that there's this interwoven web, and I would like to
3  be able to prepare a flowchart for the jurors so that they can
4  actually track how each of these defendants may or may not
5  relate to each other and allow them to take notes on that
6  during the course of the trial.
7          THE COURT:  The jury, of course, will be allowed to
8  take notes.  With respect to demonstrative exhibits, if the
9  parties are all in agreement with that, then I would allow
10  that.  But if there is an objection to that procedure, if it's
11  not in agreement, I'm not going to allow a juror to focus on
12  one particular exhibit.
13          MR. BAYER:  So what we might be able to do is get
14  amongst ourselves and work something out and have it for the
15  Court at the pretrial perhaps.
16          THE COURT:  Well, when you say "amongst yourself,"
17  that includes everyone, including the government.
18          MR. BAYER:  That would include everyone, yes, sir.
19          THE COURT:  Yes, sir.
20          MR. BAYER:  Okay.  Thank you, Judge.
21          THE COURT:  Yes, sir, Mr. Abell.
22          MR. ABELL:  Judge, I want to clarify what I need to
23  do.
24          THE COURT:  Yes, sir.
25          MR. ABELL:  There is a transcript, May 17th, 2007, is

1    the date, and I sent a transcript that our office had

2    prepared —

3              THE COURT:  I'm sorry.  Come up to the podium.  I'm

4    not hearing real well.

5              MR. ABELL:  Judge, I want to clarify what I need to

6    do.

7              THE COURT:  All right.

8              MR. ABELL:  There's a transcript of a recording on

9    May the 17th, 2007, that if that is going to be played at all,

10   that tape is going to be played at all, I want it played in its

11   entirety and I want a transcript submitted to the jury in its

12   entirety.  What the Court has prepared at least crops off the

13   first couple of minutes of the transcript I've prepared.  I

14   understand you want me to file something in the record with

15   regard to that issue.  I'll do that and identify the recording.

16   Do I need to attach to it a copy of the transcript, or does it

17   suffice what I've already provided to your office?

18             THE COURT:  I don't have — again, I didn't have the

19   ability to bring everything up here today.  I do have in my

20   office downstairs your version of what was submitted, your

21   version of the — if you submitted a separate transcript, then

22   I have that, I have a copy of that.  If there is a portion —

23   it's 5-17, and I'm not sure how long the 5-17 recording would

24   be.  Let me just look through here real quickly.

25             MR. ABELL:  Judge, glancing at what the Court

1   distributed today, about the first two, maybe three pages of

2   what I had submitted have been cropped off, and I'm not sure

3   what beyond that, but certainly I did notice that.

4           THE COURT:  All right.  The version that I'm looking

5   at here —

6           MR. BAYER:  Judge, I've got it on my computer if you

7   want me to —

8           THE COURT:  I actually have his version, as well as

9   well as the government version, Mr. Abell, I do have that here

10  with me.  But the government submitted the recording — a

11  transcript.  Their portion that they want to play begins at 41

12  minutes and 19 seconds.  Do you have that with you there?

13          MR. ABELL:  I do.

14          THE COURT:  Okay.  I believe what you're saying is

15  the version that you submitted starts earlier than 41 minutes.

16          MR. ABELL:  It looks like two pages.

17          THE COURT:  Two pages.  All right.

18          MR. ABELL:  What I submitted to you, at about the top

19  of the third page is where what's been distributed today

20  begins, the comment, "You've been to court."

21          THE COURT:  I see.  All right.  So the portion that

22  you would like to have included would begin with the

23  confidential witness saying, "We're pulling into the residence

24  of Alman Stivers, and it would continue on through the portion

25  that the government has submitted?

1          MR. ABELL:  Yes, sir.

2          THE COURT:  All right.  Now, going to the end of that

3    tape, Mr. Abell, the government's version of the transcript

4    ends at one hour, 12 minutes, 45 seconds, and I believe that's

5    the same as the ending that you had on your transcript.

6          MR. ABELL:  It appears to be, Judge.

7          THE COURT:  I think that's correct.  So the only

8    addition that you would want to include would be those two —

9    approximately two pages of transcript?

10         MR. ABELL:  Yes, sir.

11         THE COURT:  All right.  Well, I will go ahead and

12   listen to the original audiotape, I will go back and get —

13   since I'm working from the government's draft and because they

14   have times on here, I'll go back and get their transcript, back

15   that up to the part that you want to play and review that, and

16   I'll submit that to the parties in the same fashion that I

17   submitted the version of the government's.  So I'll be using

18   the same draft, but I'll be backing it up a couple of minutes

19   to where it starts where you've indicated, and that should take

20   care of this particular — with the corrections I've made and

21   the ones that I will make on the additional two pages, that

22   should take care of the 5-17 transcript.  Are we on the same

23   page on that?

