UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RUSSELL CLETUS MARICLE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendants. | ) | |

*** *** ***

Defendant Stanley Bowling seeks to present opinion testimony by CPA Charles Stivers regarding the appropriate measure of assets to be forfeited to the United States in the event he is convicted of Count 1 and/or Count 2 of the Superseding Indictment and forfeiture proceedings are held. In his pretrial notice of intent to introduce opinion testimony, Bowling stated that Mr. Stivers

> will testify that the forfeiture sought by the United States represents gross revenues from the subject contracts [with the City of Manchester], and that a gross revenue figure does not represent the amount that B & B Excavating, Inc., and/or Stanley Bowling realized from the contracts; and that legitimate operating expenses, such as fuel and auto[] insurance, professional services, materials, office expense[s] and payroll are actually incurred and properly deductible.

[Record No. 727] Defendant William B. Morris has previously sought to introduce similar testimony. [*See* Record No. 802]

In Counts 12 and 13 of the Superseding Indictment, the United States seeks forfeiture of money and other assets pursuant to 18 U.S.C. §§ 1963 and 982, respectively, upon conviction

of the violations of 18 U.S.C. §§ 1962 and 1956 alleged in Counts 1 and 2. [Record No. 272] Count 12 states that the property subject to forfeiture "includes, but is not limited to, . . . $3,472,847.38, said amount being the total of the interests acquired and the gross proceeds obtained through the violation of Title 18, United States Code, Section 1962[.]" [*Id.*, p. 22] The assets sought under Count 13 are described as "including, but not limited to: . . . $1,513,512.36[,] which constitutes the sum involved in the violation of 18 U.S.C. § 1956(h)." [*Id.*, p. 23] The United States maintains that gross proceeds are subject to forfeiture under both the RICO forfeiture provision and § 1956. The Court has previously ruled that gross revenues is the appropriate measure to be applied under the money-laundering statute. [Record No. 805] For the reasons explained below, the Court reaches the same conclusion with respect to the RICO forfeiture provision.

**I. Forfeiture Under RICO, 18 U.S.C. § 1963**

The defendants are charged with conspiring to violate 18 U.S.C. § 1962 by conducting and participating in the conduct of the affairs of the Clay County Board of Elections through a pattern of racketeering activity consisting of honest services mail fraud, extortion, obstruction of justice, and bribery. [Record No. 272, p. 7] Section 1963(a) of RICO mandates forfeiture of:

> (1) any interest the person has acquired or maintained in violation of section 1962;
>
> (2) any—
>
> (A) interest in;
> (B) security of;
> (C) claim against; or
> (D) property or contractual right of any kind affording a source of influence over;

> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
>
> (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . in violation of section 1962.

18 U.S.C. § 1963(a).

Defendants Bowling and Morris contend that the net profits of their respective companies' contracts with the city and county, and not the total of the amounts received under those contracts, constitute "proceeds" under § 1963(a)(3). The term "proceeds" is not defined in § 1963, nor has it been defined by the Supreme Court or the Sixth Circuit. However, several other circuits have concluded that the appropriate measure of "proceeds" subject to forfeiture under RICO is something more than net profits. *See United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996); *United States v. Hurley*, 63 F.3d 1, 21-22 (1st Cir. 1995); *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498-99 (2d Cir. 1985). *But see United States v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003) (acknowledging that "[o]ther circuits have defined 'proceeds' differently" but following *United States v. Masters*, 924 F.2d 1362 (7th Cir. 1991), to hold that proper measure of assets subject to forfeiture was "profits net of the costs of doing business"). Moreover, the legislative history of § 1963(a)(3) clearly shows that Congress did not intend the provision to be limited to net profits.

When § 1963(a)(3) was added in 1984, "the term 'proceeds' [was] used in lieu of the term 'profits' in order to alleviate the unreasonable burden on the government of proving net profits." S. Rep. No. 98-225, at 199 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3184, 3382. Congress specifically chose the word "proceeds" based on the belief that "[i]t should not be necessary for

the prosecutor to prove what the defendant's overhead expenses were." *Id.* The First Circuit considered this legislative history in *Hurley* when addressing the defendants' argument that the amount subject to forfeiture under RICO was not the $136 million they had illegally wired to Colombia, but rather the "commissions" they had retained, which were only a small percentage of the total. *See* 63 F.3d at 21. The court noted that the Supreme Court had "made clear its desire for generous construction of the RICO forfeiture provisions, in line with Congress' unusual command that RICO (although a criminal statute) be broadly interpreted." *Id.* (citing *Russello v. United States*, 464 U.S. 16 (1983)). Based on *Russello* and the section's unequivocal legislative history, the First Circuit found it to be "a rather easy call" that "proceeds" under § 1963(a)(3) was not limited to profits. *Id.*

The Fourth Circuit's well-reasoned decision in *United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996), is also relevant. Although *McHan* did not involve forfeiture under § 1963, the court considered that statute's legislative history in deciding that gross proceeds, rather than profits, were the appropriate measure of forfeiture under the parallel provision of the continuing criminal enterprise statute, 21 U.S.C. § 853. *Id.* at 1042. The Fourth Circuit recognized in *McHan* that "[t]he proper measure of criminal responsibility generally is the harm that the defendant caused, not the net gain he realized from his conduct. Otherwise we would be rewarding unsuccessful drug dealers, or those who could adequately manipulate 'their books.'" *Id.* The court reasoned that limiting "proceeds" to profits "would create perverse incentives for criminals to employ complicated accounting measures to shelter the profits of their illegal

enterprises. The purpose of forfeiture is to remove property facilitating crime or property produced by crime — all of which is tainted by the illegal activity." *Id.*

While the Sixth Circuit has not explicitly defined "proceeds," it did consider the scope of the RICO forfeiture provision in *United States v. Corrado*, 227 F.3d 543, 552 (6th Cir. 2000). Recognizing "the punitive purpose of RICO," the *Corrado* court concluded that under the plain language of the statute, forfeiture is required when the evidence shows a "sufficient nexus between the property to be forfeited and the RICO violation" under the terms of § 1963(a)(3). *Id.* This broad test suggests that the Sixth Circuit would not embrace an interpretation of "proceeds" limited to profits. Moreover, as discussed in a previous opinion [*see* Record No. 805], the Sixth Circuit has adopted the plain-meaning, dictionary definition of "proceeds," which refers to "total revenue," in the money-laundering context. *See United States v. Kratt*, 579 F.3d 558, 560 (6th Cir. 2009) (citing *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000); *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996) (both applying Webster's Dictionary definition of "proceeds" to 18 U.S.C. § 1956). There is no reason to assume, in the absence of a statutory definition or guidance from the Supreme Court, that it would interpret the term differently for purposes of forfeiture under RICO.

## II. Conclusion

It is clear from the authority cited above that net profits realized from city and county contracts would not be the proper measure of funds subject to forfeiture in the event Defendant Bowling or Morris is convicted under § 1962. Moreover, deduction of expenses and costs would be contrary to congressional intent and inconsistent with the punitive purpose of RICO. It would

be illogical to employ a method of computation that punishes only successful businessmen, while letting off the hook those who fail to turn a profit or find a way to hide their ill-gotten gains. Thus, as under the money-laundering statute, the appropriate measure of "proceeds" for purposes of RICO forfeiture is the gross revenues, or total amounts received, under the city or county contracts. Opinion testimony as to the profits realized from these contracts will therefore not be admitted.

This 25th day of March, 2010.




**Signed By:**
***Danny C. Reeves*** DCR
**United States District Judge**