1 afternoon recess at this time.

2          We will take a twenty-minute recess until

3 3:10 this afternoon.

4          Please keep in mind the admonitions that you

5 have been given previously.  The jury will be excused

6 for twenty minutes.

7           (Jury excused from the courtroom for

8 afternoon recess.)

9          THE COURT:  Any matters to take up outside

10 the presence of the jury?  We will be in recess for

11 twenty minutes.

12          (Recess taken from 2:50 p.m. until 3:10 p.m.)

13          (After recess.)

14          (The jury resumed their places in the jury

15 box, and the following proceedings were had in open

16 court.)

17          THE COURT:  Thank you.  The record will

18 reflect all members of the jury are present.  The

19 parties and counsel are also present.

20          Mr. Smith, are you ready for your next

21 witness?

22          MR. SMITH:  Yes, Your Honor, I will ask that

23 David Sutherland be brought to the witness stand.

24          And also we had earlier a court exhibit, I

25 believe, that was numbered Court Exhibit 3.

David Sutherland - Direct Examination

1            THE COURT:  Yes, sir.

2            MR. SMITH:  It's our marked PR83, and I am

3  not sure --

4            THE CLERK:  It was Court Exhibit 3.

5            THE COURT:  Court Exhibit 3, yes, sir.

6            MR. SMITH:  I would like to have that from

7  the clerk, please, so I could examine the witness

8  regarding that.

9            THE COURT:  Step on the exhibits?

10           THE CLERK:  Please raise your right hand.

11           (Witness sworn.)

12           THE CLERK:  Thank you.

13           THE COURT:  Thank you, Mr. Smith.  Please

14  proceed.

15                            - - -

16           DAVID SUTHERLAND, PLAINTIFF'S WITNESS, SWORN

17                    DIRECT EXAMINATION

18  BY MR. SMITH:

19  Q.   State your name for the record, please.

20  A.   David Sutherland.

21  Q.   And Mr. Sutherland, would you tell us were you

22  previously employed with the Attorney General's office

23  with the State of Kentucky?

24  A.   Yes, sir, I was.

25  Q.   And what position did you hold?

David Sutherland - Direct Examination

1  A.   I was a criminal investigator in Special

2  Prosecutions Division.

3  Q.   And how long did you hold that position?

4  A.   Approximately twenty-one years.

5  Q.   And currently how are you employed?

6  A.   I am a part time Commonwealth detective for the

7  Tenth Circuit for the Nelson, LaRue and Hart Counties

8  Commonwealth Attorney's office.

9  Q.   During the course of your employment with the

10 Attorney General's office, were you involved in

11 elections that occurred out in the State of Kentucky

12 during the years 2002, 2003, '4, '5 and '6?

13 A.   Yes, sir, I was.

14 Q.   And how is it that you played a role for the

15 Attorney General's office during these election

16 cycles?

17 A.   The Attorney General's Office Special

18 Prosecutions Division was a primary section of the

19 office that took complaints on election complaints or

20 election violations.

21      And I worked as an investigator in that section,

22 so my job, among others, was to take the complaints as

23 they came in by telephone.

24 Q.   Sir, if you could, were you required as part of

25 your job duties to record those and make records of

David Sutherland - Direct Examination

1 those?

2 A.  Yes, sir, I was.

3 Q.  And are those records kept in the ordinary course

4 of business there?

5 A.  That is correct, yes, sir.

6         MR. SMITH:  I would like to hand to the

7 witness -- I am going to have to ask for the other

8 court exhibit, this is PR83B, and I believe there were

9 two parts to that.  If the clerk could advise me on

10 that.

11         THE CLERK:  PR83A?

12         MR. SMITH:  Yes, ma'am.

13         THE CLERK:  Mandy has the other two that goes

14 to --

15         MR. SMITH:  Okay, for the record, I would

16 like to hand the witness then, if the court wants to

17 forward that, 83A, B, C and D, Your Honor.

18         THE COURT:  Yes, sir.

19         MR. RICHARDSON:  Your Honor, just for my

20 record, what -- okay, what -- I saw -- I have seen

21 those.

22         What's in the folder, please?  That is B?

23 Have I been provided that?  203.

24         Okay.  Just wanted to make sure, Judge, I

25 think I am clear.  Thank you.  Sorry to interrupt.

David Sutherland - Direct Examination

1  BY MR. SMITH:

2  Q.   If you could inspect those at this time.  You

3  should have before you PR83A; is that correct?

