UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL CASE NO. 09-16-S-DCR

UNITED STATES OF AMERICA,                               PLAINTIFF,

v.

RUSSELL CLETUS MARICLE, et al.                          DEFENDANTS.

## DEFENDANT MARICLE'S MOTION FOR NEW TRIAL AND MEMORANDUM IN SUPPORT

Defendant Russell Cletus Maricle, by and through counsel and pursuant to Fed. R. Crim. P. 33 (a), moves for a new trial on all counts of conviction because justice requires it. Specifically, the Supreme Court's recent decision, *Skilling v. United States*, 561 U.S. ____; No. 08-1394, 2010 LEXIS 5259 (June 24, 2010), requires that Maricle's convictions on all counts be vacated and that he be granted a new trial. The reasons for this Motion are set forth more fully in the attached memorandum in support.

Respectfully submitted,

STRAUSS & TROY, LPA

/s/ Martin S. Pinales _____
MARTIN S. PINALES (Ohio Bar No. 0024570)
CANDACE C. CROUSE (Ohio Bar No. 0072405)
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio 45202-4018
Telephone: 513-621-2120
Fax: 513-241-8259
mspinales@strausstroy.com
cccrouse@strausstroy.com

**MEMORANDUM IN SUPPORT**

This Court agreed to entertain argument from the Government and some defendants on the effect of the *Skilling* decision on defendants' convictions. Maricle believes that the *Skilling* decision requires that his convictions be vacated and that he be granted a new trial. Because the *Skilling* case was not decided until June 24, 2010, and this Court has been willing to entertain arguments on the effect of the *Skilling* case on some of the other defendants, Maricle prays the Court will allow him to submit his motion for new trial beyond the statutory deadline.

I.      **Background:**

On March 25, 2010, Defendant Russell Cletus Maricle was convicted of the following counts:

  Count 1:    RICO Conspiracy (18 U.S.C. § 1962 (d))

  Count 2:    Money Laundering Conspiracy (18 U.S.C. § 1956 (h))

  Count 8:    Obstruction of Justice (18 U.S.C. §§ 1503 and 2)

  Count 10:   Voter Fraud Conspiracy (18 USC § 241)

  Count 11:   Election Fraud Conspiracy (18 U.S.C. § 371 & 42 USC § 1973i)

The RICO Conspiracy in the Superseding Indictment charged Maricle with conspiring to violate RICO, *i.e.* agreeing to participate directly or indirectly in the affairs of the Clay County Board of Elections through a pattern of racketeering activity. The jury was instructed that it must find beyond a reasonable doubt that Maricle agreed that some member or members of the conspiracy would commit at least two acts of racketeering, which were set forth as honest services mail fraud, extortion/attempted extortion, obstruction of justice, and bribery (*See* Jury Instr. 12 F).

Recently, in *Skilling v. United States*, No. 08-1394, 2010 LEXIS 5259 (June 24, 2010), the Supreme Court held that "honest-services" mail fraud pursuant to 18 U.S.C. § 1346 criminalizes only bribery and kickback schemes. More specifically, the Court held that "§1346 criminalizes *only* the bribery and kickback core of the pre-McNally case law." *Id*. at *97-98 (emphasis in original). The statute's "prohibition on bribes and kickbacks," as interpreted by the Court in *Skilling* "draws content not only from the pre-McNally case law, but also from federal statutes proscribing – and defining – similar crimes." *Id*. at *103-04 (citing 18 U.S.C. §§201 (b), 666 (a)(2); 41 U.S.C. § 52 (2))("The term 'kickback' means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances]."). The Court found that Skilling did not commit honest services fraud because [t]he Government did not, at any time, allege that Skilling solicited or accepted side payments from a third party in exchange for making these misrepresentations." *Id*. at *105.

According to *Skilling*, the essence of bribery is a *quid pro quo* exchange – there must be a specific intent to give or receive something of value in exchange for an official act. *See e.g*. *United States v. Orenuga*, 430 F.3d 1158, 1166 (D.C. Cir. 2005)(in a bribery case, "the illegal conduct is taking or agreeing to take money for a promise to act in a certain way."). Interestingly, in *United States v. Scrushy*, No. 09-167, 2010 LEXIS 5528 (June 29, 2010), the Supreme Court granted *certiorari*, vacated the judgment, and remanded for reconsideration in light of *Skilling*, where the question presented was whether the government's evidence of campaign contributions provided in exchange for official acts constituted sufficient evidence of a *quid pro quo* to support an honest services fraud conviction. (vacating *United States v.*

3

*Siegelman*, 561 F.3d 1215 (11th Cir. 2009)).  Thus, it is obvious that the *Skilling* decision drastically limits what can be considered honest services fraud.

Even in 2006, the Sixth Circuit stated that "honest services fraud is anchored upon the defendant's misuse of his public office for personal profit." *United States v. Turner*, 459 F.3d 775, 783 (6th Cir. 2006)("holding that "[b]ecause §1346 evinces Congressional intent to revive only prosecutions for deprivations of the right to honest services, not honest elections, it would contradict such intent to try to recharacterize an election fraud case as a pre-*McNally* honest services case").  The question then becomes: Does the evidence in this case even demonstrate honest services fraud as contemplated by the *Skilling* case?

