UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6: 09-16-S-DCR |
| ) | |
| V. ) | |
| ) | |
| RUSSELL CLETUS MARICLE, ) | |
| DOUGLAS C. ADAMS, ) | |
| CHARLES WAYNE JONES, ) | |
| WILLIAM E. STIVERS, a.k.a. AL MAN, ) | |
| FREDDY W. THOMPSON, ) | **MEMORANDUM OPINION** |
| WILLIAM B. MORRIS, a.k.a. BART, ) | **AND ORDER** |
| DEBRA L. MORRIS, a.k.a. DEBBIE, ) | |
| and ) | |
| STANLEY BOWLING, ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*

Defendants Russell Cletus Maricle [Record No. 1057], Douglas C. Adams [Record No. 1058], Charles Wayne Jones [Record No. 1059], William E. "Al Man" Stivers [Record Nos. 1060, 1064], Freddy W. Thompson [Record No. 1061], William B. and Debra Morris [Record No. 1062], and Stanley Bowling [Record No. 1063] have filed motions for acquittal or a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. The motions have now been fully briefed and are ripe for the Court's consideration. The defendants argue that some or all of their convictions are invalid as a result of the Supreme Court's recent decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010). For the reasons discussed below, the Court

will grant Jones' and Thompson's motions for acquittal on Counts 3, 5, 6, and 7; however, the Court will deny the defendants' remaining motions.

## I. BACKGROUND

The defendants were charged with numerous offenses relating to corrupt elections in Clay County, Kentucky. Count 1 of the Superseding Indictment alleged that all eight defendants conspired to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), through a pattern of racketeering activity that included acts of honest-services mail fraud, extortion, obstruction of justice, and state-law bribery in violation of Kentucky Revised Statute (KRS) § 119.205. [Record No. 272, p. 7] Counts 3, 5, 6, and 7 alleged substantive acts of honest-services mail fraud by Defendants Jones, who was the Democratic election commissioner in Clay County, and Thompson, the county clerk. The honest-services charges arose from the defendants' participation in a vote-buying scheme and their subsequent preparation and mailing of election reports that contained fraudulent vote totals to the Kentucky Secretary of State. [*Id.*, p. 9-14] The four counts of honest-services fraud corresponded to each of the primary and general elections in 2004 and 2006. [*Id.*]

In addition to the charges described above, the Superseding Indictment alleged a money-laundering conspiracy by all eight defendants (Count 2); attempted extortion by Jones and Stivers (Count 4); obstruction of justice by Maricle and Stivers (Count 8) and Thompson (Count 9); conspiracy against voters' rights by Maricle, Jones, Stivers, and Thompson (Count 10); and conspiracy to commit vote-buying by Maricle, Jones, Stivers, Thompson, and the Morrises (Count 11). [*Id.*, p. 8-21] In Counts 12 and 13, the United States sought forfeiture of

$3,472,847.38 and $1,513,512.36 upon conviction of the conspiracies charged in Counts 1 (RICO) and 2 (money laundering), respectively. [*Id.*, p. 21-22]

At the conclusion of a lengthy trial, a jury found the defendants guilty on all counts.[1] [*See* Record Nos. 818, 833]  Three months after the verdict was returned, the Supreme Court decided *Skilling*, holding that the honest-services statute, 18 U.S.C. § 1346, reaches only offenses that involve bribery or kickbacks.  *See* 130 S. Ct. at 2931.  Thereafter, Jones and Thompson – and ultimately all of the defendants – sought an extension of time within which to file motions for judgment of acquittal or a new trial based on the *Skilling* decision.  The Court granted an extension and allowed the present motions to be filed.  [Record No. 1056]

## II.   ANALYSIS

The United States concedes that Jones' and Thompson's convictions for honest-services mail fraud are no longer valid in light of *Skilling*.  [*See* Record No. 1029]  The Court agrees that because the scheme alleged in Counts 3, 5, 6, and 7 did not involve bribery or kickbacks, the defendants' convictions on those counts must be set aside.  *See* 130 S. Ct. at 2931.  Accordingly, Jones' and Thompson's motions for judgment of acquittal regarding the substantive honest-services counts will be granted.

Jones, Thompson, and the other defendants argue that *Skilling* also invalidates their RICO conspiracy convictions.  Because the jury did not specify which predicate acts it found were agreed to, the defendants assert, it is impossible to determine whether the Count 1 verdict rests on a legally valid ground.  In response, the United States acknowledges that Jones' and

---

1   The Court granted post-trial motions by Jones and Stivers for acquittal on Count 4, the attempted-extortion count.  [*See* Record Nos. 947, 1080]

Thompson's mail fraud convictions cannot support the verdict on the RICO conspiracy count. However, the government maintains that any error in the RICO convictions was harmless. The Court agrees.

