# MORTGAGE

THIS MORTGAGE made and entered into this the 5th day of November, 20 08, by and between R.Cletus & Judy Maricle, husband and wife ~~R.~~ ~~Drive~~

Manchester, Ky 40962                                            Manchester, Ky 40962

(herein "Borrower(s)") of the first part, and First National Bank of Manchester, Kentucky, 120 Town Square, Manchester, Clay County, Kentucky 40962 (hereinafter "Lender"), of the second part.

WHEREAS, Borrower(s) is/are indebted to Lender in the principal sum of Ninety thousand, Five hundred eighty six dollars & 50/100--- Dollars ( 90,586.50 ), which indebtedness is evidenced by Borrower(s) note dated November 5, 20 08 (herein "Note"), providing for payment of principal and interest, with the balance of the indebtedness, due and payable on November 5, 2013 as follows:

Principal amount of said note, $90,586.50, plus accrued interest shall be due and payable on November 5, 2013 as per terms of note dated November 5, 2008.

TO SECURE TO Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower(s) herein contained, and (b) the repayment of any future advances, renewals, replacement notes, and extensions hereof or thereof, all with interest thereon made to Borrower(s) (or any of them if more than one) or on behalf of Borrower(s) (or any of them if more than one) by Lender, the following described property located in the County of Clay, State of Kentucky:

Being that same property conveyed to the borrower, R. CLETUS MARICLE, by that deed from Betty Bailey, et al., dated 27 day of Sept., 2008 and found of record in DEED BOOK 292, PAGE 109, records of the CLAY County Clerk's office and more particularly described as follows:

Beginning at common corner between Manchester Baptist Church, Eugene Clark and R. Cletus Maricle and B.W. Madden's tract of property, thence with common line between Eugene Clark's property and the property of B.W. Madden and R. Cletus Maricle to Lawyer Street, approximately 44 feet; thence with right-of-way of Lawyer Street in a northwesterly direction away from Eugene Clark's lien and running a distance of 61 feet, thence at a right angle away from lawyer Street and parallel with the first call herein to-wit the Clark-Maricle common line a distance equal to the first call, thence turning at a right angle and running parallel with Lawyer Street 61 feet to the point of beginning.

TOGETHER with all the buildings, structures, and improvements now or hereafter erected on the above described property, and all easements, appurtenances, rents, royalties, minerals, (including but not limited to coal, oil and gas), oil and gas rights and profits, water, water rights and water stock and all fixtures, furniture or other articles of personal property of Borrower(s) now or hereafter attached to, used in or about, or in connection with the above described property, all of which, including replacements and additions thereto, and substitutes therefor, shall be deemed to be and remain a part of the property covered by this Mortgage. All of the foregoing, including the real estate, are herein referred to as the "Property."

Borrower(s) covenant that Borrower(s) are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property, that the Property is unencumbered, and that Borrower(s) will warrant and defend generally the title of the Property against all claims and demands.

Borrower(s) and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower(s) shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and the principal and interest on any Future Advances or any sums secured by this Mortgage.

It is expressly agreed by the parties hereto that notwithstanding any of the provisions contained in the Note referred to above and any of the provisions contained in this Mortgage to the contrary, the Lender shall have the privilege and option at any time during the term of this mortgage or any renewal thereof, without notice to the Borrower(s) to increase the rate of interest on the unpaid balance due thereunder to a rate not exceeding the maximum rate of interest allowed under the applicable provisions of the Kentucky Revised Statutes.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender shall be applied by Lender first in payment of interest then in payment of principal on any sums secured by this Mortgage.

3. **Charges; Liens.** Borrower(s) shall pay all taxes, assessments and other charges, (rents, royalties and lease payments) fines, impositions, liens attributable to the Property, directly to the payee thereof upon Lender's request Borrower(s) shall promptly furnish to Lender all notices of amounts due under this paragraph, and promptly furnish to Lender receipts evidencing such payments.

In the event any such taxes, assessments, charges, and/or liens are not paid when due, the Lender may (without waiver of default) pay the same, and when so paid, any sums paid by Lender shall become immediately due and payable by Borrower(s) to Lender and shall become and be a part of the principal debt herein and hereby secured, bearing interest at the rate of the principal debt until paid. All irregularities and defects in the levy or assessment are hereby expressly waived, and the receipt of the proper collecting officer shall be conclusive evidence as to the time, amount, and validity of any such payments if made by the Lender hereunder.

4. **Hazard Insurance.** Borrower(s) shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included with the term "extended coverage", and such other hazards (including but not limited to flood), as Lender may require and in such amounts and for such periods as Lender may require; provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay all sums secured by this Mortgage.

The insurance carrier providing the insurance shall be chosen by Borrower(s) subject to approval by Lender, which approval shall not be unreasonably withheld. Premiums on insurance policies shall be paid by Borrower(s) when due, directly to the insurance carrier.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereon, and Borrower(s) shall promptly furnish to Lender all renewal notices and all receipts of said premiums. In the event of loss, Borrower(s) shall give prompt notice to the insurance carrier and Lender in writing. Lender may make proof of loss if not made promptly by Borrower(s). In the event of loss, each insurance company concerned is hereby authorized and directed to make payments for such loss directly to the Lender instead of to the Borrower(s) and Lender jointly.

Unless Lender and Borrower(s) otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of the Mortgage is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Mortgage would be impaired the insurance proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower(s). If the Property is abandoned by Borrower(s), or if Borrower(s) fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower(s) that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or the sums secured by the Mortgage.

Unless Lender and Borrower(s) otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments hereof or change the amount of such installments. If the Property is acquired by Lender, all right, title and interest of Borrower(s) in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

It is further agreed that in the event the Borrower(s) fail or refuse to maintain insurance as above stipulated or fail to comply with any covenant hereof in regards to insurance, lender shall have the right (without waiving the default), at its option, to acquire insurance to protect Lender's interest from any insurer of Lender's choosing or to pay the premiums on any policies required by the Lender, and any sums paid by the Lender for insurance shall become immediately due and payable to them and unless so paid shall be deemed and become part of the principal debt herein and hereby secured, bearing interest at the same rate as the principal debt until paid. Nothing contained in this paragraph shall require Lender to incur any expense or take any action hereunder.

5. **Preservation and Maintenance of Property; Leaseholds; Planned Unit Development:** Neither the Property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred or encumbered, voluntarily or otherwise, or permit to be created against the property any lien or liens inferior or superior to the lien of this Mortgage without the written consent of the Lender. Borrower(s) further agree to keep and maintain the Property free from claims of all persons supplying labor or materials for construction of any and all buildings or improvements now erected or to be erected on said premises. If enforcement procedures shall be instituted by any other lienholder, the Lender may immediately declare their debt hereby secured, and the Note(s) evidencing same, as being immediately due and payable and may take such action as hereinafter provided in accelerating the debt. Borrower(s) shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a planned unit development, Borrower(s) shall perform all of Borrower(s) obligation under the declaration or covenants creating or governing the planned unit development, the by-laws and regulations of the planned unit development, and constituent documents. If a planned unit development rider is executed by Borrower(s) and recorded together with this Mortgage, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider were a part hereof.

6. **Protection of Lender's Security.** If Borrower(s) fail to perform the covenants and agreements (or any one of them), contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, taxes or arrangements or proceedings involving a bankrupt or decedent, or keep and maintain the Property free from claims of all persons supplying labor or material for construction and for the benefit of the property, then Lender at Lender's option, upon notice to Borrower(s) may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs. If Lender require mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower(s) shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower(s) and Lender's written agreement or applicable law.

Any amount disbursed by Lender pursuant to this paragraph 6, with interest thereon, shall become additional indebtedness of Borrower(s) secured by this Mortgage. Unless Borrower(s) and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower(s) requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph shall require the Lender to incur any expense or take any action hereunder.

7. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender, who shall apply the same to the payment of all debts hereby secured and the excess, if any, shall be paid over by the Lender to the Borrower(s) or whoever is entitled to receive same.

9. **Borrower(s) Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to the Borrower(s) or to any successor in interest of Borrower(s) shall not operate to release, in any manner, the liability of the original Borrower(s) and Borrower(s) successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower(s) and Borrower(s) successors in interest.

10. **Extension, Modification or Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11. **Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right of remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

12. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower(s), subject to the provisions of paragraph 15 hereof. All covenants and agreements of Borrower(s) shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

13. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower(s) provided for in this Mortgage shall be given by mailing such notice to Borrower(s) by regular mail at the Property address or at such other address as Borrower(s) may designate by Notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by Notice to Borrower(s) as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower(s) or Lender when given in the manner designated herein.

14. **Uniform Mortgage; Governing Law; Severability.** This form of mortgage combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. In the event that any provision or clause of this Mortgage, any Note, or any other indebtedness evidenced by a writing owed by the Borrower(s) to Lender conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage, any Notes, or other written document creating debt which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage, any Notes or any other writings evidencing debt are declared to be severable.

15. **Transfer of the Property; Assumption.** If all or any part of the Property or any interest therein is sold or transferred by Borrower(s) without Lender's prior written consent, Lender may, at its option, declare all of the sums secured by this Mortgage to be immediately due and payable. This Mortgage and the debts secured by this Mortgage are non-assumable without the Lender's prior written consent, and the Lender may for any reason, in its discretion, withhold such consent.

16. **Acceleration.** Upon the occurrence of any of the following, all of the sums secured by this Mortgage shall be immediately due and payable at the option of the Lender, without notice or demand, which Borrower(s) hereby expressly waive:
   (a) Default in payment when due of any sums in the Note secured by this Mortgage.
   (b) Default in payment when due of any other sums secured by this Mortgage.
   (c) Default in the performance of any other term, covenant or agreement of Borrower(s) in the Note or other instrument secured by this Mortgage.
   (d) Default in the performance of any other term, covenant or agreement of Borrower(s) in this Mortgage.
   (e) The filing of an arrangement or a proceeding in bankruptcy by or against Borrower(s), initiation of insolvency proceedings by or against Borrower(s) or assignment by Borrower(s) for the benefit of creditors, or the sale or transfer of the Property, or any part thereof or interest therein, by Borrower(s) without Lender's written consent.

   Once this Mortgage has been accelerated subsequent payments of arrears shall not cure the default unless expressly agreed to by the Lender in writing.

17. **Remedies.** Upon acceleration as provided herein, the Lender shall be entitled to pursue those remedies, judicial and non-judicial, permitted by applicable law, including, but not limited to:
   (a) Enforcement of this Mortgage by judicial proceeding.
   (b) In the event the Lender chooses to enforce the lien of this Mortgage, Lender shall be entitled to collect in such proceedings all expenses of foreclosure, of threatened foreclosure or enforcement or threatened enforcement of its lien, including but not limited to reasonable attorney fees, costs of evidence, abstracts and title reports. It is expressly agreed that the lien of this Mortgage shall extend to and include any expenses that may be incurred by the Lender in the enforcement and collection of the sums secured by this Mortgage and should legal or equitable proceedings be instituted for the collection of said indebtedness, or any part thereof, then the Borrower(s) shall be liable for and pay all reasonable attorney's fees and expenses incurred by the Lender.
   (c) If Lender so chooses to accept a Deed from Borrower(s) of the property which is the subject matter of this instrument, Lender has the right to accept and dispose of same in any manner it chooses, however, any acceptance and/or disposition of the property does not exhaust the personal liability for any balance remaining due after disposal of said property, or on any additional collateral or on any other indebtedness owed by the Borrower(s) unless said personal liability is released in writing by Lender.

18. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower(s) hereby assign to Lender the rents of the Property, provided that Borrower(s) shall, prior to acceleration as herein provided or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

   Upon acceleration of the debts hereby secured or abandonment of the Property, and at any time prior to the expiration of any period of redemption following the sale of the Property, Lender shall be entitled to have a receiver appointment by a Court to enter upon, take possession of and manage the Property, and to collect the rents of the property including those past due. All rents collected by the receiver shall be applied first to payment of the cost of management of the property and collection of rents, including but not limited to, receivers' fees, premiums on receiver's bond, and reasonable attorney's fees, and then to the sums secured by this Mortgage.

19. **Future Advances; Additional Indebtedness and Amounts Secured.** Lender, at Lender's option prior to release of this Mortgage, may make future advances to Borrower(s). Such future advances, with interest thereon, shall be secured by this Mortgage.

   At no time shall the amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Note plus U.S. $ __100,000.__

   Any additional advancement or loan made hereunder by Lender to any person who is a Borrower herein shall bind all persons who are Borrower(s) hereto just as if made to each and all of them, and all Borrower(s) shall be jointly and severally liable to repay any such obligation and same shall be fully secured by this Mortgage.

   Nothing contained in this Sub-Section shall require the Lender to make any advances hereunder, any advances made hereunder are made solely at the option of the Lender.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage.

21. **Waiver of Homestead.** Borrower(s) hereby waive all right of homestead exemption in the Property.

22. **Construction Clause.**
   (X) It is agreed that this mortgage is not given to secure a loan made for the purpose of erecting, improving or adding to a building upon the property hereinabove described.
   ( ) This mortgage is given for the purposes of erecting, improving, or adding to a building, said loan will be so used as provided in KRS 376.050, 376.060 and any and all other relevant sections of Chapter 376 of the Kentucky Revised Statutes. Further, this mortgage secures in addition to the construction loan any permanent financing or other sums subsequent to the completion of the construction and any and all other sums as contemplated and provided for herein.

23. **Venue.** Borrower(s) hereby consent to waive venue as a defense to any suit or action brought by Lender in the exercise of any right, power, or remedy hereunder and consent and agree that any suit brought by Lender may be instituted and maintained in any Court of competent jurisdiction in the County of Clay State of Kentucky, or in any Court of competent jurisdiction in any other county or state at the option of Lender.

24. **Hazardous Substance.** Borrower(s) hereby represent that neither the Borrower(s) nor any other person within Borrower(s) knowledge, based upon reasonable investigation, has ever caused or permitted any hazardous substances (as defined under Federal and State law) to be placed, held, located or disposed of on, under, or at the property or any part thereof, and that neither the property or any part thereof, has been used as a dump site or storage site for any hazardous substances. Borrower(s) hereby agree to indemnify Lender and hold the Lender harmless from and against any and all losses, liabilities, damages, injuries, expenses, including reasonable attorney fees, as a result of any action being brought as a result of the use of any violations of Federal and State Law pertaining to hazardous substances.

IN WITNESS WHEREOF, Borrower(s) have executed this Mortgage.

Borrower _R. Cletus Maricle_    Borrower _[signature]_
Borrower _Judy C. Maricle_      Borrower _[signature]_

STATE OF KENTUCKY  
                       SCT.  Glenda Hubbard  GCH
COUNTY OF CLAY  

Before me, ~~R. Scott Madden, Freida Madden~~ ~~R. Cletus Maricle, Freida C. Maricle~~, a Notary Public in and for the State of Kentucky, at large, personally appeared ~~Roger Maricle, Bart C. Maricle~~, R. Cletus Maricle, Judy C. Maricle  
who acknowledged that they executed the foregoing to First National Bank of Manchester, Kentucky, as their free act and deed.  

Witness my hand, this the 5th day of November, 2008  GCH

                                          Glenda Hubbard  
                                          Notary Public, State of Kentucky at Large

My Commission Expires: 06/04/11

This instrument was prepared by Clint Hanes  
                                  Attorney at Law, Manchester, Kentucky

STATE OF KENTUCKY )  
                          ) SCT  
COUNTY OF CLAY )

I _____, Clerk of the County Court in and for the County and State aforesaid, do certify that this Mortgage from _____

to First National Bank of Manchester, Kentucky, a corporation, was on the ____ day of _____ lodged in my office for record, and the same, together with this and the foregoing certificate has been duly recorded.  
Witness my hand, this _____ day of _____.

                                                                  _____ CLERK  
                                                               BY: _____ D.C.

---

Recorded in Mortgage Book No. 191  
Page 271

Manchester, Kentucky  
**First National Bank**

To

From

**MORTGAGE**  
(Homestead Waived)



103538  
Filed on:11/10/2008 3:02:27 PM  
Book: MORTGAGE Number: 191  
Page: 271  
Freddy Thompson, Clay County  
DC: