UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| vs | No. 9-cr-16-KKC-REW |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT THOMPSON'S MOTION
FOR A SEPARATE TRIAL</u>**

| | |
|---|---|
| FREDDY THOMPSON | DEFENDANT |

\* \* \* \* \* \* \* \*

Comes now the Defendant, Freddy Thompson, and submits to the Court this Memorandum of Points and Authorities in Support of his Motion for a Separate Trial.[1]

## I.

## INTRODUCTION

Mr. Thompson remains charged under the 2009 superseding indictment. (DE# 272.) The charges relating to theft of honest service have been vacated in light of *Skilling v. United States*, 130 S.Ct. 2896 (2010) (DE# 1082), and it is anticipated that Counts 2 and 13 will be dismissed in light of the government's concession of error on appeal. *United States v. Adams*, --- F.3d ---, 2013 WL 371429, 4 (6th Cir. 2013).

It is anticipated that at Mr. Thompson's retrial, he will be defending against Count 1 (if the Court does not dismiss it) – the RICO charge; Count 9 – Obstruction of Justice; and Counts 10 through

---

[1] A prior Motion for Separate Trial was filed by the undersigned and was overruled by the trial court. (DE# 391.) This was also one of Mr. Thompson's arguments before the Sixth Circuit Court of Appeals. While the Sixth Circuit did not specifically address the merits of the severance issue, the opinion explicitly made provision for the refiling of a motion to sever. *United States v. Adams*, --- F.3d ---, 2013 WL 371429, 38, n. 43 (6th Cir. 2013).

12 relating to conspiracy to buy votes. To be sure, the Sixth Circuit ruled that a number of evidentiary issues should have been resolved in the defendants' favor during the first trial – evidence which had nothing to do with Mr. Thompson (e.g., evidence related to drug dealing and witness intimidation), *Id.* at 32. Despite "society's need for speedy and efficient trials[,]" *United States v. Sivils*, 920 F.2d 587, 594 (6th Cir. 1992), there are still numerous factors which warrant a separate trial for Mr. Thompson. In order to demonstrate why Mr. Thompson can only get a fair trial if he is separated from his co-defendants, counsel will summarize the defense he *attempted* to present at the first trial, and then point to specific, concrete examples of the unfair prejudice caused by the joint trial.

At the first trial, counsel argued that since the government alleged that the Clay County Board of Elections was the RICO enterprise, it *had* to include Mr. Thompson in the indictment since he was on the Board of Elections by virtue of his position as the County Clerk. Against that backdrop, Mr. Thompson came to trial with cogent, valid, fact-based answers to each of the key allegations against him. He was a political neophyte who was selected by people who had good reason to want former Clerk Jennings White – a violent, drug-dealing money launderer – out of office. The defense never denied that votes were bought for Thompson in 2002; however counsel vehemently denied that the government showed any evidence of Mr. Thompson's participation or knowledge.

To rebut the government's claim that Mr. Thompson was involved in "vote-stealing," the defense introduced uncontroverted evidence that showed he went to great lengths in 2006 to teach the voters of Clay County how to operate the new electronic voting machines. The government could not dispute the fact that those educative efforts ran directly contrary to the interests of the alleged conspiracy to which cooperating witnesses like Wanda White eventually tried to link Mr. Thompson to. Simply stated,

without the County Clerk as the head of the alleged RICO enterprise, the RICO puzzle was missing an essential piece.

Time after time, Mr. Thompson was unfairly prejudiced by the joint trial. At trial, the government buried the defendants with an avalanche of other-crimes evidence, none of which involved Mr. Thompson in any degree whatsoever. While the Sixth Circuit ruled that much of that evidence was improperly admitted, some of it is fair game for the second trial. However, like at the first trial, there will be no evidence linking Mr. Thompson to any of his co-defendants' past misdeeds.

Two factors warranting a separate trial have to do with differing degrees of culpability, and the jury's inability to reliably and independently assess Mr. Thompson's guilt. In this case, the trial court explicitly recognized Mr. Thompson's limited culpability *vis-à-vis* his co-defendants, and the jury demonstrated its inability to reliably assess his guilt.

In addition, there remains the problem posed by admission of many hours of surreptitious recordings made by cooperating individuals. As opposed to his co-defendants, whose statements are captured on a great number of these recordings, Mr. Thompson's voice only appears on one of them. Should Mr. Thompson's co-defendants elect not to testify, he will be unable to cross-examine them. Furthermore, Mr. Thompson continues to have an antagonistic defense as against the remainder of his co-defendants, and will be unable to call co-defendants to present evidence that exculpates him from any alleged conspiracy should he be tried with them. Lastly, despite several counts being excised, the instant prosecution is still extremely complex. It is submitted that the jury at the first trial was simply unable to appraise the evidence against Mr. Thompson individually, and that to not sever Mr. Thompson from his co-defendants raises the likelihood that this case will have to be tried a third time.

II.

ARGUMENTS

A.

### GIVEN THE STARKLY DIFFERENT LEVELS OF CULPABILITY ALLEGED BY THE GOVERNMENT, MR. THOMPSON IS ENTITLED TO A SEPARATE TRIAL FROM HIS CO-DEFENDANTS

In *Zafiro v. U.S.*, 506 U.S. 534, 113 S.Ct 933, 122 L.Ed.2d 317 (1993), the Supreme Court observed that circumstances warrant Rule-14 severances "only if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence[,]" which the Court recognized as most acute when the joint trial permits the introduction of evidence about a codefendants' wrongdoing and/or "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability[.]" *Id.*, 506 U.S. at 539, 113 S.Ct. at 938. The Sixth Circuit has similarly observed that reversible error may lie as to a separate-trial ruling in the face of "a substantial difference in the amount of evidence produced against each defendant" *combined with* "a substantial risk that the jury could not compartmentalize or distinguish between the evidence against each defendant." *U.S. v. Williams*, 711 F.2d 748, 751 (6th Cir. 1983). Both of these factors are present in the case *sub judice*.

The proof of prejudice against Mr. Thompson is in the proverbial pudding, as even the district court recognized at Mr. Thompson's final sentencing the great disparity in culpability as against the

"ringleaders" of the alleged conspiracy.[2] This fact is even *more* pronounced the second time around, as the mail fraud counts against Mr. Thompson have been dismissed in light of Supreme Court precedent, making his alleged role in the conspiracy even *less* important. *See* Gov't Memorandum in Response DE# 443-2 at 4 (opining that, by virtue of the mail fraud counts, Mr. Thompson had a central role in the conspiracy by certifying election results as accurate).

As noted above, mere variance in culpability is not sufficient to sever defendants *unless* there exists that a jury would be unable to separate out the evidence against Mr. Thompson *individually* as opposed to his co-defendants and make a reliable judgment as to *Mr. Thompson's* guilt or innocence. Again, one need look no further than the verdicts returned in the first trial to see that trying Mr. Thompson with his co-defendants, will unfairly prejudice his right to an independent assessment of guilt.

The record from the first trial amply demonstrates that the jury was unable to give separate consideration to the charges and the evidence. The jury convicted *every defendant* of *every charge* against him or her, (DE# 818) even though the trial court subsequently concluded that some of the jury's verdicts were flagrantly against the evidence. (DE# 947.) Accordingly, the jury returned at least two guilty verdicts that the evidence did not support.

The unsustainable verdicts, in and of themselves, constitute definitive proof that the jury could not compartmentalize the evidence or give each charge and each defendant the individualized assessment of guilt to which they were constitutionally entitled. *Cf. United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000) (interpreting "the fact that the jurors in this case found [the defendant] not guilty on ten

---

[2] Judge Reeves imposed a sentence of 150 months for Mr. Thompson, despite his advisory guideline rage of 262 to 327 months. (DE# 1283 at 25, 3/9/2011, *Transcript of Sentencing*.)

counts and acquitted co-defendants on other counts" as "some indication that the jury was able to sort out the issues and follow the court's instructions with respect to each defendant separately.")

Furthermore, the record from the prior trial contains additional persuasive evidence that the jury failed to put into practice the idea that it must consider each charge and each defendant separately. Specifically, the affidavit filed in connection with Mr. Adams' *Motion for New Trial Based on Juror Misconduct* shows that the jurors "felt compelled to convict all of the defendants because the jurors *were under the impression that if they found anyone guilty, they had to find all of the defendants guilty by association*." (DE# 949) (emphasis added).

B.

**THE ANTICIPATED ADMISSION OF MANY HOURS OF AUDIO RECORDINGS CONTAINING STATEMENTS BY MR. THOMPSON'S CO-DEFENDANTS WOULD VIOLATE HIS CONFRONTATION RIGHT SHOULD THEY NOT TESTIFY AT TRIAL**

In *Bruton v. United States*, 391 U.S. 123 (1968), the United States Supreme Court held that a defendant is deprived of his Sixth Amendment rights under the Confrontation Clause when his co-defendant's incriminating confession is introduced at their joint trial. And, more recently in *Crawford v. Washington*, 541 U.S. 36 (2004), the Court held that out-of-court testimonial statements are inadmissible as a violation of the Confrontation Clause "unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 54.

The Court has visited the *Bruton* rule in various contexts, but has "spoken with one voice in declaring *presumptively unreliable* accomplices' confessions that incriminate defendants." *Lilly v. Virginia*, 527 U.S. 116, 131 (1999), quoting *Lee v. Illinois*, 476 U.S. 530, 541 (1986) (co-defendants'

confession was presumptively unreliable and supposed "interlocking" nature of defendants' confessions did not overcome the presumption that uncross-examined testimony violates Confrontation Clause). See also *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when "the confession is redacted to eliminate not only the defendant's name, *but any reference to his or her existence*" and where confession not admitted or argued as substantive evidence against defendant) (emphasis supplied); *Cruz v. New York*, 481 U.S. 186 (1987) (where two confessing defendants are tried jointly, the pretrial confession of one cannot be admitted against the other without offending the Confrontation Clause, even when the confessions are supposedly "interlocking", unless the confessing defendant takes the stand); *Williamson v. United States*, 512 U.S. 594 (1994) (decided on federal evidentiary grounds without reaching the Confrontation Clause issue, holding that an accomplice's statement against his own penal interest was not admissible against the defendant, noting "the presumptive unreliability of the 'non-self-exculpatory' portions of the statement"). In *Gray v. Maryland*, 523 U.S. 185, 193 (1998), the Court reaffirmed *Bruton*'s observation of the "special, and vital, need for cross-examination" of an accomplice's accusations, and held that the prosecution cannot constitutionally use a confession inculpating codefendants in a joint trial. In *Lilly v. Virginia*, 527 U.S. 116 (1999), the Court yet again reaffirmed the special scrutiny that accomplice confessions merit when the prosecution seeks to admit them as hearsay statements under the "against-penal-interest" exception, and the historically skeptical treatment these statements have received.

It is anticipated that the Government will again argue that *Bruton* is not implicated in this case, and that the out-of-court statements by Mr. Thompson's co-defendants contained in the undercover

tapes are admissible under FRE 801(d)(2)(E), the co-conspirator exception. The cited rule permits the Government to offer as a non-hearsay statement "a statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy." However, "in order to admit the statement of a coconspirator under…FRE 801(d)(2)(E), it must first be determined that the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirators' statements were made in furtherance of the conspiracy." *United States v. Gessa,* 971 F.2d 1257, 1261 (6th Cir. 1992). The Government must prove these elements by a preponderance of the evidence, *Bourjaily v. United States*, 483 U.S. 171 (1987).

More than 30 undercover recordings have been provided in discovery in this case. Judge Maricle is on 22 of the recordings, Charles Wayne Jones is on 10, and William Stivers is on 11 of the recordings. Mr. Thompson is only on one recording, although his name is mentioned on several others. Mr. Thompson does not believe that the statements made by his co-defendants on the tape were in furtherance of a conspiracy. In fact, he denies the existence of a conspiracy in the first place. In addition, it is well established that mere "idle chatter or casual conversation about past events" is not considered a statement "in furtherance of the conspiracy." *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) (quotation omitted). While these statements might be admissible at a separate trial of the co-defendants who made them, Mr. Thompson objects to their admission at his trial.

### III.

#### CONCLUSION

Wherefore, the Defendant respectfully requests that this Court sever him from his co-defendants, and that he be tried separately in the instant matter.

Respectfully submitted,

/s/ Russell Baldani

/s/ R. Tucker Richardson, III

*Attorneys for Defendant Thompson*
Baldani, Rowland & Richardson
300 West Short Street
Lexington, KY 40507
859.259.0727
russ@brr-law.com
tucker@brr-law.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been filed via CM/ECF on this the 19th day of August, 2013, which will cause notice of the same to be served electronically on all parties.

/s/ Russell Baldani