24         MR. ABELL:  I believe that it will.

25         THE COURT:  All right.  Thank you, Mr. Abell.

1          Ms. Hughes, you were essentially — I'm sorry,

2  Mr. Baldani.  Ms. Hughes, you were essentially going to do the

3  same thing, follow the same procedure, if there's anything else

4  that you notice that's not included, you're going to identify

5  those sections for me?

6          MS. HUGHES:  I am, yes, sir.

7          THE COURT:  All right.  Thank you.

8          I'm sorry, Mr. Baldani.

9          MR. BALDANI:  Judge, for the record, on behalf of

10  Mr. Thompson, I want to join in the motion to reconsider the

11  jury questionnaire.  I understand your ruling.  I would simply

12  add that it's our position that the questionnaire proposed by

13  the Court is much better than nothing at all and add as well,

14  Your Honor, that I think any concerns about any business with

15  the jury could be dealt with by having them submitted with a

16  number only without any names or addresses, but I wanted to put

17  our position on the record.  And I would also note, Your Honor,

18  that the government submitted quite a few additional questions,

19  as did the defense, and so I wanted to put our motion in that

20  regard on the record.

21          THE COURT:  All right.  Well, it's noted, but again,

22  the problem at this point is timing.  There's not enough

23  time — you know, we're looking at this is December 22nd, we

24  have two holidays before this matter is set for trial and a

25  little less than a month, and typically I would give the jury

1    at least close to a month to get these materials, and, of

2    course, that doesn't include mailing and copying and all the

3    other things that would have to be done by the Clerk.  So

4    again, I'll note your objection for the record, it's not

5    necessary to use jury questionnaires, they are sometimes

6    helpful, but at this point, it's too late to submit a

7    questionnaire.  And I assume that several others would take the

8    same position that you would, you would like to have a

9    questionnaire submitted, but it's — quite frankly, it's just

10   too late to do that at this point.

11          MR. BALDANI:  Thank you, Your Honor.

12          THE COURT:  All right.  Thank you.

13          Let's see if there are any other housekeeping matters

14   that we can attend to while we're here today.

15          Mr. White?

16          MR. WHITE:  I'm sorry, Your Honor.

17          THE COURT:  Yes, sir.

18          MR. WHITE:  And I apologize for going back.  I just

19   had to ask a question on the May 1st, 2007, transcript that

20   begins Bill "Alman" Stivers, and Wayne Jones and it lists a

21   number.  This is also the one with Barbara Jo White Colter on

22   it.

23          THE COURT:  Hang on one second, please.

24          The version I'm looking at, the government's clips

25   that were submitted, begin, "I believe it's now around 4:30 on

1    May the 1st.

2              MR. WHITE:  Yes, Your Honor.

3              THE COURT:  All right.

4              MR. WHITE:  Towards the back at the hour of 47:53.

5              THE COURT:  47:53?

6              MR. WHITE:  Yes, Your Honor.  Oh, I'm sorry, 1:47:53.

7              THE COURT:  Oh.  Yes, sir.

8              MR. WHITE:  I just want to make sure I understood.

9    You have written "stop."

10             THE COURT:  Uh-huh.

11             MR. WHITE:  Does that mean everything thereafter will

12   come out?

13             THE COURT:  That means I haven't reviewed --

14             MR. WHITE:  Okay.

15             THE COURT:  -- the sections after that.  For that

16   particular transcript -- unfortunately, we don't have page

17   numbers, but on that transcript, my review started at 41:06 on

18   that page.

19             MR. WHITE:  Okay.

20             THE COURT:  I then stopped my review at 1:21:23.

21             MR. WHITE:  I'm sorry, did you say 1:41:50 --

22             THE COURT:  1:21:23.

23             MR. WHITE:  Oh, okay.  Thank Your Honor.

24             THE COURT:  And then I started again at -- it appears

25   to be about one hour, 24 minutes.  And then that's the section

1   that goes from one hour 24 minutes to one hour 47 minutes 53

2   seconds.  Those were the portions — it was my understanding

3   those were the clips that were submitted by the United States

4   that indicate that's what they plan to play, and so rather than

5   review whatever this turns out to be, I reviewed those sections

6   of that particular tape.

7            MR. WHITE:  Thank you, Your Honor.

8            THE COURT:  All right.  Does that make it a little

9   more clear?

10            MR. WHITE:  It does, Your Honor.  Thank you.

11            THE COURT:  All right.

12            Mr. Pinales?

13            MR. PINALES:  May it please the Court, I know that

14   our version of the transcripts were submitted to chambers.

15            THE COURT:  Yes, sir.

16            MR. PINALES:  And I would move that they be submitted

17   and be part of the record at this point.

18            THE COURT:  All right.  You can —

19            MR. PINALES:  I can do it by written motion.

20            THE COURT:  Well, let's see if there's — I don't

21   know if there's anything on those transcripts that should be

22   filed under seal.

23            Mr. Smith, I don't know if you had a chance to hear

24   the question, but Mr. Pinales was asking — he was wanting to

25   submit his version of the transcripts into the record.  Are you

1  aware of any reason that those transcripts should be filed

2  under seal in the case?

3          MR. SMITH:  Your Honor, we have tried to use

4  discretion, at least at pretrial hearings, to avoid naming our

5  confidential witnesses, and I know that we have in submitting

6  these transcripts — and that may be something that Mr. Hoskins

7  and I had talked about, but at trial, we anticipate not being

8  concerned at that point and replacing the confidential lingo

9  with appropriate proper names.  But I am still concerned about

10 that being put in the record.  I'm still not a hundred percent

11 sure that we don't have transcripts that are revealing their

12 names, maybe not by title but by — in conversation.

13         THE COURT:  All right.  Well, Mr. Pinales —

14         MR. PINALES:  I have no objection.  I would move that

15 they be placed under seal as part of the record, in an

16 abundance of caution.

17         THE COURT:  All right.  You can file those materials

18 as an exhibit to this hearing under seal with the Clerk, and

19 that's how we'll handle that.

20         MR. PINALES:  Thank you, Your Honor.  Appreciate it.

21         THE COURT:  Yes, sir.

22         Mr. Smith.

23         MR. SMITH:  Your Honor, there has — I had hoped to

24 have a little bit more time to look at April the 30th.  I know

25 that in my final review of April the 30th last evening it was

1    apparent that there was — in one small portion of April 30th,

2    there was an exchange of conversation.  The parties present, I

3    believe, were Mr. Stivers and Mr. Maricle, and I believe that

4    the designation of the speaker was inverted in that it had at

5    one point Mr. Stivers listed and Mr. Maricle.  I would like to

6    have an opportunity to cure that if the Court's version has not

7    cured that already, but we tried to go through last night and

8    proof everything a final time, and it did not occur throughout

9    that transcript, but there was a small portion where I believe

10   the speaker, again, by transcription error, was misidentified

11   as Mr. Stivers when it was Mr. Maricle.  And I would like to

12   have an opportunity to bring that to the attention of the Court

13   if the Court would allow.

14           THE COURT:  All right.  I believe — I don't know if

15   it's the particular transcript that you're referring to — you

16   said April 30th?

17           MR. SMITH:  Yeah.

18           THE COURT:  I did catch that on at least one

19   occasion, but I'm not sure if that's the transcript.  But, yes,

20   if you need to make that correction to properly identify a

21   speaker —

22           MR. SMITH:  And I misspoke about the speakers.  It

23   was Mr. Maricle and Mr. Mobley, Phillip Mobley, that were in

24   the conversation, and I believe that is the April 30th

25   conversation where they were —

1          THE COURT:  Do you have the page?  I think I made one

2    change on page three of that particular transcript, seven lines

3    down from what the government submitted.

4          MR. SMITH:  I do see that, Your Honor.

5          THE COURT:  Was that the area or was it a different

6    area?

7          MR. SMITH:  I am told there were more than one

8    instance where that occurred.  And I apologize for not having

9    that readily available, I do not have that to give you the page

10   number at this moment.

11         THE COURT:  Why don't you prepare another draft of

12   that version of the transcript, make those corrections, and

13   circulate that to the defendants, and you can advise me if

14   there's a need for me to further review that to make that — if

15   that's a change that I need to review, then I'll certainly do

16   so.

17         MR. SMITH:  Thank you, Your Honor.  I appreciate

18   that.

19         THE COURT:  All right.  If you could just circulate

20   it among counsel first, and there may not be any problem with

21   the change, but if there is, if you can alert me and I'll go

22   back and review that transcript again.

23         MR. SMITH:  Thank you.

24         THE COURT:  All right.  Yes, sir.

25         All right.  Thank you.  Counsel, anything else?

1          All right.  We will be in recess.

2                         (Proceedings concluded at 11:15 a.m.)

3                    C E R T I F I C A T E

4     I, Cynthia A. Oakes, certify that the foregoing is a

5     correct transcript from the record of proceedings in the

6     above-entitled matter.

7

8     2/1/2010                          s/CYNTHIA A. OAKES
         DATE                           CYNTHIA A. OAKES, RPR, RMR, CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25