4  A.   That is correct.

5  Q.   Do you recognize that, sir?

6  A.   Yes, sir, I do.

7  Q.   And if you could identify those for the record,

8  please.

9  A.   Okay, these are a compiled set of complaint forms

10  that I would have, along with other staff members of

11  the section, would have kept as calls were received

12  for complaints of voter irregularities throughout the

13  -- the state.

14      And then as part of this record is a -- an

15  additional document showing a summary, basically, of a

16  lot of them on one page.

17      And then also as part of this, the Board of

18  Elections sends us a document that shows how many

19  votes were cast by absentee or by other means.  So

20  that was also part of that record.

21  Q.   And those are forwarded on to you from which

22  agency, sir?

23  A.   The Board of Elections.

24  Q.   And, sir, have you had an opportunity to look at

25  this particular 2002 series of documents before

David Sutherland - Direct Examination

1 testifying here today?

2 A.   Not every page completely, but, yes, generally I

3 have looked through them.

4 Q.   I am going to ask you a question, sir.  Could you

5 from looking at those numbers and documents that are

6 compiled there in those records give us a number of

7 complaints that were called in in the 2002 election,

8 primary election, regarding Clay County, Kentucky?

9 A.   Yes, sir.  I have previously examined them and

10 determined that 63 complaints were received by our

11 office in 2002.

12 Q.   Now, do you also have numbers to compile for

13 other counties in the State of Kentucky?

14 A.   Yes, sir.  That we can compare to, you mean?

15 Q.   Yes, for comparison.

16 A.   Uh-huh.  Let me look it up, if you would like for

17 me to.

18 Q.   Yes, for instance, Fayette County, Kentucky,

19 could you tell us the number of complaints that were

20 received by your office in Fayette County?

21 A.   Fayette County had 11 complaints.

22 Q.   Jefferson County.

23 A.   Five complaints.

24 Q.   Would Pike County be the largest land area county

25 in eastern Kentucky?

David Sutherland - Direct Examination

1  A.   Yes, sir, it is.

2  Q.   Would you check for Pike County in eastern

3  Kentucky?

4  A.   They had four complaints.

5  Q.   Do you have statistics for all 120 counties in

6  Kentucky there?

7  A.   Yes, sir, we do.

8  Q.   Can you find one that has more complaints than

9  the county of Clay in the May primary of 2002

10 election?

11 A.   Okay, now, Clay will have only 20, and I am

12 presently looking at the November general election.

13      And when I said let me -- may I explain why I had

14 63, I previously testified to --

15 Q.   Okay, we are looking at the primary election.

16 A.   Okay.

17 Q.   That's what I want you to look at first.

18 A.   I'm sorry, I am looking at the general election,

19 so let me reexamine my records here --

20 Q.   Certainly.

21 A.   -- and correct that.  That was my error, I'm

22 sorry.

23 Q.   I am looking at page 32, the primary election.

24 A.   Okay, that would be very -- that's exactly what I

25 need to do.  Okay, very good, now I am with you.

David Sutherland - Direct Examination

1  Q.   Just for the record, so we don't have to go back

2  over those, sir, were those the numbers for the

3  November 2002 --

4  A.   They were for the general election in November,

5  that's correct.

6  Q.   Okay, and you needed to make an adjustment to one

7  of those numbers for the fall, and you said Clay

8  County was not as great as you had read for the first

9  number.

10      What number did Clay County have for the fall

11 election 2002?

12 A.   Okay, it's 20, I believe, but let me check it

13 very quickly, I can -- that would be 20.

14 Q.   Okay.  Same question for the November election.

15 Was there a county in Kentucky that had more

16 complaints than Clay in the November election?

17 A.   Okay.  Harlan County had 28.  Martin County had

18 29.  Wolfe County had 22.

19 Q.   All right, thank you, sir.  Now, if we could

20 direct your attention to the primary election --

21 A.   Okay.

22 Q.   -- for 2002.  My first question is the number of

23 complaints in Clay County.

24 A.   Yes, sir.  And that would be 63.

25 Q.   Fayette County.

David Sutherland - Direct Examination

1  A.   Six.

2  Q.   Jefferson County.

3  A.   Nine.

4  Q.   Pike County.

5  A.   I'm sorry, say it again.

6  Q.   Pike.

7  A.   Pike?  Sixteen.

8  Q.   Martin.

9  A.   Five.

10 Q.   Harlan.

11 A.   Eleven.

12 Q.   What's the closest number to Clay County as far

13 as frequency of complaints as you have got in the

14 entire State of Kentucky in the May primary of 2002,

15 sir?

16 A.   That would be Pike County at 16.

17 Q.   Do you also tabulate or -- strike that.

18      You stated that these records were kept in the

19 ordinary course of business at the Attorney General's

20 office?

21 A.   Yes, sir, that's correct.

22 Q.   And these are for the year 2002 that are marked

23 as PR83A?

24 A.   Yes, sir, that's correct.

25 Q.   And now I would like to direct your attention to

David Sutherland - Direct Examination

1  PR83B.

2  A.   I have it.

3  Q.   What year does that represent, sir?

4  A.   2003.

5  Q.   Is that an off-year election for -- for purposes

6  of county elections?

7  A.   Yes, sir, it is.

8  Q.   And were there any complaints received for Clay

9  County in 2003?

10  A.   Yes, sir, there were.

11  Q.   And how many did you have?

12          MR. ABELL:   Judge, may we approach, please?

13          THE COURT:   Yes, sir, you may.

14          (Thereupon, a bench conference was had

15  between the Court and counsel out of the hearing of

16  the jury.)

17          THE COURT:   Yes, sir.

18          MR. ABELL:   Judge, I am disturbed by the

19  witness's testimony.

20          To be relevant and really material to the

21  government's case, it must necessarily assume that the

22  substance, at least in some particularized sense of

23  the complaints from these various counties, are all of

24  the same nature; and that simply cannot be true.

25          The complaints are about election officers

David Sutherland - Direct Examination

1  being rude to long lines, slow processing, and you can

2  obviously have substantive complaints that would be

3  material to the issues that we are bringing -- that

4  are brought before us today.

5          All these counties operate in somewhat

6  similar fashion in their elections.

7          I vote in Fayette County, I understand how

8  that works.

9          But it seem the government is trying to prove

10  things are really messed up in Clay County just

11  because there is a lot more complaints that are coming

12  from -- okay, now, if they are substantive complaints

13  about the type of irregularity which there has been

14  testimony about in '02 and '04 and '06, that's one

15  thing.

16          But just to say there is a bunch of

17  complaints of some sort by a number of people, I think

18  it's misleading for the jury.

19          THE COURT:  I think it appears to be relevant

20  to me for a couple of reasons.

21          One reason is there has already been

22  testimony that when the Attorney General's office

23  received complaints that those complaints would be

24  relayed back to the clerk for investigation or for

25  action to be taken.

David Sutherland – Direct Examination

1    So knowledge of at least the clerk would

2 certainly be relevant as to what was going on and then

3 actions that were taken as a result of that,

4 especially if, as has been offered here, there has

5 been evidence that the clerk was intimately involved

6 in the election irregularities that were taking place;

7 and they would be taking some action to avoid

8 detection.

9    So I think a number of complaints certainly

10 would be relevant.

11    Mr. Smith, did you want to further respond to

12 counsel as to any issues other than relevancy?

13    MR. SMITH:  Well, I offered them originally

14 with the substantive complaints, and I got an

15 objection because they were substantive complaints.

16    Now I offer them for the number of the

17 complaints, and now I am getting objections there.

18    I believe at this point if counsel wants to

19 inquire about those, I think this witness can answer

20 his questions very succinctly about, you know, major

21 complaints and that would be the purpose of cross

22 examination.

23    MS. HUGHES:  I have a question.

24    THE COURT:  Miss Hughes?  Yes, ma'am.

25    MS. HUGHES:  I'm sorry, are you still

David Sutherland - Direct Examination

1 intending on giving him all the documents?

2          Is it your intention now to try to get in the

3 substantive complaints?

4          Because I do object to that, and I have

5 actually done some research, for goodness sake, about

6 that issue.

7          If you are just trying to get the statistics

8 in, I am not joining in Mr. Abell's objection.

9          If you are trying to get in the underlying

10 calls from outsiders and the substance of those calls,

11 then I do object.

12          MR. BALDANI:  And we do as well, Your Honor,

13 speaking on behalf of Mr. Thompson.

14          THE COURT:  All right, that's Mr. Baldani.

15          And Mr. Pinales, you want to make a motion

16 for a mistrial at this point in time?

17          MR. PINALES:  Not at this time.  I'll save it

18 for something greater.

19          Yes, but I just want to add to what has been

20 stated by my fellow defense attorneys that in

21 addition, we now have a gentleman who is a criminal --

22 I forget the exact --

23          MS. HUGHES:  Investigator.

24          MR. PINALES:  -- investigator for the

25 Attorney Generals.

David Sutherland - Direct Examination

1              That puts it not just as records that could

2   come in.

3              I think that puts it right smack into

4   Crawford and in fact bolsters the objections that we

5   had last, and I just want to make that note.

6              THE COURT:  With respect to any Crawford

7   issues, that relates to the person making the call and

8   whether they would consider those to be testimonial in

9   nature.

10             Many of these calls are reflected as being

11  anonymous calls.

12             And so obviously there is not an indication

13  that that being testimonial.

14             Earlier I had allowed a number of records

15  from the county clerk's office that reflected

16  complaints.

17             And at that time I instructed the jury that

18  they could consider those documents but that the

19  substance of the complaints would not be admitted for

20  the truthfulness of the complaints but to indicate

21  that complaints were in fact made.

22             Now, Miss Hughes, what is your case that

23  would indicate that the court may not admit the

24  documents with that cautionary instruction to the jury

25  that the substantive statements that are made are not

David Sutherland - Direct Examination

1  to be taken for the truthfulness of those statements?

2       MS. HUGHES:  That instruction, obviously that

3  limiting instruction takes it out of hearsay because

4  it's not being offered for the truth of the matter.

5       However, in that instance, we would object to

6  it being unduly prejudicial.

7       And let me say in particular Bart Morris's

8  name appears in some of the complaints as does Stanley

9  Bowling's.

10      And so I think that anything to the extent

11 that the government wants to get it in for the nature

12 of the complaint, I understand that.  I wish I could

13 object to that.

14      But to the extent that they -- that the jury

15 can look at those and see actual names or addresses or

16 something like that, I would ask the court to redact

17 that because that is unduly prejudicial.

18      And I think it would be difficult if not

19 impossible for the court -- although I understand

20 jurors want to follow the court's instruction, but if

21 they see there is a phone call in there about Bart

22 Morris, that's going to be hard for them to

23 disregard.

24      So I would ask for the limiting instruction

25 that it's not for the truth of the matter and then to

David Sutherland – Direct Examination

1 redact any information that is specific enough to

2 identify with something here if there is not a witness

3 that's going to come in and testify.

4          THE COURT:  All right.  I will give the

5 precautionary instruction.

6          I will not redact the information or direct

7 the government to redact the information.

8          To assume that the jury would not follow the

9 court's instruction I think would be erroneous, and so

10 that request will be denied.

11          MR. SIMONS:  Your Honor, I would like to join

12 in on behalf of Mr. Stanley Bowling.

13          THE COURT:  All right, Mr. Westberry wants to

14 join in as well.

15          MR. WESTBERRY:  Thank you, Kent Westberry for

16 the defendant, Douglas Adams.

17          And I would simply say this, I recall when

18 these documents were produced to us, I think, and

19 correct me if I am wrong, February 22nd, about the

20 third approximately week this trial was starting.

21          I will confess, Judge Reeves, I have tried to

22 do the best I can going through these documents, and

23 particularly the handwritten notes and commentary that

24 I call it as best I can, in particular, since we -- we

25 had this issue just a couple days ago when the United

David Sutherland - Direct Examination

1 States first attempted to introduce these documents

2 into evidence.

3          I don't know how far Mr. Smith will get with

4 this document witness today in the introduction of

5 these documents.

6          It's about 3:30 right now, but I think if I

7 understand the court's ruling, I would certainly join

8 in all the motions made by my co-counsel.

9          But it might be appropriate to give us the

10 weekend to at least have some time to try to think

11 about how we are going to cross examine from these

12 documents, again, given the timing of -- of  their

13 production and what else has been going on in trial.

14 Thank you.

15          THE COURT:  I'll make that determination as

16 soon as the witness is finished with his direct

17 examination and see where we are then.

18          MR. WESTBERRY:  Thank you.

19          MR. PINALES:  And could I -- Martin

20 Pinales --

21          THE COURT:  Mr. Pinales.

22          MR. PINALES:  For the record, so we don't

23 have to interrupt the court during the proceeding, may

24 this be a continuing objection so should A, B, C of

25 these come in --

David Sutherland - Direct Examination

1              THE COURT:  Well, there hasn't been a motion
2     to admit yet.
3              MR. PINALES:  I know.
4              THE COURT:  I'm assuming that foundation has
5     been laid at least for a couple of these documents.
6              MR. PINALES:  Correct.
7              THE COURT:  So it would be the court's
8     intention to admit those.
9              If there is something -- some other issue
10    that comes up that I can't anticipate at this point, I
11    don't know how I can consider it a continuing
12    objection.
13             If -- what I will do, at the time that the
14    documents are offered, I'll ask if there is any
15    objections other than those previously stated, which I
16    generally do.
17             And if there is something else that's raised
18    as a result of the testimony, then we will need to
19    address that at the appropriate time.
20             MR. PINALES:  I think that takes care of it.
21    Thank you, Judge.
22             THE COURT:  All right.
23             MR. BALDANI:  Judge, could I add something?
24             THE COURT:  Mr. Baldani, yes, sir.
25             MR. BALDANI:  I am not trying to be

David Sutherland - Direct Examination

 1  cumulative, I just want to make sure --

 2          THE COURT:  You know, when someone says that,

 3  that usually means they are trying to be cumulative;

 4  but go ahead.

 5          MR. BALDANI:  Well, I think that I saw a

 6  newspaper article in there, at least one in there.

 7          And I asked Mr. Smith, and he said there

 8  might be; so I don't think that is cumulative.

 9          THE COURT:  It would not be if there is a

10  newspaper article.

11          MR. BALDANI:  Right.  Right.  So in addition

12  to objecting to them coming in, you know, even with an

13  instruction, I would certainly add an objection --

14          THE COURT:  Let's wait, one at a time,

15  please.

16          MR. PINALES:  Maybe if we gang up we'll do

17  better.

18          MR. SMITH:  I'll certainly agree to take that

19  out.

20          THE COURT:  I will not allow these to be

21  shown to the jury until there is a determination that

22  there are no newspaper articles contained in the

23  documents.

24          MR. SMITH:  Sure, I understand.

25          THE COURT:  That will be a provisional ruling

David Sutherland - Direct Examination

1  until such time as there is a motion to admit.

2          If there are newspaper articles, then those

3  will need to be removed before anything's shown to the

4  jury.

5          Now, Mr. White, your turn.

6          MR. WHITE:  Thank you, Your Honor, Scott

7  White on behalf of the defendant, Charles Jones.

8          I didn't want to interrupt from the outside,

9  and I don't need to be heard.

10          I am just going to simply join in Miss

11  Hughes's objection.

12          And if I heard -- heard her correctly, she

13  also said 403, and I would just include that as well.

14  I don't need to be heard.

15          THE COURT:  All right.

16          MR. WHITE:  Thank you, Your Honor.

17          THE COURT:  Thank you.  Anything else?

18          MR. WHITE:  No.

19          THE COURT:  Thank you.

20          MR. WHITE:  Oh, Your Honor, I'm sorry, it's

21  something that occurred to me.

22          I did not -- I don't know how you would want

23  to handle this.

24          Mr. Sutherland was in the office when I had

25  actually worked on some matters.

David Sutherland - Direct Examination

1        I was thinking maybe during the break or

2 something just to make sure, but I am not going to

3 acknowledge that.

4        But Judge, also if he is told to pretend like

5 he didn't know me, which he would probably welcome.

6        THE COURT:  Not sure what you are asking, but

7 if it's -- you didn't work on anything together, I

8 don't see how this would be an issue.

9        MR. WHITE:  Okay.

10        THE COURT:  I wouldn't anticipate --

11 Mr. Smith, I wouldn't anticipate you are going to

12 raise it with him?

13        MR. SMITH:  No.

14        MR. WHITE:  He came in, he looked at me and

15 acknowledged me, and I was just trying to --

16        MR. BALDANI:  Judge, I think people generally

17 pretend they don't know Mr. White, so --

18        THE COURT:  Thank you.

19        (End of bench conference.)

20        THE COURT:  Thank you, Mr. Smith, I think you

21 were on Exhibit 83B, and you had asked about

22 complaints from Clay County and that off-year

23 election.

24 BY MR. SMITH:

25 Q.  Sir, just to speed things along, 83B, 2003, does

David Sutherland - Direct Examination

1 that also log and catalog the number of complaints for

2 Clay County, Kentucky?

3 A.   Yes, sir.

4 Q.   Okay.

5 A.   This is -- now, this was November's general

6 election.

7 Q.   And that would have been the only election that

8 had been recorded for complaints in your office?

9 A.   Yes, sir.

10 Q.   Okay.  And have you tabulated a number for us?

11 A.   Yes, sir, there are four that came in to Special

12 Prosecutions and one that came in to Special

13 Investigations, which would be a total of five.

14 Q.   Thank you.  Now, I refer you to PR83C, 2004

15 document.

16 A.   Yes, sir.

17 Q.   Can you identify that as well, please?

18 A.   Yes, sir, these are complaints from -- filed in

19 Special Prosecutions Division.

20 Q.   And do you also have a number tabulated for the

21 counties in Kentucky 2004 primary election?

22 A.   Okay, I have the -- the May primary for -- yes,

23 several of the counties I do.

24 Q.   Sir, is that also an off year for county

25 elections in Kentucky?

David Sutherland – Direct Examination

1  A.   Yes, sir, it is.

2  Q.   But there would have been a presidential

3  election?

4  A.   Yes, sir.

5  Q.   Okay.  And, again, for purposes of the record,

6  can you state a number of complaints that were

7  received from Clay County in 2004, sir?

8  A.   Yes, sir, seven.

9  Q.   Okay.

10  A.   And this is in the primary.

11  Q.   Thank you, sir.  Now, direct your attention to

12  PR83D.

13  A.   I have that.

14  Q.   Can you identify that, please.

15  A.   Yes, sir, these are complaints received by

16  Special Prosecutions.

17  Q.   From those records, sir, can you identify the

18  number of complaints for the May primary 2006 in Clay

19  County?

20  A.   Yes, sir, there were -- by previously counting

21  them, there is 104.

22  Q.   Sir, when the office of the Attorney General has

23  complaints such as these, how does the office of the

24  Attorney General interplay with the county clerk's

25  office within the county in which these complaints

David Sutherland - Direct Examination

1  arise?

2  A.   Whenever a complaint like this is received, the

3  complaint is referred to -- because of the complaint,

4  whatever it may be, if it's a criminal action, we

5  either investigate it through the Attorney General's

6  office or the Kentucky State Police is assigned to

7  investigate it.

8      Or if it's something to do with the local

9  counties, precincts or something, they are referred to

10 the local clerk's office.

11 Q.   And that's standard procedure throughout the

12 State of Kentucky?

13 A.   Yes, sir, it is.

14      MR. SMITH:  If I could have a moment,

15 Your Honor.

16      THE COURT:  Yes, sir.

17      (Mr. Smith conferring with Mr. Parman at this

18 time.)

19 BY MR. SMITH:

20 Q.   Sir, in 2002, specifically regarding Clay County,

21 Kentucky, did you do anything to initiate a call to

22 the FBI?

23 A.   Yes, sir, I did.  I don't know if it was in 2002,

24 but it was because of the volume of complaints that we

25 had gotten in 2002.

David Sutherland – Direct Examination

1 Q.   Thank you, sir.

2          MR. SMITH:  Your Honor, at this time, I

3 understand the court's ruling, I understand we have

4 qualification that needs to be made.

5          But at this time I would renew our motion to

6 introduce Government's Exhibits 83A through 83D,

7 understanding your ruling at the bench.

8          THE COURT:  All right, any objections other

9 than those previously stated?

10          If not, we will admit Exhibits 83A through D

11 at this time.

12          However, ladies and gentlemen, I will give

13 you a further instruction that to the extent that

14 these documents contain complaints that are raised by

15 third parties, parties calling to make complaints,

16 those are not being admitted for the truthfulness of

17 the statements that are being made in those

18 materials.

19          They are admitted to show the complaints were

20 received from the office and that the office recorded

21 those complaints, and you are so instructed.

22          (GOVERNMENT EXHIBIT NOS. 83A THROUGH D

23 ADMITTED INTO EVIDENCE)

24          THE COURT:  Counsel, before you cross

25 examine, it may be a good place to break for the

Colloquy

1    evening at this time.

2          I know that there is a number of documents

3    there, and if there is no objection, we are going to

4    go ahead and take a little bit earlier recess than we

5    typically would do.

6          I don't hear any objection.  All right.

7    First time all day we haven't had an objection.

8          Ladies and gentlemen of the jury, we will

9    take our recess for the evening.

10          I do want to again remind you that we are not

11    going to be in session tomorrow, so you will be able

12    to go back to work tomorrow.

13          But as you go back to work, I want to remind

14    you of what I have told you several times, and that is

15    when we are in recess, until the case is finally over,

16    of course, you can't talk with anybody about the

17    case.

18          You can't talk about anything that's been

19    discussed.  You can't talk about the case in any way.

20          You shouldn't even allow anyone to approach

21    you and even to raise the issue with you.

22          If that should occur, then you should say

23    that you cannot talk about this case at all.

24          To do so would be a violation of the court's

25    order.

Colloquy

 1           So don't allow anyone to approach you, don't
 2    talk with anyone about the case.
 3           Don't do any type of research or
 4    investigation about the case on your own.
 5           Don't read, watch or listen to any accounts
 6    of the case, if there should be any.
 7           Don't do any type of blogging or
 8    communicating with electronic devices as I have told
 9    you before.
10           Don't visit any of the locations that you
11    have heard discussed in the course of this trial.
12           And of course, don't make up your mind about
13    the case until it is finally submitted to you.
14           You have heard a lot of testimony, and you
15    have seen evidence presented in the case.
16           But the case is not over, and you should not
17    be making up your mind about the case at this point.
18           We will start on Monday.  I understand that
19    the weather's supposed to be nice this weekend, so I
20    don't anticipate any delays on Monday.
21           So we will be starting back at 9:00.  Again,
22    weather permitting, we will be starting back at 9:00
23    on Monday morning.  The jury will be excused until
24    that time.
25           (Jury excused from the courtroom at this time

Colloquy

 1  for evening recess.)

 2          THE COURT:  Thank you, and Mr. Sutherland,

 3  you may step down.  You are excused until Monday

 4  morning as well, sir.

 5          THE WITNESS:  Thank you.

 6          THE COURT:  And you can leave those documents

 7  there.

 8          You can grab those documents for the clerk

 9  before we recess.  Thank you.

10          (Witness excused from the courtroom.)

11          THE COURT:  Counsel, anything else that needs

12  to be taken up outside the presence of the jury?

13          MR. SMITH:  Your Honor, I would ask the

14  court's permission.

15          THE COURT:  You all be seated just for a

16  moment.

17          We will check on our schedule as well.  Yes,

18  sir, Mr. Smith.

19          MR. SMITH:  I just want to propose to the

20  court if the court would allow the United States

21  following our recess this afternoon to try to

22  accomplish the necessary redactions of these exhibits

23  that are being at issue at the moment at this present

24  point in time.

25          I don't want to take anything out of the

Colloquy

1 courthouse, but I do understand that the substance of

2 those complaints needs to be redacted.

3          And it will take some time for us to do and

4 this will be --

5          THE COURT:  I have not directed you to redact

6 those documents.

7          I have given the jury the cautionary

8 instruction.

9          If you wish to do so, I am sure that the

10 defendants would not object to that if you want to

11 take out the subject matter of those complaints.

12          MR. SMITH:  Okay, well, I have no interest in

13 doing that, Your Honor, unless it is required by the

14 court.

15          THE COURT:  I have not directed you --

16          MR. SMITH:  I don't want to misunderstand

17 what the court --

18          THE COURT:  I have not directed you to do

19 that.

20          MR. SMITH:  I appreciate you clarifying.

21          THE COURT:  Yes, sir.

22          Mr. Westberry?

23          MR. WESTBERRY:  One matter on the point of

24 redaction, not involving this exhibit.

25          If you will recall at the very beginning of

Colloquy

1 the trial weeks ago, we discussed redaction of the

2 portion of all of the plea agreements that apparently

3 reference polygraph examinations.

4          I recall the court thought that was fair, and

5 I am not trying to make any unnecessary work for my

6 colleagues.

7          If the court would entertain at some point in

8 time, I think we probably should think about redacting

9 those plea agreements.

10          THE COURT:  All right, let me see if there is

11 any -- I'll have to go back and -- I need to go back

12 and review that ruling.

13          I was thinking that had to do with questions

14 about polygraph examinations.

15          But let's see if there is an objection to

16 redaction of the plea agreements that contain

17 references to polygraphs.

18          Does anyone on the defense side object to

19 that?

20          Mr. Smith, what is the government's position?

21          MR. SMITH:  We don't object, Your Honor.  We

22 can accomplish that, I am sure.

23          THE COURT:  All right.  We are all in

24 agreement.  Those documents can be redacted.

25          Mr. Smith, if you would like to withdraw,

Colloquy

 1  those are PA documents, PA1 through 13 or 14, I

 2  think.  But if you would like to withdraw those --

 3          MR. SMITH:  Yes.

 4          THE COURT:  -- from the clerk and you can

 5  make those redactions, and you can resubmit those on

 6  -- on Monday.

 7          MR. SMITH:  Yes, sir, thank you.

 8          THE COURT:  Let me just check with everyone

 9  about our schedule going forward for next week.

10          It seems, Mr. Smith, that we have made quite

11  a bit of headway in terms of the number of witnesses.

12  When would you anticipate closing at this point?

13          MR. SMITH:  Well, Your Honor, I -- at this

14  point, it's probably going to be sometime Tuesday

15  morning.

16          THE COURT:  Tuesday, all right.

17          MR. SMITH:  I do expect that some of the

18  agents will get more cross examination than others.

19          But I do have a number of agents that are

20  going to be called.

21          THE COURT:  All right.  Very well, the

22  defendants will be -- Mr. Hoskins, I guess you would

23  be ready to call your witnesses on Tuesday, I suppose,

24  at the earliest.  So you can advise them

25  appropriately.

Colloquy

 1          MR. HOSKINS:  That's fine, Judge.

 2          THE COURT:  All right, and Mr. Westberry, you

 3   would follow.

 4          Before we get to those witnesses, of course,

 5   Miss Hughes has an opening statement she would like to

 6   give.

 7          MS. HUGHES:  Yes, sir.

 8          THE COURT:  And how much time do you

 9   anticipate that will be?

10          MS. HUGHES:  Oh, a half an hour would be --

11          THE COURT:  That will be fine.

12   Mr. Richardson?

13          MR. RICHARDSON:  Thank you, Your Honor, one

14   additional matter.

15          I was looking at the 2006 discovery provided

16   to us, and I understand the witness said there were

17   104 complaints.

18          There -- for every other year I believe there

19   is a statistical breakdown of the number of complaints

20   per county.

21          Of course, in '06 it jumps, and I don't see a

22   statistical breakdown of all the other counties'

23   number of complaints.

24          And I think I am going to need those

25   documents in order to cross examine those witnesses

Colloquy

1 because I have got a feeling the number of complaints

2 in every county jumped up in '06 because of the new

3 machines.

4           And all of a sudden, we have just got 104 in

5 one county, and that's all we have got in the

6 discovery provided to us by the United States.

7           THE COURT:  Well, I suppose the government

8 can only give you what they have, so you will need to

9 ask the witness about that.

10          There is nothing I can do to resolve that

11 issue at this point.  That's subject to cross

12 examination.

13          MR. RICHARDSON:  Thank you, sir.

14          THE COURT:  Anything else?  All right, thank

15 you.

16          If there is nothing else to take up, this

17 matter will be in recess until 9:00 a.m. Monday.

18          I do have a pretrial conference at 4:30 this

19 afternoon.

20          (The further trial in this matter was

21 recessed at 3:53 p.m. until Monday, March 8, 2010 at

22 9:00 a.m.)

23                                    - - -

24

25

Index

                    WITNESS INDEX

1

2  Plaintiff's Witnesses:

3  Bobby "Red" Sams

4  Direct by Mr. Smith . . . . . . . .    9

5  Cross by Mr. Hoskins  . . . . . . .   53

6  Cross by Mr. Westberry  . . . . . .   62

7  Cross by Mr. White  . . . . . . . .   69

8  Cross by Mr. Abell  . . . . . . . .   74

9  Cross by Mr. Baldani  . . . . . . .   79

10  Cross by Mr. Gilbert  . . . . . . .   80

11  Cross by Mr. Simons . . . . . . . .   81

12  Redirect by Mr. Smith . . . . . . .   87

13  Recross by Mr. Hoskins  . . . . . .   94

14  Recross by Mr. Westberry  . . . . .   95

15  Recross by Mr. White  . . . . . . .   96

16  Recross by Mr. Simons . . . . . . .   97

17  David Sutherland

18  Direct by Mr. Smith . . . . . . . .  100

19

20

21

22

23

24

25

Index – Certificate

1                          EXHIBIT INDEX

2                                           Marked/Admitted

3   Court

4   4   Plea documents of John Downey          7          7

5   Government

6   83A   Voter irregularities complaint
            form                                        123
7
    83B   Voter irregularities complaint
8           form                                        123

9   83C   Voter irregularities complaint
            form                                        123
10
    83D   Voter irregularities complaint
11          form                                        123

12                              –  –  –

13                          CERTIFICATE

14        I certify that the foregoing is a correct

15  transcript from the record of proceedings in the

16  above-entitled matter.

17

18  s/  K. Ann Banta                 3-10-10
    K. Ann Banta, RPR, CRR           Date
19

20

21

22

23

24

25