The Government argued that the honest services fraud counts were based on Thompson and Jones coaching election officers on how to steal votes and certifying the results of the vote buying.  The Government contended that they used their positions as county clerk and a member of the board of elections to fraudulently deprive the citizens of Clay County the right to honest services. (Dkt # 863, Closing Tr. at 41).  In its closing argument, the Government argued, "And that's what we have here, absentee voter totals were corrupted in each of these elections . . . and, therefore, when [Thompson] signs and certifies this along with Charles Wayne Jones, I would submit to you, ladies and gentlemen, that they have committed the crime of honest services mail fraud." (*Id*. at 44).  Thus, in the Government's theory of the case, there is no *quid pro quo* and no misuse of public office for personal profit.  The allegation was not that these public officials were accepting bribes in exchange for acting a certain way, but rather that they were certifying the results of dishonest elections.  Accordingly, the Government did not prove honest services fraud against Thompson and Jones.

4

The even bigger question becomes: If the honest services fraud convictions against Thompson and Jones fail, what does this do to Maricle's convictions?

With regard to the alleged racketeering enterprise, the Government argued that the racketeering conspiracy was to control the political process in Clay County. (Dkt. # 863, Tr. at 18). It contended that Maricle was "involved in a way that related to its affairs" and he was a "puppet master" who "pulled the strings." (*Id*. at 16 and 17). The only substantive count against Maricle that related to the racketeering conspiracy was Count 8, obstruction of justice.

Pursuant to *Salinas v. United States*, 522 U.S. 52 (1997), Maricle does not have to agree to commit two predicate acts, but rather, must agree to further an endeavor which, if completed, would satisfy all of the elements of two predicate acts. The jury obviously found that Maricle adopted the goal of furthering or facilitating two predicate acts, but the jury did not specify *which* acts they believed he agreed to further. Because the racketeering conspiracy alleged four predicate acts -- honest services mail fraud, extortion/attempted extortion, obstruction of justice, and bribery – Maricle's conviction is flawed. *See Skilling*, at *106 (citing *Yates v. United States*, 354 U.S. 298 (1957)(constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory).

The *Skilling* case was remanded to the Fifth Circuit pursuant to *Hedgpeth v. Pulido*, 129 S Ct. 530 (2008) so that the Fifth Circuit could take a fresh look at whether the error was harmless. In *Hedgpeth*, the Court reviewed the Ninth Circuit Court of Appeals' judgment affirming the district court's grant of federal habeas corpus relief. The majority remanded the case to the Court of Appeals to determine whether instructing the jury on an invalid theory of

5

guilt was harmless error, *i.e.* whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. at *530.[1]

In analyzing whether the error was harmless on habeas review, a court must determine "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Id*. at 535 (Stevens, J., dissenting). The strength of the evidence of guilt is an important factor in the analysis. *See United States v. Susskind*, 4 F.3d 1400, 1406 (6th Cir. 1993).

On direct review, however, the stricter beyond-a-reasonable-doubt standard of *Chapman v. California*, 386 U.S. 18 (1967) applies. *See Neder v. United States*, 527 U.S. 1, 10 (1999)(applying Chapman standard where "the erroneous instruction precludes the jury from making a finding on the actual element of the offense.").

In *Maricle's* case, the Government cannot argue that his racketeering conviction rested only on the obstruction of justice predicate, because Maricle must have agreed to further *two* predicate acts. This Court granted a post-trial motion for judgment of acquittal on Count 4 (Attempted Extortion) for Stivers due to insufficient evidence. A similar motion is pending for Jones. Thus, the remaining possible predicate act is bribery.

It is impossible to know for certain upon which theory Maricle's convictions rested. Furthermore, the improper honest services fraud theory tainted *all* of Maricle's convictions. All of Maricle's convictions are inextricably intertwined with the racketeering conspiracy, and, like dominos, must fall if the honest services fraud theory falls. *See e.g. Skilling,* at *107.

---

[1] Because *Hedgpeth* was a habeas case, the Court used the "substantial-influence" test derived from *Kotteakos v. United States*, 328 U.S. 750 (1946). *See Brecht v. Abrahamson*, 507 U.S. 619, 622-23 (1993). Justices Stevens, Souter, and Ginsburg dissented, finding that the courts below *did* engage in a harmless error analysis and no remand was necessary.

For these reasons, Maricle moves this Court to vacate his convictions and grant him a new trial.

Respectfully submitted,

STRAUSS & TROY, LPA

/s/   Martin   S.   Pinales   _____
MARTIN S. PINALES (Ohio Bar No.  0024570)
CANDACE C. CROUSE (Ohio Bar No. 0072405)
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio 45202-4018
Telephone: 513-621-2120
Fax: 513-241-8259
mspinales@strausstroy.com
cccrouse@strausstroy.com

**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing system upon the parties of record, on the 10th day of August, 2010.

/s/ Martin S. Pinales
MARTIN S. PINALES (Ohio Bar No. 0024570)