As previously stated, Count 1 alleged four RICO predicates: honest-services mail fraud, extortion, obstruction of justice, and state-law bribery. [*See* Record No. 272, p. 7] To convict a defendant of the RICO conspiracy charge, the jury must have found that the defendant agreed that a member of the conspiracy would commit at least two acts of such racketeering activity. *See United States v. Corrado*, 304 F.3d 593, 608 (6th Cir. 2006) (citing 18 U.S.C. § 1961(5)). Under the instructions given in this case, the jury could have found that a defendant agreed to the commission of two or more acts of honest-services mail fraud, or one act of honest-services mail fraud and another type of racketeering activity. Moreover, because the verdict was general, the Court cannot know with absolute certainty whether some or all of the defendants' RICO convictions rested in part on the constitutionally invalid honest-services predicate.

The Count 1 convictions are therefore flawed; "[a] conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 129 S. Ct. 530, 530 (2008) (per curiam). Such an instruction is reviewed for harmless error, however, provided that it "does not categorically 'vitiat[e] *all* the jury's findings.'" *Id.* at 532 (quoting *Neder v. United States*, 527 U.S. 1, 11 (1999) (other internal quotation marks omitted)). Here, the erroneous instruction on the honest-services theory does not invalidate the jury's findings in their entirety, as will be explained below. Thus, the Court must determine "whether it appears 'beyond a reasonable doubt that the

error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  If the Court can find beyond a reasonable doubt that the Count 1 verdict would have been the same with or without the erroneous instruction, the error is harmless. *See United States v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008) (citing *Neder*, 527 U.S. at 19).

The harmless-error approach is consistent with *Skilling*.  After defining the scope of the honest-services statute, the Supreme Court turned to Skilling's fraud-conspiracy conviction and acknowledged that "[b]ecause the indictment alleged three objects of the conspiracy – honest-services wire fraud, money-or-property wire fraud, and securities fraud – Skilling's conviction is flawed." 130 S. Ct. at 2934.  Nevertheless, the Court did not find the conviction to be invalid, but instead remanded Skilling's case to the Fifth Circuit for determination of whether the error was harmless.[2]  *See id.* at 2934-35.

The Court likewise remanded two other cases that involved the honest-services statute, *Black v. United States*, 130 S. Ct. 2963 (2010), and *Weyhrauch v. United States*, 130 S. Ct. 2971 (2010) (per curiam), for reconsideration in accordance with *Skilling*.  On remand in *Black*, the Seventh Circuit evaluated the defendants' convictions in light of jury instructions rendered erroneous by the *Skilling* decision. *See United States v. Black*, Nos. 07-4080, 08-1030, 08-1072, 08-1106, 2010 U.S. App. LEXIS 22606 (7th Cir. Oct. 29, 2010).  Although Black and his codefendants were convicted of substantive wire and mail fraud, rather than RICO conspiracy, the Seventh Circuit's reasoning is nonetheless instructive here.

---

2  *Skilling* was still pending before the Fifth Circuit as of the date of this opinion.

In *Black*, the United States alleged wire and mail fraud under two theories: (1) fraudulent appropriation of money, or pecuniary fraud, and (2) honest-services fraud. *Id.* at *2. As in the present case, the jury's verdict was a general one, and thus, the court observed, "[W]e cannot be absolutely certain that [the jury] found the defendants guilty of pecuniary fraud as well as, or instead of, honest-services fraud." *Id.* Because the evidence did not show that the fraudulent scheme involved bribery or kickbacks, the defendants' fraud convictions could not be sustained under the honest-services theory. *Id.* at *3. Nevertheless, the court explained, "if it is not open to reasonable doubt that a reasonable jury would have convicted them of pecuniary fraud, the convictions on the fraud counts will stand." *Id.* (citing *Hedgpeth*, 129 S. Ct. at 531-32).

After examining the evidence presented at trial, the Seventh Circuit concluded that with respect to the first count, while it was "unlikely" that a reasonable jury would have found the defendants guilty of honest-services fraud but not pecuniary fraud, "no stronger assertion [wa]s possible." *Id.* at *13. Consequently, the court held, the erroneous instruction necessitated a new trial on that count. *See id.* at *19. On the remaining fraud count, however, the court determined that under the facts of the case, "[n]o reasonable jury could have acquitted the defendants of pecuniary fraud . . . but convicted them of honest-services fraud." *Id.* at *17. The convictions on the second fraud count were therefore affirmed.[3] *See id.* at *19.

Applying the same logic here, the Count 1 convictions will stand "if it is not open to reasonable doubt that a reasonable jury would have convicted" the defendants of the RICO

---

3   The defendants in *Black* were actually convicted of three counts of fraud; however, the Seventh Circuit chose to treat them as two counts based on the underlying facts. *See* 2010 U.S. App. LEXIS 22606, at *2.

-6-

conspiracy in any event. *Id.* at *3. In other words, if it is clear beyond a reasonable doubt that the jury's verdict would have been the same regardless of the instruction on the honest-services predicate, the error was harmless and no retrial is necessary on the RICO (or any other) count.[4] *See Kuehne*, 547 F.3d at 681. Because the jury could not have found that the defendants agreed to one or more acts of honest-services mail fraud without also finding that they agreed to the commission of at least two valid predicate acts, the convictions withstand harmless-error review.

The substantive honest-services counts (Counts 3, 5, 6, and 7) alleged that Jones and Thompson devised a scheme to defraud by (1) participating in the pooling of funds to be used for vote-buying in the 2004 and 2006 primary and general elections; (2) instructing election officers to buy votes and to identify voters whose votes had been bought; (3) instructing election officers to assist paid voters and to conceal such assistance; (4) helping prepare election reports that contained fraudulent vote totals to be sent to the state board of elections and the Kentucky secretary of state; and (5) mailing the false reports to the secretary of state. [Record No. 272, p. 9-14] The jury was instructed that to convict Jones and Thompson of honest-services mail fraud, it must find that the defendants participated in a scheme utilizing the above-described manner and means. [*See* Record No. 826, p. 38-39, Instruction No. 14] Furthermore, the

---

4  Several defendants assert in passing that not only Counts 1 and 12, but all of the charges, or at least Count 2, must also be retried. [*See* Record No. 1057, p. 6 ("[T]he improper honest services fraud theory tainted *all* of Maricle's convictions. All of Maricle's convictions are inextricably intertwined with the racketeering conspiracy, and, like dominos, must fall if the honest services theory fails."); Record No. 1058-1, p. 10 ("Adams is entitled to a new trial on the money laundering count as that count is inextricably intertwined with the RICO conspiracy allegations."); Record No. 1059, p. 7 n.6 ("The money laundering count is part and parcel of the RICO conspiracy charge. To allow the money laundering conviction to stand while vacating the RICO conspiracy [convictions] is illogical given the theory of the prosecution."); Record No. 1060-1, p. 6 ("The money-laundering conspiracy is indistinguishable from the RICO conspiracy. The remaining counts against Stivers are similarly intertwined.")] The Court finds it unnecessary to address these assertions in light of its conclusion that the RICO convictions will stand.

instructions setting forth the RICO predicates referred the jury to the instruction on the substantive honest-services counts for explanation of the honest-services predicate. [*See id.*, p. 25, Instruction No. 12G]  To find honest-services mail fraud as a predicate act for the RICO conspiracy, then, the jury would have had to also find that the defendant or defendants agreed to the scheme involving Jones' and Thompson's instruction of election officers to buy votes – *i.e.*, to violate KRS § 119.205.[5]  [*See id.*, p. 38-39, Instruction No. 14]

As noted by the United States, the jury heard evidence of hundreds if not thousands of acts of vote-buying by defendants (including Jones and Stivers, as election officers) and others as part of the conspiracy.[6]  [*See* Record No. 1068]  Without these countless acts of bribery, there would have been no basis for the honest-services charges: as set forth in the Superseding Indictment, the jury instructions, and the evidence presented at trial, the fraudulent vote totals in the election reports mailed by Jones and Thompson were the product of bribery, by conspiracy members, in violation of KRS § 119.205.  No reasonable jury could have found that a defendant agreed to one or more acts of honest-services mail fraud unless it also found that the defendant agreed to the multiple acts of bribery underlying each act of fraud.  *Cf. Black*, 2010 U.S. App. LEXIS 22606, at *17.  Thus, even if the defendants' RICO convictions rested in part on the

---

[5]  The statute provides that "[a]ny person who makes or offers to make an expenditure to any person, either to vote or withhold his vote, or to vote for or against any candidate or public question at an election shall be guilty of a Class D felony."  KRS 119.205(1).  The jury was instructed that the elements of this offense are (1) "[t]hat the defendant makes or offers to make," (2) "an expenditure to a potential voter," (3) "with intent to influence the voter to vote or withhold his vote, or to vote for or against any candidate at an election."  [Record No. 826, p. 28, Instruction No. 12J]

[6]  Count 1 alleged, and the United States presented extensive evidence to show, that the defendants were not the only members of the RICO conspiracy.

-8-

invalid honest-services predicate, those convictions would necessarily also be supported by at least two valid predicate acts, and the verdict would be unaffected. *Cf. Kuehne*, 547 F.3d at 681.

A few defendants, notably Stivers, maintain that the honest-services charges were the linchpin of the RICO conspiracy count and that without them, the United States could not prove the necessary agreement underlying the conspiracy. [*See* Record No. 1060-1, p. 5-6; Record No. 1075, p. 6] According to Stivers, "the acts of mail fraud tie together [the defendants'] competing political factions in a single conspiracy the overall objective of which was a detente-style agreement to share largely in the political power in Clay County and the spoils that were to be derived from such power." [Record No. 1075, p. 6] He describes the mailing of the election results as "the final, necessary and unifying act by which the jury could rationally find a conspiracy to have existed among these political competitors and antagonists" because it was the means of ensuring that the defendants' other predicate acts "would achieve their intended result – the election of the preferred candidate and the reaping of the spoils to come."[7] [Record No. 1060-1, p. 5-6] Once the honest-services charges are gone, Stivers contends, the "basis to find the necessary 'overall agreement' is eliminated and it cannot be said . . . beyond a reasonable doubt that the error was harmless." [*Id.*, p. 6]

Assuming arguendo that Stivers' assessment of the evidence is correct – *i.e.*, that if the defendants didn't agree to the mailing of fraudulent returns, there was no reason for them to

---

[7] To the extent Stivers suggests that the honest-services convictions are necessary to show that the conspiracy's goal was accomplished, his argument is clearly without merit. The government is not required to prove that a conspiracy was successful, or that success was even possible. *See United States v. Jimenez Recio*, 537 U.S. 270, 274-76 (2003) (impossibility of success is irrelevant in a conspiracy case); *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues . . . .").

agree to any of the other predicate acts – invalidation of the honest-services counts still does not warrant reversal of the RICO convictions. Stivers' argument overlooks the rule that "[e]very act of the conspirators taken to effect the illegal purpose of the conspiracy need not be illegal in itself." *United States v. Van Hee*, 531 F.2d 352, 357 (6th Cir. 1976). *Skilling* did not change the facts underlying the defendants' convictions; rather, it simply established that the conduct giving rise to Counts 3, 5, 6, and 7 is not illegal. Thus, although honest-services mail fraud is no longer a valid RICO predicate under the facts of this case, evidence of the acts alleged in the honest-services charges would still be relevant for precisely the purpose Stivers deems it necessary: to prove the existence of the conspiracy.[8] Elimination of the honest-services charges thus does not automatically destroy the defendants' convictions on Count 1. And because, as explained above, a reasonable jury could not have found honest-services mail fraud to be a RICO predicate without also finding that the defendant agreed to at least two valid predicate acts, the error in instructing the jury on the honest-services predicate is harmless.

### III. CONCLUSION

While *Skilling* requires reversal of the substantive honest-services convictions, any error in the defendants' other convictions is harmless. Accordingly, it is hereby

**ORDERED** as follows:

---

[8] For example, vote-hauling, or transporting voters to the polls, is not *per se* illegal. *See United States v. Turner*, No. 05-02, 2005 U.S. Dist. LEXIS 35788, at *5 (E.D. Ky. Dec. 13, 2005) ("[A] Kentucky statute implicitly permits the practice of 'vote hauling.'" (citing KRS § 119.205(5))). Nevertheless, the United States introduced extensive evidence of vote-hauling at trial to show how the conspiracy operated. Likewise, the government could have presented evidence that Jones and Thompson certified and mailed the fraudulent election results even if they had not been charged with honest-services mail fraud and even if honest-services mail fraud had not been alleged as a predicate of the RICO conspiracy.

(1) Defendant Jones' Motion for Judgment of Acquittal on Counts 3, 5, 6, and 7 and Motion for New Trial on Counts 1, 2, and 12 [Record No. 1059] is **GRANTED** insofar as Jones seeks acquittal on Counts 3, 5, 6, and 7. To the extent Jones seeks a new trial, his motion is **DENIED**.

(2) Defendant Thompson's Motion for Judgment of Acquittal on Counts 3, 5, 6, and 7 and Motion for New Trial on Counts 1 and 12 [Record No. 1061] is **GRANTED** insofar as Thompson seeks acquittal on Counts 3, 5, 6, and 7. To the extent Thompson seeks a new trial, his motion is **DENIED**.

(3) The motions of Defendants Russell Cletus Maricle [Record No. 1057], Douglas C. Adams [Record No. 1058], William E. "Al Man" Stivers [Record Nos. 1060, 1064], William B. and Debra Morris [Record No. 1062], and Stanley Bowling [Record No. 1063], for acquittal or a new trial are **DENIED**.

This 10th day of December, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge